**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE TACO BELL WAGE AND HOUR ACTIONS | 1:07-cv-01314-OWW-DLB<br><br>MEMORANDUM DECISION RE PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND DEFENDANTS' MOTION TO EXCLUDE DECLARATION AND REPORT OF JAMES LACKRITZ<br><br>(DOCS. 185, 221). |

I.    <u>INTRODUCTION</u>

Plaintiffs move to certify a class action under Fed. R. Civ. P. 23(a) and 23(b)(3). (Pls. Mot. Class Cert., ECF No. 185.) Taco Bell Corp. and Taco Bell of America, Inc. ("Taco Bell") filed an opposition (Defs. Opp'n Class Cert., ECF No. 220), to which Plaintiffs replied (Pls. Reply Class Cert., ECF No. 235). Both parties filed supplemental briefs regarding the subclass definitions (Pls. Response Hearing, ECF No. 252; Defs. Prop. Defins., ECF No. 254), and Plaintiffs filed an objection and response to Taco Bell's supplemental brief (Pls. Obj'n Prop. Defins., ECF No. 255).

Taco Bell moves to exclude the declaration and report of Plaintiffs' expert Dr. James Lackritz. (Defs. Mot. Lackritz, ECF No. 221.) Plaintiffs filed an opposition (Pls. Opp'n Lackritz, ECF No. 237), to which Taco Bell replied (Defs. Reply Exclude,

ECF No. 244). Taco Bell also filed an objection to Plaintiffs' evidence and expert Dr. Philip C. Gorman (Defs. Obj'n Gorman, ECF No. 220-6), to which Plaintiffs responded (Pls. Opp'n Gorman, ECF No. 235-2). Plaintiffs object to Taco Bell's evidence and expert Michael Buchanan. (Pls. Obj'n Buchanan, ECF No. 235-1.) Taco Bell filed an opposition (Defs. Opp'n Buchanan, ECF No. 239), to which Plaintiffs replied (Pls. Reply Buchanan, ECF No. 241).

The motions were heard June 6 and 7, 2011.

## II.  FACTUAL BACKGROUND

This case is a consolidation of six related putative wage and hour class actions against Taco Bell: (1) *Medlock v. Taco Bell Corp.*, Case No. 1:07-cv-01314; (2) *Hardiman v. Taco Bell Corp.*, Case No. 1:08-cv-01081; (3) *Leyva v. Taco Bell Corp.*, et al., Case No. 1:09-cv-00200; (4) *Naranjo v. Yum! Brands, Inc.*, Case No. 1:09-cv-00246; (5) *Widjaja v. Yum Brands, Inc.*, Case No. 1:09-cv-01074; and (6) *Nave v. Taco Bell Corp.*, Case No. 1:10-cv-02222.

On June 29, 2009, Plaintiffs filed a Consolidated Complaint alleging: (1) unpaid overtime; (2) unpaid minimum wages; (3) unpaid wages; (4) missed meal periods; (5) missed rest periods; (6) non-compliant wage statements; (7) unreimbursed business expenses; (8) vested accrued vacation wages; (9) non-payment of wages upon termination; and (10) non-payment of wages during employment. (Compl., ECF No. 118-1.) The Consolidated Complaint

2

also asserts a claim for violation of California Business & Professions Code 17200, et seq. and penalties pursuant to California Labor Code sections 2698, et seq. *Id.* Plaintiffs were granted leave to file a First Amended Consolidated Complaint (Order Am. Compl., ECF No. 229), and they did so on May 17, 2011 (Am. Compl., ECF No. 230).

On December 30, 2010, Plaintiffs filed a motion to certify a class action and eight proposed subclasses: (1) late meal break subclass; (2) underpaid automatic adjustment subclass; (3) on-duty meal period agreement subclass; (4) unpaid on-duty meal period subclass; (5) rest break subclass; (6) final pay subclass; (7) vested accrued vacation wage subclass; and (8) non-management employee vacation subclass. (Pls. Mot. Class Cert., ECF No. 185.) On August 30, 2011, Plaintiffs' meal and rest break claims (subclasses 1 to 5) were stayed for the California Supreme Court's pending resolutions of *Brinker Restaurant Corp. v. Superior Court*, 165 Cal. App. 4th 25 (2008), *review granted*, 85 Cal. Rptr. 3d 688 (2008), and *Brinkley v. Public Storage, Inc.*, 167 Cal. App. 4th 1278 (2008), *review granted*, 87 Cal. Rptr. 3d 674 (2009). (Order Stay, ECF No. 265.) Plaintiffs now seek certification of the final pay subclass and vacation subclasses.

### III. <u>LEGAL STANDARD</u>

A class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of

Rule 23(a) have been satisfied." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364 (1982). To satisfy Rule 23(a): (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims of the class representatives must be typical of the claims of the class; and (4) the class representatives must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

In addition to satisfying Rule 23(a), a proposed class must also fit within one of three categories in Rule 23(b). Fed. R. Civ. P. 23(b). Here, Plaintiffs move to certify the subclasses under Rule 23(b)(3). Class certification under Rule 23(b)(3) is appropriate if:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

District courts have broad discretion to determine whether to certify a class, and may revisit certification throughout the

proceeding. *Armstrong v. Davis*, 275 F.3d 849, 872 n.28 (9th Cir. 2001). The party seeking class certification has the burden of demonstrating that all the requirements of Rule 23(a) are met and that the class is maintainable under Rule 23(b). *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

In deciding class certification, the primary question is not whether plaintiffs have stated a cause of action that will prevail on the merits, but whether the party seeking certification has met the requirements of Rule 23. *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co.,* 593 F.3d 802, 808 (9th Cir. 2010). However, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule -- that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "[S]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Id.* (quoting *Falcon,* 457 U.S. at 160). "[C]ertification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of *Rule 23(a)* have been satisfied." *Wal-mart*, 131 S. Ct. at 2551 (quoting *Falcon*, 457 U.S. at 161).

IV.   **ANALYSIS**

A.   <u>Final Pay Subclass</u>

The gravamen of Plaintiffs' complaint is that "[a]n analysis of Defendants' wage records shows that Defendants did not have a practice of paying timely wages to employees upon discharge." (Pls. Mot. Class Cert. 19, ECF No. 185-1.) Plaintiffs move to certify the following final pay subclass:

> All persons who were terminated involuntarily as a non-exempt, hourly-paid employee at a corporate-owned Taco Bell restaurant in California from September 7, 2004 until the resolution of this lawsuit who were not timely tendered their wages upon involuntary termination of employment.

(Pls. Mot. Class Cert. 25 n.2, ECF. 185-1.)

Taco Bell attacks Plaintiffs' motion to certify the final pay subclass on the grounds that: (1) individual issues predominate; (2) Plaintiffs lack evidence to support their final pay claim; and (3) the final pay subclass lacks a typical and adequate representative.

1.   <u>Rule 23(a) Requirements</u>

a)   <u>Numerosity</u>

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity demands "examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of Nw., Inc. v. EEOC*, 446 U.S. 318, 330, 100 S. Ct. 1698, 64 L.Ed.2d 319 (1980). In determining numerosity, a court should consider not only class size, but also geographic diversity of

the class, ability of class members to file suit separately, and the nature of the underlying action and relief sought. *Nat'l Ass'n of Radiation Survivors v. Walters*, 111 F.R.D. 595, 599 (N.D. Cal. 1986).

Plaintiffs argue that their final pay subclass is sufficiently numerous because Dr. Lackritz's analysis of 1,684 former employees' payroll records shows that 635 employees, or approximately 38%, received their final paychecks more than three days after their termination date. Dr. Lackritz's analysis, however, is overbroad, and is not limited to employees (1) who were involuntarily terminated, as required for inclusion in Plaintiffs' putative subclass; and (2) who were present at their place of discharge to receive their final paycheck, as required by the California Labor Code. *See* Cal. Labor Code § 208 ("Every employee who is discharged shall be paid at the place of discharge, and every employee who quits shall be paid at the office or agency of the employer in the county where the employee has been performing labor."). Plaintiffs cannot extrapolate the number of putative final pay subclass members from Dr. Lackritz's over-inclusive analysis, nor show that joinder would be impracticable. Taco Bell, however, does not dispute numerosity.

b) <u>Commonality</u>

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Rule 23(a)(2) has been construed

7

permissively; all questions of law and fact do not need to be common. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "However, it is insufficient to merely allege any common question." *Ellis v. Costco*, 2011 U.S. App. LEXIS 19060, at *22 (9th Cir. Sep. 16, 2011). Commonality requires a plaintiff to demonstrate that class members "have suffered the same injury," but this does not merely mean that they have all suffered a violation of the same law. *Walmart*, 131 S.Ct. at 2551 (quoting *Falcon*, 457 U.S. at 157). Rather, class members' claims "must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Walmart*, 131 S.Ct. at 2551.

> What matters to class certification . . . is not the raising of common 'questions' -- even in droves -- but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Id.* at 2551 n.6.

Plaintiffs assert that the common question tying the final pay subclass together is the question whether Taco Bell failed to tender final paychecks to involuntarily terminated employees immediately upon discharge.

### (1)   Individual Inquiries

Taco Bell contends that Plaintiffs' final pay subclass is

not suitable for class certification because individual issues predominate. Plaintiffs rejoin that liability and damages are readily ascertainable through analysis of Taco Bell's time and wage records, and that the "back-story to employees' not picking up their paychecks is irrelevant." (Pls. Reply Class Cert. 15, ECF No. 235.)

Under the California Labor Code, if an "employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Labor Code § 201(a). If an employee quits, wages are "due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice," in which case wages are due "at the time of quitting." Cal. Labor Code § 202.

A discharged employee must be paid at the place of discharge, and an employee who quits must be paid at the office where they performed labor. Cal. Labor Code § 208. "The California final pay statutes (Labor Code §§ 201, 202) are triggered not only by termination of employment, but by the associate performing his or her duty to be at the store to receive tender of final pay or to give [the employer] specific mailing instructions." *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 2008 U.S. Dist. LEXIS 14756, at *24 (N.D. Cal. Feb. 13, 2008). An employee who quits his or her employment may request that his or her final paycheck be mailed, but this option "must

be expressly exercised by the employee." *Villafuerte v. Inter-Con Sec. Sys., Inc.,* 96 Cal. App. 4th Supp. 45, 51, 117 Cal. Rptr. 2d 916 (2002); Cal. Labor Code § 202.

The putative class is not, as Plaintiffs propose, simply composed of involuntarily terminated employees who were not timely tendered their wages. It can only include involuntarily terminated employees who appeared at their place of discharge and did not receive their final paychecks. Taco Bell contends that this requirement necessitates individual inquiries as to when employees presented themselves for payment, which cannot be proven through Taco Bell's payroll documents.

After the hearing, Plaintiffs proposed limiting the final pay subclass to employees whose time records indicate that they worked on their date of termination and were issued their final paychecks subsequent to that date. Plaintiffs proposed the following alternative subclass definition:

> All persons who worked as a non-exempt, hourly-paid employee at a corporate-owned Taco Bell restaurant in California from September 7, 2004 until the resolution of this lawsuit (i) whose records maintained by Taco Bell show that they were involuntarily terminated; (ii) whose time records show that they worked on the day of termination; and (iii) whose final paychecks were issued subsequent to the date of termination, as reflected by Defendants' payroll records.

(Pls. Response Hearing 10, ECF No. 252.) Plaintiffs assert that this revised definition eliminates any individual inquiries because (1) Taco Bell maintains records of how and when employees are terminated, including whether such termination was voluntary;

(2) Taco Bell maintains time records; and (3) payroll records indicate the date paychecks, including final paychecks, are issued. Limiting the final pay subclass to employees whose payroll records indicate that they were involuntarily terminated and clocked in and out of work on their date of termination could eliminate individual inquiries regarding whether an employee was on Taco Bell's premises to receive their final pay.

The revised subclass definition, however, does not eliminate all potential individual inquiries. California Labor Code § 203 provides a waiting time penalty only if an employer *willfully* fails to pay wages owed in accordance with Sections 201 and 202. Cal. Labor Code § 203(a). "An employee who secretes or absents himself or herself to avoid payment to him or her, or who refuses to receive the payment when fully tendered to him or her . . . is not entitled to any benefit under this section for the time during which he or she so avoids payment." *Id.* "[A] good faith dispute that wages are due will preclude imposition of waiting time penalties under Section 203." *Alvarez v. Nordstrom, Inc.*, 2011 U.S. Dist. LEXIS 56646, at *13 (C.D. Cal. May 24, 2011) (quoting 8 C.C.R. § 13520). The willfulness inquiry poses serious problems to Plaintiffs' final pay subclass. *See id.* Willfulness raises an inherently fact intensive inquiry focusing on state of mind and surrounding circumstances. If a final pay subclass is certified, mini-trials would be required for each class member to

determine whether waiting time penalties should be imposed,
including whether an employer acted willfully and whether there
is a good faith dispute that wages are due. *See id.*

### (2)   Dr. Lackritz's Declaration and Report

Taco Bell further argues a merits issue that Plaintiffs lack
any proof to support their final pay claims. Taco Bell asserts
that Plaintiffs' only evidence to support their final pay claims
is Dr. Lackritz's faulty declaration and report, which Taco Bell
moves to exclude under Rule 702.

### (a)   Legal Standard

Under Federal Rule of Evidence 702, expert testimony is
admissible if: "(1) the testimony is based upon sufficient facts
or data, (2) the testimony is the product of reliable principles
and methods, and (3) the witness has applied the principles and
methods reliably to the facts of the case." Fed. R. Evid. 702. An
expert may testify regarding scientific, technical or other
specialized knowledge if it will assist the trier of fact to
understand the evidence or to determine a fact in issue. *Daubert
v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786
(1993).

> The subject of an expert's testimony must be "scientific ...
> knowledge." The adjective "scientific" implies a grounding
> in the methods and procedures of science. Similarly, the
> word "knowledge" connotes more than subjective belief or
> unsupported speculation. The term "applies to any body of
> known facts or to any body of ideas inferred from such facts
> or accepted as truths on good grounds. . . But, in order to
> qualify as "scientific knowledge," an inference or assertion

must be derived by the scientific method. Proposed testimony must be supported by appropriate validation-i.e., "good grounds," based on what is known. In short, the requirement that an expert's testimony pertain to "scientific knowledge" establishes a standard of evidentiary reliability."

*Id.* at 589-590 (citations omitted).

The Supreme Court recently suggested in dicta that *Daubert* should be applied to expert testimony at the class certification stage. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2553-2554 (2011) ("The District Court concluded that *Daubert* did not apply to expert testimony at the certification stage of class-action proceedings. We doubt that is so …." (citation omitted)). Supreme Court dicta is accorded "appropriate deference" and "may be followed if sufficiently persuasive" but "ought not to control the judgment in a subsequent suit." *United States v. Montero-Camargo*, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000).

(b)   Discussion

Taco Bell contends that Lackritz's opinions as to Plaintiffs' final pay claims are based on erroneous assumptions and include irrelevant data. Taco Bell identifies the following errors in Lackritz's report with respect to the final pay subclass:

1. Lackritz calculated Defendants' final pay liability from employee records showing employee termination dates, but admits that he did not determine whether the terminations were voluntary or involuntary. (Lackritz Dep. Tr. 155:21-

13

156:4, ECF No. 220-3.) Plaintiffs' final pay claims are

limited to persons who are terminated involuntarily.

2. Lackritz admits that he based his final pay analysis from

records that include pay end dates from September 16,

2003. (Lackritz Dep. Tr. 158:14-159:21, ECF No. 220-3.)

Plaintiffs' final pay claims extend back only to September

7, 2004.

Dr. Lackritz's analysis of Plaintiffs' final pay claims

includes data from voluntarily terminated employees and employees

who terminated before the September 7, 2004 statute of

limitations. He did not have any facts underlying the

terminations and could not have opined as to the probability of

termination of all the employees. If the basis for an expert's

opinion is clearly unreliable, it may be disregarded. *Munoz v.

Orr*, 200 F.3d 291, 301 (5th Cir. 2000); *Smith v. Pac. Bell Tel.

Co.*, 662 F. Supp. 2d 1199, 1226 (E.D. Cal. 2009). The data on

which Lackritz bases his opinion includes employees who are not

in the final pay subclass, even before the proposed narrowing of

the definition of the final pay subclass. "Opinions derived from

erroneous data are appropriately excluded." *Id.* (*citing Slaughter

v. Southern Talc Co.*, 919 F.2d 304 (5th Cir. 1990)); *see also

United States v. City of Miami*, 115 F.3d 870, 873 (11th Cir.

1997) (reversing judgment based on expert opinion "derived from

erroneous and incomplete data").

14

Plaintiffs rejoin that Lackritz's errors are correctable, by Lackritz's supplemental declaration and report filed on May 27, 2011, as part of Plaintiffs' reply in support of class certification address Taco Bell's criticisms. New evidence or analysis presented for the first time in a reply will not be considered. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1289 n.4 (9th Cir. 2000) ("[I]ssues cannot be raised for the first time in a reply brief."); *Tovar v. US Postal Serv.*, 3 F.3d 1271, 1273 n.3 (9th Cir. 1993) ("To the extent that the [reply] brief presents new information, it is improper. Therefore, [certain] portions of the brief are ordered stricken[.]"); *Assoc. of Irritated Residents v. C & R Vanderham Dairy*, 435 F. Supp. 2d 1078, 1089 (E.D. Cal. 2006) ("It is inappropriate to consider arguments raised for the first time in a reply brief."); *Docusign, Inc. v. Sertifi, Inc.*, 468 F. Supp. 2d 1305, 1307 (W.D. Wash. 2006) (striking new information and opinions in an expert's supplemental declaration submitted with a reply brief). Even if Lackritz's supplemental declaration was included, it does not differentiate between employees who were present on their date of termination, and would still be based on incomplete data.

Dr. Lackritz's report is not admissible for purposes of Plaintiffs' motion for class certification. Nor is it helpful to a trier of fact. Plaintiffs do not offer any proof to support their assertion that Taco Bell has a common pattern and practice

of late-paying involuntarily terminated employees their final paychecks. If there is no evidence that the class was subject to the same practice or policy of tardy final paychecks, there is no question common to the class. *See Ellis v. Costco*, 2011 U.S. App. LEXIS 19060, at *28 (9th Cir. Sep. 16, 2011).

c) <u>Typicality</u>

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong*, 275 F.3d at 868 (quoting *Marisol v. Guiliani*, 126 F.3d 372, 376 (2nd Cir. 1997)). The test of typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). Under the rule's "permissive standards," representative claims are typical if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Plaintiffs' putative class representative for the final pay

16

subclass, Lisa Hardiman, declares:

> My employment with Taco Bell ended on or about May 30, 2007.
> I know this because I received a telephone call from a
> fellow employee informing me that I had not picked up my
> 'final' paycheck. Prior to receiving this telephone call, it
> was my understanding that I was on disability leave, and
> that the last day that I worked was on or about April 17,
> 2007.  When I called to inquire why I was receiving a
> "final" paycheck, my supervisor informed me that I was being
> fired. Although I was fired on or about May 30, 2007, I was
> not provided with my final paycheck until June 11, 2007.

(Hardiman Decl. ¶¶ 11, 12, ECF No. 193.) Hardiman declares that

she was told to pick up her final paycheck on her termination

date, but does not assert whether and when she presented herself

to Taco Bell to pick up her final paycheck, as required by

California law. Hardiman is not a member of the final pay

subclass because she did not work on her termination date. The

final pay subclass does not have a typical representative. *Moreno*

*v. Autozone, Inc.*, 2009 U.S. Dist. LEXIS 94842, at *5-11 (N.D.

Cal. Oct. 9, 2009) (single putative representative did not travel

to store to accept tender of final pay and could not represent

the class), *affirmed by* 2010 U.S. App. LEXIS 26768 (9th Cir. 2010)

(unpublished).

### d)   Adequate Representation

Rule 23(a)(4) permits class certification only if "the

representative parties will fairly and adequately protect the

interest of the class." Fed. R. Civ. P. 23(a)(4). "The proper

resolution of this issue requires that two questions be

addressed: (a) do the named plaintiffs and their counsel have any

17

conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). Whether the class representatives satisfy the adequacy requirement depends on "the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) (quoting *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994)).

Taco Bell attacks the adequacy of Plaintiffs' interim lead counsel, Initiative Law Group, to serve as class counsel. Taco Bell argues that Initiative Law Group: (1) submitted inaccurate and unreliable evidence in support of Plaintiffs' motion for class certification, including witness declarations that contradict or were unsupported by deposition testimony; (2) identified four named Plaintiffs to represent the vacation pay subclass who do not have valid vacation pay claims; and (3) submitted an unreliable and inadmissible expert report from Lackritz that is riddled with errors, misstatements and inaccuracies. Taco Bell cites an unpublished Superior Court case, *Gerard v. Orange Coast Memorial Medical Center*, where the court held that Initiative Law Group could not "adequately represent the class" because there was doubt whether the court would be

18

"able to rely on the accuracy of evidentiary submissions . . . by counsel." *Gerard v. Orange Coast Mem'l Med. Ctr.*, No. 30-2008-00096591, slip op. at *1-2 (Orange Cnty. Sup. Ct. Sept. 20, 2010).

Taco Bell's examples of Initiative Law Group's carelessness raise serious questions regarding their ability to adequately protect the interests of the Plaintiff class and subclasses, but might not disqualify Initiative Legal Group as an adequate representative. Taco Bell does not provide any evidence of any conflicts of interest or that Initiative Law Group will not prosecute the action vigorously on behalf of the class. In addition, Initiative Legal Group has ample experience litigating class actions and wage and hour lawsuits. There are also other Plaintiffs' counsel in this case who can monitor their legal representation and petition the court if any conduct occurs that is inimical to class interests. If a class or any subclasses are ever certified, the court invites other counsel to petition to serve as co-lead class counsel.

As discussed above, the putative final pay subclass does not have a typical class representative. Because the subclass representative, Hardiman, does not fit within the subclass definition, she has an inherent conflict of interest with other class members and does not have any incentive to prosecute the final pay claims vigorously. The final pay subclass is not

represented adequately.

## 2.   Rule 23(b)(3) Requirements (Superiority)

Plaintiffs must also satisfy one of the three provisions of Rule 23(b). Here, Plaintiffs move for class certification under Rule 23(b)(3) because "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The Rule 23(b)(3) predominance inquiry tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231 (1997) (citation omitted).

> Rule 23(b)(3) focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir.2001).

Rule 23(b)(3) provides four pertinent factors to determine superiority:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

### a)   Individual Control

The first Rule 23(b)(3) factor for consideration is the interest of each member in "individually controlling the prosecution or defense of separate actions."  Fed. R. Civ. P. 23(b)(3)(A). This factor is more relevant where each class member has suffered sizeable damages or has an emotional stake in the litigation. *See, e.g., In re N. Dist. of Cal., Dalkon Shield, Etc.*, 693 F.2d 847, 856 (9th Cir. 1982). Here, where the monetary damages each plaintiff individually suffered are likely to be relatively modest, certifying a class action is favored. *Id*.

### b)   Other Litigation

The second Rule 23(b)(3) factor is "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class."  Fed. R. Civ. P. 23(b)(3)(B). The only known litigation concerning the controversy have been consolidated in this lawsuit.

### c)   Forum

The third Rule 23(b)(3) factor is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum."  Fed. R. Civ. P. 23(b)(3)(C). This factor is unchallenged.

### d)   Management of Class Action

The fourth and final Rule 23(b)(3) factor is "the likely difficulties in managing a class action."  Fed. R. Civ. P.

23(b)(3)(D). This factor "encompasses the whole range of practical problems that may render the class format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974).

Plaintiffs filed a Class Action Trial Plan ("Trial Plan"), which asserts the following regarding the final pay claims:

> Plaintiffs will establish that Defendants violated the California Labor Code by drawing on the conclusions of expert statistical analysis of employees' time-, payroll- and personnel-related records. Supporting evidence will include documents describing or outlining Defendants' payment of wages for discharged employees, and any testimony of Defendants' designees concerning the payment of wages for discharged employees.

(Trial Plan 6, ECF No. 185-10.) Plaintiffs also provide the declaration of Philip Gorman, an economist and statistician. (Gorman Decl., ECF No. 196-5.)

Taco Bell contends that Plaintiffs have not proved that the case would be manageable if certified as a class action. Taco Bell contends that Plaintiffs' only evidence regarding manageability is the opinion of Gorman, who does not offer an opinion or plan regarding how to actually gather or use representative evidence in this case. Instead, Gorman only opines on how representative evidence might be used. For example, Gorman did not determine: (1) the type of survey that would be used; (2) if unique survey instruments would be required for certain claims or subclasses; (3) how the sample would be selected from the class population; (4) whether a random or stratified random

1  sample would be used; (5) what an appropriate sample size would

2  be; (6) what an appropriate margin of error would be; and (7)

3  what would be an acceptable confidence level. Taco Bell further

4  contends that Gorman: (1) is ignorant of key facts of the case

5  that are necessary for a proper expert analysis regarding the use

6  of representative evidence; (2) does not have a proper factual

7  foundation for his opinions; and (3) spent less than thirteen

8  hours on this entire matter, include meeting with counsel for the

9  initial assignment, reviewing thousands of pages of documents and

10  deposition testimony, and drafting and revising his declaration.

11

12      Plaintiffs rejoin that Taco Bell does not dispute that

13  statistical and survey evidence is useful and admissible in

14  determining class certification and Taco Bell has not questioned

15  Gorman's educational background or experience in survey and

16  statistical design. Plaintiffs contend that another federal court

17  recently accepted similar testimony from Gorman and rejected Taco

18  Bell's argument. *See Dilts v. Penske Logistics, LLC*, 267 F.R.D.

19  625, 638, 641 (S.D. Cal. 2010). Plaintiffs contend that Gorman's

20  testimony demonstrates that he is able to develop a statistical

21  survey that can be used as common proof regarding members of the

22  proposed class.

23      Plaintiffs are correct that Defendants do not contest the

24  usefulness or admissibility of statistical and survey evidence.

25  The issue here is not the usefulness or admissibility of

26

27

28

statistical and survey evidence in general, but whether Gorman's evidence meets the requirements of Federal Rule of Evidence 702. Absent Taco Bell's complete and accurate records, Gorman proposes surveying a selected sample of the putative subclasses to calculate Defendants' liability to the entire subclass. Gorman does not give any details of his survey method, the statistical foundations and principles that will be applied, nor how the survey would be applied to calculate Plaintiffs' final pay or vacation pay claims. Gorman provides a general description of how surveys work without any application to the facts of this case or Plaintiffs' final pay and vacation claims. The only claims Gorman even considers are the rest and meal break claims, which have been stayed. Gorman's opinions are not "based upon sufficient facts or data" and are not "the product of reliable principles and methods." Fed. R. Evid. 702. Plaintiffs have not adequately met Rule 23(b)(3)(4) as to the methodology to manage the subclass' claims.

> 3.   <u>Conclusion</u>

The final pay subclass does not meet the requirements of Rule 23(a) and (b). Plaintiffs do not provide evidence that the final pay subclass satisfies numerosity or commonality, do not provide a typical and adequate class representative, and provide no evidence that the class action is manageable. Plaintiffs' motion to certify the final pay subclass is DENIED.

1

        B.    **Vested Accrued Vacation Wages Subclass**

2          Plaintiffs "seek redress for the payment of all unused and

3   accrued vacation time, earned pursuant to Taco Bell's vacation

4   policies, but have not been paid by Defendants." (Pls. Mot. Class

5   Cert. 27, ECF No. 185.) Plaintiffs also challenge Taco Bell's

6   vacation policy for non-management employees, which Plaintiffs

7
    claim prevent employees who work less than one year from being

8
    paid unused and accrued vacation at termination.

9

10          1.    **Subclass Definition**

11         Plaintiffs move to certify the following vacation pay

12  subclasses:

13
        **Vested accrued vacation wages subclass:** all persons who
14      formerly worked as an employee at a corporate owned Taco
        Bell restaurant in California from November 5, 2004 until
15      the resolution of this lawsuit who were not paid all vested
        accrued vacation wages (including, but not limited to,
16      vacation pay, personal day pay, personal holiday pay, and/or
        floating holiday pay) at the end of their employment.
17

18      **Non-management employee vacation subclass:** all persons who
        formerly worked as a non-exempt, hourly-paid employee at a
19      corporate-owned Taco Bell restaurant in California from
        September 7, 2003 until the resolution of this lawsuit who
20      were not paid all vested accrued vacation wages (including,
        but not limited to, vacation pay, personal day pay, personal
21      holiday pay, and/or floating holiday pay) at the end of
        their employment, and who worked in any non management
22      employee position, including, without limitation, any of the
        following job positions: Crew Member, Team Member, Food
23      Champion, Service Champion, Service/Food Champion, Shift
        Lead, Shift Lead Trainee, Team Member Trainer, and/or
24      Trainee.

25
    (Pls. Mot. Class Cert. 27 n.25, 29 n.27, ECF No. 185.) The court
26
    has ruled that Plaintiffs cannot expand the statute of
27
    limitations for the non-management employee vacation subclass

28

before November 5, 2004, and denied Plaintiffs' motion to divide the putative vacation subclasses into two subclasses with different claims periods. (Mem. Dec. 11, ECF No. 222.) Plaintiffs' motion to certify the vacation pay subclasses is redefined to a motion to certify one vacation pay subclass, as follows:

> All persons who formerly worked as an employee at a corporate owned Taco Bell restaurant in California from November 5, 2004 until the resolution of this lawsuit who were not paid all vested accrued vacation wages (including, but not limited to, vacation pay, personal day pay, personal holiday pay, and/or floating holiday pay) at the end of their employment.

Taco Bell contends that a vacation pay subclass should not be certified because: (1) Taco Bell's policy is compliant; (2) Plaintiffs have no evidence to support their vacation pay claim; and (3) the vacation pay subclass lacks a typical and adequate representative.

> 2.   <u>Rule 23(a) Requirements</u>

> a)   <u>Numerosity</u>

Plaintiffs contend that their expert, Dr. Lackritz, analyzed 1,886 employee payroll records to conclude that of the 69 former managers and 652 former non-managers, approximately 11% of former managers and 25% of former non-managers were still owed accrued vacation. Plaintiffs further contend that Dr. Lackritz's analysis of Taco Bell's payroll records reveals that of the 963 former non-manager employees who ended their employment prior to completing a year of employment, 254, or approximately 26%, are

owed accrued and unused vacation. Taco Bell rejoins that Dr.
Lackritz's analysis as to vacation pay is so riddled with errors
that his opinions are inadmissible.

(1)  Dr. Lackritz's Declaration and Report

Taco Bell asserts that Dr. Lackritz's opinions as to
vacation pay are based on false assumptions and admitted errors
and should be excluded. Dr. Lackritz acknowledged the following
errors during his deposition:

1. Failing to pro-rate vacation time for putative class
   members who worked less than a year, even though pro-
   ration is required under Taco Bell's policy. Based on this
   error, Lackritz erroneously opined that Taco Bell had
   failed to pay all owed vacation time at termination.
   (Lackritz Dep. Tr. 218:20-220:4, ECF No. 220-3.)

2. Improperly determining average hours worked per week for
   hourly putative class members because he divided hours
   worked by pay period (which are two weeks) instead of work
   weeks. Based on this error, Lackritz erroneously opined
   that some putative class members qualified for vacation
   pay under Taco Bell's policy when they did not. (Lackritz
   Dep. Tr. 216:5-16, ECF No. 220-3.)

3. Awarding 3.08 hours of vacation time to manager putative
   class members (the amount of vacation for an entire 14-day
   period) when the period at issue was less than 14 days.

Based on this error, Lackritz erroneously opined that some putative class members had earned more vacation than they actually had. (Lackritz Dep. Tr. 169:12-173:14 & 173:21-177:1, ECF No. 220-3.)

4. Awarding 3.08 hours of vacation time to some putative class member managers based on pay events, such as bonuses and leaves of absence, even though Lackritz acknowledged in deposition that vacation should not have been awarded based on those events. Based on this error, Lackritz erroneously opined that some putative members had earned more vacation than they actually had. (Lackritz Dep. Tr. 220:21-223:9, ECF No. 220-3.)

Taco Bell also argues that Lackritz's methodology for computing vacation pay directly contradicts with Taco Bell's vacation policy. Taco Bell's corporate designee, Eddie Baker, explained that vacation eligibility for non-management restaurant employees is determined by looking at how many hours are worked, on average, per week as calculated for one year (i.e., 26 pay periods) from hire or anniversary date. (Lackritz Dep. Tr. 136:13-137:1, ECF No. 220-3.) Taco Bell contends that Lackritz intentionally deviated from this protocol by using hard coding to turn putative class members who were ineligible to receive vacation benefits under Taco Bell's policy into vacation eligible class members. For putative class members who, on average, worked

slightly less than 20 hours per week during their first 26 pay periods, Lackritz searched for any 26 pay periods where a putative class member worked on average more than 20 hours. (Lackritz Dep. Tr. 194:1-7, ECF No. 220-3.)

Lackritz's opinions concerning some of the named Plaintiffs' vacation claims are also erroneous. Although Lackritz opined in his report that Hardiman is due vacation time, he admitted in his deposition that his calculation was in error, and Hardiman was not owed vacation pay. (Lackritz Dep. Tr. 219:22-220:4, ECF No. 220-3.) Lackritz also admitted his opinion that Widjaja was owed vacation pay was based on errors and miscalculations, and that Widjaja was actually paid for more vacation time than she earned. (Lackritz Dep. Tr. 219:22-220:4, ECF No. 220-3.) Lackritz also admitted that his opinion regarding Medlock's purported vacation accrual was riddled with at least five calculation errors. (Lackritz Dep. Tr. 224:12-226:16, ECF No. 220-3.)

Lackritz's analysis of Plaintiffs' vacation pay claims is not based on sufficient facts or data, and was not the product of reliable principles and methods. Fed. R. Evid. 702. As the basis for his opinion is unreliable, it will be disregarded for purposes of this motion. Taco Bell's motion to exclude the declarations and reports of Lackritz is GRANTED as to Lackritz's opinions of Plaintiffs' vacation pay claims. Without Lackritz's opinions, Plaintiffs do not present any evidence of numerosity.

(2)   <u>Michael Buchanan's Declaration</u>

Taco Bell relies on the declaration of its expert Michael Buchanan to criticize Lackritz's opinion on vacation pay. Plaintiffs in turn raise several objections to Michael Buchanan's declaration, contending that he lacks foundation and personal knowledge to assert his opinions, as required by Federal Rule of Evidence 602. Taco Bell, however, has elicited Buchanan's testimony as an expert, subject to meeting Federal Rule of Evidence 703 and *Daubert*. Buchanan is an applied economist with significant experience evaluating statistical and economic issues in complex litigation involving labor and employment disputes. (Buchanan Decl. 3, ECF No. 220-2.) Buchanan is qualified to provide expert analysis of Lackritz's methodology and opinions. Buchanan's legal conclusions, however, are disregarded.

b)   <u>Commonality</u>

Plaintiffs assert that the vacation pay subclass shares the common question of whether Taco Bell's records show that Taco Bell paid putative vacation class members for all their unused and accrued vacation on their termination. Plaintiffs contend that proof of the vacation pay claims requires only comparison of Taco Bell's records reflecting the amount of vacation pay owed against Taco Bell's records reflecting the amount of wages owed at termination. Plaintiffs, however, have not provided any evidence of this alleged common practice and policy. Plaintiffs' only evidence is Dr. Lackritz's flawed analysis of the vacation

pay claims, which does not meet Federal Rule of Evidence 702 and is inadmissible.

c)   <u>Typicality and Adequate Representation</u>

Plaintiffs do not have a class representative with a claim for unpaid vested accrued vacation wages. Plaintiffs assert that Medlock, Widjaja and Hardiman had typical claims and could represent employees who terminated with unpaid vacation pay, but Lackritz admits that his calculation of their due vacation time was incorrect and that they were not owed any wages for vested accrued vacation. Plaintiffs have admitted that Nave, Taylor and Doyle cannot represent the vacation class. Plaintiffs were permitted to amend the Consolidated Complaint to add Horario Escobar as a class representative for the vacation subclass, but do not provide any evidence that he has any vested accrued unpaid vacation wages. There is no typicality or adequate representation for the vacation pay subclass. *See* Fed. R. Civ. P. 23(a)(3), (4).

3.   <u>Rule 23(b)(3) Requirements (Superiority)</u>

The analysis of the Rule 23(b)(3)(A) - (C) factors for the vacation pay subclass are the same as the final pay analysis. With respect to the manageability of the class action, the Trial Plan and Gorman's opinion are equally ambiguous and unhelpful. For the same reasons discussed in the final pay claim, Plaintiffs have not shown that the vacation pay claim is manageable as a class action.

31

### 4.   Conclusion

The vacation pay subclass does not meet the requirements of Rule 23(a) and (b). Plaintiffs do not provide evidence that the vacation pay subclass satisfies the numerosity or commonality requirement, do not provide a typical and adequate class representative, and do not provide evidence that the class action is manageable. Plaintiffs' motion to certify the vacation pay subclass is DENIED.

### V.   CONCLUSION

For the reasons stated:

1. Plaintiffs' motion for class certification is DENIED without prejudice as to the final pay and vacation pay subclasses.

2. Taco Bell's motion to exclude the opinion of James Lackritz is GRANTED as to his opinions on Plaintiffs' final pay and vacation pay claims.

3. The court will consider nomination of additional Plaintiffs' lawyers to serve as co-lead class counsel, when and if a class or subclass is ever certified.

4. Taco Bell shall submit a proposed form of order consistent with this memorandum decision within three (3) days of electronic service of this memorandum decision.

SO ORDERED.

DATED: September 26, 2011

                                    /s/ Oliver W. Wanger
                                  Oliver W. Wanger
                                  United States District Judge