# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRIKA MEDLOCK, et al., | Case No. 1:07-cv-01314-SAB |
| Plaintiffs, | ORDER DENYING DEFENDANTS' MOTION TO DECERTIFY PLAINTIFFS' LATE MEAL PERIOD, REST BREAK, AND UNDERPAID MEAL PERIOD PREMIUM CLASSES |
| v. | |
| TACO BELL CORP., et al., | |
| Defendants. | ECF No. 543 |

On October 5, 2015, Defendants Taco Bell Corp. and Taco Bell of America, Inc. ("Defendants") filed a motion to decertify the late meal period, rest break, and underpaid meal period premium classes. (ECF No. 543).

The hearing on Defendants' motion took place on December 2, 2015. Matthew Theriault and Andrew Sokolowski appeared in person and Monica Balderrama, Jerusalem Beligan, and Patrick Clifford appeared by telephone on behalf of Plaintiffs. Tracy Kennedy, Morgan Forsey, Nora Stiles, and John Makarewich appeared in person and Jason Overett appeared by telephone on behalf of Defendants. For the reasons set forth below, the Court denies Defendants' motion to decertify the late meal period, rest break, and underpaid meal period premium classes.

**I.**

**BACKGROUND**

In these consolidated actions, Plaintiffs assert class claims against Defendants arising

from the alleged violations of California's Labor Code relating to the payment of minimum wages and overtime and the provision of meal and rest breaks.  Plaintiffs also assert claims under California's Private Attorney Generals Act ("PAGA"), which authorizes "aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations..." Arias v. Superior Court, 46 Cal. 4th 969, 980 (2009).  The operative complaint is the Third Amended Consolidated Complaint filed on December 30, 2014.  (ECF No. 522).

Defendants' motions relate to issues pertaining to the class certification process in this action.  Plaintiff's first motion to certify a class was filed on December 30, 2010.  (ECF No. 185).  This motion sought to certify eight subclasses: 1) the Late Meal Break Subclass, 2) the Underpaid Automatic Adjustments Subclass, 3) the On-Duty Meal Period Agreement Subclass, 4) the Unpaid On-Duty Meal Period Subclass, 5) the Rest Break Subclass, 6) the Final Pay Subclass, 7) the Vested Accrued Vacation Wages Subclass, and 8) the Non-Management Employee Vacation Subclass.

The motion to certify the final pay and vacation pay subclasses was denied without prejudice on September 30, 2011.  (ECF No. 269).  After additional briefing regarding the certification of the remaining subclasses, United States Magistrate Judge Dennis L. Beck issued a Findings and Recommendations on November 27, 2012 recommending that class certification be granted as to the Meal Break Subclass, but denying certification for all other subclasses. (ECF No. 341).  The Findings and Recommendations were adopted on January 2, 2013, thereby certifying the following subclass:

> Meal Break Subclass
> All persons who work or worked as a non-exempt, hourly-paid employee at a corporate-owned Taco Bell restaurant in California from September 7, 2003, until the resolution of this lawsuit who worked for a period of time in excess of six hours and who worked for periods longer than five hours without a meal period of not less than thirty minutes as reflected in Defendants' employees' time records.

(Order to Adopt Findings and Recommendations on Class Certification 1:18-21.)

On April 22, 2014, Defendants filed a motion to strike the PAGA allegations from Plaintiff's First Amended Consolidated Complaint. (ECF No. 398). On May 22, 2014, the Court

denied Defendants' motion, but noted that there appeared to be some confusion regarding which claims were raised on a class-wide basis on behalf of the certified Meal Break Subclass and which claims were raised solely on an individual basis by the named plaintiffs. Accordingly, the Court ordered Plaintiffs to file a Second Amended Consolidated Complaint which specified the claims that proceeded on a class basis and the claims that proceeded on an individual basis.

In response to the Court's order, Plaintiffs filed a Second Amended Consolidated Complaint on June 11, 2014. (ECF No. 423). In response to the Second Amended Consolidated Complaint, Defendants filed a motion to dismiss, motion to strike, and motion to amend or alter the order on class certification. (ECF Nos. 427, 428, 458). On August 29, 2014, the Court amended its order on class certification to reflect that the only claims proceeding on a class basis are the claims related to late meal breaks, that the prerequisites for class actions set forth in Federal Rule of Civil Procedure 23 apply to Plaintiff's claims under California's Private Attorney Generals Act, and that only the PAGA claims based upon late meal breaks may proceed on a class-wide, representative basis. (ECF No. 487).

On October 29, 2014, Plaintiffs filed a motion to amend the class certification order. (ECF No. 501). On December 16, 2014, the Court partially granted Plaintiffs' motion to amend the Court's order on class certification and included a certified Underpaid Meal Premiums Class and associated claims for underpaid meal premiums.

Underpaid Meal Premiums Class:

> All persons who work or worked as a non-exempt, hourly-paid employee at a corporate-owned Taco Bell restaurant in California who, between September 7, 2003, until November 12, 2007, received at least one 30-minute automatic adjustment on Taco Bell's Time and Attendance System as reflected in Defendants' employees' time records.

Rest Break Class:

> All persons who work or worked as a non-exempt, hourly-paid employee at a corporate-owned Taco Bell restaurant in California from September 7, 2003, until the resolution of this lawsuit, who worked for a period of time in excess of six hours and less than seven hours without at least two rest periods of not less than ten minutes, as reflected in Defendants' employees' time records.

(Order Granting in Part Motion to Amend Order on Certification 14:12-26).

1    On December 30, 2014, Plaintiffs filed a third amended complaint. (ECF No. 522).

2    In connection with the instant decertification motions, the Court is presented with and considers evidence originally produced in support of and opposition to the motion for certification and additional evidence provided post-certification.

## II.

## LEGAL STANDARDS FOR CLASS CERTIFICATION AND DECERTIFICATION

### A. Class Decertification

Motions to decertify a class are governed by Federal Rule of Civil Procedure 23(c)(1)(C), which states:

> **(C)  Altering or Amending the Order.**  An order that grants or denies class certification may be altered or amended before final judgment.

In deciding whether to decertify a class, a court may consider "subsequent developments in the litigation." Gen. Tel. Co. of S.W. v. Falcon, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). However, "actual, not presumed, conformance with Rule 23(a) remains ... indispensable." Id.

The standard is the same for class decertification as it is with class certification: a district court must be satisfied that the requirements of Rules 23(a) and (b) are met to allow plaintiffs to maintain the action on a representative basis. Marlo v. United Parcel Serv., Inc., 639 F.3d 942, 947 (9th Cir. 2011); see also O'Connor v. Boeing N. Am., Inc., 197 F.R.D. 404, 410 (C.D.Cal.2000) (in evaluating whether to decertify the class, the court applies the same standard used in deciding whether to certify the class in the first place). A motion to decertify a class is not governed by the standard applied to motions for reconsideration. Ballard v. Equifax Check Serv., Inc., 186 F.R.D. 589, 593 n. 6 (E.D.Cal.1999) ("Because the court has the power to alter or amend the previous class certification order under Rule 23(c)(1), the court need not consider whether 'reconsideration' is also warranted under Fed.R.Civ.P. 60(b) or [local rules governing reconsideration]."). Likewise, Plaintiff, as "[t]he party seeking class certification[,] bears the burden of demonstrating that the requirements of Rules 23(a) and (b) are met." Marlo, 639 F.3d

at 947; United Steel Workers v. ConocoPhillips Co., 593 F.3d at 807.

**B. Class Certification**

To qualify for class certification, Plaintiff must satisfy all of the requirements of Rule 23(a) of the Federal Rules of Civil Procedure and any one of the requirements of Rule 23(b). Rule 23(a) requires: (1) impracticability of joinder due to numerosity; (2) commonality of questions of law or fact; (3) typicality of claims; and (4) adequacy of representation.

Numerosity requires that the class be so numerous that joinder of all members individually is "impracticable." Fed.R.Civ.P. 23(a)(1). No specific numerical threshold is required; each case must be examined. General Tel.C. v. E.E.O.C., 446 U.S. 318, 330 (1980). Generally, 40 or more members will satisfy the numerosity requirement. Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2nd Cir. 1995).

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). This requirement has been construed permissively; not all questions of law and fact need to be common. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). "However, it is insufficient to merely allege any common question." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 981 (9th Cir. 2011). Commonality is usually satisfied by a "common nucleus of operative facts." Rosario v. Livaditis, 963 F.2d 1013, 1017-18 (7th Cir. 1992). The Ninth Circuit held that "a common contention need not be the one 'that will be answered, on the merits, in favor of the class.' It only 'must be of such a nature that is capable of classwide resolution." Alcantar v. Hobart Service, 800 F.3d 1047, 1053 (9th Cir. 2015) (quoting Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551 (2011); Amgen, 133 S.Ct. at 1191).

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." In General Tele. Co. of the Southwest v. Falcon, 457 U.S. 147, 157 n. 13 (1982), the Court noted "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." Under Rule 23(a)(3)'s permissive standard, "representative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. A named plaintiffs' claim is "typical" under Rule 23 if it arises "from the same event or practice or course of conduct that gives rise to

the claims of the other class members and his or her claims are based on the same legal theory." Ballard v. Equifax Check Services, 186 F.R.D. 589, 595 (E.D.Cal. 1999).

Finally, the person representing the class must be able "fairly and adequately to protect the interests" of all members in the class. Fed.R.Civ.P. 23(a)(4).  The representation is "adequate" if the attorney representing the class is qualified and competent and the class representatives are not disqualified by interests antagonistic to the remainder of the class. Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 597, 512 (9th Cir. 1978).

If an action meets the prerequisites of Rule 23(a), the party seeking class certification must show the action is appropriate under Rule 23(b).  Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).  Rule 23(b)(3) provides for certification when "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Common questions of law and fact predominate over individual questions, satisfying the first component of the Rule 23(b)(3) inquiry, where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof." Ortega v. J.B. Hunt Transport, Inc., 258 F.R.D. 361, 366 (C.D. Cal. 2009) (citing Wal-Mart Stores, Inc. v. Visa U.S.A. Inc. (In re Visa Check/MasterMoney Antitrust Litig.), 280 F.3d 124, 136 (2001)). In evaluating predominance, the Court looks to whether the focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of the individual class members. Id. "Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action."  Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1020 (9th Cir. 2011) (citing Erica P. John Fund, Inc., v. Halliburton Co., 131 S.Ct. 2179, 2184 (2011)).  A plaintiff can satisfy the superiority requirement when he or she can show that the "class-wide litigation of common issues will reduce litigation costs and promote greater efficiency." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).

\ \ \

# III.

# DISCUSSION

Defendants seek to decertify all three of the certified classes. Defendants present two arguments as to why the motions for decertification should be granted. First, Defendants assert that Plaintiffs fail to meet the commonality requirement, because the issues of law and fact that Plaintiffs said would establish liability do not actually exist. Second, Defendants assert that named Plaintiffs Medlock, Hardiman, and Leyva are not typical of the class they seek to represent. Defendants do not challenge numerosity and adequacy, so the Court will not address these elements in this order. The Court will first address typicality.

## A. Typicality

Defendants argue that Hardiman, Medlock, and Leyva are not typical of the class that they seek to represent. However, they were non-exempt employees of Defendants during the time period of the class. Although these three named Plaintiffs may not have been aware of the alleged uniform policy that employees had to work five hours before taking a meal period, this does not mean that they are not typical of the class. A named plaintiffs' claim is "typical" under Rule 23 if it arises "from the same event or practice or course of conduct that gives rise to the claims of the other class members and his or her claims are based on the same legal theory." Ballard v. Equifax Check Services, 186 F.R.D. 589, 595 (E.D.Cal. 1999). According to Plaintiffs' allegations, Hardiman, Medlock, and Leyva were still subject to Defendants' policies for meal period and rest break scheduling. Therefore, Hardiman, Medlock, and Leyva are typical of the class that they seek to represent even if they personally were not aware of the alleged uniform policy that employees had to work five hours before taking a meal period. The Court next reviews each class separately to determine if each class meets the commonality requirement of Rule 23(a)(2) and the predominance and superiority requirements of Rule 23(b)(3).

## B. Late Meal Break Claim

Plaintiffs allege that California law requires meal breaks to be given prior to the fifth hour of work and that Defendants' official meal break policy violated California law because they provided for meal breaks after the fifth hour of work.

1  Plaintiffs seek liability with respect to this claim under California Labor Code sections 226.7 and 512.

Section 512 states, in pertinent part:

> (a)  An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee....

Cal. Labor Code § 512.

Section 226.7 states, in pertinent part:

> (b)  An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health.
>
> (c)  If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.

Cal. Labor Code § 226.7.

The Industrial Welfare Commission's ("IWC") Wage Order No. 5 applies to restaurant workers such as Plaintiffs. Brinker Restaurant Corp. v. Superior Court, 53 Cal. 4th 1004, 1027 n.7 (2012). Subdivision 11 of Wage Order No. 5 states:

> **11.  Meal Periods**
> (A)  No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and employee....

Wage Order 5-02 Wages, Hours and Working Conditions in the Public Housekeeping Industry, http://www.dir.ca.gov/iwc/wageorder5_010102.html (last visited Dec. 11, 2015). Under Section 512 and Wage Order No. 5, a first meal period must be given no later than the start of an

8

employee's sixth hour of work.  <u>Brinker Restaurant Corp.</u>, 53 Cal. 4th at 1041.

"[A]n employer's obligation when providing a meal period is to relieve its employee of all duty for an uninterrupted 30-minute period." <u>Brinker Restaurant Corp.</u>, 53 Cal. 4th at 1038. However, employers do not have any duty to ensure that employees do no work during meal periods.  <u>Id.</u>  "Proof an employer had knowledge of employees working through meal periods will not alone subject the employer to liability for premium pay; employees cannot manipulate the flexibility granted them be employers to use their breaks as they see fit to generate such liability.  On the other hand, an employer may not undermine a formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks." <u>Id.</u> at 1040.

In order to establish commonality, Plaintiffs' point to language in Defendants' "Hourly Employee Guide" which states:

- **Meal Periods**
  - you are required to take a full 30-minute, uninterrupted, meal period after 5 hours of work
    - unless 6 hours completes your work day

(Theriault Decl., Ex. G, at pg. 5.)

Plaintiffs point to meal break matrixes and wallet cards in support of their interpretation of Defendants' policy.  The "Required Rest Breaks and Meal Periods" document presents the following table:

| Length of Work Period | Paid Rest Breaks | 30 Minute Meal Periods |
|---|---|---|
| 0-2:59 hours | 0 | 0 |
| 3-4:59 hours | ONE: 10 minute rest break | 0 |
| 5-5:59 hours | ONE: 10 minute rest break | ONE: 30 minute meal period |
| 6-6:59 hours | ONE: 10 minute rest break | ONE: 30 minute meal period |
| 7-9:59 hours | TWO: 10 minute rest breaks | ONE: 30 minute meal period |
| 10-10:59 hours | TWO: 10 minute rest breaks | TWO: 30 minute meal periods |
| 11-13:59 hours | THREE: 10 minute rest breaks | TWO: 30 minute meal periods |

1  (Theriault Decl., Ex. I, at pg. 15.)

2  The "wallet card" presents a similar table:

| Hours Worked | 10 Minute Paid Rest Breaks | 30 Minute Meal Periods |
|---|---|---|
| 3-4:59 hours | ONE | 0 |
| 5-5:59 hours | ONE | ONE[1] |
| 6-6:59 hours | ONE | ONE |
| 7-9:59 hours | TWO | ONE |
| 10-10:59 hours | TWO | TWO |
| 11-13:59 hours | THREE | TWO |

(Theriault Decl., Ex. H.)

Defendants argue that the matrix is not a uniform policy to provide meal periods only after five hours of work and it was not consistently applied in the way that Plaintiffs propose. Defendants also argue that they use the "2-2-2" mnemonic for rest and meal breaks, instead of the matrix.

Defendant cites to Ordonez v. Radio Shack, Inc., 2013 WL 210223 (C.D. Cal. Jan. 17, 2013), and Cummings v. Starbucks, 2014 WL (C.D. Cal. Mar. 24, 2014). In Ordonez v. Radio Shack, Inc., 2013 WL 210223 (C.D. Cal. Jan. 17, 2013), the plaintiff did not argue that defendant's written policy did not comply with California law. Plaintiff's argued that they were entitled to relief because of "the existence of de facto 'uniform' policies that deprive putative class members of the ability to take the statutorily prescribed meal breaks; and second, statistical evidence that demonstrates that over half of all putative class members 'experienced significant meal break violations throughout the class period.'" The instant case is distinguishable from Ordonez, because the Plaintiffs here point to the written "Hourly Employee Guide," including the Meal Period Matrix, as Defendants' policy. Plaintiffs have submitted evidence to show the

---

[1] The "Matrix" contains a note that indicates that "[i]f six hours completes the day, the employee may elect to forego the meal period."

10

existence of a common policy that is communicated to all putative class members, and is applicable to all putative class members. The policy is part of training materials provided to all putative class members.

Defendants argue that the statistical evidence does not support that Defendants have a uniform or consistent policy of illegally providing meal periods only after the completion of five hours of work. Defendants argue that "Dr. Walker has determined that the data reflects 87.5% of all shifts over six hours have a meal period punch before the end of the fifth hour (or are accounted for by a premium payment for a meal period penalty or an on-duty meal period agreement)." (ECF No. 543 at 25.) In Dr. Walker's report, he states:

> 32. Based on the methodology discussed above, I identified 9,311,285 shifts worked by non- exempt employees at corporate-owned Taco Bell restaurants between September 16, 2003 and December 24, 2014 as reflected in Taco Bell's raw punch data. Of these 9.3 million shifts, 6,570,205 shifts were longer than six hours. Thus 2,741,080 shifts, approximately 29%, were six hours or less.
>
> 33. Out of the 6,570,205 shifts lasting longer than six hours and worked by non-exempt employees at corporate-owned Taco Bell restaurants, 4,058,730 shifts, approximately 62%, included an unpaid break of at least 30 minutes (a meal period) that commenced before completion of the first five hours of work. Thus there were 2,511,475 shifts, or 38% of shifts at least six hours long, lacking a recorded, unpaid meal period that commenced before the end of the fifth hour of work.
>
> 34. Out of the 2,511,475 shifts lacking a timely, recorded, unpaid meal period, 888,694 were worked by managers who were parties to on-duty meal period agreements.[22] After deducting these shifts, 1,622,781 shifts remain. These 1.6 million shifts represent shifts over six hours worked at corporate-owned Taco Bell restaurants by non-exempt employees, other than managers subject to on-duty meal agreements, which shifts do not include a recorded, unpaid break of 30 minutes or longer that commenced prior to the end of the fifth hour of work.
>
> 35. Of these remaining 1.6 million shifts, 141,938 were graveyard shifts, *i.e.,* shifts starting between 8 PM and 4 AM.[23] I understand that Taco Bell entered into on-duty meal period agreements with its non-exempt employees for work on graveyard shifts. After deducting shifts that were shorter than six hours, shifts that included a qualifying unpaid meal period, shifts worked by managers subject to on-duty meal agreements and graveyard shifts also subject to on-duty meal agreements, 1,480,843 shifts remain.

11

36. Of these 1,480, 843 shifts, 377,355 included a *paid* break 30 minutes or longer and commencing prior to the end of the fifth hour of work. After deducting these shifts having paid breaks lasting 30 minutes or longer, 1,103,488 shifts remain. I understand that it is Taco Bell's position that only these 1,103,488 shifts are even potentially eligible for a late meal period violation under California law. These 1,103,488 shifts represent only 16.8% of all shifts lasting six hours or longer worked by non-exempt employees at corporate-owned Taco Bell restaurants as reflected in Taco Bell's raw punch data. 114,496 of these 1,103,488 shifts had a meal period that was late by ten minutes or less. Deducting these 114,496 shifts that were late by 10 minutes or less, 988,992 shifts remain.

37. Many of these 988,992 shifts are shifts in which there was no recorded meal period at all. I understand that Taco Bell had a practice and policy of "Auto-Paying" an hour of wages for eligible shifts occurring on or after November 13, 2007 in which no meal period was recorded.[24] My review of the PVR's pertaining to Lisa Hardiman, Sandrika Medlock, Miriam Leyva and Loraine Naranjo confirms that they were paid an hour's wages for eligible shifts after November 13, 2007 in which no meal period was recorded. After deducting the 164,922 shifts which should have been autopaid, as well as making the other adjustments above related to shifts lasting six hours or less, shifts with timely meal periods and shifts worked pursuant to on-period meal agreements, 824,070 shifts remain in which an eligible meal period was recorded more than 10 minutes late.

[24] See, e.g., Exhibit 1004 to the Deposition of Taco Bell Corp., Tawanda Starms, August 19, 2008 (TB-MED000012402-404.

(Walker Report, ¶¶ 32-37.)

Dr. Walker's calculation that 87.5% of meal period punches are timely or otherwise lawful, takes into account on-duty meal period agreements, shifts where the employee received an auto pay, and meal periods that were late by less than ten minutes. There were 6,570,205 shifts lasting longer than six hours and worked by non-exempt employees. Dr. Walker calculated that 1, 030, 632 shifts were over six hours long by non-exempt employees who were parties to on-duty meal period agreements. Therefore, there were actually only 5,466,744 shifts by non-exempt employees that were longer than six hours by employees not subject to on-duty meal period agreements. Dr. Walker identified 1, 103, 461 shifts lasting longer than six hours and worked by non-exempt employees that had late meal period punches, including those that were late by less than ten minutes. Therefore, based on Dr. Walker's calculations, of the non-

12

exempt employees who were not a party to an on-duty meal period agreement, punched out for a meal period before the end of the fifth hour, 74.2% of the shifts indicated a legally compliant unpaid meal period.

The Court finds that the wording of the "Hourly Employee Guide" is persuasive evidence which supports Plaintiffs' claim that it was Defendants' policy that meal breaks were not to be given until after the fifth hour of work. The Court also acknowledges the language in Brinker, where the California Supreme Court stated that employer liability with respect to a class of employees may be premised on a uniform policy which violates California wage and hour law. Class-wide liability regarding a policy, which was equally applicable to all employees, could be established through common proof if plaintiffs could demonstrate that the policy did not comply with California law. Brinker, 53 Cal.4th at 1033.

In this case, Plaintiffs' allegations about Defendants' meal policy presents a common contention capable of classwide resolution. Rule 23 only requires Plaintiffs to establish the existence of a common contention capable of classwide resolution- the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. at 2551. "Plaintiffs need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution. So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." Wang v. Chinese Daily News, Inc., 737 F.3d 538, 544 (9th Cir. 2013).

Here, Plaintiffs have identified a common issue that establishes liability. Although Defendants have presented compelling evidence that the "Hourly Employee Guide," the "Matrix," and the "Wallet Card" did not reflect the official policy on the timing of meal breaks, and that the 2-2-2 methodology was used instead, the record is still susceptible to the interpretation presented by Plaintiffs. The Defendants' written policy documents appear to suggest that Defendants did not authorize a meal break before the end of the fifth hour for a shift over six hours whereas California law requires a meal break before the end of the fifth hour of a shift that is longer than six hours. See Cal. Labor Code § 226.7. The Plaintiffs have presented a

common issue regarding the legality of Defendants' policy pertaining to meal breaks for employees with shifts over six hours in length. The Court also finds that Rule 23(b) is met for this claim, because questions common to the members of the class predominate over any questions affecting only individual members and a class action is a superior method for resolution of the controversy. The Court does not find that this class is unmanageable, because as stated above, the Court finds that Plaintiffs have presented that there are common proofs of liability. Therefore, the Court finds that the meal break class is properly certified.

**C. Underpaid Meal Period Premium Class**

In its December 16, 2014 order amending the Court's order on class certification, the Court found:

> Here, Taco Bell's automatic meal premium payment system presents a common contention capable of classwide resolution. Plaintiffs contend that the automatic payment system <u>generally</u> underpaid employees because it paid only a half-hour's worth of pay when California law requires a full hour's worth of pay. The fact that, hypothetically, some undefined number of employees were not entitled to any meal premium pay does not defeat class certification, as under <u>Wang</u>, Plaintiffs need not show that <u>every</u> question in the case is capable of classwide resolution. Significantly, the evidence in the record does not suggest that number of employees who were erroneously paid meal premiums is substantial. Further, even the meal break class that was certified in this action suffers from the same issue: the time records may be inaccurate and include employees who actually received timely meal breaks even though the time records suggest otherwise.
>
> The record contains no indication that improperly recorded meal periods were a significant problem in Defendants' time records. Accordingly, the Court finds that it was erroneous to deny certification on such a hypothetical possibility. The fact that Defendants' policy erroneously provided for a half-hour's worth of pay for meal premiums when it should have been a full hour's worth of pay presents a sufficient issue to meet the commonality requirement of Rule 23. Accordingly, the Court will amend its order on class certification to include a claim brought on behalf of the Underpaid Meal Period Premium Subclass.

(ECF No. 520 at 7:3-20.)

Defendants argue that Plaintiffs do not have common proof to give any particular meaning to a late meal period punch. Defendants present the same arguments that they presented in opposition to Plaintiffs' motion to amend the Court's order on class certification. The Court

again does not find persuasive Defendants' arguments on this issue.

Plaintiffs' allegations about Defendants' automatic meal premium payment system present a common contention capable of classwide resolution. Plaintiffs contend that the automatic payment system generally underpaid employees for meal premiums because it paid only a half-hour's worth of pay when California law requires a full hour's worth of pay. As stated in the Court's December 16, 2014 order amending certification, the fact that the time records may be inaccurate and include employees who actually received timely meal breaks even though the time records suggest otherwise does not preclude this claim from being certified.

As stated above, Rule 23 only requires Plaintiffs to establish the existence of a common contention capable of classwide resolution- the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. at 2551. The Plaintiffs have presented a common issue regarding the legality of Defendants' policy erroneously providing for a half-hour's worth of pay for meal premiums when it should have been a full hour's worth of pay. The Court also finds that Rule 23(b) is met for this claim, because questions common to the members of the class predominate over any questions affecting only individual members and a class action is a superior method for resolution of the controversy. The focus of the action will be on the conduct of the Defendants and their policy as opposed to the conduct of individual class members. The Court does not find that this class is unmanageable, because as stated above, the Court finds that Plaintiffs have presented that there are common proofs of liability on this claim. Therefore, the Court finds that the underpaid meal period premium class is properly certified.

**D. Rest Break Class**

Plaintiffs argue that Defendants' rest break policy only allowed for one 10 minute rest break for employees working more than six, but less than seven, hours of work. Plaintiffs contend that California law requires two 10 minute rest breaks for such shifts.

In the December 16, 2014 order amending the Court's order on class certification, the Court stated:

> Defendants failed to persuasively demonstrate that any defects in

> record keeping was fatal to the maintenance of a class action. Plaintiffs adequately demonstrated that the proposed class definition was ascertainable. Irrespective of isolated inaccuracies in the records, the class definition relied upon precise, objective, and presently ascertainable criteria, namely 1) employees, 2) who worked shifts between 6 and 6:59 hours, 3) without 2 recorded rest breaks.
>
> Alternatively, Defendants argue that the rest break claims are not amenable to class treatment because the time records are insufficient to establish liability because they do not indicate why rest breaks were missed. While this may be true, Plaintiffs' have identified a common issue that establishes liability. Much like Plaintiffs' theory of liability with respect to meal breaks, Defendants' written policy documents appear to suggest that Defendants did not authorize a second rest break in some circumstances where California law requires a second rest break. Taco Bell's "Required Rest Break and Meal Period Matrix" appears to indicate that employees who worked shifts between "6-6:59 hours" only received one 10 minute rest break. (See Decl. of Matthew T. Theriault in Supp. of Pls.' Mot. to Amend Class Cert. Order Pursuant to Rule 23(c)(1)(C) or, in the Alt., Mot. for Recon. of the Order Denying Class Cert., Ex. E, at pg. 6 and Ex. G, at pg. 16, ECF No. 501.2.) California law requires two 10 minute rest breaks for shifts more than six hours up to ten hours. Brinker Restaurant Corp. v. Superior Court, 53 Cal. 4th 1004, 1029 (2012).
>
> As discussed above, a single common question can suffice to satisfy Rule 23's commonality requirement. Wang v. Chinese Daily News, Inc., 737 F.3d 538, 544 (9th Cir. 2013). The rest break matrixes present a significant common question regarding the legality of Defendants' policy pertaining to rest breaks given to employees who work shifts between 6 to 6:59 hours in length. Accordingly, the Court will amend the order on class certification to certify a Rest Break Class.

(ECF No. 520 at 13:1-25.)

Defendants argue that the statistics show that the statistical evidence does not support that Defendants have a uniform and consistently applied policy of not authorizing and permitting such breaks. Defendants argue that approximately 65% of the time, employees punched out for a second paid rest break on shifts over six hours and less than seven hours. However, it is clear that Defendants' written policy documents, including the matrix, appear to suggest that Defendants did not authorize a second rest break in some circumstances where California law requires a second rest break. Taco Bell's "Required Rest Break and Meal Period Matrix" appears to indicate that employees who worked shifts between "6-6:59 hours" only received one 10 minute rest break.

1    Here, Defendants' written policy documents appear to suggest that Defendants did not 2 authorize a second rest break in some circumstances where California law requires a second rest 3 break. As stated above, a single common question can suffice to satisfy Rule 23's commonality 4 requirement. Wang v. Chinese Daily News, Inc., 737 F.3d at 544. The rest break matrix and 5 other written materials present a common question regarding the legality of Defendants' policy 6 pertaining to rest breaks given to employees who work shifts between 6 and 6:59 hours in length. 7 The Court also finds that Rule 23(b) is met for this claim, because questions common to the 8 members of the class predominate over any questions affecting only individual members and a 9 class action is a superior method for resolution of the controversy. The Court does not find that 10 this class is unmanageable, because as stated above, the Court finds that Plaintiffs have presented 11 that there are common proofs of liability and the classwide litigation will promote greater 12 efficiency. The focus of the action will be on the conduct of the Defendants and their policy as 13 opposed to the conduct of individual class members. Therefore, the Court finds that the rest 14 break class is properly certified.

**IV.**

**CONCLUSION AND ORDER**

Based upon the foregoing, Defendants' motion to decertify the classes is denied as the Plaintiffs have shown that certification on the late meal break class, rest break class, and underpaid meal premium class is warranted.

Accordingly, it is HEREBY ORDERD that Defendants' motion to decertify the class is DENIED.

IT IS SO ORDERED.

Dated:   **December 11, 2015**

UNITED STATES MAGISTRATE JUDGE