# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRIKA MEDLOCK, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>TACO BELL CORP., et al.,<br><br>　　　　Defendants. | Case No. 1:07-cv-01314-SAB<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>ECF NO. 542 |

On October 5, 2015, Plaintiffs filed a motion for partial summary judgment on Plaintiffs' claims on behalf of the rest break class and underpaid meal premiums class. (ECF No. 542.) Defendants filed an opposition on October 21, 2015. (ECF No. 552.) Plaintiffs filed a reply on October 28, 2015.

The hearing on Plaintiffs' motion for partial summary judgment took place on December 2, 2015. Matthew Theriault and Andrew Sokolowski appeared in person and Monica Balderrama, Jerusalem Beligan, and Patrick Clifford appeared by telephone on behalf of Plaintiffs. Tracy Kennedy, Morgan Forsey, Nora Stiles, and John Makarewich appeared in person and Jason Overett appeared by telephone on behalf of Defendants. For the reasons set forth below, the Court denies Plaintiffs' motion for summary judgment. However, the Court finds that Taco's Bell's Required Rest Break and Meal Period Matrix violates California law by not authorizing and permitting a second rest break for shifts lasting between six and seven hours. Taco's Bell's policy, in effect between September 7, 2003 until November 12, 2007, of paying

meal period premiums as one-half hour of the employee's pay, was illegal and violated California Labor Code section 226.7.

# I.

# BACKGROUND

In these consolidated actions, Plaintiffs asserted claims against Defendants arising from alleged violations of California's Labor Code relating to the payment of minimum wages, the payment of overtime wages and the provision of meal and rest breaks. Plaintiffs also asserted claims under California's Private Attorney Generals Act ("PAGA"), which authorizes "aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations..." Arias v. Superior Court, 46 Cal. 4th 969, 980 (2009). The operative complaint is the Third Amended Consolidated Complaint filed on December 30, 2014. (ECF No. 522.)

# II.

# LEGAL STANDARDS FOR MOTIONS FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, "[a] party may move for summary judgment ... if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "'[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."'" Id. (quoting Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

\\\

## III.

## DISCUSSION

At the outset, the Court notes that Plaintiffs have attempted, on two prior occasions, to seek summary judgment as to liability with respect to the late meal break claims. (See ECF Nos. 424, 494.) The present motion seeks summary judgment as to liability with respect to the missed rest break claims and the underpaid meal premiums claims. Accordingly, the present motion is distinguishable from Plaintiffs' prior motions for summary judgment. However, the same analysis used by the Court in the prior motions for summary judgment applies with equal force with respect to the present motion. Therefore, for the reasons set forth below and in the Court's prior orders on Plaintiffs' motions for summary judgment, the present motion will be denied because the record shows that the facts regarding Defendants' rest break policy and meal period policy are in dispute.

### A.   Plaintiffs' Missed Rest Break Claim

1.   Elements of Plaintiffs' Missed Rest Break Claim

Plaintiffs seek summary judgment on the issue of liability with respect to their claims that Defendants failed to give class members required rest breaks. Section 226.7 states, in pertinent part:

> (b)   An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health.
>
> (c)   If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.

Cal. Labor Code § 226.7.

The Industrial Welfare Commission's ("IWC") Wage Order No. 5 applies to restaurant

workers such as Plaintiffs.  <u>Brinker Restaurant Corp. v. Superior Court</u>, 53 Cal. 4th 1004, 1027 n.7 (2012).  Subdivision 12 of Wage Order No. 5 states:

> 12. <u>Rest Periods</u>
> (A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 ½) hours. Authorized rest period time shall be counted, as hours worked, for which there shall be no deduction from wages.

Wage Order 5-02 Wages, Hours and Working Conditions in the Public Housekeeping Industry, http://www.dir.ca.gov/iwc/wageorder5_010102.html (last visited Dec. 11, 2015).  Under Section 226.7 and Wage Order No. 5, "an employee would receive ... 20 minutes [of rest break time] for shifts lasting more than six hours up to 10 hours...."  <u>Brinker Restaurant Corp.</u>, 53 Cal. 4th at 1029.

The rest break claims at issue in this motion for summary judgment concern employee shifts that lasted more than six hours but less than seven hours.  Under Section 226.7 and Wage Order No. 5, employees working shifts between six and seven hours are legally entitled to 20 minutes of rest break time.  Plaintiffs contend that Defendants' policies only permitted 10 minutes of rest break time for those shifts.

2. <u>Plaintiffs' Evidence</u>

Much like Plaintiffs' prior motions for summary judgment, Plaintiffs' present motion for summary judgment predominantly relies upon excerpts from the deposition of Tawanda Starms, a 2004 Hourly Employee Guide, a "Required Rest Break and Meal Periods Matrix," and a wallet card that depicts a meal periods matrix.

Excerpts from the deposition of Tawanda Starms which took place on August 19, 2008, are attached as Exhibit B to the Declaration of Matthew T. Theriault in Support of Motion for Partial Summary Judgment (hereinafter cited as "Aug. 2008 Starms Dep.").  Ms. Starms testified:

> Q. Can you tell me what's printed on those wallet cards?
> A. How many meal periods or rest breaks an employee is to receive based on the number of hours worked, as well as, I believe, there's a blurb at the bottom with regard to a bit of our policy.

4

(Aug. 2008 Starms Dep. 42:7-12.)

Later in the deposition Ms. Starms testified:

> Q. Now, can you tell me Taco Bell's policy regarding rest periods presently?
> Ms. Greene: We'll call them breaks.
> Mr. Yu: Rest breaks.
> Ms. Greene: Rest breaks.
> THE WITNESS: To comply with California state law.
> BY MR. YU:
> Q. And do you understand what that entails?
> A. I do.
> Q. Please tell me.
> A. That an employee would receive a certain number of rest breaks based on a number of hours worked.
> Q. Do you know the number of hours worked that would trigger the rest period?
> A. I would need to review the policy.
> Q. Which policy would you need to review?
> A. I could take a look at the wallet card or meal or rest break matrixes.

(Aug. 2008 Starms Dep. 59:3-21.)

Excerpts from a subsequent deposition of Ms. Starms which took place on February 4, 2010 are attached as Exhibit C the Declaration of Matthew T. Theriault in Support of Motion for Partial Summary Judgment (hereinafter cited as "Feb. 2010 Starms Dep.").[1]

Ms. Starms testified:

> With respect to Taco Bell's policies for keeping track of hours, where would an employee be able to find those written policies?
> A. Variety of different places.
> Q. What are those different places?
> A. They'd be available in Answer System/Book 6. They would be available through various training, training courses they go through. They would be available through the meal and rest break matrix. They would be available through the Restaurant Orientation Handbook. They would be available through employee file folders. They would be – those are ones I can think of off the top of my head.

(Feb. 2010 Starms Dep. 43:6-18.)

Ms. Starms further testified:

---

[1] Additional excerpts from the February 4, 2010 deposition were submitted by Defendants in support of their opposition. For the Court's convenience, the Court cites to the excerpts submitted by both parties as "Feb. 2010 Starms Dep." regardless of whether they were submitted by Plaintiffs or Defendants.

> Q. Does Taco Bell require its employees to record rest breaks?
> A. Yes.

(Feb. 2010 Starms Dep. 46:24-471.) When asked what kind of training employees receive regarding Taco Bell's policies for recording rest breaks, Ms. Starms further testified:

> THE WITNESS: Um, they're provided with a Mini Decklet. They're provided with the Restaurant Orientation Handbook. Their provided with other training, they're – not other training – yeah, other training. They're provided with their employee file folder. They're shown it on the job.

(Feb. 2010 Starms Dep. 48:14-19.)

Ms. Starms also stated:

> Q. Do you provide anything in writing to all the other restaurant level employees, other than the restaurant leader and RGM, so Shift Leads and the other non-exempt employees, do you provide them anything in writing as to when they should take their meal break?
> MS. GREENE: Asked and answered this morning.
> THE WITNESS: Yes. We provide the meal break matrix that tells them when they're entitled to take the meal and rest break. We also point them to the Deployment Chart.
> ...
> THE WITNESS: Anything else that tells them what they're entitled to take?
> MS. BALDERRAMA: Yes.
> THE WITNESS: They get wallet cards to take with them that tells them what California law entitles them to take. They get to take home this Deck that tells them what they're entitled to. That's all I can recall at the moment.

(Feb. 2010 Starms Dep. 116:25-118:15.)

A Restaurant Orientation Handbook dated June 2007 is attached as Exhibit F to the Declaration of Matthew T. Theriault in Support of Motion for Partial Summary Judgment. A Restaurant Orientation Handbook dated March 2005 is attached as Exhibit G to Mr. Theriault's declaration. An Hourly Employee Guide is attached as Exhibit H to Mr. Theriault's declaration. A "Required Rest Breaks and Meal Periods" table is attached as Exhibit I to Mr. Theriault's declaration. Slides from a presentation entitled "California Wage & Hour Presentation; Above Restaurant Leader and RGM Guide" are attached as Exhibit J to Mr. Theriault's declaration, and includes a slide entitled "Required Rest Break and Meal Period Matrix (English)."

\\\

3. <u>Plaintiffs Fail to Demonstrate That There is No Genuine Dispute of Material Fact with Respect to Liability</u>

The Court finds that summary judgment is not appropriate for liability on the rest break class claim because it is clear that there is a genuine dispute of fact regarding Defendants' policy on rest breaks. The Court's analysis reaching this conclusion is nearly identical to the Court's analysis in Plaintiffs' prior two motions for summary judgment. Admittedly, Plaintiffs possess compelling evidence that Defendants held a uniform policy whereby employees did not receive 20 minutes of rest breaks for shifts that totaled between six to seven hours in duration. However, Defendants possess sufficient information to create a genuine dispute of material fact.

Plaintiffs point to several policy documents which serve as persuasive evidence that Defendants, at the very least, disseminated information which described a rest break policy that did not provide 20 minutes of rest breaks to employees working shifts between six to seven hours in length. The "Hourly Employee Guide," matrixes, and wallet cards all clearly indicate that employees who work shifts between six to seven hours receive only one ten minute rest break.

However, Defendants present their own evidence rebutting Plaintiffs' evidence. This is the same evidence cited by the Court in establishing a genuine dispute of material fact in Plaintiffs' prior motion for summary judgment. Ms. Starms testified that the timing of breaks was governed by a "2-2-2" system, whereby a rest break was provided after two hours, a meal break provided after another two hours, and a second rest break after another two hours. Defendants note that during the February 2010 deposition, Ms. Starms testified:

> In terms of training or when they're deployed, we instruct managers to deploy a rest/meal/rest every two hours, but it varies by restaurant and business needs. By that standard an employee would have a rest within two hours, they would have a meal within four, and another rest within six.

(Feb. 2010 Starms Dep. 90:7-17.)

Starms later testified:

> What is it that you tell these people during the presentation as to when they should schedule the meal break?
> A.   We explain that they should deploy meal and rest breaks, rest within the first two hours of work, meal within the next two, rest within the next two, assuming they're entitled to those based

7

>   on the hours they're working and based on the business needs and the variations of every individual restaurant, to use that as a guide.

(Feb. 2010 Starms Dep. 115:15-23.)

Starms further testified:

>   Q. When going over this Deployment Chart with the employees as part of your presentation, what is it or what do you tell them as to the time that they're to schedule the employees for their meal breaks?
>   MS. GREENE:     Asked and answered.
>   THE WITNESS:    I explain they're to use the rest/meal/rest as a guide, and then they are also to look at their business needs and the variations of each individual in using that as a guide.
>   BY MS. BALDERRAMA:
>   Q. When you say "rest/meal/rest guide," what are you referring to?
>   MS. GREENE:     Asked and answered.
>   THE WITNESS:    Rest break within two hours; meal period, two hours thereafter; rest break two hours after that.

(Feb. 2010 Starms Dep. 125:3-126:6.)

Defendants also point to a May 12, 2009 e-mail from Ms. Starms to other personnel, affirming the "2-2-2" methodology of providing rest and meal breaks. (Decl. of Cynthia Nichols in Supp. of Opp'n to Mot. for Part. Summ. J. ¶ 5, Ex. A.) Accordingly, conflicting evidence exists in the record as to whether the uniform policy of Taco Bell was based upon the matrixes and wallet cards or whether the uniform policy of Taco Bell was based upon the "2-2-2" methodology.

Dr. Danna Moore, Ph.D, conducted a survey report on behalf of Plaintiffs. (Decl. of Tracey A. Kennedy in Supp. of Opp'n to Pls.' Third Mot. for Part. Summ. J. ("Kennedy Decl."), Ex. M.) Approximately 33.4% of respondents to a survey indicated that they had heard of a "2-2-2" schedule for meal and rest breaks. (Kennedy Decl., Ex. M, at pg. 12.) Approximately 24.5% of respondents indicated that Taco Bell had provided them with a wallet card, or a meal and rest break matrix. (Kennedy Decl., Ex. M, at pg. 12.) Accordingly, more survey respondents were familiar with the "2-2-2" schedule than the wallet card and matrixes which Plaintiffs contend represent the uniform policy on rest breaks. This disparity creates a genuine dispute of fact regarding which methodology served as the "uniform" policy at Taco Bell, and

this dispute arises from Plaintiffs' own evidence. Most significantly, Defendants present evidence that a substantial percentage of the entire universe of shifts which lasted between six to seven hours included 20 minutes of rest break time. (Kennedy Decl., Ex. B, at ¶ 69.)

Thus, the total record includes compelling evidence that the wallet card and matrixes accurately represented the official, uniform rest break policy at Taco Bell, but substantial contrary evidence exists, sufficient to create a genuine issue of material fact. Accordingly, summary judgment is not appropriate in this case and the evidence is more appropriately presented to a jury to determine liability.

4. <u>Plaintiffs Fail to Show That There are Certain Material Facts That Are Not Materially Disputed That Should be Established for Trial</u>

Alternatively, Plaintiffs request that the Court declare that the following facts are not genuinely disputed and that they are established for trial:

> (1) The Required Rest Break and Meal Period Matrix reflects Taco Bell's rest period policy with respect to the Rest Break Class Members' eligibility for rest breaks based on hours worked; and/or (2) Taco Bell's rest break policy, as reflected in the Required Rest Break and Meal Period Matrix, violates California law by not authorizing and permitting a second rest break for shifts lasting between six and seven hours.

When a court partially or fully denies a summary judgment motion, it may declare that certain material facts that are not genuinely disputed are established for trial. See <u>F.D.I.C. v. Massingill</u>, 24 F.3d 768, 774 (5th Cir. 1994).

As stated above, there is substantial contrary evidence that creates a genuine issue of material fact about whether the Required Rest Break and Meal Period Matrix are Taco Bell's rest and meal period policies. Thus, the Court does not establish for trial either of Plaintiffs' requested facts for the rest break claim.[2]

---

[2] However, the Required Rest Break and Meal Period Matrix does clearly state that only one 10 minute rest break is authorized and permitted for shifts lasting between six and seven hours. Under Section 226.7 and Wage Order No. 5, "an employee would receive ... 20 minutes [of rest break time] for shifts lasting more than six hours up to 10 hours...." <u>Brinker Restaurant Corp.</u>, 53 Cal. 4th at 1029. Therefore, if the Required Rest Break and Meal Period Matrix is Defendants' policy, it violated California law by not permitting a second rest break for shifts lasting between six and seven hours. However, it is up to the trier of fact to determine whether it is Defendants official policy and whether it is uniformly applied.

**B.     Plaintiffs' Underpaid Meal Premium Claim**

1.     <u>Elements of Plaintiffs' Underpaid Meal Premium Claim</u>

Plaintiffs claim that Defendants maintained a policy of only paying thirty minutes worth of wages as a premium for a missed meal period when California law requires a full hour of pay. Labor Code section 226.7 requires that, "An employer's obligation to pay a meal or rest period premium only arises "[i]f an employer fails to provide an employee a meal or rest…period in accordance with state law…." Cal. Lab. Code 226.7(c).

Section 512 states, in pertinent part:

> (a)     An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee....

Cal. Labor Code § 512.

Section 226.7 states, in pertinent part:

> (b)     An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health.
>
> (c)     If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.

Cal. Labor Code § 226.7.

The Industrial Welfare Commission's ("IWC") Wage Order No. 5 applies to restaurant workers such as Plaintiffs. <u>Brinker Restaurant Corp. v. Superior Court</u>, 53 Cal. 4th 1004, 1027 n.7 (2012). Subdivision 11 of Wage Order No. 5 states:

> 11.  Meal Periods
> (A)   No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and employee....

Wage Order 5-02 Wages, Hours and Working Conditions in the Public Housekeeping Industry, http://www.dir.ca.gov/iwc/wageorder5_010102.html (last visited Dec. 11, 2015). Under Section 512 and Wage Order No. 5, a first meal period must be given no later than the start of an employee's fifth hour of work. Brinker Restaurant Corp., 53 Cal. 4th at 1041.

### 2. Plaintiffs' Evidence

Plaintiffs' motion for summary judgment on the underpaid meal premium claim predominantly relies upon excerpts from the deposition of Ms. Starms, "TAS 4.2 Wage & Hour Software Rest & Meal Compliance/Autopay June 1999," and a November 12, 2007 email with subject "Changes to TAS Autopay Functionality: Company RGMS in CA."

As part of her August 19, 2008 deposition, Ms. Starms testified:

> Q: Okay. In the subject line it says, "Changes to Bell Communications Network autopay functionality." What is Bell Communications Network autopay functionality?
> A: Bell Communications Network is the system in the restaurant. Auto – autopay is the system by which a meal period or rest break is unrecorded, that there is an autopay associated with it.

(Aug. 2008 Starms Dep. 83:5-12.)

Ms. Starms also testified that the pre-November 2007 policy was to pay thirty minutes of pay for an unrecorded or short meal period. (See Aug. 2008 Starms Dep. 86:24-87:12; 89:9-90:4; 90:11-21; 92:15-93:11.)

> Q: Okay. Below that it says, "Taco Bell has updated the current TAS autopay functionality in TACO to comply with recent changes in California state law." Do you have an understanding about what recent changes to California state law occurred around this time?
> A: Yes.
> Q: What was the recent – what were the recent changes?
> A: The new law requires employees to be paid for 60 minutes instead of current 30 minutes.
> Q: Okay. And do you under – do you know when the recent changes occurred? Do you know what date?
> A: No.

11

1  (Aug. 2008 Starms Dep. 86:24-87:12.)

2      Further, Ms. Starms testified:

> Q: Okay. What's autopay?
> A: Autopay is where a meal period or rest break is unrecorded, the employee is auto paid for 60 minutes or 60 minutes plus whatever their meal period was short.
> BY MR. YU:
> Q: Okay. So prior to this change in TAS autopay functionality, if you know, prior to the – the change, if a restaurant employee missed a meal period, he or she would get 30 minutes' worth of compensation, correct?
> A: I need you to clarify your question.
> Q: Do you see down below where it says, "The new law requires employees be paid for 60 minutes instead of the current 30 minutes" – actually, on the next line it says, it continues: "If they miss a meal period." Do you see that?
> A: Yes.
> Q: Okay. So when the new law happened, employees were required to be paid 60 minutes instead of the prior 30 minutes, correct?
> A: If they did not record their meal period or rest break.
> . . .
> Q: So we're – we're talking about the period after the new – the new change to the TA – the TAS autopay functionality, right?
> A: Uh-huh, yes.
> Q: After the change happened, if an employee took a shortened meal period, he or she would be entitled to 60 minutes, correct?
> A: At least 60.
> Q: Okay. But prior to the change, the restaurant employee would be entitled to only 30 minutes, correct?
> A: Correct.

19 (Aug. 2008 Starms Dep. 89:9-90:21.)

20     Ms. Starms also stated:

> Q: Okay. So prior to the change, that's the period we're talking about, if an employee took a shortened meal period, how much would he or she be entitled to?
> MS. GREENE: Are you asking how much would be paid through TAS?
> BY MR. YU:
> Q: How much would the TAS autopay functionality give to that employee who took the shortened meal period?
> A: To my knowledge, 30 minutes.
> Q: Okay. And prior to the change, did that apply – that same policy apply to all restaurant

27 (Aug. 2008 Starms Dep. 92:15-25.)

28     Later, Ms. Starms testified:

12

```
BY MR. YU:
Q:      – you testified that the post change policy and the
        prechange policy applied to the same set of people, correct?
A:      That is correct.
Q:      Okay. Who is that set of people, if you know.
A:      That would include – include nonexempt employees that
        did not have an on-duty meal period.
Q:      Okay. And that would include restaurant workers, correct?
A:      Correct. Let -- let me clarify.
MS. GREENE:       Well, yeah.
THE WITNESS:      Let me clarify.
MS. GREENE:       Vague and ambiguous.
THE WITNESS:      Right.  My – my answer was only for
        restaurant employees.
```

(Aug. 2008 Starms Dep. 100:25-101:15.)

Later in the deposition, Ms. Starms testified:

```
Q:      Just to clarify, even with the changes, do they – actually, to
        back up, how long, if you know, has TAS been in place, the TAS
        autopay functionality?
A:      TAS autopay functionality has been around since 1998.
```

(Aug. 2008 Starms Dep. 130:17-21.)

The "TAS 4.2 Wage & Hour Software Rest & Meal Compliance/Autopay June 1999," and specifically IRTB00000891, is attached as Exhibit M to the Declaration of Matthew T. Theriault in Support of Motion for Patrial Summary Judgment. The November 12, 2007 email with subject "Changes to TAS Autopay Functionality: Company RGMS in CA," is attached as Exhibit A to the Mr. Theriault's declaration. Ms. Starms also testified about the November 12, 2007 email as follows:

```
(Exhibit 1004 marked for identification.)
BY MR. YU:
Q:      When you are done, please let me know.
A:      Okay.
Q:      Okay.  I'll represent to you that this was a document
        produced by Taco Bell Bates labeled TBMED 10402 to 12404.
        And it appears to be an e-mail from Bell Communications Network
        to company ARLs within restaurants – with restaurants in
        California. Do you know what this document is?
A:      I do.
Q:      What is it?
A:      It's a document that announces changes to TAS autopay
        functionality Company RGMs in California.
Q:      Okay. And so prior to today you've seen this email?
A:      Yes.
Q:      Okay. When was the first time you saw it?
A:      November, 2007.
```

13

(Aug. 2008 Starms Dep. 81:2-20.)

3.  <u>Plaintiffs Fail to Demonstrate That There is No Genuine Dispute of Material Fact With Respect to Liability</u>

The Court finds that summary judgment is not appropriate with respect to liability for the underpaid meal premium claim because it is clear that there is a genuine dispute of fact regarding Defendants' policy on meal breaks and the underpaid meal premium. In the context of the underpaid meal premium claim, the Plaintiffs must show that Defendants were required to pay a meal premium and that Defendants underpaid that meal premium.

In the Court's December 16, 2014 order partially granting Plaintiffs' motion to amend the Court's order on class certification and partially granting Plaintiffs' motion to amend the complaint, the Court found:

> Here, Taco Bell's automatic meal premium payment system presents a common contention capable of classwide resolution. Plaintiffs contend that the automatic payment system generally underpaid employees because it paid only a half-hour's worth of pay when California law requires a full hour's worth of pay. The fact that, hypothetically, some undefined number of employees were not entitled to any meal premium pay does not defeat class certification, as under Wang, Plaintiffs need not show that every question in the case is capable of classwide resolution. Significantly, the evidence in the record does not suggest that number of employees who were erroneously paid meal premiums is substantial. Further, even the meal break class that was certified in this action suffers from the same issue: the time records may be inaccurate and include employees who actually received timely meal breaks even though the time records suggest otherwise.
>
> The record contains no indication that improperly recorded meal periods were a significant problem in Defendants' time records. Accordingly, the Court finds that it was erroneous to deny certification on such a hypothetical possibility. The fact that Defendants' policy erroneously provided for a half-hour's worth of pay for meal premiums when it should have been a full hour's worth of pay presents a sufficient issue to meet the commonality requirement of Rule 23. Accordingly, the Court will amend its order on class certification to include a claim brought on behalf of the Underpaid Meal Period Premium Subclass.

(Order Partially Granting Plaintiffs' Motion to Amend the Court's Order on Class Certification and Plaintiffs' Motion to Amend the Complaint 7:3-20).

Plaintiffs contend that the only evidence on record is that Taco Bell underpaid meal

1 period premiums in droves until November 2007.  Admittedly, Plaintiffs possess compelling
2 evidence that Defendants held a uniform policy whereby employees did not receive the full one
3 hour of pay at the employee's regular rate for meal period.  Plaintiffs point to the "TAS 4.2
4 Wage & Hour Software Rest & Meal Compliance/Autopay June 1999," and specifically pages
5 labeled IRTB00000891 and IRTB00000892, which states:

> o  A 30 minute auto-adjustment will occur*
>    ☐ When the minimum number of meal periods are not taken
>    ☐ When a meal is taken for 29 minutes or less
>      • Note: Some exceptions apply – see next page
> . . .
> o  During graveyard and late-night shifts meal periods must be paid because the employee
>      • May not be relieved of all duties, and
>      • Is not free to leave the work premises.

(Theriault Decl., Ex. M, at IRTB00000891-IRTB00000892.

Considered in a vacuum, this excerpt is not sufficient to establish liability for the underpaid meal premium class.  This excerpt states that Defendants' TAS paid an adjustment to employees who did not take the minimum number of meal periods or took a meal that was 29 minutes or less.  The auto-adjustment paid an employee at a rate of thirty minutes of pay at the employee's regular rate.  However, this excerpt does not state that employees were not provided a meal period of thirty minutes in accordance with state law.  Therefore, this excerpt alone is not sufficient to show that an employee was not provided with a compliant meal period.

Defendants argue that this claim fails because Plaintiffs have not set forth undisputed facts establishing the existence for the underlying meal period violations that would trigger the penalty.  Defendants contend that it is unestablished whether an employee's time punch accurately reflects whether an employee took a meal period or the length of the meal period; whether the employee was provided with a timely 30-minute meal period, but chose to forgo or shorten it, whether the employee waived the meal period, and whether the employee was subject to an on-duty meal period agreement and the nature of the work prevented an off-duty meal period on the shift in question.

In their reply, Plaintiffs cite Safeway, Inc. v. Superior Court of Los Angeles County, 238

Cal. App. 4th 1138, 1159-60 (2015), for the proposition that if the employee records reflect non-compliant meal breaks, then "a rebuttable presumption arises that the employee was not relieved of all duty [for 30 uninterrupted minutes] and [a compliant] meal period was not provided."[3] Plaintiffs argue that the burden is on Defendants to prove that "all employees who took shortened meal breaks or no meal breaks uniformly waived their right to these meal breaks." See Safeway, 238 Cal. App. 4th at 1159-60. The Court notes that Plaintiffs did not cite in its memorandum of points and authorities in support of its motion for summary judgment Safeway or any other case in support of a rebuttable presumption. (ECF No. 542-1 at 26:6-27:22.) In its memorandum of points and authorities in support of its motion for summary judgment, Plaintiffs stated that "The Court should, therefore, consider Taco Bell's payments of numerous meal premiums as prima facie evidence of underlying meal period violations." (ECF no. 542-1 at 26:26-28.) Plaintiffs also stated that:

> At the summary judgment stage, Taco Bell's bald and unsupported assertion that it erroneously or improperly paid meal premiums – still only hypothetical possibilities – cannot defeat summary judgment. The only undisputed evidence on record is that Taco Bell underpaid meal period premiums in droves until November 2007. (Plfs' Sep. St. No. 1.) The duty to pay those premiums only arises after a violation occurs and Taco Bell should be estopped from claiming otherwise.

(ECF No. 542-1 at 27:7-12).

In Defendants' opposition to Plaintiffs' third motion for summary judgment, they argue that "It is undisputed that employees do not always acutely record their time. (TB SDF 12.)" (ECF No. 552 at 24:1-2.) In paragraph 12 of Defendants' separate statement of disputed facts in opposition to Plaintiffs' third motion for summary judgment, Defendants state that "Class member declarations confirm that employees, for a variety of reasons, do not always accurately

---

[3] The Court notes that in Safeway, the Plaintiffs theory of liability was predicated on the Defendants' "alleged practice of never paying meal break premium wages, and [sought] restitution for the class-wide loss of the statutory benefits implemented by section 226.7, not the premium wages accrued by class members." Safeway, 238 Cal. App. 4th at 1161. In Safeway, the Fourth Appellate District held that based on the Plaintiffs' theory of liability in that case, "the fact of damage does *not* require a showing that all—or virtually all—class members accrued unpaid meal break premium wages, but only that on a system-wide basis, petitioners denied the class members the benefits of the compensation guarantee and enhanced enforcement implemented by section 226.7." Safeway, 238 Cal. App. 4th at 1159 (emphasis in original).

record their time." (ECF No. 552-3 at 3.) Defendants' evidence for this undisputed fact is "Kennedy Dec., ¶ 12, Ex. K (Declarations)." (ECF No. 552-3 at 3.) Paragraph 12 of Tracey A. Kennedy's Declaration states "12. Declarations that contain testimony that employees, for a variety of reasons, do not always accurately record their time are attached as Exhibit K." (Kennedy Decl., ¶ 12) Defendants highlight several statements in declarations of Defendants' employees:

> When I have forgotten to clock in, my manager has always fixed my timecard to show the time when I began working. I believe I have been paid for all of my working hours at Taco Bell.
> (ECF No. 555-1 at 3.)

> There was one time when I forgot to clock out when I left for the day. I realized it as I was driving home and pulled over to call the manager. I talked to the assistant manager, Lucy, who said she would clock me out. I believe that Lucy did clock me out because my paycheck for that pay period was correct.
> (ECF No. 555-1 at 5.)

> I am not aware of anyone ever improperly adjusting my time entries (for example, to make it seem like I worked less time than I actually did). There have been a few instances when I forgot to clock out. Each time, I called the RGM and told him the time when I stopped working and he clocked me out effective at that time. In each instance, he also showed me the receipts verifying that the clock out times were correct.
> (ECF No. 555-1 at 9.)

> I have occasionally forgotten to clock back in from my meal break. When I have done this, I have asked the Restaurant Manager to fix my timecard, and my timecard has always been adjusted properly. I have been coached for forgetting to clock back in after a meal period.
> (ECF No. 555-1 at 10)

> When I started working here, I was trained by the assistant manager to punch in and out on the machine to take my lunch periods and breaks. Sometimes I forgot to punch out after my break. When that happened, I told the assistant manager and she fixed the records so that I could punch in. She told me not to do it again and, since then, I have not forgotten to punch in or out my working hours or to take my breaks. I have never worked outside my shift or after punching out to take my breaks or lunch period, or at the end of my shift.
> (ECF No. 555-1 at 12-13.)

These excerpts of depositions of Taco Bell employees provide support for Defendants' argument that some employees do not always accurately punch in and out, including for meal

17

breaks. In paragraph 36 of Defendants' separate statement of disputed facts in opposition to Plaintiffs' third motion for summary judgment, Defendants state that "Dr. Walker, and Plaintiffs' expert, Michael O'Brien, acknowledge that one cannot tell from the time punch data alone whether a timely, compliant meal period was provided on a given shift, and no way to explain why a meal period punch is missing or short." (ECF No. 552-3 at 7.) Defendants' evidence for this disputed fact is "Kennedy Decl., ¶ 15, Ex. N ("Walker Report") at ¶¶ 4, 10; Kennedy Decl., ¶ 16, Ex. O, ("O'Brien Depo.") at p. 188:14-189:1." (ECF No. 552-3 at 7.) Paragraphs 15 and 16 of Tracey Kennedy's Declaration state:

> 15. On September 21, 2015, Defendants produced the report of Dr. Jonathan Walker ("Walker Report"). A true and correct copy of the Walker Report is attached as **Exhibit N**.
>
> 16. On September 11, 2015, Defendants took the deposition of Plaintiffs' expert, Michael O'Brien. A true and correct copy of the following excerpts from the deposition of Michael O'Brien ("O'Brien Depo.") are attached as **Exhibit O**: 166:17-20; 188:14-189:1.

(Kennedy Decl., ¶¶ 15-16.)

One of the excerpts from Mr. O'Brien's deposition that Defendants highlight only speaks to Mr. O'Brien's qualifications. The other excerpt from Mr. O'Brien's deposition is as follows:

> Q: Okay. Because, for example, when you're looking at the date and you see a meal period punch at - - you know, at five-and-a-half hours after the time-in punch, you have no idea whether that employee was offered an opportunity to take the meal period earlier in the shift?
> A: Correct.
> Q: In fact, you don't even know if the meal period actually occurred at that time. You just know that the punch was made - -
> A: Occurred.
> Q: - - correct?
> A: Correct.

(O'Brien Sep. 2015 Dep. 188:14-189:1.)

Paragraphs 4 and 10 of Dr. Walker's report comments on Mr. O'Brien's report and that "Mr. O'Brien's report pertains solely to analyses of raw punch data, and it is impossible to determine whether meal periods or paid rest breaks were taken or offered based on raw punch data alone." (Walker report ¶ 4.) Dr. Walker also states that, "A determination as to whether Taco Bell improperly withheld or delayed meal periods or rest breaks would require

1 individualized examination of the instances in which meal periods or paid rest breaks are
2 recorded as late or missing from Taco Bell's raw punch data." (Walker report ¶ 10.) Therefore,
3 these statements by Mr. O'Brien and Dr. Walker do not provide any evidence about whether the
4 time punches are accurate or whether a timely, compliant meal period was provided to
5 employees on a given shift.

6     Defendants argue that there are thousands of on-duty meal period agreements between
7 class members and that Plaintiffs' argument that the employee time punch data fails to recognize
8 that a missing, late, or short meal period resulting from a lawful on-duty meal period is not a
9 violation of law. (ECF No. 552 at 25-26.) There is much evidence in the record that Defendants
10 used on-duty meal period agreements for managerial and graveyard shift employees. Therefore,
11 Defendants have presented evidence in the record to create a dispute of material fact about
12 whether non-compliant meal breaks in the time records reflects that compliant meal periods were
13 not provided. Therefore, summary judgment is not appropriate in this case and the evidence is
14 more appropriately presented to a jury to determine liability.

15    4.    <u>Plaintiffs Fail to Show That There are Certain Material Facts That Are Not Materially Disputed That Should be Established for Trial</u>
16

17     Alternatively, Plaintiffs request that the Court declare that the following facts are not
18 genuinely disputed and that they are established for trial:

19    (1) Taco Bell's policy, in effect between September 7, 2013 until
20    November 12, 2007, of paying meal period premiums as one-half hour of the employee's pay, was illegal and violated California
21    Labor Code section 226.7.

22     When a court partially or fully denies a summary judgment motion, it may declare that
23 certain material facts that are not genuinely disputed are established for trial. See <u>F.D.I.C. v.</u>
24 <u>Massingill</u>, 24 F.3d 768, 774 (5th Cir. 1994).

25     California Labor Code section 226.7 requires that, "the employer shall pay the employee
26 one additional hour of pay at the employee's regular rate of compensation for each workday that
27 the meal or rest or recovery period is not provided." Based on the evidence in the record,
28 Defendants clearly did not pay meal premiums at the rate of one additional hour of pay at the

19

employee's regular rate of compensation between September 7, 2003 and November 12, 2007. However, as stated above, there is substantial contrary evidence that creates a genuine issue of material fact about whether there is liability for the Underpaid Meal Premiums Class. There is a dispute as to whether Defendants actually had to pay the "meal premiums" to the employees that they paid a half hour meal premium. If Defendants did not have to pay "meal premiums" to those employees, then there was no violation of California Labor Code section 226.7. Therefore, the Court denies Plaintiffs' request to declare that "Taco Bell's policy, in effect between September 7, 2013 until November 12, 2007, of paying meal period premiums as one-half hour of the employee's pay, was illegal and violated California Labor Code section 226.7" is established for trial.

### IV.

### CONCLUSION AND ORDER

For the reasons set forth above, the Court finds that Plaintiffs are not entitled to summary judgment with respect to liability on the rest break and the underpaid meal premium claims. The Court also finds that Plaintiffs' request for the Court to find that certain material facts are established for trial must be denied because Plaintiffs have not shown that the facts are not genuinely disputed.

Accordingly, it is HEREBY ORDERED that Plaintiff's motion for partial summary judgment is DENIED.

IT IS SO ORDERED.

Dated:   **December 11, 2015**

UNITED STATES MAGISTRATE JUDGE