1
Matthew T. Theriault (SBN 244037)
Matthew.Theriault@capstonelawyers.com
2
Robert Drexler (SBN 119119)
Robert.Drexler@capstonelawyers.com
3
Andrew J. Sokolowski (SBN 226685)
Andrew.Sokolowski@capstonelawyers.com
4
Capstone Law APC
1840 Century Park East, Suite 450
5
Los Angeles, California 90067
Telephone:    (310) 556-4811
6
Facsimile:    (310) 943-0396

7
Lead Counsel for the Class

8

9
UNITED STATES DISTRICT COURT

10
EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

11

| 12 | IN RE TACO BELL WAGE AND HOUR ACTIONS | Case No. 1:07-cv-01314-SAB |
|---|---|---|
| 13 | | Hon. Stanley A. Boone |
| 14 | | CLASS ACTION COMPLAINT & ENFORCEMENT UNDER THE PRIVATE ATTORNEYS GENERAL ACT, CALIFORNIA LABOR CODE §§ 2698 *ET SEQ.* |
| 15 | | |
| 16 | | |
| 17 | | **PLAINTIFFS' OMNIBUS MOTIONS IN LIMINE** |
| 18 | | |
| 19 | | Judge:        Stanley A. Boone |
| 20 | | Date:         February 3, 2016 |
| | | Time:         2:00 p.m. |
| | | Ctrm:         9 |
| 21 | | Lead Case Filed:     September 7, 2007 |
| 22 | | Trial Date:   February 22, 2016 |

23

24

25

26

27

28

Mónica Balderrama (SBN 196424)
MBalderrama@InitiativeLegal.com
Initiative Legal Group APC
1801 Century Park East, Suite 2500
Los Angeles, California 90067
Telephone:    (310) 556-5637
Facsimile:    (310) 861-9051

Counsel for the Class, Sandrika Medlock and Lisa Hardiman

LAW OFFICES OF MARK YABLONOVICH
Mark Yablonovich (SBN 186670)
mark@yablonovichlaw.com
Patrick Clifford (SBN 194941)
patrick@yablonovichlaw.com
1875 Century Park East, Suite 700
Los Angeles, California 90067-2508
Telephone: (310) 286-0246 • Fax: (310) 407-5391

Counsel for Plaintiffs Christopher Duggan,
Kevin Taylor, Debra Doyle, and Hilario Escobar


Timothy J. Donahue (SBN 110501)
tdonahue@attorneydonahue.com
Law Offices of Timothy J. Donahue
374 South Glassell Street
Orange, California 92866
Telephone:    (714) 289-2445
Facsimile:    (714) 289-2450

Counsel for Plaintiff Miriam Leyva

Jerusalem F. Beligan (SBN 211528)
Bisnar Chase, LLP
One Newport Place
1301 Dove Street, Suite 120
Newport Beach, California 92660
Telephone:    (949) 752-2999
Facsimile:    (949) 752-2777
jbeligan@bisnarchase.com

Counsel for Plaintiff Endang Widjaja

# TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................... 1

II.  COMPLIANCE WITH MEET AND CONFER REQUIREMENT .................. 2

III.  PLAINTIFFS' MOTION IN LIMINE NO. 1 TO EXCLUDE THE
TESTIMONY OF DEFENDANT'S EXPERT ROBERT
CRANDALL ............................................................................................ 2

    A.  Introduction .................................................................................. 2

    B.  Facts and Procedure .................................................................... 3

    C.  Argument ...................................................................................... 4

        1.  The Standard for Expert Opinions Under Rule 702 ..................... 4

        2.  Crandall Is Not Qualified to Analyze Any Survey ....................... 6

        3.  Crandall's Report Contains Unsupported, Irrelevant
and Unduly Prejudicial Opinions .................................................. 8

            (a)  Crandall's Layperson's Opinion Concerning
Meal Period "Policies" Is Inadmissible ............................... 8

            (b)  Crandall's Layperson's Opinion as to Rest
Break "Policies" Is Inadmissible ......................................... 9

            (c)  Crandall's Legal Opinions Are Inadmissible ..................... 10

            (d)  Crandall's Opinion that the Survey Is
Unreliable Because 60 Surveyed Class
Members Worked for Franchised Taco Bell
Locations Is Inadmissible ................................................... 11

            (e)  Crandall's Cumulative Testimony Should Be
Excluded ............................................................................ 11

            (f)  Crandall's *Ad Hominem*, Speculative Attacks
on Moore's Credibility Are Inadmissible ........................... 12

D.    Conclusion ...................................................................... 12

IV.   PLAINTIFFS' MOTION IN LIMINE NO. 2 TO LIMIT
TESTIMONY OF DEFENDANT'S EXPERT JONATHAN
WALKER ............................................................................ 13

    A.    Introduction ...................................................................... 13

    B.    Facts and Procedure ......................................................... 13

    C.    Argument .......................................................................... 15

        1.    Walker's Report Contains Unsupported, Irrelevant and
Unduly Prejudicial Opinions .......................................... 15

            (a)    Walker's Opinion About Late Meal Periods Is
Irrelevant Because He Improperly Excludes
Managers and Graveyard Shift Employees ..................... 15

            (b)    Walker's Opinion About Late Meal Periods Is
Irrelevant Because He Imbeds an Improper
Legal Standard of *De Minimis* ........................................ 16

            (c)    Walker's Speculative Opinion About the
Causes of Missing or Late Breaks Is
Inadmissible .................................................................... 16

    D.    Conclusion ...................................................................... 17

V.    MOTION IN LIMINE NO. 3 TO EXCLUDE VIOLATION RATE
EVIDENCE FROM BEING OFFERED IN DEFENSE TO
LIABILITY ........................................................................ 17

    A.    Introduction ...................................................................... 17

    B.    Facts and Procedure ......................................................... 17

    C.    Argument .......................................................................... 18

1.   Violation Rate Evidence Is Irrelevant to Liability
Under Federal Rules of Evidence 401 and 402, And
Thus Should Not Be Offered for That Purpose ........................... 18

2.   Evidence of Violation Rates, If Used to Prove
Liability, Would Be More Prejudicial Than Probative
Under Federal Rule of Evidence 403 ........................................... 20

D.   Conclusion ........................................................................................... 20

VI.   PLAINTIFFS' MOTION IN LIMINE NO. 4 TO PRECLUDE
DEFENDANT FROM CHALLENGING AUTHENTICITY OF
RAW EMPLOYEE TIME PUNCH DATA AND TO PRECLUDE
DEFENDANT FROM ARGUING THAT PVR RECORDS ARE
MORE ACCURATE THAN RAW PUNCH DATA ....................................... 20

A.   Introduction ......................................................................................... 20

B.   Facts and Procedure ........................................................................... 21

C.   Argument .............................................................................................. 21

1.   Defendant's Meritless Argument That the Punch
Records Are Somehow Unreliable Does Not Justify Its
Willful Refusal to Authenticate Them ....................................... 21

2.   The Employee Punch Records Are Admissible
Business Records Within the Meaning of Federal Rule
of Evidence 803(6) ....................................................................... 23

3.   Alternatively, the Raw Punch Data Is Admissible
Under the Residual Exception to the Hearsay Rule,
Federal Rule of Evidence 807 ..................................................... 25

4.    Defendant Has Relied Extensively on Its Raw Punch
Data in Seeking to Decertify the Class; Therefore,
Defendant Should Not Be Permitted to Challenge the
Records' Authenticity at Trial ....................................................... 26

5.    Defendant Has Cited No Evidence to Suggest That
PVR Records Are "More Accurate" Than Raw Punch
Data; Therefore, Any Such Argument Lacks
Foundation Under Federal Rules of Evidence 602,
701-705 ........................................................................................... 28

D.    Conclusion ................................................................................................ 28

VII.   PLAINTIFFS' MOTION IN LIMINE NO. 5 TO EXCLUDE
EVIDENCE OF JOB PERFORMANCE OR DISCIPLINE ............................ 29

A.    Introduction ............................................................................................. 29

B.    Facts and Procedure ............................................................................... 29

C.    Argument ................................................................................................. 30

1.    Evidence of Employee Discipline or Job Performance
Is Irrelevant Under Federal Rules of Evidence 401 and
402 ................................................................................................... 30

2.    Evidence of Employee Discipline or Job Performance
Is Far More Prejudicial than Probative Under Federal
Rule of Evidence 403 and Is Inadmissible Character
Evidence Under Rule 404(b) ......................................................... 31

3.    Defendant Refused to Produce Class Members'
Employee and Personnel Files and Should Be Barred
from Introducing, Relying on or Referring to Them at
Trial Under Federal Rule of Civil Procedure 37(c) ..................... 32

D.    Conclusion ................................................................................................ 33

VIII. PLAINTIFFS' MOTION IN LIMINE NO. 6 TO EXCLUDE ARGUMENT OR EVIDENCE CONCERNING CLASS CERTIFICATION .................................................................................... 33

A. Introduction ................................................................................. 33

B. Facts and Procedure .................................................................... 34

C. Argument ...................................................................................... 34

    1. Issues Relating to the Elements of Certification are Irrelevant and Inadmissible Under Federal Rules of Evidence 401 and 402 ...................................................... 35

    2. The Probative Value of Such Evidence is Outweighed By Prejudice to Plaintiffs and Should Be Excluded Under Federal Rule of Evidence 403 ................................ 37

D. Conclusion ................................................................................... 37

IX. PLAINTIFFS' MOTION IN LIMINE NO. 7 TO EXCLUDE EVIDENCE  REGARDING WHETHER CLASS MEMBERS WERE EXPRESSLY REQUIRED TO FOREGO MEAL OR REST BREAKS .................................................................................. 38

A. Introduction ................................................................................. 38

B. Argument ...................................................................................... 38

    1. Evidence of Explicit Instructions to Skip Meal or Rest Breaks Is Irrelevant Under Federal Rules of Evidence 401 and 402 .................................................................. 38

    2. Evidence Regarding Whether Class Members Were Instructed to Miss Breaks Would Be More Prejudicial Than Probative Under Federal Rule of Evidence 403 ................ 40

C. Conclusion ................................................................................... 40

X.      PLAINTIFFS' MOTION IN LIMINE NO. 8 TO EXCLUDE
        EVIDENCE REGARDING THE LIKEABILITY OF
        DEFENDANT ..................................................................................... 40
        A.      Introduction ........................................................................... 40
        B.      Facts and Procedure ............................................................. 41
        C.      Argument ............................................................................... 41
        D.      Conclusion ............................................................................. 42

XI.     PLAINTIFFS' MOTION IN LIMINE NO. 9 TO PRECLUDE
        DEFENDANT FROM ALTERING THE TESTIMONY OF ITS
        FRCP CORPORATE DESIGNEE UNDER RULE 30(b)(6) ......................... 42
        A.      Introduction ........................................................................... 42
        B.      Facts and Procedure ............................................................. 42
        C.      Argument ............................................................................... 43
        D.      Conclusion ............................................................................. 45

1

# TABLE OF AUTHORITIES

2

3 **FEDERAL CASES**

4 *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952 (9th Cir. 2013) .......................................... 19

5 *Allison v. McGhan Medical Corp.*, 184 F.3d 1300 (11th Cir. 1999)................................ 5

6 *Bourjaily v. United States*, 483 U.S. 171, 107 S. Ct. 2775,

7   97 L. Ed. 2d 144 (1987) ....................................................................................... 5

8 *Bustillos v. Bimbo Bakeries USA, Inc.*, No. C08-3553 SI, 2009 WL 175683

9   (N.D. Cal. June 19, 2009) .................................................................................. 30

10 *Casida v. Sears Holding Corp.*, Case No. 1:11-cv-01052 AWI JLT,

11   2012 WL 3260423 (E.D. Cal. Aug. 8, 2012) ...................................................... 7

12 *Coalition v. McCamman*, 725 F. Supp. 2d 1162 (E.D. Cal. 2010)................................ 44

13 *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) .................*passim*

14 *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326 (1980) ....................................... 36

15 *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011)....................................... 4

16 *Ellis v. Navarro*, No. C 07-5126 SBA, 2012 WL 3580284

17   (N.D. Cal. Aug. 17, 2012) ................................................................................. 31

18 *Garcia v. Pueblo Country Club*, 299 F.3d 1233 (10th Cir. 2002) ................................ 44

19 *Gen. Tel. of S.W. v. Falcon*, 457 U.S. 147 (1982).......................................................... 36

20 *General Elec. Co. v. Joiner*, 522 U.S. 136 (1997) .......................................................... 4

21 *Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217

22   (9th Cir. 2005) ................................................................................................... 44

23 *Hardin v. Wal-Mart Stores, Inc.*, No. 08-CV-0617 2011 WL 11563217

24   (E. D. Cal. Dec. 2, 2011)................................................................................... 43

25 *Herzog v. United States*, 226 F.2d 561 (9th Cir. 1955) .................................................. 31

26 *Howard v. CVS Caremark Corp.*, 2014 WL 7877404

27   (C.D. Cal. Dec. 9, 2014) ...............................................................................7, 10

28

In *Bustillos v. Bimbo Bakeries USA, Inc.*, No. C08-3553 SI, 2009 WL
175683 (N.D. Cal. June 19, 2009) ................................................................ 30

*In re Custodian of Records of Variety Distrib., Inc.*, 927 F.2d 244
(6th Cir. 1991) ............................................................................................. 27

*In re Genentech, Inc. Secs. Litig.*, No. C-88-4038, 1990 WL 120641
(N.D. Cal. June 8, 1990) .............................................................................. 36

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994) ........................................ 5

*Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262 (9th Cir. 1991) ....................................... 45

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) .................................................... 6

*Kurihara v. Best Buy Co.*, No. C 06-01884 MHP, 2007 U.S. Dist. LEXIS
64224 (N.D. Cal. Aug. 30, 2007) .............................................................. 19

*Marlo v. United Parcel Serv., Inc.* 639 F.3d 942 (9th Cir. 2011) ................................... 36

*Munoz v. Giumarra Vineyards Corp.*, 1:09-CV-0703, 2015 WL 5350563
(E.D. Cal. Sep. 11, 2015) ........................................................................ 43, 44

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051
(9th Cir. 2008) ................................................................................... 5, 10, 16

*Newell Puerto Rico, Ltd. v. Rubbermaid Inc.*, 20 F.3d 15 (1st Cir. 1994) ............... 9, 15

*O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404 (C.D. Cal. 2000) ........................... 36

*Ollier v. Sweetwater Union High School Dist.*, 768 F.3d 843 (9th Cir. 2014) .....5, 8, 16

*Rainey v. American Forest & Paper Ass'n*, 26 F. Supp. 2d 82
(D.D.C. 1998) ..................................................................................... 43, 44

*Samuels v. Holland American Line-USA Inc.*, 656 F.3d 948 (9th Cir. 2011) ................. 9

*Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*,
No. CV 02-2258 JM (AJB), 2007 U.S. Dist. LEXIS 16356, 2007 WL
935703 (S.D. Cal. Mar. 7, 2007) ................................................................. 5

*U.S. v. Freeman*, 498 F.3d 893 (9th Cir. 2007) ........................................................... 5

*United States v. Alisal Water Corp.*, 431 F.3d 643 (9th Cir. 2005) .............................. 11

1  *United States v. Chang An-Lo*, 851 F2d. 547 (2d Cir. 1988) .........................................25

2  *United States v. Charley*, 189 F.3d 1251 (10th Cir. 1999) ...........................................12

3  *United States v. Cherer*, 513 F.3d 1150 (9th Cir. 2008)................................................32

4  *United States v. Espinosa*, 827 F.2d 604 (9th Cir. 1987) ................................................5

5  *United States v. Geston*, 299 F.3d 11309 (9th Cir. 2002)..............................................12

6  *United States v. Manning*, 56 F3d 1188 (9th Cir. 1995)................................................27

7  *United States v. Sine*, 493 F.3d 1021 (9th Cir. 2007)....................................................12

8  *United States v. Vallejo*, 237 F.3d 1008 (9th Cir. 2001), *overruled on other*

9     *grounds by* 246 F.3d 1150 (9th Cir. 2001) ................................................ 30, 35, 40, 41

10  *United States v. Workinger*, 90 F3d 1409 (9th Cir. 1996)..............................................25

11  *Vedachalam v. Tata Consultancy Servs., Ltd.*, No. C 06-0963 CW,

12     2012 U.S. Dist. LEXIS 46429 (N.D. Cal. Apr. 2, 2012)...........................................19

13  *Walker v. Contra Costa County*, No. C 03-3723 TEH, 2006 U.S. Dist.

14     LEXIS 86339, 2006 WL 3371438 (N.D. Cal. Nov. 21, 2006)...................................5

15  *Yeager v. Bowlin*, 693 F.3d 1076 (9th Cir. 20120) ........................................................44

16

17  **STATE CASES**

18  *Brinker Restaurant Corp. v. Super. Ct.*, 53 Cal. 4th 1004 (2012)..........................*passim*

19  *Faulkinbury v. Boyd & Associates, Inc.*, 216 Cal. App. 4th 220 (2013) ......................19

20

21  **FEDERAL STATUTES**

22  Fed. R. Civ. P. 23 ....................................................................................................33, 36

23  Fed. R. Civ. P. 23(a)......................................................................................................36

24  Fed. R. Civ. P. 23(c)(2).................................................................................................. 2

25  Fed. R. Civ. P. 30(b)(6)..........................................................................................*passim*

26  Fed. R. Civ. P. 30(e).....................................................................................................44

27  Fed. R. Civ. P. 37(c)......................................................................................................33

28

PLAINTIFFS' OMNIBUS MOTIONS IN LIMINE

Fed. R. Civ. P. 37(c)(1) ................................................................. 33

Fed. R. Evid. 401 ................................................................. *passim*

Fed. R. Evid. 401

   Advisory committee notes to the 1972 Proposed Rules ........................... 30, 35, 39, 41

Fed. R. Evid. 402 ............................................................. 1, 18, 33, 35

Fed. R. Evid. 403 ................................................................. *passim*

Fed. R. Evid. 404 ................................................................. 1

Fed. R. Evid. 404(b) ................................................................. 32

Fed. R. Evid. 408 ................................................................. 1

Fed. R. Evid. 602 ................................................................. 28

Fed. R. Evid. 701 ................................................................. 7, 28

Fed. R. Evid. 702 ................................................................. *passim*

Fed. R. Evid. 803 ................................................................. 29

Fed. R. Evid. 803(6) ................................................................. 20, 23, 24, 25

Fed. R. Evid. 807 ................................................................. 25, 29

Fed. R. Evid. 902(11) ................................................................. 20

**STATE STATUTES**

8 Cal. Code Regs. § 11050(12)(B) ................................................................. 39, 42

Cal. Lab. Code § 116.7(b) ................................................................. 39

Cal. Lab. Code § 226.7 ................................................................. 39, 42

Cal. Lab. Code § 512(a) ................................................................. 39, 42

Cal. Lab. Code § 1198.5 ................................................................. 32

PLAINTIFFS' OMNIBUS MOTIONS IN LIMINE

SECONDARY AUTHORITIES

JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL
    EVIDENCE § 6.01[1-6]
    (Joseph M. McLaughlin ed., Matthew Bender 2d ed. 1997)................... 30, 35, 40, 42

Reference Manual on Scientific Evidence, Shari Seidman Diamond,
    Federal Judicial Center (3d ed. 2011) ....................................................6, 12

Rutgers University Libraries, "Popular Literature vs. Scholarly Peer-
    Reviewed Literature: What's the Difference?" at
    http://www.libraries.rutgers.edu/scholarly_articles ......................................7

Plaintiffs and Class Representatives Sandrika Medlock, Lisa Hardiman and Miriam Leyva ("Plaintiffs") hereby submit their Omnibus Motion in Limine consisting of nine separate motions, together with the Declaration of Matthew T. Theriault ("Theriault Decl.") and exhibits thereto. Plaintiffs respectfully request separate rulings as to each of these nine motions, as set forth in Plaintiffs' [Proposed] Order, filed concurrently.

## I.   INTRODUCTION

Plaintiffs request that this Court exclude nine types of evidence from the trial of this action under Federal Rules of Evidence 402-404, 408. These motions seek the exclusion of the following evidence to be presented by Defendants Taco Bell of America, Inc. and Taco Bell Corp. (together "Taco Bell" or "Defendant"). These motions are:

1.   Motion to Exclude the Testimony of Robert Crandall.

2.   Motion to Limit the Testimony of Defendant's Expert Jonathan Walker.

3.   Motion to Exclude Violation Rate Evidence From Being Offered In Defense to Liability.

4.   Motion to Preclude Defendant from Challenging Authenticity of Raw Employee Time Punch Data and to Preclude Defendant from Arguing that Payroll Verification Report Records Are More Accurate Than Raw Punch Data.

5.   Motion to Exclude Evidence of Plaintiffs or Class Member Job Performance or Discipline.

6.   Motion to Exclude Argument or Evidence Concerning Class Certification.

7.   Motion to Exclude Evidence Regarding Whether Class Members Were Expressly Required to Forego Meal or Rest Breaks.

8.   Motion to Exclude Evidence Regarding the Likeability of Defendant.

9.   Motion to Preclude Defendant From Altering Testimony of its Corporate Designee.

## II.     COMPLIANCE WITH MEET AND CONFER REQUIREMENT

On December 23, 2015, Plaintiffs' counsel sent to Defendant's counsel a list of anticipated motions in limine and the bases for exclusion. On December 28, 2015, the parties met and conferred over the phone regarding Plaintiffs' various anticipated motions in limine. The parties were able to reach an agreement on some evidentiary issues (*see* Pretrial Statement, § 14, Dkt. No. 580). The parties were unable to reach a stipulation with respect to the issues that are the subject of motions in limine nos. 1-9. (Theriault Decl., ¶ 2.)

On January 4, 2016, Plaintiffs sought Defendant's stipulation on motion in limine no. 9. The parties were unable to reach an agreement. (Theriault Decl., ¶ 2.)

## III.    PLAINTIFFS' MOTION IN LIMINE NO. 1 TO EXCLUDE THE TESTIMONY OF DEFENDANT'S EXPERT ROBERT CRANDALL

### A.     Introduction

Plaintiffs file this motion in limine to exclude the testimony of Robert Crandall, a prospective expert witness proffered by Defendant. Crandall should not be permitted to testify at trial because Crandall's opinions do not meet the standard for expert opinions under Federal Rule of Evidence 702. He lacks the necessary academic qualifications to analyze or critique the survey conducted by Plaintiffs' expert Danna Moore, Ph.D. He has proffered many unsupported, irrelevant, and highly prejudicial opinions, including impermissible legal opinions; and he has even engaged in *ad hominem*, highly speculative attacks on Dr. Moore's credibility.

No part of Crandall's testimony meets the rigorous standard for expert opinions set forth in Rule 702 or in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993). As such, Crandall should be barred from testifying as an expert witness at trial. Alternatively, if the Court finds that Crandall is qualified to comment on Plaintiffs' survey, despite the absence of credentials, Plaintiffs request in the alternative that, at minimum, the Court exclude Crandall's unsupported and irrelevant opinions (detailed in III.C.3., below).

## B.     Facts and Procedure

The Court certified Plaintiffs' meal and rest period claims. (Dkt. Nos. 341, 344 and 520.) Rule 23(c)(2) notice to the Class Members has been satisfied. (Theriault Decl., ¶ 3.)

Following class notice, Dr. Danna Moore of Washington State University conducted a survey concerning the meal and rest break experiences of the Class Members. (Theriault Decl., ¶ 4.) Moore submitted her final report on August 3, 2015. (*Id.*) Taco Bell submitted the Report of Robert Crandall ("Crandall Report") on September 21, 2015, ostensibly to rebut Moore's opinions. (*Id.*, ¶ 5; *see also* Crandall Report, Exhibit B to the Theriault Decl.) Crandall states that he has performed labor studies, and economic and statistical analyses in a number of wage and hour class actions. (Crandall Report, ¶ 2.) Crandall holds an M.B.A., but has no other formal education in the field of survey methodology. (Exhibit C to Theriault Decl., Crandall Dep. Tr., 14:19-24 (testifying to holding no degree in survey methodology or applied mathematics).)[1] His experience relevant to survey methodology is limited to providing critiques of surveys. (Crandall Report, ¶ 2 ("I . . . review surveys and other studies conducted by other experts to evaluate the validity of the survey results.").)

Crandall's Report purports to critique Moore's survey, finding fault in all questions that elicit responses that, in Crandall's mind, are "good" for the Plaintiffs. (*See*, *e.g.*, Crandall Report, ¶ 6.) In the process of this critique by Crandall – who does not qualify as a survey expert – Crandall presents a number of opinions that are inadmissible. First, Crandall provides duplicative testimony of Taco Bell's other expert, Dr. Walker, who reviewed the Class Members' time records. (*Id.*, ¶¶ 3 and 4 (citing Walker's Report).) Second, Crandall provides inadmissible lay testimony about what constitutes an employer's policy. (*Id.*, ¶ 3.) Third, Crandall provides inadmissible legal conclusions. (*Id.*, ¶ 49, 31:13-15 (raising "liability" concerns).) Fourth, Crandall bases

---

[1] Crandall was deposed on October 2, 2015. (*See* Deposition Transcript of Robert Crandall ("Crandall Dep. Tr."), Exhibit C to the Theriault Decl.)

1   his opinion on mere speculative evidence that 60 surveyed Class Members supposedly

2   worked for franchised Taco Bell locations and, therefore, they could have been confused

3   when providing answers. (*Id.*, ¶ 42.)

4       Relying on the Crandall Report, Taco Bell moved to exclude Dr. Moore on

5   October 19, 2015. (Dkt. No. 546.) Following the hearing on this motion on December 2,

6   2015, the Court denied Taco Bell's motion because the bulk of Taco Bell's arguments

7   went to the weight of her opinion, and not its admissibility. (Dkt. No. 569, *passim*.)

8   Critically, the Court found that the survey "was conducted according to accepted

9   principles" and that "the questions that were asked by Dr. Moore as part of the survey

10  are relevant to the claims alleged in this case, and therefore Dr. Moore's testimony about

11  the survey results will assist the trier of fact in making a liability determination." (*Id.*,

12  7:10-12 and 12:3-4.) Simultaneously, the Court denied Taco Bell's decertification

13  attempt. (Dkt. No. 572.)

14      **C.    Argument**

15          **1.    The Standard for Expert Opinions Under Rule 702**

16      Under Rule 702, "[i]f scientific, technical, or other specialized knowledge will

17  assist the trier of fact to understand the evidence or to determine a fact in issue, a witness

18  qualified as an expert by knowledge, skill, experience, training, or education, may testify

19  thereto in the form of an opinion or otherwise, if (1) the testimony is based upon

20  sufficient facts or data, (2) the testimony is the product of reliable principles and

21  methods, and (3) the witness has applied the principles and methods reliably to the facts

22  of the case." Fed. R. Evid. 702.

23      Before admitting expert testimony, the trial court must make "a preliminary

24  assessment of whether the reasoning or methodology underlying the testimony is

25  scientifically valid and of whether that reasoning or methodology properly can be

26  applied to the facts in issue." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S.

27  579, 592-93 (1993); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th

28  Cir. 2011) ("Under *Daubert*, the trial court must act as a 'gatekeeper' to exclude junk

science that does not meet Federal Rule of Evidence 702's reliability standards by making a preliminary determination that the expert's testimony is reliable"). In conducting this preliminary assessment, the trial court is vested with broad discretion. *See, e.g., General Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *United States v. Espinosa*, 827 F.2d 604, 611 (9th Cir. 1987) ("The decision to admit expert testimony is committed to the discretion of the district court and will not be disturbed unless manifestly erroneous").

"The party offering the expert bears the burden of establishing that Rule 702 is satisfied." *Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*, No. CV 02-2258 JM (AJB), 2007 U.S. Dist. LEXIS 16356, 2007 WL 935703, *4 (S.D. Cal. Mar. 7, 2007) (citing *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999) (in turn citing *Daubert*, 509 U.S. at 592 n. 10)); *see also Walker v. Contra Costa County*, No. C 03-3723 TEH, 2006 U.S. Dist. LEXIS 86339, 2006 WL 3371438, *1 (N.D. Cal. Nov. 21, 2006) (same, citing *Bourjaily v. United States*, 483 U.S. 171, 172, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1987), and *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994)). An expert's opinion is admissible if: (1) the opinion is based on "scientific, technical, or other specialized knowledge;" (2) it will "help the trier of fact" in understanding a fact in issue; (3) the expert has appropriate qualifications; and (4) the opinion is reliable. Fed. R. Evid. 702.

Aside from the preliminary assessment of whether a proffered witness qualifies as an expert, several items are improper as expert testimony. Expert testimony consisting of legal conclusions is inadmissible. *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058-60 (9th Cir. 2008). Cumulative evidence is also inadmissible. Fed. R. Evid. 403. Lay testimony masquerading as expert testimony is prohibited. *See*, *e.g.*, *U.S. v. Freeman*, 498 F.3d 893, 903 (9th Cir. 2007) ("the blurred distinction between Shin's expert and lay testimony may have allowed him to rely upon and convey inadmissible hearsay evidence.") Expert opinions based on speculative assumptions are inadmissible. *Ollier v. Sweetwater Union High School Dist.*, 768 F.3d 843, 861 (9th Cir.

2014).

## 2.    Crandall Is Not Qualified to Analyze Any Survey

A witness may qualify as an expert based on his or her knowledge, skill, training, experience or education in the field in question. Fed. R. Evid. 702. The Court is required to make a determination whether Crandall has "sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999). Survey methodology is a highly specialized field, and "experts prepared to . . . **analyze** a survey generally should have **graduate** training in psychology (especially social, cognitive, or consumer psychology), sociology, political science, marketing, communication sciences, statistics or a related discipline; that training should include courses in survey research methods, sampling, measurement, interviewing, and statistics." Reference Manual on Scientific Evidence, Shari Seidman Diamond, Federal Judicial Center (3d ed. 2011) (the "Scientific Reference Manual"), p. 375 (emphasis added). Crandall has **no** graduate training on anything remotely related to survey methodology. (Crandall Report, ¶ 2 (citing MBA).)  Indeed, Crandall admits he has none of the formal education that the Reference Manual mentions as a necessary prerequisite to analyze surveys:

> Q:    Do you have a – a Ph.D that – in – in survey methodology?
> A:    No. I do not.
> Q:    Do you have a Ph.D in statistics?
> A:    No. I do not.
> Q:    Applied mathematics?
> A:    No.
> Q:    Do you have a Ph.D. at all?
> A:    No. I do not.

(Deposition Transcript of Robert Crandall, *Felix v. Automobile Club of Southern California*, Case No. 07CC01421 (January 29, 2013), Exhibit D to the Theriault Decl., 65:3-14.)

Moreover, the Reference Manual also suggests that "[p]ublication in peer-reviewed journals, authored books, fellowship status in professional organizations, faculty appointments, consulting experience, research grants, and membership on

scientific advisory panels for government agencies or private foundations are indications of a professional's area and level of expertise." Reference Manual, p. 375. Crandall's CV suggests that Crandall has written two articles on surveys in the last 10 years, apparently for the Daily Journal.[2] (Crandall Report, CV, p. 11.) Crandall's CV speaks to nothing that even remotely qualifies him to competently speak about survey methodology. His lack of education and training has not stopped him from trying to give expert opinions on a number of topics for which he was not qualified. *See*, *e.g.*, *Casida v. Sears Holding Corp.*, Case No. 1:11-cv-01052 AWI JLT, 2012 WL 3260423 at *6 (E.D. Cal. Aug. 8, 2012) (Crandall's report was rejected because he failed to explain his conclusions); *Howard v. CVS Caremark Corp.*, 2014 WL 7877404 at *9, fn.7 (C.D. Cal. Dec. 9, 2014) ("For the purposes of this Order, the Court does not consider or rely on the Crandall Report to the extent that CVS's expert offers improper legal conclusions or seeks to address merits of the case.")[3] And although Crandall has likely submitted what he considers to be expert opinion concerning surveys used in litigation (for which he was never qualified to do in the first instance), given his lack of necessary training, his opinion here should be stricken entirely. Fed. R. Evid. 701 (lay witnesses are precluded from expressing an opinion based on scientific, technical or other specialized knowledge within the scope of Fed. R. Evidence 702.)

---

[2] The Daily Journal is a newspaper and does not qualify as "peer-reviewed." *See* Rutgers University Libraries, "Popular Literature vs. Scholarly Peer-Reviewed Literature: What's the Difference?" at http://www.libraries.rutgers.edu/scholarly_articles ("popular literature" includes newspapers such as the New York Times and magazines such as Newsweek, in which journalists report on current events; whereas "Scholarly literature is written by researchers who are experts in their field… [and who] are employed by colleges, universities, or other institutions of education or research…. The most prestigious academic journals subject articles to the peer-review process. This means that, before an article is accepted for publication, it is reviewed by several experts in the field, who suggest possible changes, and recommend to the editor of the journal whether or not to publish the article").

[3] During his deposition in this case, Crandall failed to admit that any of his reports were stricken. (Crandall Dep. Tr., 13:15-16.)

3.     **Crandall's Report Contains Unsupported, Irrelevant and Unduly Prejudicial Opinions**

(a)     **Crandall's Layperson's Opinion Concerning Meal Period "Policies" Is Inadmissible**

It is axiomatic that an expert may provide an opinion based on "scientific, technical, or other specialized knowledge," which will "help the trier of fact." Fed. R. Evid. 702. Crandall's Report contains unsupported, unscientific opinions, which, if presented to the jury, will unfairly prejudice Plaintiffs' case. Crandall, therefore, should be prohibited from presenting the following testimony:

- "Suppose plaintiffs' theory that the Matrix represents Taco Bell's scheduling policy was true, then the expected outcome would be all or almost all meal breaks would start after the first 5 hours of the shift." (Crandall Report, ¶ 3.)

Crandall's "expected outcome" of the effect of a company policy has "no reliable basis in the knowledge and experience of (the expert's) discipline," and therefore it must be excluded. *Daubert*, 509 U.S. at 592. First, what is or is not a "policy" is **not** expert opinion. The fact of Taco Bell's policy is presented by **facts** and written documents presented by the **fact** witnesses. *Id.*, at 591 (expert opinion testimony is appropriate when the factual issue is one that the trier of fact would not ordinarily be able to resolve without technical or specialized assistance). Second, Crandall sets forth exactly zero scientific or technical support for this opinion, and the impossibly high criteria that Crandall sets forth for a determination of what constitutes meal or rest period policy – requiring "all or almost all" shifts to be in violation of the law – is not supported by even one case (or common sense). *Ollier, supra*, 768 F.3d at 861 (expert's "personal opinions and speculation rather than [a] systematic assessment" is inadmissible); *see also Daubert I*, 509 U.S. at 590 (noting that expert testimony based on mere "subjective belief or unsupported speculation" is inadmissible).

Indeed, although Crandall has purportedly worked on over 200 wage and hour cases (invariably, for defendants), Crandall himself has *never* seen a situation where the

1   violation rate has approached 100%, the standard that he imposes here. (Exhibit C to

2   Theriault Decl., Crandall Dep. Tr., 16:21-18:25 ("I've never seen a hundred percent

3   violation rate, no."). Crandall's opinion in this regard must be precluded because it is not

4   "properly grounded [or] well-reasoned" and it is otherwise "speculative". Fed. R. Evid.

5   702, Adv. Comm. Notes (2000); *Samuels v. Holland American Line-USA Inc.*, 656 F.3d

6   948, 952-953 (9th Cir. 2011) (expert did not produce any material from cruise-line

7   industry to support statement that it is common knowledge waters were extremely

8   dangerous for swimming). Not only is this opinion **not** the product of reliable principles

9   and methods, Crandall's opinion in this regard is unduly prejudicial in that it will

10  mislead the jury into concluding that a 100% violate **is** required before a liability finding

11  can be rendered. Fed. R. Evid. 403; *Newell Puerto Rico, Ltd. v. Rubbermaid Inc.*, 20

12  F.3d 15, 20 (1st Cir. 1994) (exclusion of expert opinion is appropriate where probative

13  value is outweighed by the risk the jury might improperly consider the opinion as

14  independent proof).

### (b)   Crandall's Layperson's Opinion as to Rest Break "Policies" Is Inadmissible

17          Similarly, Crandall provides purported "expert" opinion as to Taco Bell's rest

18  period policies. Relying on time record analysis (by another defense expert, Walker),

19  Crandall states that the "percentage of shifts between 6 and 7 hours without a recorded

20  second rest break is only 36.5%," which "is not the outcome that one would expect if

21  plaintiffs' theory [that Taco Bell's rest break policies fail to authorize and permit

22  employees to take a net 10-minute rest break per every 4 hours worked] were true."

23  (Crandall Report, ¶ 4.) This is precisely the same sort of unscientific, unsupported,

24  prejudicial testimony that Crandall makes regarding Taco Bell's meal period policies,

25  outlined above. It should also be excluded for the same reasons.

26          In the same paragraph, Crandall also plays the role of Taco Bell's lawyers,

27  writing "the present matter may devolve into the questions regarding who is setting

28  policies to authorize rest breaks and provide timely meal breaks." (Crandall Report, ¶ 4.)

1   There is nothing scientific, specialized or expert about this observation, and if anything,

2   he imposes his own inadmissible legal opinion about questions of liability. *See*

3   *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058-60 (9th Cir. 2008)

4   (legal conclusions are inadmissible).

### (c)   Crandall's Legal Opinions Are Inadmissible

6   As stated above, Crandall provides unsupported legal opinions about what

7   constitutes liability in cases involving facially violative meal and rest period policies.

8   (*See* Crandall Report, ¶ 3 (requiring all or almost all shifts to be in violation).) His Report

9   contains other similar, inadmissible legal commentary. (Crandall Report, 13:13-15 ("The

10   variation in meal and rest break outcomes for employees in the same store combined

11   with the relatively small number of respondents per store causes concerns if liability

12   determinations are based on the break timing policies and practices").) Crandall is not a

13   lawyer, and he should not be permitted to embed any aspect of his opinion with legal

14   opinions about what constitutes or does not constitute "liability." *See Nationwide*

15   *Transp. Fin.*, *supra*, 523 F.3d at 1058-60 (legal conclusions are inadmissible).

16   Indeed, Crandall is no stranger to having his legal opinions stricken. *See Howard*

17   *v. CVS Caremark Corp.*, 2014 WL 7877404 at *9, fn.7 (C.D. Cal. Dec. 9, 2014) ("For

18   the purposes of this Order, the Court does not consider or rely on the Crandall Report to

19   the extent that CVS's expert offers improper legal conclusions or seeks to address merits

20   of the case.") Notably, *Howard* involved a class certification motion, where there was

21   little danger of the court buying into Crandall's interpretation of the law. By contrast,

22   here, the danger of Crandall's testimony concerning legal issues is considerably

23   amplified because his testimony will go to the jury.

24   Thus, to the extent the Court finds Crandall is properly qualified as an expert,

25   Plaintiffs request, in the alternative, that the Court should order his testimony be limited

26   to non-legal, expert opinions only.

27

28

1       **(d)**     **Crandall's Opinion that the Survey Is Unreliable**

2                  **Because 60 Surveyed Class Members Worked for**

3                  **Franchised Taco Bell Locations Is Inadmissible**

4         Trial courts must make "a preliminary assessment of whether the reasoning or

5 methodology underlying the testimony is scientifically valid and of whether that

6 reasoning or methodology properly can be applied to the facts in issue." *Daubert*,

7 *supra*, 509 U.S. at 592-93; *see also id.*, at 590 (noting that expert testimony based on

8 mere "subjective belief or unsupported speculation" is inadmissible). Crandall concludes

9 that "more than 10% of those who responded to Dr. Moore's survey should be excluded

10 from the statistics she reports" because "at least 60 employees who responded to

11 Dr. Moore's survey worked at both franchise locations and corporate-owned locations

12 during the class period." (Crandall Report, ¶ 42.) First, Crandall asserts no scientific

13 authority for excluding survey responses of individuals within a population. This is yet

14 another demonstration of how Crandall's lack of formal education in survey

15 methodology undermines any opinion he may have. Second, as Plaintiffs pointed out in

16 their opposition to Taco Bell's Motion to Exclude Moore, Crandall's opinion that 60

17 surveyed Class Members worked for franchised locations has no basis in fact. (*See* Dkt.

18 No. 561, 13:14-14:10.) The Court also held that "[t]here is no evidence before the Court

19 that 60 surveyed class members worked for franchised Taco Bell locations." (Dkt. No.

20 569, 9:10-11.) Accordingly, there is no scientific basis for Crandall to conclude that any

21 percentage of the responses should have been excluded from Moore's Report, and

22 Crandall's testimony in this regard should be excluded.

23                **(e)**     **Crandall's Cumulative Testimony Should Be Excluded**

24         District Courts maintain discretion to exclude cumulative expert testimony. *See*

25 *United States v. Alisal Water Corp.*, 431 F.3d 643, 659-660 (9th Cir. 2005). Crandall's

26 Report is laden with admittedly cumulative testimony that should be excluded.

27 Crandall's statement that "Taco Bell's expert, Dr. Walker, found that only 16.8% of

28 meal breaks qualified as 'late' meal breaks" (Crandall Report, 6:14-15) therefore should

1    be excluded. Moreover, any additional repetition of Walker's analysis should not be

2    permitted during trial.

3         **(f)      Crandall's *Ad Hominem*, Speculative Attacks on**

4              **Moore's Credibility Are Inadmissible**

5         Crandall embeds his purportedly expert opinions with *ad hominem* attacks on

6    Plaintiffs and Moore, which are plainly inadmissible because they do not "help the trier

7    of fact." *United States v. Charley*, 189 F.3d 1251, 1267 (10th Cir. 1999); *United States v.

8    Sine*, 493 F.3d 1021, 1040 (9th Cir. 2007). Crandall remarks that Plaintiffs engaged in a

9    "hide-the-ball" strategy when they properly objected to the disclosure of the survey

10   respondents' names and responses.[4] (Crandall Report, ¶ 33.) Aside from the fact there is

11   nothing scientific or technical about this opinion, this remark (and similar remarks) are

12   highly prejudicial to Plaintiffs and otherwise encroach upon the jury's exclusive function

13   to make credibility determinations. Crandall also provides speculative, inadmissible

14   evidence as to Moore's motivations: "Perhaps the reason why such opinions are not

15   forthcoming from Dr. Moore is that she is very much aware of the numerous problems

16   with her survey." (*Id.*) Opinions and testimony of this nature invades the traditional

17   province of the jury in making credibility determinations and is otherwise inadmissible.

18   *See United States v. Geston*, 299 F.3d 11309, 1135-1137 (9th Cir. 2002) (it is jurors'

19   responsibility to determine credibility; testimony regarding a witness' credibility is

20   prohibited unless it is admissible as character evidence).

21        **D.     Conclusion**

22        For the foregoing reasons, the Court should exclude Crandall's testimony in its

23   entirety. Alternatively, should the Court permit Crandall to testify regarding the survey,

24   _____

25   [4] In addition, Crandall's comment further demonstrates his lack of qualifications
     to provide any opinions regarding survey evidence. "Professional surveyors, as a rule,
26   promise confidentiality [to survey respondents] in an effort to increase participation rates
     and to encourage candid responses . . . the professional standards for survey researchers
27   generally prohibit disclosure of respondents' identities." Scientific Reference Manual,
     *supra*, p. 417-18 and n.245 (citing professional ethics standards and by-laws). Crandall's
28   ignorance of these professional ethical standards speaks volumes.

1  the Court should limit Crandall's testimony to exclude the unsupported, irrelevant, and

2  prejudicial matters discussed above.

3  **IV.    PLAINTIFFS' MOTION IN LIMINE NO. 2 TO LIMIT TESTIMONY OF**

4        **DEFENDANT'S EXPERT JONATHAN WALKER**

5        **A.    Introduction**

6        Dr. Jonathan Walker, Taco Bell's second expert, analyzed Taco Bell's time

7  records of the class. Walker's Report provides calculations of the late meal punches and

8  second rest breaks. Walker also offers opinions that are irrelevant and prejudicial.

9  Specifically, Walker improperly redefines the Meal Break Class to exclude entire

10 categories of employees and shift lengths, and then provides opinions based on this

11 modified definition. Walker also provides speculative, non-scientific opinions about the

12 causes of meal and rest break violations. Accordingly, Walker's opinion concerning his

13 redefined class, and any opinions flowing from that analysis, should be excluded.

14 Additionally, Walker should be barred from providing non-expert, speculative testimony

15 concerning the causes of meal and rest break violations.

16       **B.    Facts and Procedure**

17       The Court certified Plaintiffs' meal and rest period claims. (Dkt. Nos. 341, 344

18 and 520.) In numerous rounds of class certification, Taco Bell argued that managers and

19 graveyard shift employees should not have been included in the meal break classes

20 because they purportedly signed on-duty meal period agreements.[5] Plaintiffs have

21 argued that the existence of an on-duty meal period agreement does not excuse *late* meal

22 periods. (*See*, *e.g.*, Plaintiffs' Opposition to Taco Bell's Motion to Alter or Amend the

23 Court's Order re Certification, Dkt. No. 465, 11:13-12:25.) The Court denied Taco

24 Bell's motion to amend the certification order on this basis. (Dkt. No. 487.) Accordingly,

25

26       [5] *See*, *e.g.*, Taco Bell's New Opposition to Plaintiffs' Motion for Class
Certification, Dkt. No. 317, 13:24-16:13; Taco Bell's Opposition to Plaintiffs' Motion to

27 Alter or Amend the Court's Order re Certification, Dkt. No. 513, 6:16-7:4 and 24:24-
25:7; Taco Bell's Motion to Alter or Amend the Court's Order re Certification, Dkt. No.

28 458, 3:10-11 and 13:13-14:19.

the Meal Break Class consists of "all persons who work or worked as a non-exempt, hourly-paid employee," and it does not exclude individuals who purportedly signed on-duty meal period agreements. (Dkt. Nos. 341, 344.)[6]

In order to determine membership in the respective Classes, Plaintiffs conducted discovery into Taco Bell's timekeeping system. (Theriault Decl., ¶ 3.) Taco Bell maintains the actual punch data in searchable, electronic format. (*Id.*) Taco Bell employed Dr. Jonathan Walker to analyze the data. (*See* Report of Jonathan Walker, attached to the Theriault Decl. as Exhibit E.)

In his report, Walker concludes that there are "only 988,992 'late recorded meal' shifts and shifts with no recorded meal period . . . after removing the shifts that fall into one of the categories above." (Walker Report, ¶ 10.) The categories Walker excluded consist of those that include "on-duty meal agreements, seem to include a timely *paid* meal period or were late by some *de minimis* amount." (*Id.*) Walker also concludes that "[t]he variation and skew in the incidence of late meal periods recorded in Taco Bell's raw punch data are inconsistent with Taco Bell implementing a uniform policy only to provide meal periods after the end of the fifth hour that the employee works." (*Id.*, ¶ 12.) Walker provides speculative opinions as to the cause of missed rest and meal breaks, including "restaurant- or manager-specific characteristics and employee-specific circumstances. For example, an employee may choose not to take his or her full allotment of paid breaks because he or she is confused . . ." (*Id.*, ¶ 16.)

---

[6] The Meal Break Class definition is: "All persons who work or worked as a non-exempt, hourly paid employee at a corporate-owned Taco Bell restaurant in California from September 7, 2003, until July 1, 2013 who worked for a period of time in excess of six hours and who worked for periods longer than five hours without a meal period of not less than thirty minutes as reflected in Defendants' employees' time records." The Meal Break Class period is limited to July 1, 2013, the last shift date that the time records revealed at the time notice was sent.

C.     Argument

1.     **Walker's Report Contains Unsupported, Irrelevant and Unduly Prejudicial Opinions**

(a)     **Walker's Opinion About Late Meal Periods Is Irrelevant Because He Improperly Excludes Managers and Graveyard Shift Employees**

In his meal break analysis, Walker excludes work shifts that were "logged by managers or graveyard shift employees that [he understands] to be parties to on-duty meal agreements." (Walker Report, ¶¶ 4, 34 and 35.) Leaving aside the lack of evidence of "on-duty meal agreements," the employees included in the class are "all persons who work or worked as a non-exempt, hourly-paid employee." (Dkt. No. 341.) Thus, Walker provides shift counts and potential violations based on his own class of persons, and not the one that the Court actually certified. Indeed, from the 2,511,475 meal break violations that he did find, he excludes 888,694 shifts reflecting non-compliant time punches worked by managers and 141,938 shifts reflecting non-compliant time punches worked by graveyard shift employees. (Walker Report, ¶¶ 33-35.) Taco Bell raised this same argument in multiple rounds of briefing, most notably, when it attempted to modify the Meal Break Subclass definition to exclude these individuals (Dkt. No. 458, 3:10-11 and 13:13-14:19), which the Court denied (Dkt. No. 487). Walker's resulting opinion – that there are "*only* 988,992 'late recorded meal' shifts" – is irrelevant, because it is based upon faulty assumptions about the makeup of the class. Additionally, because it skews the violation count downward (from 2.5M to 1M), it is also unduly prejudicial. Fed. R. Evid. 403; *Newell Puerto Rico, Ltd. v. Rubbermaid Inc.*, 20 F.3d 15, 20 (1st Cir. 1994) (exclusion of expert opinion is appropriate where probative value is outweighed by the risk the jury might improperly consider the opinion as independent proof).

**(b)** **Walker's Opinion About Late Meal Periods Is Irrelevant Because He Imbeds an Improper Legal Standard of *De Minimis***

Walker also deducts 114,496 shifts "that were late by 10 minutes or less" (Walker Report, ¶ 36) because he considers this time period to be *de minimis* (*id.*, ¶ 10). This conclusion, which is prejudicial to Plaintiffs, reworks the Meal Break Subclass definition by excluding individuals who had meal periods starting between 5 hours and 5 hours and 10 minutes. (*Contra* Dkt. No. 341, 18:6-9 (certification order defining class as those "who worked for periods longer than five hours" without a meal period).) There is no basis in the statute, case law, or in law of this case for adopting a supposedly *de minimis* grace period of 10 minutes. *Ollier*, *supra*, 768 F.3d at 861 (expert's "personal opinions and speculation rather than [a] systematic assessment" is inadmissible); *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058-60 (9th Cir. 2008) (legal conclusions are inadmissible).

**(c)** **Walker's Speculative Opinion About the Causes of Missing or Late Breaks Is Inadmissible**

Experts must present opinions based on "scientific, technical, or other specialized knowledge," which will "help the trier of fact." Fed. R. Evid. 702. Walker provides unsupported, unscientific opinions about the potential causes of meal and rest break violations: "Alternatively, he or she may choose to forego a break at the end of an unexpectedly long shift because of prior commitments. Similarly, an employee who stays late for an unexpected rush or to cover for an employee who is late may take an unrecorded break afterward without going through the exercise of punching out for break." (Walker Report, ¶ 16.)

Walker's opinion in this regard is mere speculation and must be excluded. *Ollier*, *supra*, 768 F.3d at 861 (expert's "personal opinions and speculation rather than [a] systematic assessment" is inadmissible); *see also Daubert I*, 509 U.S. at 590 (noting that expert testimony based on mere "subjective belief or unsupported speculation" is

1  inadmissible). Further, because Plaintiffs' theory of liability focuses on whether

2  Defendant's policies violate California law, there is no need to delve into "why"

3  employees missed breaks at all. It is irrelevant to ask "why" in this case because that

4  question only relates to a waiver defense, and the defense is not available to Defendant

5  under Plaintiffs' theory of liability. *See Brinker Restaurant Corp. v. Super. Ct.*, 53 Cal.

6  4th 1004, 1033 (2012) (where an illegal uniform policy exists, the policy establishes

7  liability and is not subject to a waiver defense).

8      **D.**    **Conclusion**

9      For the foregoing reasons, the Court should limit Walker's testimony accordingly.

10  **V.**    **MOTION IN LIMINE NO. 3 TO EXCLUDE VIOLATION RATE**

11      **EVIDENCE FROM BEING OFFERED IN DEFENSE TO LIABILITY**

12      **A.**    **Introduction**

13      Plaintiffs respectfully move the Court for an order in limine excluding evidence

14  of Taco Bell's rates of meal and rest break violations as to liability. Such "violation

15  rates," or "incident rates," are irrelevant to whether Taco Bell had illegal meal or rest

16  break policies. The fact that some employees were able to take breaks in spite of Taco

17  Bell's unlawful policy does not absolve Taco Bell of liability, even though it may reduce

18  damages.

19      Therefore, although evidence of violation rates is relevant to the question of

20  damages, such evidence is not relevant to liability. Further, any probative value

21  associated with the presentation of violation rates in the context of liability would be

22  outweighed by the undue prejudice to Plaintiffs. Consequently, this violation rate

23  evidence should be excluded as to liability.

24      **B.**    **Facts and Procedure**

25      Plaintiffs anticipate that Taco Bell will seek to introduce evidence of the rates at

26  which Taco Bell employees' meal and rest breaks actually violated the California Labor

27  Code, in order to purport to show that its meal and rest break policies were lawful.

28      This Court determined, in denying Plaintiffs' partial motion for summary

1   judgment on liability as to the claims against Defendant for late meal breaks, that there is

2   a question regarding which company records contain Taco Bell's break policy. (Order

3   on Partial MSJ, Dec. 16, 2014, Dkt. No. 510 ("MSJ Order"), at 7 ("there is a genuine

4   dispute of fact regarding Defendants' policy on meal breaks").) Plaintiffs argued that

5   Taco Bell's policy, as communicated to its employees, was contained in the "Hourly

6   Employee Guide," the "Matrix," and the wallet card documents, and that the policy was

7   unlawful because it did not authorize breaks at the time(s) prescribed by law. (MSJ

8   Order at 7-9.) Defendant argued that its policy is a "2-2-2" system, as described in the

9   deposition testimony of its 30(b)(6) witness, Tawanda Starms. (*Id*. at 10-11.) However,

10  Defendant also suggested that the actual rates at which Class Members took breaks,

11  according to the raw punch data, could serve as evidence of the nature of Taco Bell's

12  policy, and the Court seemed inclined to consider that evidence. (*Id*. at 11-12.) For the

13  reasons discussed below, the Court should exclude evidence or argument regarding

14  violation rates.

15          **C.      Argument**

16                  **1.      Violation Rate Evidence Is Irrelevant to Liability Under**

17                          **Federal Rules of Evidence 401 and 402, And Thus Should Not**

18                          **Be Offered for That Purpose**

19          Taco Bell's policy regarding meal and rest breaks violated California law because

20  it did not provide its employees with breaks during the required time frames. Evidence

21  of actual violation rates (that is, data showing when employees took their meal and/or

22  rest breaks) has no legal relation to the questions underlying a liability determination in

23  this case, which are: (1) which documents contain the policy whereby Taco Bell

24  authorized and permitted its employees to take breaks, and (2) whether the policy

25  provided meal and rest breaks as required by law. The fact that employees may or may

26  not have taken breaks at the correct times is relevant to *damages*, but does not absolve

27  Taco Bell of *liability* if its policies were illegal. Therefore, the evidence is irrelevant to

28  liability under Federal Rules of Evidence 401 and 402.

1        In *Brinker*, the Court of Appeal, in reversing class certification, had erroneously

2   concluded that because rest breaks could be waived, any showing on a class basis that

3   class members missed or took shortened rest breaks would not "'necessarily establish,

4   without further individualized proof,'" that the employers had violated the Labor Code

5   and the relevant IWC wage order. *Brinker*, 53 Cal. 4th at 1033. The Supreme Court

6   reversed, holding that an employer is required to permit and authorize the required rest

7   breaks, and if the employer adopts a uniform policy that does not do so, then "it has

8   violated the wage order and is liable." *Id.*

9        In other words, the employer's liability arises from its adoption of a uniform

10  policy that violates the wage and hour laws. *See Faulkinbury v. Boyd & Associates, Inc.*,

11  216 Cal. App. 4th 220, 235 (2013) (an employer "would be liable upon a determination

12  that [its] uniform on-duty meal break policy was unlawful"); *Abdullah v. U.S. Sec.*

13  *Assocs.*, 731 F.3d 952, 968 (9th Cir. 2013) ("insofar as *Faulkinbury* interprets *Brinker*'s

14  holding regarding the potential *liability* of an employer under California law, it is directly

15  on point for our analysis") (emphasis added).) Thus, if a uniform, facially illegal policy

16  is in place, liability exists. *See id.* Accordingly, the fact that some employees took breaks

17  despite Defendant's facially illegal policy does not defeat liability. *See Kurihara v. Best*

18  *Buy Co.*, No. C 06-01884 MHP, 2007 U.S. Dist. LEXIS 64224, at *30 (N.D. Cal. Aug.

19  30, 2007) ("a defendant cannot cite poor management" in implementing a standard

20  company policy to argue that its policy varied); *see also Vedachalam v. Tata*

21  *Consultancy Servs., Ltd.*, No. C 06-0963 CW, 2012 U.S. Dist. LEXIS 46429, at *37-38

22  (N.D. Cal. Apr. 2, 2012) (defendant cannot argue that some employees did not comply

23  with company policy to defeat classwide treatment of liability).

24       Allowing the jury to consider violation rates as evidence of liability would

25  contravene the Labor Code's requirement that an employer must "provide" or "authorize

26  and permit" breaks at the prescribed times. Here, the Matrix and the wallet card, on their

27  faces, fail to "provide" a meal break before the fifth hour of work, and fail to "authorize

28  and permit" a second rest break between hours six and seven, as California law requires.

1     (*See, e.g.*, Dkt. No. 494, Plaintiffs' Motion for Partial Summary Judgment, Theriault

2     Decl., Ex. H & Ex. I at p. 15.) If the finder of fact determines that the Matrix is the policy

3     (as opposed to the 2-2-2 construct), according to *Brinker*, Taco Bell has violated the law

4     and the violation rate is irrelevant to liability.

5               **2.**       **Evidence of Violation Rates, If Used to Prove Liability, Would**

6                       **Be More Prejudicial Than Probative Under Federal Rule of**

7                       **Evidence 403**

8         Even if the Court finds that there is some relevance or probative value to the

9     violation rates in the context of liability, any probative value is outweighed by the risk of

10    prejudice to the Plaintiffs if the jury is permitted to consider violation rates as evidence

11    of a lawful policy. *See* Fed. R. Evid. 403. As discussed in detail above, liability in a wage

12    and hour class action such as this one hinges upon the policy itself and whether it was

13    lawful – not on how often the law was or was not followed by the employees.

14         **D.**      **Conclusion**

15         For the reasons stated above, Plaintiffs respectfully request that the Court exclude

16    evidence of "violation rates" as to Defendant's liability.

17   **VI.**     **PLAINTIFFS' MOTION IN LIMINE NO. 4 TO PRECLUDE**

18         **DEFENDANT FROM CHALLENGING AUTHENTICITY OF RAW**

19         **EMPLOYEE TIME PUNCH DATA AND TO PRECLUDE DEFENDANT**

20         **FROM ARGUING THAT PVR RECORDS ARE MORE ACCURATE**

21         **THAN RAW PUNCH DATA**

22         **A.**      **Introduction**

23         Plaintiffs move to preclude Defendant from contesting the authenticity of the raw

24    time punch data it produced during discovery. The records fall squarely within the

25    hearsay rule's business records exception and are thus authentic and admissible. Fed. R.

26    Evid. 803(6).[7] Defendant required Class Members to punch in and out for shifts, meal

27            [7] Satisfying the hearsay exception under Federal Rule of Evidence 803(6) also

28   satisfies the authentication requirement under Federal Rule of Evidence 902(11). Defendant produced the records in response to a discovery request.

1    breaks, and rest breaks. Defendant cannot deny that it collected the raw punch data in the

2    normal course of business and that it reflects when employees actually punched in and

3    out for shifts and breaks.

4        Plaintiffs also request that the Court preclude Defendant from arguing that their

5    Payroll Verification Reports ("PVRs") are more accurate than the raw punch data.

6    Defendant has not submitted any evidence to lay the foundation for the premise that

7    PVRs are "more accurate" than raw punch data.

8        **B.    Facts and Procedure**

9        For years, during discovery in this case, Plaintiffs sought Taco Bell's raw

10   employee timecard records, which would show when its employees clocked in and out

11   for breaks. Instead of producing these records, Taco Bell first produced a 10% sample of

12   its PVRs. PVRs are records Taco Bell managers may have adjusted *after* receiving the

13   raw employee time punch data. (Defendant Taco Bell's Opposition to Plaintiff's Motion

14   to Alter or Amend the Court's Order re Certification ("Opp. to Amend Cert."), Dkt. No.

15   513, 9:26-28.)

16       Although Taco Bell produced the rest of the PVRs in 2012, Plaintiffs only

17   received Taco Bell's raw timecard data after a September 20, 2013 Court hearing. (Dkt.

18   Nos. 377 and 382.) Only in 2014 were Plaintiffs finally able to review and analyze the

19   original records of 12,779,086 employee rest breaks. Plaintiffs' expert, Michael O'Brien,

20   submitted a report analyzing the data.[8]

21       **C.    Argument**

22           **1.    Defendant's Meritless Argument That the Punch Records Are**

23                **Somehow Unreliable Does Not Justify Its Willful Refusal to**

24                **Authenticate Them**

25       Having failed to stifle discovery of its raw timecard data, Defendant now seeks to

_____

[8] Declaration of Michael O'Brien in Support of Plaintiffs' Motion to Amend
Class Certification Order Pursuant to Rule (c)(1)(c) Or, in the Alternative, Motion for
Reconsideration of the Order Denying Class Certification, Dkt. No. 501-3 ("O'Brien
Decl.") at ¶ 8.

1  undermine these unaltered records by insinuating that they may not be authentic or

2  reliable. Taco Bell instead claims that the PVRs are the "official" employee time records,

3  and that the raw timecard data "has not been authenticated by Taco Bell, or analyzed to

4  determine its accuracy or completeness with respect to time in and time out punches,

5  shift length, and meal and rest period punches by proposed class members during the

6  alleged class period." (Taco Bell's Opposition to Plaintiffs' Motion to Alter or Amend

7  the Court's Order re Certification ("Def. Opp'n", Dkt. No. 513), filed Nov. 19, 2014 at

8  9:18-10:-4; 17:5-7, 17:11-12.) However, as discussed below, the hearsay rule's business

9  records exception does not require that a defendant make the self-serving determination

10 that business records are "accurate" or "complete". If that were the case, every defendant

11 could claim, post-hoc, that unfavorable business records are inaccurate, incomplete, and

12 thus unauthentic, and only "authenticate" favorable records. The purported basis for

13 Taco Bell's refusal to admit the authenticity of the punch records is its unsubstantiated

14 claim that its "employees regularly forget to punch the break key to mark their rest

15 breaks." (Opp'n To Amend Cert., Dkt. No. 513 at 6:12-15.)

16        Defendant has further argued that the raw punch data is unreliable, particularly

17 when compared to the PVRs, which Defendant has asserted are "complete and

18 accurate." (Def. Opp'n at 10.) However, Defendant cited no evidence to support its

19 views of the accuracy of the PVRs.[9]

20        The Court, however, has rejected Defendant's arguments regarding the raw punch

21

22   [9] Defendant's Opposition cited to the Declaration of Cynthia Nichols in
     discussing PVRs, but that Declaration merely purports to attach true and correct copies
23   of certain PVRs and does not discuss their accuracy. (Def. Opp'n at 5 citing RJN, Ex. 4.)
     Defendant also cites "Dkt. 356" after arguing that "the raw time punch data purportedly
24   mirrors the complete and accurate PVRs…" (Def. Opp. at 10) but Docket No. 356 is a
     Joint Status Report dated April 30, 2013, in which Defendant repeats that the PVRs were
25   not electronically searchable. Additional discussion of the PVRs in the Opposition
     consisted solely of attorney argument without any citations. (Def.'s Opp'n p. 16, 17.)
26   Although Taco Bell's 30(b)(6) witness Tawanda Starms discussed some information
     regarding the PVRs during her deposition(s), as did witness Veronica Luna, neither
27   demonstrated any personal knowledge, or lack thereof, regarding the reliability of the
     records as compared to the raw punch data.
28

1    data. (Order Partially Granting Plaintiffs' Motion to Amend the Court's Order on Class

2    Certification, Dec. 16, 2014 (Dkt. No. 520 at 12:27-13:3.) First, the Court noted that the

3    raw time punch data showed that Taco Bell employees ***did*** clock out for rest breaks,

4    regardless of whether the law required them to do so. (*Id*. at 11:7-10.) Second, the Court

5    cited seven employee declarations and the declaration of Taco Bell's 30(b)(6) witness

6    Tawanda Starms attesting that Taco Bell instructed its employees to punch in and out for

7    rest breaks. (*Id*. at 11:11-12:8.) The Court noted that "[i]t stands to reason that Taco

8    Bell's records pertaining to missed and shortened breaks were generally reliable if Taco

9    Bell generated reports based on those records." (*Id*. at 12:8-10.) Finally, the Court

10   observed that Defendant had "cited no evidence in support of the proposition that many

11   employees do not record their rest breaks," and that, in fact, "there does not appear to be

12   any evidence supporting the conclusion that the time records pertaining to rest breaks

13   was substantially inaccurate." (*Id*. at 12:19-23.)

14          Undaunted, Defendant repeated its argument regarding the raw punch data's

15   authenticity (and purported PVR superiority) in its motion to decertify the class. (Motion

16   to Decertify Plaintiffs' Late Meal Period, Rest Break, and Underpaid Meal Period

17   Premium Classes ("Mot. To Decertify"), Dkt. No. 543, at p. 7, n. 13.) Notwithstanding

18   its objection, Defendant's brief then analyzed the employee punch data in detail with

19   references to reports of its expert, Dr. Jonathan Walker. (Mot. To Decertify at p. 7-14.)

20   Once again, it cited no evidence regarding the alleged accuracy of the "official" PVRs.

                 **2.**      **The Employee Punch Records Are Admissible Business**

21

22                             **Records Within the Meaning of Federal Rule of Evidence**

23                             **803(6)**

24          Any challenge to the authenticity of Taco Bell's raw punch data is without merit.

25   Taco Bell's own Rule 30(b)(6) witness, Tawanda Starms, testified that Taco Bell

26   employees are required to use the time punch system to clock in and out for breaks. As

27   such, the time punch records are records of a "regularly conducted activity," and are

28   non-hearsay under Federal Rule of Evidence 803(6). Rule 803(6) permits a party to

introduce records of regularly conducted activity, though otherwise hearsay, if:

> (A)   the record was made at or near the time by – or from information transmitted by – someone with knowledge;
>
> (B)   the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C)   making the record was a regular practice of that activity;
>
> (D)   all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E)   the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

Here, the evidence consists of contemporaneous data collected by Taco Bell's employee timecard system, reflecting information "transmitted" by Defendant's employees. As Ms. Starms admitted, Taco Bell instructed its employees to use the system to clock in and out as they are beginning and ending their shifts and breaks (*see* Transcript of Deposition of Tawanda Starms ["Starms Dep."], at 45:11-14, 47:9-48:5, Dkt. No. 501-2); thus, these records were made "at or near the time" of the relevant event. The records were also kept "in the course of a regularly conducted activity," and "making the record" was a regular practice because employees must punch in and out daily for shifts and breaks. Taco Bell's policy required its employees to punch in and out for each shift, meal break, and rest break, and Taco Bell further maintained a "break violation report" regarding missed or shortened breaks. (Starms Dep. at 166:1-18.)

The only Rule 803(6) factor that appears to be in dispute is the last one. Taco Bell has argued repeatedly—without evidence—that the employee punch records are not reliable because employees "forget" to clock out for rest breaks despite being instructed to do so. However, as this Court observed, the "dispute" is illusory because Defendant has not put forth a shred of evidence to support its contention. (Dkt. No. 520 at 12:11-28.) In fact, the data strongly suggests the opposite – employees remembered to clock

out for rest breaks *12.78 million times*. Further, employees clocked out for countless

meal breaks, as the law requires. Yet, Taco Bell wrongly maintains that its PVRs, which

its managers have had the opportunity to alter after-the-fact, and which (conveniently)

cannot be analyzed electronically,[10] are the best evidence of employees' actual rest break

times. However, the existence of the PVRs do not bear on the admissibility of the raw

punch data because the raw punch data satisfies the criteria in Rule 803(6). Moreover,

even if Defendant finds a way to corroborate its speculation about "forgetful" employees

before trial, any objection would raise a question of the weight of the evidence, not of its

authenticity.

   To establish authenticity, the proponent need only produce "evidence sufficient to

support a finding that the matter in question is what its proponent claims." *United States

v. Workinger*, 90 F3d 1409, 1415 (9th Cir. 1996). Plaintiffs contend, and Defendant

cannot dispute, that the raw punch data reflects when employees *actually* punched in and

out using Defendant's timekeeping system. The fact that conflicting inferences can be

drawn regarding authenticity goes to its weight as evidence, not its admissibility. The

question then becomes one for the finder of fact. (*Id.*) No one disputes that the data Taco

Bell produced and Plaintiffs' expert analyzed is the same data that Taco Bell's timecard

system captured. Further, any challenge to the authenticity of evidence must be based on

substance, not mere speculation, which is all Taco Bell has proffered here. *See United

States v. Chang An-Lo*, 851 F2d. 547, 557 (2d Cir. 1988).

### 3.   Alternatively, the Raw Punch Data Is Admissible Under the Residual Exception to the Hearsay Rule, Federal Rule of Evidence 807

   If the Court should find that Federal Rule of Evidence 803(6) does not apply,

Rule 807 contains a "residual" exception, allowing statements that are otherwise hearsay

---

[10] Taco Bell admitted in its Motion to Decertify that the PVRs "are not in a format
susceptible to computerized analysis," but that the "raw punch data is in a format
susceptible to computerized analysis." (Dkt. No. 534, Mot. to Decertify at 7, n. 13.)

to be admitted if they meet certain criteria:

> (a)  In General. Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:
> (1)  the statement has equivalent circumstantial guarantees of trustworthiness;
> (2)  it is offered as evidence of a material fact;
> (3)  it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> (4) admitting it will best serve the purposes of these rules and the interests of justice.

In this case, the raw punch data meets these criteria, for the same reasons described in Section VI(C)(2), above. They have "circumstantial guarantees of trustworthiness" because the records necessarily are created at the moment the individual employee punches in or out for a shift or break. The records are material to whether or not an employee took a break when required, which in turn is relevant to the amount of damages Defendant owes Plaintiffs and the Class. By Defendant's admission, the raw punch data is also more usable than the PVRs, because the former is "in a format susceptible to computerized analysis" while the latter is not. (Dkt. No. 543, p. 7, n. 13) In fact, given the astronomical cost of converting the PVRs to a searchable, readable format, the raw punch data is the *only* evidence of timekeeping obtainable through *reasonable* efforts. Therefore, admitting the raw data will best serve the purposes of these rules and the interests of justice.

> **4.  Defendant Has Relied Extensively on Its Raw Punch Data in Seeking to Decertify the Class; Therefore, Defendant Should Not Be Permitted to Challenge the Records' Authenticity at Trial**

Defendant's October 5, 2015 Motion to Decertify relies extensively upon the raw punch data, and its expert's analysis thereof, to support its argument that the data "show that there is *no common explanation* for any instance of a late meal period or a missing

1    rest break punch." (Dkt. No. 543, Mot. to Decertify at 1:11-2, and pgs. 7-14 (emphasis in

2    original).) Taco Bell argued that the meal and rest break subclasses should be decertified

3    because, *e.g.*, the punch data "actually disproves [Plaintiffs'] case," and that:

> As explained below, expert analysis of the raw time punch
> data confirms that Taco Bell did not have a uniform
> consistent policy of providing late meal periods, nor of
> failing to authorize and permit rest breaks on shifts longer
> than six hours but less than seven hours. In fact, as explained
> in detail below, the time punch data shows the opposite to be
> true.

8    (Dkt. No. 543, Mot. to Decertify at 7:9-13.)

9         Taco Bell cannot rely upon these raw time card records to attempt to decertify the

10   class or as evidence disproving liability at trial ***and*** simultaneously contend that the

11   records are somehow not "authentic" for the purposes Plaintiffs wish to use them. By

12   using the time punch data to support its Motion for Decertification, Taco Bell has

13   effectively waived any objection to use of the data. A writing may be authenticated by

14   evidence that the party against whom it is offered has at any time admitted its

15   authenticity. *United States v. Manning*, 56 F.3d 1188, 1199 (9th Cir. 1995). Taco Bell's

16   reliance on the time punch data constitutes an admission of authenticity, and it should

17   therefore be barred from raising this objection at trial before the finder of fact.[11]

---

22   [11] In fact, should Taco Bell maintain its untenable position that the punch records
23   are not authentic, Plaintiffs may have no choice but to seek sanctions or other remedies
     from the Court. In *In re Custodian of Records of Variety Distrib., Inc.*, 927 F.2d 244 (6th
24   Cir. 1991), the company's custodian of records produced documents responsive to a
     subpoena, identified them as the documents requested by the subpoena, but refused to
25   testify that they were "records which the corporation regularly kept in the course of its
     regular business activities." The custodian invoked the Fifth Amendment, but the court
26   held that the amendment did not apply. Noting that authenticating testimony was
     necessary to admit the documents into evidence, the court held both the custodian and
27   the corporation in contempt of court for refusing, without justification, to authenticate the
     documents.
28

1
2
3
4

**5.      Defendant Has Cited No Evidence to Suggest That PVR**
**Records Are "More Accurate" Than Raw Punch Data;**
**Therefore, Any Such Argument Lacks Foundation Under**
**Federal Rules of Evidence 602, 701-705**

5       Defendant has proffered no expert witness to opine on the accuracy of the PVR

6   records, nor has any lay witness deposed to date provided a foundation to support any

7   argument by Defendant that the "official" PVR records are more accurate than the raw

8   punch data. Defendant should not be permitted to present such a witness at this late date,

9   because it has proffered no expert witness to opine on the accuracy of the PVRs and

10   cannot do so on the eve of trial. Likewise, no lay witness would be qualified to present

11   such an opinion.

12       Federal Rule of Evidence 602 provides that "[a] witness may testify to a matter

13   only if evidence is introduced sufficient to support a finding that the witness has personal

14   knowledge of the matter. Evidence to prove personal knowledge may consist of the

15   witness's own testimony." Federal Rule of Evidence 701 limits opinion testimony by lay

16   witnesses to opinions that are: "(a) rationally based on the witness's perception;

17   (b) helpful to clearly understanding the witness's testimony or to determining a fact in

18   issue; and (c) not based on scientific, technical, or other specialized knowledge within

19   the scope of Rule 702," which along with Rules 703-705, govern expert witness

20   testimony.

21       Plaintiffs requested a Rule 30(b)(6) witness to testify regarding pay records, and

22   Defendant designated Tawanda Starms, who had some knowledge regarding the PVRs

23   but whose knowledge was limited. Neither she nor any other lay witness has a basis on

24   which to testify in support of what is pure argument by Taco Bell's counsel, without

25   supporting evidence, regarding the accuracy of the PVRs. Moreover, it is too late for

26   Defendant to introduce new expert opinion at this date.

27       **D.      Conclusion**

28       For the reasons stated above, Plaintiffs respectfully request that the Court

1    preclude Defendant from contesting the authenticity of its raw employee time punch

2    records, and thus, admissible evidence for trial under Federal Rule of Evidence 803

3    and/or 807. Plaintiffs further request that the Court preclude Defendant from arguing that

4    the PVR records are more accurate than the raw punch data, as it has produced no

5    documents or witnesses to date that could lay a foundation for such an argument.

6    **VII.   PLAINTIFFS' MOTION IN LIMINE NO. 5 TO EXCLUDE EVIDENCE**

7    **OF JOB PERFORMANCE OR DISCIPLINE**

8        **A.    Introduction**

9        Plaintiffs respectfully move the Court for an order in limine prohibiting Taco Bell

10   from introducing evidence of Plaintiffs' and the Class Members' job performance or any

11   work-related discipline. Additionally, Plaintiffs seek an order in limine precluding

12   Defendant from introducing, relying on or referring to employee personnel files not

13   produced during discovery.

14       **B.    Facts and Procedure**

15       Plaintiffs anticipate that Defendant will seek to introduce evidence relating to

16   Plaintiffs' job performance. Plaintiffs also anticipate that Defendant may seek to

17   introduce, refer to or rely upon other evidence that may be in Plaintiffs' personnel files,

18   or the employee files of other Class Member witnesses, including evidence regarding

19   employee discipline.

20       Such evidence should be excluded as it is irrelevant to any material issue in this

21   case and cannot serve any legitimate purpose in the current action, even if used only for

22   impeachment. Further, evidence or testimony regarding employee discipline or job

23   performance would be unduly prejudicial to Plaintiffs, and would also be improper

24   character evidence. Finally, Defendant has failed to produce Class Members' personnel

25   files during discovery, and so Defendant should not be permitted to use records at trial

26   that it failed to provide to Plaintiffs. Therefore, Defendant should be precluded from

27   introducing, relying on or referring to evidence regarding Class Members' job

28   performance or from employee personnel files at trial.

## C.   Argument

### 1.   Evidence of Employee Discipline or Job Performance Is Irrelevant Under Federal Rules of Evidence 401 and 402

This is a wage and hour class action. This is not a wrongful termination or employment discrimination case in which employee performance or discipline may establish legitimate reasons for the employer's decision to terminate or not promote the employee. Here, Class Members' job performance is not relevant in this case. Relevant evidence has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Relevance does not inhere in any particular item of evidence; it arises as a function of the facts of each case. Fed. R. Evid. 401 advisory committee notes to the 1972 Proposed Rules; *United States v. Vallejo*, 237 F.3d 1008, 1015 (9th Cir. 2001), *overruled on other grounds by* 246 F.3d 1150 (9th Cir. 2001). "[E]vidence should be excluded as irrelevant if the proponent cannot explain how it affects the degree of probability of a consequential fact." JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 6.01[1-6] (Joseph M. McLaughlin ed., Matthew Bender 2d ed. 1997). In this case, employee performance evaluations and disciplinary records have no bearing whatsoever on Taco Bell's failure to provide second rest breaks and timely meal breaks, or to pay meal break premiums at the correct rate. In *Bustillos v. Bimbo Bakeries USA, Inc*., No. C08-3553 SI, 2009 WL 175683, at *1 (N.D. Cal. June 19, 2009), in which the court denied defendant's motion for summary judgment, plaintiff's claims included rest and meal period violations *and* gender discrimination. Notably, the discussion of the rest and meal period claims omitted any reference to plaintiff's disciplinary records. *Id*. at *3-5 (finding that issues of fact remained regarding whether defendant provided plaintiff with the required breaks). By contrast, as to plaintiff's discrimination claim, the court had to evaluate her disciplinary records to determine whether she had raised a triable issue of fact that she was terminated due to her gender, and not due to poor performance. *Id*. at *5-7.

1    Because no such wrongful termination is alleged by the class, evidence of

2    employee job performance and discipline has no bearing on any material issues. As

3    such, these matters are immaterial and collateral. *See Herzog v. United States*, 226 F.2d

4    561, 565 (9th Cir. 1955) (holding that "a witness cannot be impeached where the subject

5    matter of his testimony is either immaterial or collateral to the issues in the cause in

6    which the testimony is given"). Collateral matters are not the proper means for

7    impeachment. *Id.* Evidence of job performance and discipline do not relate to any

8    material issue in this class action trial and are, therefore, collateral matters. Therefore,

9    Defendant should not be allowed to present evidence relating to Plaintiffs' job

10    performance, even for impeachment purposes.

11            **2.      Evidence of Employee Discipline or Job Performance Is Far**

12                  **More Prejudicial than Probative Under Federal Rule of**

13                  **Evidence 403 and Is Inadmissible Character Evidence Under**

14                  **Rule 404(b)**

15    Even assuming Plaintiffs' performance and disciplinary records could somehow

16    have even slight relevance to the issues at trial, introducing such evidence will unduly

17    prejudice Plaintiffs and the Class. Any minimal probative value of such evidence is

18    substantially outweighed by the danger of undue prejudice or jury confusion.

19    Defendant should not be able to distract the jury from the material issues in the

20    case by exploring how well Plaintiffs performed on the job. Evidence that certain

21    Plaintiffs may have been disciplined for various workplace infractions would have no

22    relevance to Plaintiffs' causes of action. Indeed, such evidence could serve no purpose

23    other than to unfairly prejudice the jury against Plaintiffs as to their statutory wage and

24    hour claims. By analogy, courts have acknowledged, in the context of a prisoner suing a

25    government entity for excessive use of force, that a plaintiff's conduct (or misconduct) is

26    unduly prejudicial when it is not at issue. *See, e.g., Ellis v. Navarro*, No. C 07-5126

27    SBA, 2012 WL 3580284 (N.D. Cal. Aug. 17, 2012 (excluding evidence of disciplinary

28    history in civil rights trial). Likewise, here, the potential prejudice to Plaintiffs' case that

could arise from irrelevant evidence of any alleged workplace misconduct far outweighs any minimal probative value the disciplinary records may have.

Moreover, the Federal Rules of Evidence prohibit the use of evidence solely to impugn an opponent's character:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith….

Fed. R. Evid. 404(b). The Ninth Circuit permits such evidence to be admitted only if "(1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged." *United States v. Cherer*, 513 F.3d 1150, 1157 (9th Cir. 2008) (internal citations omitted). None of these elements apply; consequently, Defendant should be barred from introducing Plaintiffs' and Class Members' disciplinary records or employment performance at trial. Such evidence would serve no purpose other than to wrongly impugn Plaintiffs' and Class Members' character.

### 3.   Defendant Refused to Produce Class Members' Employee and Personnel Files and Should Be Barred from Introducing, Relying on or Referring to Them at Trial Under Federal Rule of Civil Procedure 37(c)

California law provides that current and former employees (or their respective representatives) have the right to inspect and receive a copy of the personnel files and records that relate to the employee's performance or to any grievance concerning the employee. Cal. Lab. Code § 1198.5. Defendant never produced these files, even after Plaintiffs requested copies in discovery. (*See* Plaintiffs' Requests for Production ("RFP"), Set 16, No. 228 (seeking all documents supporting Defendant's Sixteenth Affirmative Defense regarding Plaintiffs' and class members' job performance.) Federal Rule of Civil Procedure 37(c)(1) provides that:

> If a party fails to provide information or identify a witness as

1    required by Rule 26(a) or (e), the party is not allowed to use
2    that information or witness to supply evidence on a motion,
     at a hearing, or at a trial, unless the failure was substantially
     justified or is harmless.

3    Defendant failed to produce the Class Members' employee files, despite a statutory

4    obligation to do so and after requests by Plaintiffs. (*See* RFP Set 16, No. 228.)

5    Defendant's failure will not be "harmless" if Defendant is permitted to use marginally

6    relevant evidence that Plaintiffs requested, but that Defendant never produced, to

7    undermine the credibility of the Class Members at trial.

8         Accordingly, under Federal Rule of Civil Procedure 37(c), Plaintiffs request that

9    the Court exclude from trial documents from Plaintiffs' and Class Members' personnel

10   or employee files, or any testimony regarding such matters.

11        **D.      Conclusion**

12        For the reasons stated above, Plaintiffs respectfully request that the Court

13   preclude Defendant from introducing any evidence or argument referring to the Plaintiffs

14   or any Class Member's job performance or disciplinary history.

15   **VIII. PLAINTIFFS' MOTION IN LIMINE NO. 6 TO EXCLUDE ARGUMENT**

16   **      OR EVIDENCE CONCERNING CLASS CERTIFICATION**

17        **A.      Introduction**

18        Plaintiffs submit the following motion in limine to preclude Defendant from

19   arguing or presenting evidence which suggests that the jury must decide whether

20   procedural requirements of Rule 23 have been satisfied. Plaintiffs respectfully move to

21   exclude at trial all evidence, argument, comments or references to the elements

22   necessary for class certification; specifically issues relating to commonality of the claims

23   of the certified class, ascertainability of the certified class, typicality of the class

24   representatives, adequacy of the class representatives or of counsel, or superiority of

25   class treatment as compared with individual actions.

26        This motion is brought under Federal Rules of Evidence 401 and 402 on the

27   grounds that information regarding the elements of certification is not relevant to the

28   issues in this case, and under Federal Rule of Evidence 403, because any negligible

probative value such evidence might have is outweighed by the risk of jury confusion and undue prejudice to the Plaintiffs.

This Court has held that the requirements necessary for this action to proceed as a class action have been met. These issues were properly raised before the Court, rather than a jury, and were properly ruled upon by the Court. The procedural elements of class certification are not relevant to the merits being tried to the jury. Any attempt by Defendant to introduce evidence or argument of these elements to the jury would (a) invade the purview of the Court, (b) unnecessarily confuse the jury, and (c) unfairly prejudice Plaintiffs.

As a result, Plaintiffs respectfully request that this Court order the exclusion of any evidence, argument, comments or references to the various elements of certification.

**B.      Facts and Procedure**

Plaintiffs in the present action consist of non-exempt hourly employees of corporate-owned Taco Bell restaurants and are part of three classes: (a) Late Meal Break Class; (b) Rest Break Class; and (3) Underpaid Meal Premiums Class. This action was commenced against Taco Bell in 2007. After years of vigorous litigation, the Magistrate Judge issued Findings and Recommendations granting Plaintiffs' Motion for Class Certification on November 27, 2012 with respect to the Late Meal Break Class only. (Dkt. No. 341.) The Court's Findings and Recommendations were adopted on January 2, 2013. (Dkt. No. 344.)

On December 16, 2014, the Court partially granted Plaintiffs' motion to amend the Court's order on class certification and approved certification of the Underpaid Meals Premium Class and Rest Break Class. (Dkt. No. 520.)

On October 5, 2015, Defendant filed a motion to decertify the late meal break, rest break, and underpaid meal premium classes. (Dkt. No. 543.) The Court recently denied Defendant's Motion for Decertification on December 11, 2015. (Dkt. No. 572.)

**C.      Argument**

During trial and in the presence of the jury, the Court should preclude Defendant

from introducing any evidence, argument, comments or references to any of the class certification, including issues relating to commonality of the claims of the certified class, ascertainability of the certified class, typicality of the class representatives, adequacy of the class representatives or counsel, or superiority of class treatment as compared with individual actions. The Court already resolved those matters in Plaintiffs' favor and certified three classes. Class certification is entirely irrelevant to any of the issues the jury must decide at trial.

### 1. Issues Relating to the Elements of Certification are Irrelevant and Inadmissible Under Federal Rules of Evidence 401 and 402

Only relevant evidence is admissible. Fed. R. Evid. 402. Relevant evidence has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Relevance does not inhere in any particular item of evidence; it arises as a function of the facts of each case. Fed. R. Evid. 401 advisory committee notes to the 1972 Proposed Rules; *United States v. Vallejo*, 237 F.3d 1008, 1015 (9th Cir. 2001), *overruled on other grounds by* 246 F.3d 1150 (9th Cir. 2001). "[E]vidence should be excluded as irrelevant if the proponent cannot explain how it affects the degree of probability of a consequential fact." JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 6.01[1-6] (Joseph M. McLaughlin ed., Matthew Bender 2d ed. 1997).

In the present action, this Court has already held that "[w]ithin the Classes, common questions of fact and law predominate over any individual questions." (Dkt. No. 341; Dkt. No. 520.) The Court further found that the Classes are ascertainable and sufficiently numerous, that the claims of Representatives Sandrika Medlock, Lisa Hardiman and Miriam Leyva are typical of the Class Members, and that Plaintiffs' counsel[12] and the class representatives are adequate to represent the class. (*Id.*) Finally, the Court held that class treatment is superior in this case to individual actions. (*Id.*)

---

[12] Capstone Law.

1    Furthermore, this Court was asked to revisit any remaining certification issues by

2   way of Defendant's Motion for Decertification of Plaintiffs' class claims. (Dkt. No.

3   572.) In deciding whether to certify a class, a court may consider "subsequent

4   developments in the litigation." *Gen. Tel. of S.W. v. Falcon*, 457 U.S. 147, 160 (1982).

5   The standard is the same for class decertification as it is with certification: a district court

6   must be satisfied that the requirements of Rules 23(a) and (b) are met to allow plaintiffs

7   to maintain the action on a representative basis. *Marlo v. United Parcel Serv., Inc.* 639

8   F.3d 942, 947 (9th Cir. 2011); *see also O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D.

9   404, 410 (C.D. Cal. 2000) (in evaluating whether to certify the class, the court applies

10  the same standard used in deciding whether to certify the class in the first place).

11   Whether to certify a class is a procedural question, "collateral to the merits of a

12  litigation . . . ." *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 336 (1980); *see

13  also In re Genentech, Inc. Secs. Litig.*, No. C-88-4038, 1990 WL 120641, at *2 (N.D.

14  Cal. June 8, 1990) ("The issues in a class certification motion may be generally

15  described as procedural in nature."). At this stage, the jury will be empaneled to decide

16  the merits of the Class Members' claims. The Court already concluded that class

17  certification is procedurally proper. Any evidence offered to challenge any of the factors

18  relating to certification, or any argument challenging those factors, is irrelevant and

19  inadmissible.

20   A jury has no authority to review or overturn the Court's determination that this

21  case satisfies the standards for class certification set forth in Federal Rule of Civil

22  Procedure 23. The jury has no role in making these legal and procedural determinations,

23  and any effort by Defendant to introduce evidence or argument challenging any of the

24  certification elements would place the jurors in the role of judge, and improperly require

25  the jury to make legal/procedural determinations properly left to the Court. Rather, the

26  focus of trial will be on the Defendant's conduct. The issues that remain to be tried are

27  the *merits* issues of whether Defendant's policies, practices, and procedures violated

28  California's wage and hour laws. Procedural challenges to certification are collateral to

1    the merits the jury must decide, and thus have no tendency in reason to prove or disprove

2    a disputed fact regarding the alleged violations. As such, any such evidence and

3    argument should be excluded.

### 2.    The Probative Value of Such Evidence is Outweighed By Prejudice to Plaintiffs and Should Be Excluded Under Federal Rule of Evidence 403

7    Evidence regarding class certification has no probative value whatsoever.

8    However, in the event this Court finds some relevance in the facts relating to

9    ascertainability, commonality, typicality, superiority, or adequacy, this evidence should

10   be excluded under Federal Rule of Evidence 403 because any probative value is far

11   outweighed by the danger of undue prejudice to Plaintiffs.

12   Here, evidence challenging the ascertainability of the certified classes, the

13   commonality of Defendant's policies, practices, and procedures, the typicality of the

14   class representatives' experiences, the superiority of class treatment of the claims, or the

15   adequacy of class counsel or the class representatives—in addition to being irrelevant—

16   is highly likely to cause undue prejudice to Plaintiffs, confuse issues, mislead the jury

17   and result in the undue consumption of time. Offering such evidence suggests to the jury

18   that they will have some role in determining these issues, which the Court already

19   determined and which the *only* the Court has the *authority* to determine. Furthermore,

20   challenges to the typicality of the class representatives' claims or their adequacy will

21   cause undue prejudice to the representatives.

22   Accordingly, any evidence offered to support a challenge to any of the elements

23   of certification, or any arguments challenging those elements should be excluded

24   because any relevance (of which there is none) is outweighed by the undue prejudice to

25   Plaintiffs, confusion of issues, misleading of the jury, and undue consumption of time.

### D.    Conclusion

27   Based on the foregoing, Plaintiffs respectfully request that this Court preclude

28   Defendant from introducing any evidence, argument, comments or reference to the

1    elements of certification.

2    IX.    **PLAINTIFFS' MOTION IN LIMINE NO. 7 TO EXCLUDE EVIDENCE**

3           **REGARDING WHETHER CLASS MEMBERS WERE EXPRESSLY**

4           **REQUIRED TO FOREGO MEAL OR REST BREAKS**

5           A.    **Introduction**

6           Plaintiffs respectfully move the Court for an order in limine prohibiting

7    Defendant from introducing evidence regarding explicit instructions to Class Members

8    to skip rest or meal breaks.

9           During discovery in this action, Defendant often asked employee Class Members,

10   in lines of questioning at their depositions, whether they were ever specifically told to

11   work off the clock or skip meal or rest breaks. In this action however, the only issue

12   relevant to liability is whether Defendant took affirmative steps to make meal and rest

13   breaks available to its employees as California law requires. The law does not require an

14   explicit order to skip breaks for there to be liability. As such, Defendant should be

15   precluded from eliciting evidence from Class Members regarding any explicit

16   instructions to skip meal or rest breaks, as such evidence is irrelevant and more

17   prejudicial than probative.

18          B.    **Argument**

19                1.    **Evidence of Explicit Instructions to Skip Meal or Rest Breaks Is**

20                      **Irrelevant Under Federal Rules of Evidence 401 and 402**

21          Taco Bell is not excused from its affirmative legal duty to provide employees

22   with meal and rest breaks simply because its managers may or may not have instructed

23   employees to skip breaks. Defendant should not be permitted to ask Class Members

24   whether or not their managers, shift leaders, or other Taco Bell employees expressly told

25   them to forego or delay a rest or meal break, because that information is irrelevant to the

26   issues in this case.

27          Plaintiffs claim that Defendant: (1) failed to make available to its employees a

28   meal break before the fifth hour of an employee's shift (Cal. Lab. Code § 512(a);

*Brinker Rest. Corp. v. Super. Ct*., 53 Cal. 4th 1004, 1040 (2012); (2) failed to authorize and permit a second rest break between the sixth and seventh hour (Cal. Lab. Code § 226.7; *Brinker*, 53 Cal. 4th at 1029); and (3) failed to pay the required one-hour premium to employees who missed their breaks (8 Cal. Code Regs. § 11050, subd. 12(B); Cal. Lab. Code § 116.7(b)). Plaintiffs' theory of liability regarding issues (1) and (2) is that Defendant's written policy documents that it provided to all of its employees provided meal breaks only after five hours of work and authorized second rest breaks only after seven hours of work. Both of these directives violate California law. *Brinker*, 53 Cal. 4th at 1029, 1040. Regarding issue (3), Plaintiffs assert that Defendant only paid half an hour's pay as a premium to its employees who missed their breaks, rather than a full hour's pay, as the law requires.

These three types of violations hinge solely on Defendant's company-wide policies and the premium payments it made (or did not make) to employees. The reasons why any individual Class Member may or may not have taken a break at a certain time have no bearing on Taco Bell's liability. The law also does not require that someone order a Class Member to skip breaks to generate meal or rest break liability. As such, evidence regarding whether Class Members were told to skip breaks is entirely irrelevant.

Relevant evidence has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Relevance does not inhere in any particular item of evidence; it arises as a function of the facts of each case. Fed. R. Evid. 401 advisory committee notes to the 1972 Proposed Rules; *United States v. Vallejo*, 237 F.3d 1008, 1015 (9th Cir. 2001), *overruled on other grounds by* 246 F.3d 1150 (9th Cir. 2001). "[E]vidence should be excluded as irrelevant if the proponent cannot explain how it affects the degree of probability of a consequential fact." JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 6.01[1-6] (Joseph M. McLaughlin ed., Matthew Bender 2d ed. 1997).

Evidence regarding whether Class Members were told to forego or delay their breaks does not affect "the degree of probability" of whether Taco Bell's company-wide policy authorized and provided breaks at the correct intervals, and whether Taco Bell paid the correct premiums for missed breaks. Therefore, Defendant should not be allowed to elicit or present such evidence.

> ### 2. Evidence Regarding Whether Class Members Were Instructed to Miss Breaks Would Be More Prejudicial Than Probative Under Federal Rule of Evidence 403

Even assuming that evidence regarding whether Class Members were instructed to miss breaks could somehow have even relevance to the issues in this action, introducing such evidence will unduly prejudice Plaintiffs and the Class. Plaintiffs are not required to show that Defendant specifically instructed Class Members to skip breaks in order to prove that Defendant violated the law. Allowing such questioning may either (a) give the jury the improper impression that an explicit order *is* required or (b) confuse the jury about whether an express order is a requirement. Accordingly, no such requirement will appear in the jury instructions, and any minimal probative value of such evidence is substantially outweighed by the danger of undue prejudice or jury confusion.

### C. Conclusion

For the reasons stated above, Plaintiffs respectfully request that the Court preclude Defendant from introducing any evidence or argument referring to whether Class Members were explicitly instructed to forego meal or rest breaks.

## X. PLAINTIFFS' MOTION IN LIMINE NO. 8 TO EXCLUDE EVIDENCE REGARDING THE LIKEABILITY OF DEFENDANT

### A. Introduction

Plaintiffs respectfully move the Court for an order in limine prohibiting Defendant from eliciting and introducing evidence regarding the "likeability" of the Defendant as a corporate entity. Specifically, Plaintiffs seek to exclude evidence regarding whether employees enjoyed working at Taco Bell. Such evidence is irrelevant

to any of the issues in the case, and the corresponding prejudice to Plaintiffs would far outweigh any probative value it could have. This motion seeks to preclude Defendant from introducing testimony of Taco Bell's likeability.

### B.     Facts and Procedure

Plaintiffs' counsel anticipates Defendant will inquire about Class Members' job satisfaction (or lack thereof). Defendant's line of questioning as to whether the employee Class Member liked their job, liked their co-workers, were treated fairly and/or whether they believed they were compensated fairly is irrelevant in demonstrating Defendant's compliance with the law. None of Defendant's Labor Code violations relate in any way to the job satisfaction (or lack thereof) of its employees. Such evidence is irrelevant to any material issue in this case and cannot serve any legitimate purpose in the current action.

### C.     Argument

Relevant evidence has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Relevance does not inhere in any particular item of evidence; it arises as a function of the facts of each case. Fed. R. Evid. 401 advisory committee notes to the 1972 Proposed Rules; *United States v. Vallejo*, 237 F.3d 1008, 1015 (9th Cir. 2001), *overruled on other grounds by* 246 F.3d 1150 (9th Cir. 2001). "[E]vidence should be excluded as irrelevant if the proponent cannot explain how it affects the degree of probability of a consequential fact." JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 6.01[1-6] (Joseph M. McLaughlin ed., Matthew Bender 2d ed. 1997).

In this case, the California Labor Code and corresponding regulations and Wage Orders require that an employer authorize and permit its employees to take meal and rest breaks at the legally prescribed intervals, and that the employer pay a premium each time employees are not permitted to take the required breaks. *See, e.g.*, Cal. Lab. Code §§ 226.7, 512(a); 8 Cal. Code Regs. § 11050, subd. 12(b); *Brinker Rest. Corp. v. Super. Ct.*,

53 Cal. 4th 1004, 1033, 1040 (2012). These laws requiring proper rest breaks and appropriate compensation for break violations do not depend on whether the Class Member employees liked their employer or believed they were being treated or compensated fairly. In fact, the laws requiring full compensation cannot be avoided even if the employee agrees to the improper wage. Judicial Council of California Civil Jury Instructions No. 2700 specifically provides that "[a]n employee is entitled to be paid the legal overtime pay rate even if he or she agrees to work for a lower rate."

### D.    Conclusion

For the aforementioned reasons, Plaintiffs respectfully request that the Court preclude Defendant from introducing or eliciting any evidence regarding the "likeability" of Taco Bell.

## XI.    PLAINTIFFS' MOTION IN LIMINE NO. 9 TO PRECLUDE DEFENDANT FROM ALTERING THE TESTIMONY OF ITS FRCP CORPORATE DESIGNEE UNDER RULE 30(b)(6)

### A.    Introduction

Plaintiffs respectfully move the Court for an order in limine precluding the Defendant from altering the testimony of its Federal Rule of Civil Procedure ("Rule") 30(b)(6) designee, Tawanda Starms, at trial. Tawanda Starms is no longer a Taco Bell employee, so another witness may testify on the corporation's behalf. Allowing the corporate designee and, thus, the corporation, to change its testimony at trial would be unduly prejudicial to Plaintiffs because Ms. Starms' 30(b)(6) deposition testimony are binding admissions by Defendant, and Plaintiffs have relied extensively on these admissions throughout this litigation.

### B.    Facts and Procedure

Plaintiffs deposed Defendant's Rule 30(b)(6) designee, Tawanda Starms, on August 19, 2008 and February 4, 2010, regarding company-wide meal and rest breaks policies and their compensation. However, Ms. Starms is no longer a Taco Bell employee. As discussed below, Defendant may not alter its Rule 30(b)(6) designee's

1    testimony at this stage, because Ms. Starms' statements are binding on the corporation.

2    **C.    Argument**

3        Defendant should be precluded from altering the substance of the Rule 30(b)(6)

4    testimony it gave through its Rule 30(b)(6) designee, Tawanda Starms. (*See* Notice of

5    Deposition Under FRCP 30(b)(6), Theriault Decl. Exhibit F.)  A witness designated

6    under Rule 30(b)(6) is speaking for the corporation, and her statements are admissions

7    by the corporation. "Rule 30(b)(6) is a powerful and important discovery tool. A Rule

8    30(b)(6) deposition notice serves a unique function: it is the sworn corporate admission

9    that is binding on the corporation." *Hardin v. Wal-Mart Stores, Inc.*, No. 08-CV-0617

10   2011 WL 11563217, *2 (E. D. Cal. Dec. 2, 2011).

11       "To effectuate the purpose of Rule 30(b)(6), the weight of the resulting testimony

12   is not to be lightly disregarded." *Munoz v. Giumarra Vineyards Corp.*, 1:09-CV-0703,

13   2015 WL 5350563, *4 (E.D. Cal. Sep. 11, 2015) (quoting *Rainey v. American Forest &*

14   *Paper Ass'n*, 26 F. Supp. 2d 82, 94 (D.D.C. 1998)). In *Munoz*, a wage and hour action,

15   plaintiff requested that defendants produce a person most knowledgeable under Rule

16   30(b)(6) regarding defendant's wage and hour policies and practices, including, *e.g.*,

17   hours worked, rest and meal periods, and reimbursements. (*Id.*) Defendant produced a

18   witness who testified for the corporation, but later, Defendant attempted to contradict the

19   designee's testimony in opposition to plaintiffs' motion for summary adjudication.

20       The *Munoz* court first observed that there were three lines of authority on the

21   question of whether a defendant could later contradict its Rule 30(b)(6) witness's

22   testimony:

23           There is a marked divide in the caselaw. Some courts suggest
             that an agency is bound by the testimony of its Rule 30(b)(6)
24           designee. Other courts hold that 'testimony given at a Rule
             30(b)(6) deposition is evidence which, like any other
25           deposition testimony, can be contradicted and used for
             impeachment purposes,' and that such testimony does not
26           'bind' the designating entity 'in the sense of [a] judicial
             admission.' This treats the testimony as that of any witness,
27           making it subject to correction and/or impeachment. Other
             courts adopt a middle ground and hold that a party cannot
28           rebut the testimony of its Rule 30(b)(6) witness when, as

1
2

> here, the opposing party has relied on the Rule 30(b)(6)
> testimony, and there is no adequate explanation for the
> rebuttal.

3   *Id.* (quoting *Coalition v. McCamman*, 725 F. Supp. 2d 1162 (E.D. Cal. 2010) (internal

4   citations omitted).)

5        Noting that the Ninth Circuit has not yet weighed in on this question, the *Munoz*

6   court held that "[t]his court similarly adopts the third position, that Rule 30(b)(6)

7   testimony can only be rebutted when there is an explanation for why the earlier

8   testimony is mistaken." (*Id.*) *Munoz* quoted with approval the holding in *Rainey v.*

9   *American Forest & Paper Ass'n*, 26 F. Supp. 2d 82, 94 (D.D.C. 1998), that "'[u]nless it

10  can prove that the information was not known or was inaccessible, a corporation cannot

11  later proffer new or different allegations that could have been made at the time of the

12  30(b)(6) deposition.'" (*Id.*) Further, in the summary judgment context, the Ninth Circuit

13  has held that a party cannot create a factual dispute simply by submitting an affidavit

14  contradicting prior testimony.[13] *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 20120);

15  *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).

16       Defendant cannot demonstrate that there was information that was inaccessible to

17  Ms. Starms at the time of her depositions that would justify altering her Rule 30(b)(6)

18  testimony at trial. Further, Plaintiffs have relied extensively upon her admissions on

19  Taco Bell's behalf. Therefore, not only would an attempt by Taco Bell to alter

20

---

21  [13] Even during discovery, when deponents have the right under Federal Rule of
    Civil Procedure 30(e) to correct errors in their testimony within 30 days of the
22  deposition, a corporate defendant may not use the errata process to change the substance
    of its Rule 30(b)(6) designee's testimony. *Hambleton Bros. Lumber Co. v. Balkin*
23  *Enters., Inc.*, 397 F.3d 1217 (9th Cir. 2005) (holding that "Rule 30(e) is to be used for
    corrective, and not contradictory, changes"); *see also Garcia v. Pueblo Country Club*,
24  299 F.3d 1233, 1242, n.5 (10th Cir. 2002) ("[Rule 30(e)] cannot be interpreted to allow
    one to alter what was said under oath. If that were the case, one could merely answer the
25  questions with no thought at all then return home and plan artful responses. Depositions
    differ from interrogatories in that regard. A deposition is not a take home examination").
26  If Defendant would not have been permitted to alter Ms. Starms testimony before the
    close of discovery, Defendant certainly should not be able to do so at trial. This would
27  cause extreme prejudice to Plaintiffs, who would have had no opportunity to take
    discovery regarding Taco Bell's "new" 30(b)(6) answers.
28

Ms. Starms' testimony at trial violate the legal authority discussed above, but it would also unduly prejudice Plaintiffs before the jury under Rule 403.

**D.     Conclusion**

For the reasons stated above, Plaintiffs respectfully request that the Court preclude Defendant from altering the testimony given by the corporation at the 30(b)(6) depositions of Tawanda Starms.

Dated:  January 6, 2016                    Respectfully submitted,

                                           Capstone Law APC

                                           By:

                                           Matthew T. Theriault
                                           Robert Drexler
                                           Andrew J. Sokolowski

                                           Lead Counsel for the Class

PLAINTIFFS' OMNIBUS MOTIONS IN LIMINE