1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRIKA MEDLOCK, et al., | Case No.  1:07-cv-01314-SAB |
| Plaintiffs, | ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTIONS IN LIMINE |
| v. | |
| TACO BELL CORP., et al., | (ECF Nos. 585, 589, 601) |
| Defendants. | |

## I.

## BACKGROUND

This is a consolidated action comprised of six underlying lawsuits.  The first action was filed on September 7, 2007.  (ECF No. 1.)  After other putative class actions were filed against Taco Bell, the cases were consolidated on June 9, 2009, and thereafter.  (ECF No. 109.)  This action is proceeding on the third amended consolidated complaint ("TACC") and Taco Bell's answer to the TACC.  (ECF Nos. 522, 532.)

Plaintiffs assert employment-related individual and class action claims against their former employer Defendant Taco Bell.  In the TACC, Plaintiffs allege the following claims for relief:   (1) Violation of California Labor Code §§ 510 and 1198 (Unpaid Overtime); (2) Violation of California Labor Code § 1194 (Unpaid Minimum Wages); (3)  Violation of California Labor Code § 204 (Unpaid Wages); (4) Violation of California Labor Code §§ 226.7 and 512 (Missed Meal Periods); (5) Violation of California Labor Code § 226.7 (Missed Rest

1    Periods); (6) Violation of California Labor Code § 226(a) (Improper Wage Statements); (7)

2    Violation of California Labor Code §§ 2800 and 2802 (Unreimbursed Business Expenses); (8)

3    Violation of California Labor Code § 227.3 (Vested Accrued Vacation Time); (9) Violation of

4    California Labor Code §§ 201 and 202 (Non-Payment of Wages Upon Termination); (10)

5    Violation of California Business & Professions Code §§ 17200, et seq.; and (11) Violation of

6    California Labor Code § 132a (Wrongful Termination).

7            The Court has certified three classes in this action and pursuant to the pretrial order, this

8    action is proceeding to trial on the following certified classes:

9            •       All persons who work or worked as a non-exempt, hourly-paid employee at a

10                   corporate-owned Taco Bell restaurant in California from September 7, 2003, until

11                   July 1, 2013, who worked for a period of time in excess of six hours and who

12                   worked for periods longer than five hours without a meal period of not less than

13                   thirty minutes as reflected in Defendants' employees' time records.

14           •       All persons who work or worked as a non-exempt, hourly-paid employee at a

15                   corporate-owned Taco Bell restaurant in California from September 7, 2003, until

16                   December 24, 2014, who worked for a period of time in excess of six hours and

17                   less than seven hours without at least two rest periods of not less than ten minutes,

18                   as reflected in Defendants' employees' time records.

19           •       All persons who work or worked as a non-exempt, hourly-paid employee at a

20                   corporate-owned Taco Bell restaurant in California who, between September 7,

21                   2003 until November 12, 2007, received at least one 30-minute automatic

22                   adjustment on Taco Bell's Time and Attendance System as reflected in

23                   Defendants' employees' time records.

24   (Pretrial Order 2-3, ECF No. 592.)

25           A jury trial in this action is set to begin on February 22, 2016.  On January 6, 2016,

26   Plaintiffs filed motions in limine.  (ECF No. 585).  Defendants filed an opposition on January 20,

27   2016.  (ECF No. 589.)  Plaintiffs filed a reply on February 27, 2016.  (ECF No. 601.)

28           A motion in limine hearing was held on February 3, 2016.  Counsel Matthew Theriault

                                                        2

1   and Stuart Chandler appeared in person and Monica Balderrama appeared telephonically for
2   Plaintiffs; and counsel Patrick Clifford appeared telephonically for Plaintiffs Kevin Taylor,
3   Debra Doyle, Christopher Duggan, and Hilario Escobar.   Counsel Tracey Kennedy, Morgan
4   Forsey, Nora Stiles personally appeared and John Makarewich appeared telephonically for
5   Defendants Taco Bell Corp. and Taco Bell of America, Inc. ("Defendant").   For the reasons set
6   forth herein, the Court grants in part and denies in part Plaintiffs' motions in limine.

7                                        **II.**

8                               **LEGAL STANDARD**

9          A party may use a motion in limine to exclude inadmissible or prejudicial evidence
10  before it is actually introduced at trial.   See Luce v. United States, 469 U.S. 38, 40 n.2 (1984).
11  "[A] motion in limine is an important tool available to the trial judge to ensure the expeditious
12  and evenhanded management of the trial proceedings."   Jonasson v. Lutheran Child and Family
13  Services, 115 F.3d 436,440 (7th Cir. 1997).   A motion in limine allows the parties to resolve
14  evidentiary disputes before trial and avoids potentially prejudicial evidence being presented in
15  front of the jury, thereby relieving the trial judge from the formidable task of neutralizing the
16  taint of prejudicial evidence.   Brodit v. Cambra, 350 F.3d 985, 1004-05 (9th Cir. 2003).

17         Motions in limine that exclude broad categories of evidence are disfavored, and such
18  issues are better dealt with during trial as the admissibility of evidence arises.   Sperberg v.
19  Goodyear Tire & Rubber, Co., 519 F.2d 708, 712 (6th Cir. 1975).   Additionally, some
20  evidentiary issues are not accurately and efficiently evaluated by the trial judge in a motion in
21  limine and it is necessary to defer ruling until during trial when the trial judge can better estimate
22  the impact of the evidence on the jury.   Jonasson, 115 F.3d at 440.

23                                       **III.**

24                                 **DISCUSSION**

25         Plaintiffs bring nine motions in limine to exclude evidence during the trial of this matter.

26  **A.      Motions to Exclude Expert Testimony**

27         Plaintiffs' first two motions in limine seek to exclude or limit the testimony of
28  Defendants experts, Robert Crandall and Jonathan Walker.   Expert witnesses in federal litigation

1   are governed by Rules 702 to 705 of the Federal Rules of Evidence.  Rule 702 provides:

2
3       A witness who is qualified as an expert by knowledge, skill, experience, training,
        or education may testify in the form of an opinion or otherwise if:
        (a) the expert's scientific, technical, or other specialized knowledge will help the
4           trier of fact to understand the evidence or to determine a fact in issue;
        (b) the testimony is based upon sufficient facts or data;
5       (c) the testimony is the product of reliable principles and methods; and
        (d) the witness has applied the principles and methods reliably to the facts of the
6           case.

7   Fed. R. Evid. 702.

8          An expert may testify regarding scientific, technical or other specialized knowledge if it

9   will assist the trier of fact to understand the evidence or to determine a fact in issue.  Daubert v.

10  Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993).

11      The subject of an expert's testimony must be "scientific ... knowledge."  The
        adjective "scientific" implies a grounding in the methods and procedures of
12      science.  Similarly, the word "knowledge" connotes more than subjective belief or
        unsupported speculation.  The term "applies to any body of known facts or to any
13      body of ideas inferred from such facts or accepted as truths on good grounds. . .
        But, in order to qualify as "scientific knowledge," an inference or assertion must
14      be derived by the scientific method.  Proposed testimony must be supported by
        appropriate validation-i.e., "good grounds," based on what is known.  In short, the
15      requirement that an expert's testimony pertain to "scientific knowledge"
        establishes a standard of evidentiary reliability."
16

17  Id. at 589-590 (citations omitted).   An expert opinion is not objectionable just because it

18  embraces an ultimate issue.  Fed. R. Evid. 704(a).

19         When an expert meets the threshold established by Rule 702 as explained in Daubert, the

20  expert may testify and the jury decides how much weight to give that testimony.  Primiano v.

21  Cook, 598 F.3d 558, 564–65 (9th Cir.2010) (citing United States v. SandovalMendoza, 472 F.3d

22  645, 654 (9th Cir.2006)).  The inquiry into whether an expert opinion is admissible is a "flexible

23  one" where shaky "but admissible evidence is to be attacked by cross examination, contrary

24  evidence, and attention to the burden of proof, not exclusion."  Primiano, 598 F.3d at 564 (citing

25  Daubert, 509 U.S. at 592-96).  The Supreme Court has held that "Rule 702 grants the district judge

26  the discretionary authority, reviewable for its abuse, to determine reliability in light of the particular

27  facts and circumstances of the particular case."  Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137,

28  158 (1999).

1    1.    Motion in Limine No. 1

2    Plaintiffs seek to exclude the testimony of Robert Crandall on the ground that he lacks

3 the necessary academic qualifications to challenge the survey conducted by Plaintiffs' expert, his

4 opinions are unsupported, irrelevant, and high prejudicial, and he has engaged in speculative

5 attacks on the credibility of Plaintiffs' expert.

6    a.    **Mr. Crandall's Qualifications to Testify as an Expert in this Action**

7    Initially, Plaintiffs contend that Mr. Crandall is not qualified to analyze the survey results

8 because he has no formal training related to survey methodology.  However, as this Court found

9 in addressing a similar challenge to Plaintiffs' expert,

10    As Rule 702 provides, an expert may be qualified by "knowledge, skill, experience,
      training, or education. Fed. R. Evid. 702.  The Ninth Circuit has recognized that "the
11    advisory committee notes emphasize that Rule 702 is broadly phrased and intended to
      embrace more than a narrow definition of qualified expert."  Thomas v. Newton Int'l
12    Enterprises, 42 F.3d 1266, 1269 (9th Cir. 1994).

13 (Order Granting In Part and Denying In Part Defendants' Motion To Exclude Plaintiffs' Expert

14 Report And Testimony Of Michael O'Brien 4:7-11, ECF No. 574.)

15    Plaintiffs argue that Mr. Crandall does not have graduate training in the specific areas

16 identified in the Reference Manual on Scientific Evidence.  (ECF No. 585 at 19.)  A survey

17 expert "must demonstrate an understanding of foundational, current, and best practices in survey

18 methodology, including sampling, instrument design ..., and statistical analysis."  Federal

19 Judicial Center, Reference Manual on Scientific Evidence 375 (3d ed. 2011)).  Generally, survey

20 experts should have "graduate training in psychology (especially social, cognitive, or consumer

21 psychology), sociology, political science, marketing, communication sciences, statistics, or a

22 related discipline," however 'professional experience in teaching or conducting and publishing

23 survey research may provide the requisite background.' "  Id.

24    Mr. Crandall is a partner in Resolution Economics LLC "whose activities include

25 conducting labor studies, performing economic and statistical analyses, and providing complex

26 data analysis in connection with litigation and non-litigation issues."  (F.R.C.P. Rule 26(a)(2)

27 Report of Robert Crandall ¶ 2, ECF No. 585-1 at 17.)  Mr. Crandall has an M.B.A. from Loyala

28 Marymount University and B.A. in history from the University of Southern California.  (Id.)  Mr.

1  Crandall has been retained as an expert or in a consulting capacity in more than 500 class-action

2  matters alleging wage and hour violations under federal or state law.  (Id.)  Mr. Crandall has

3  studied the labor models and scheduling practices of many major retailers, often in combination

4  with studying how business operations data impact breaks and overtime.  (Id.)  He has published

5  two articles regarding surveys and has written a chapter on wage and hour litigation for the

6  Litigation Services Handbook.  (ECF No. 585-1 at 191.)

7       In their reply, Plaintiffs argue that the only "survey related experience" that is referred to

8  by Defendants is Mr. Crandall's experience in reviewing surveys and evaluating the validity of

9  survey results.  However, Mr. Crandall asserts that he has significant experience related to

10 collecting data on work activities and behaviors in the retail industry and is highly experienced in

11 designing and conducting time motion studies where the goal is to collect precise measurements

12 of management and hourly employees work activities.  (Id.)  Mr. Crandall also performs similar

13 studies outside the litigation context in conducting wage and hour audits.  (Id.)  Mr. Crandall has

14 significant experience in analyzing complex data for the purposes of assisting counsel in

15 evaluating class certification and liability.  (Resume of Robert W. Crandall, ECF No. 585-1 at

16 58.)  He also has expertise in designing, implementing, and analyzing surveys and conducting

17 statistical analysis related to complex data intensive litigation assignments and is experienced in

18 analyzing job duties and content and business operations.  (Id.)

19      In the context of class action wage and hour claims, Mr. Crandall has experience in more

20 than 300 matters and is highly experienced in analyzing liability, damages and class-member

21 commonality related to wage and hour claims.  (Id. at 60.)  He is experienced in designing

22 implementing and analyzing surveys and time-in-motion studies and performing forensic data

23 analysis related to job content, exempt/non-exempt status, hours worked, uncompensated time,

24 meal and rest breaks, and improper pay calculations.  (Id.)  During the previous four years, Mr.

25 Crandall has testified in a significant number of similar wage and hour actions.  (Attachment to

26 Resume, ECF No. 585-1 at 69-79.)

27      In support of the argument that Mr. Crandall is not qualified to provide expert testimony,

28 Plaintiffs state that Mr. Crandall has had his reports stricken in a "number" of cases.  Plaintiffs

cite to <u>Casida v. Sears Holding Corp.</u>, No. 1:11-cv-01052 AWI JLT, 2012 WL 3260423 (E.D. Cal. August 8, 2012).  In <u>Casida</u>, an expert report was submitted by defendants in an action seeking to certify a class of management employees in a wage and hour action.  <u>Casida</u>, 2012 WL 3260423 at *1.  The court found that Mr. Crandall's report was relevant to the issue of class certification, properly set forth his methodology, and the plaintiffs did not present any evidence that his report was unreliable, so the motion to exclude his testimony was denied on these grounds.  <u>Id.</u> at *5-6.  However, the report was excluded because it did not explain which tasks were considered to be managerial, <u>id.</u> at *6, notably the court did not find that Mr. Crandall was not qualified to testify as an expert.

Plaintiffs also cite to <u>Howard v. CVS Caremark Corp.</u>, No. CV 13-04748 SJO PJWX, 2014 WL 7877404, at *9 (C.D. Cal. Dec. 9, 2014) aff'd, No. 15-55465, 2016 WL 145587 (9th Cir. Jan. 11, 2016), in which the court stated:

> Plaintiffs object to the Crandall Report in its entirety on relevance, prejudice, lack of personal knowledge, and lack of foundation grounds.  Plaintiffs' objections are overruled.  For the purposes of this Order, the Court does not consider or rely on the Crandall Report to the extent that CVS' expert offers improper legal conclusions or otherwise seeks to address merits of the case, such as damages, which extend beyond the scope appropriate for a motion for class certification.

The Court does not find that either of these cases provide support for Plaintiffs' contention that Mr. Crandall is not qualified to testify as an expert in this action.

Mr. Crandall's resume demonstrates that he is experienced in analyzing liability and damages in class action wage and hour claims.  (Resume 3-6, ECF No. 585-1 at 60-63.)  Further, he has experience in conducting surveys and survey analysis and has offered testimony regarding statistical analysis in numerous actions.  (<u>Id.</u> at 69-79.)  The Court finds that based upon his skill, experience, and training, Mr. Crandall is qualified to testify as an expert in survey analysis in this action.

### b.    Opinion Testimony

Plaintiffs contend that Mr. Crandall should not be allowed to testify as to opinions that are unsupported, unscientific opinions.  Specifically, Plaintiffs seek to preclude Mr. Crandall from testifying that if Plaintiffs' theory that the Matrix represents Defendants' scheduling policy

was true the expected outcome would be that all or almost all meal breaks would start after the first five hours of the shift.  (ECF No. 585 at 21.)  Similarly, Plaintiffs seek to exclude testimony that the "percentage of shifts between 6 and 7 hours without a recorded second rest break is only 36.5%," which "is not the outcome that one would expect if plaintiffs' theory [that Taco Bell's rest break policies fail to authorize and permit employees to take a net 10-minute rest break per every 4 hours worked] were true."  (Id. at 22.)

While Plaintiffs challenge Mr. Crandall's opinions as lacking in scientific or technical support, Mr. Crandall is testifying based upon his experience in the field.  Plaintiffs also seek to exclude Mr. Crandall from testifying as to the motivations for Plaintiffs' expert.  To the extent that Plaintiffs challenge the correctness or one-sided nature of Mr. Crandall's opinion, their recourse is not the exclusion of the testimony, but rather to refute it on cross-examination and by the testimony of their own expert witness.  Humetrix, Inc. v. Gemplus S.C.A., 268 F.3d 910, 9191 (9th Cir. 2001).  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  Daubert, 509 U.S. at 596.  It is for the jury to weigh the evidence and decide which evidence to accept or reject.  Humetrix, Inc., 268 F.3d at 919.

Plaintiffs seek to preclude Mr. Crandall from testifying as to legal opinions and from offering cumulative expert testimony.  These are the type of motions to exclude broad categories of evidence that are better dealt with during trial as the admissibility of evidence arises.  Sperberg, 519 F.2d at 712.  Plaintiffs may raise such objections during the trial if they believe that the expert is providing a legal opinion or the testimony is cumulative.

Plaintiffs' contend that Mr. Crandall's testimony lacks support, pointing to this Court's prior statement regarding his opinion that 60 surveyed class members worked for franchise locations.  This court found that whether 60 surveyed class members worked for franchise locations was a disputed fact.  (ECF No. 569 at 9.)  There was no finding that evidence to support this fact did not exist.

Finally, while Plaintiffs argue that such testimony is prejudicial, all evidence which is contrary to a party's position is prejudicial.  "Evidence is relevant if: (a) it has any tendency to

1   make a fact more or less probable than it would be without the evidence; and (b) the fact is of

2   consequence in determining the action." Fed. R. Evid. 401. Mr. Crandall's opinions regarding

3   the survey conducted by Dr. Moore are relevant to the issues to be decided in this action.

4          The evidence at issue here is also highly probative as to the issue to be decided by the

5   jury. Based on the prior motion to exclude the testimony of Plaintiffs' expert, it is clear that

6   Defendants are challenging the reliability of Dr. Moore's survey. Defendants may appropriately

7   present evidence in support of that contention. Therefore, the Court finds that any prejudice to

8   Plaintiffs is outweighed by the probative value of the evidence. Fed. R. Evid. 403. The Court

9   denies Plaintiffs' motion in limine no. 1 to exclude or limit the testimony of Mr. Crandall.

10         2.   Motion in Limine No. 2

11         In the second motion in limine, Plaintiffs seek to exclude the testimony of Defendants'

12  expert Dr. Walker on the grounds that it contains unsupported, irrelevant and unduly prejudicial

13  opinions. Plaintiffs contend that Dr. Walker excluded the time punches from managers and

14  grave yard shift employees who were subject to the on-duty meal agreements from his

15  calculations, used a de minimus grace period, and included speculation regarding why breaks

16  were missed. Plaintiffs contend that these errors make his opinion irrelevant and prejudicial

17  because it is based on faulty assumptions regarding the make-up of the class. Defendants

18  respond that Dr. Walker's opinion is highly relevant to the defense in this action and Plaintiffs'

19  arguments go to the weight, not the admissibility of the evidence.

20         Plaintiffs argue that Dr. Walker's report contains errors in analysis that make his opinion

21  inadmissible. Daubert's test of reliability is a flexible one and tests "not the correctness of the

22  expert's conclusions but the soundness of his methodology." Primiano v. Cook, 598 F.3d 558,

23  564 (9th Cir. 2010). Once an expert meets the threshold to testify, the jury decides how much

24  weight to give to his testimony. Id.

25         In his opinion, Dr. Walker excluded break periods that were late by some "de minimus"

26  amount. (F.R.C.P. Rule 26(a)(2)(B) Report of Jonathan Walker ¶ 10, ECF No. 585-1 at 124.)

27  Plaintiffs contend that this is an improper legal opinion, however the Court finds that the manner

28  in which Dr. Walker calculated his results goes to the weight of the evidence and is not a legal

opinion.

Similarly, Plaintiffs argues that Dr. Walker improperly excluded time punches which would skew his results.  However, Plaintiffs' challenge to Dr. Walker's testimony does not make it irrelevant.  Even if Dr. Walker improperly excluded employees based on a faulty analysis, it would go to the weight of his testimony, not the admissibility.  Dr. Walker proffered his opinion regarding the factual issues that will be decided by the jury in this action.  While Plaintiffs may challenge his findings, this does not make his opinion irrelevant.  To the extent that Plaintiffs allege that Dr. Walker's opinion is based upon faulty facts or analysis, Plaintiffs may refute the testimony by cross examination or by the testimony of their own expert witness.  S.E.C. v Retail Pro, Inc., No. 08cv1620-WQH-RBB, 2011 WL 5898282, at *5 (S.D. Cal. February 10, 2011).

Plaintiffs also seek to exclude Dr. Walker from proffering testimony that is speculative. Expert testimony cannot include unsupported speculation and subjective beliefs.  Guidroz-Brault v. Missouri Pacific R. Co., 254 F.3d 825, 829 (9th Cir. 2001).  In his initial opinion, Dr. Walker reviewed data and found that there is a possibility of individualized circumstances causing breaks to be under-recorded.  (F.R.C.P. Rule 26(a)(2)(B) Report of Jonathan Walker ¶ 16, ECF No. 589-3 at 4.)  Dr. Walker then went on to opine the potential causes of this under-reporting. (Id.)  Plaintiff seeks to exclude Dr. Walker from opining regarding these potential reasons that breaks are under reported.  The Court finds that whether Dr. Walker's testimony is speculative will be determined by the testimony that is presented during the trial.  Therefore, the issue of speculative testimony in this instance is better dealt with during trial as the admissibility of evidence arises.  Sperberg, 519 F.2d at 712.

Finally, as discussed in more detail below, to the extent that Plaintiffs allege that the reason that breaks may have been late is irrelevant based on their theory of the case, this Court disagrees.  Plaintiffs' motion in limine no. 2 to limit the testimony of Dr. Walker is denied.

**B.    Motions Regarding Other Evidence**

1.    Motion in Limine No. 3

Plaintiffs seek to exclude evidence of Defendants' rates of meal period and rest break violations as to liability.  Plaintiffs contend that violation rates or incident rates are irrelevant.

1    Defendants respond that the request should be denied as it is vague and overbroad and seeks to

2    exclude highly probative evidence without justification.

3           Plaintiffs contend that Defendants' policy is contained in the Hourly Employee Guide,

4    Matrix, and wallet card documents.  Defendants contend that the policy is the 2-2-2 system.

5    Plaintiffs have moved for summary judgment on several occasions contending that the

6    documents themselves establish an illegal policy.  The Court has found that a factual dispute

7    exists as to what Defendants' policy was.  For example, in the November 14, 2014 order denying

8    Plaintiff's motion for summary judgment, the Court found that the documents were susceptible

9    to multiple interpretations.  (Order Denying Plaintiff's Motion for Summary Judgment 8, ECF No.

10   510.)  Further, the Court found that Plaintiffs' interpretation of the tables would yield absurd

11   results.  (Id. at 9.)  The order further states "the actual time record data is not just inconsistent with

12   Plaintiffs' claim but substantially inconsistent with Plaintiffs' theory.  It would be one thing if a

13   handful of shifts had timely meal breaks.  When a strong majority of shifts have timely meal breaks,

14   it raises the question of whether any illegal policy existed at all." (Id. at 1.)  The Court found the

15   issue is properly to be decided by the jury to determine liability.  (Id.)

16          In addressing Plaintiffs' third motion for summary judgment, the Court found that Plaintiffs

17   had failed to show that the documents which they relied upon were Defendants' official policy and

18   the issue was to be decided by the trier of fact.  (Order Denying Plaintiffs' Motion for Partial

19   Summary Judgment 9, ECF No. 573.)

20          Plaintiffs take the position that Defendants have an illegal written policy and pursuant to

21   Brinker Restaurant Corp. v. Superior Court, 53 Cal.4th 1004 (2012), all evidence regarding

22   violation rates and the reasons that employees did not receive timely meal breaks or rest periods

23   is irrelevant.  Brinker does not hold that evidence which would be probative as to whether a

24   uniform policy exists is irrelevant.  Throughout the motions in limine, Plaintiffs argue that

25   evidence is irrelevant relying on Brinker's holding.  The Court has already rejected the argument

26   that the mere existence of a written document without any evidence that it was the policy applied

27   is insufficient to impose liability.  (Order Denying Plaintiff's Motion for Summary Judgment 6,

28   ECF No. 486.)   While Plaintiffs believe that the documents on which they rely constitute

1  Defendants' policy that is the disputed fact to be decided by the jury.  Therefore, evidence that is

2  probative as to what Defendants' actual policy was will be highly relevant at trial.  To the extent

3  that evidence should not be considered in determining liability the appropriate remedy is a

4  limiting jury instruction, not exclusion of probative evidence. If such is appropriate.

5  Similarly, the Court is unpersuaded by Plaintiff's reliance on Kurihara v. Best Buy Co.,

6  No. C 06-01884 MHP, 2007 WL 2501698, at *10 (N.D. Cal. Aug. 30, 2007), and Vedachalam v.

7  Tata Consultancy Servs., No. C 06-0963 CW, 2012 U.S. Dist. LEXIS 46429 (N.D. Cal. April 2,

8  2012).  In addressing a motion for class certification, the Kurihara court stated that "[w]here a

9  plaintiff challenges a well-established company policy, a defendant cannot cite poor management

10  to defend against class certification."  Kurihara, 2007 WL 2501698, at *10.  Similarly, in

11  Vedachalam, in addressing class certification, the court stated that "[d]efendants cannot disprove

12  the existence of their own acknowledged policy by asserting that isolated employees failed to

13  comply with it." Vedachalam, 2012 U.S. Dist. LEXIS 46429 at *39.  None of these cases stand

14  for the proposition that a defendant cannot introduce evidence to the trier of fact who is charged

15  with deciding what the company's policy was.

16  The jury shall be charged with determining whether Defendant has a uniformly applied

17  policy that violates state law.  The parties dispute the substance of Defendants' policy.  Plaintiffs

18  argue in their reply that presenting such evidence to the jury would wrongly suggest that their

19  role will be to determine whether the number of violations can excuse an unlawful policy.

20  However, violation rates, to the extent that the Court understands the term, is circumstantial

21  evidence that would assist the jury in determining whether the documents relied upon by Plaintiff

22  or the 2-2-2 system comprise Defendants' policy.  The probative value of the violation rate

23  evidence in assisting the jury to determine what Defendants' policy is outweighs any prejudice to

24  Plaintiffs.

25  Accordingly, Plaintiffs' motion in limine no. 3 to exclude evidence of violation rates is

26  denied.

27  2.      Motion in Limine No. 4

28  Plaintiffs seek to preclude Defendants from challenging the authenticity of raw employee

punch data and from arguing that the Payroll Verification Reports are more accurate than the raw punch data. Defendants oppose the motion arguing that the information is relevant and probative and there is not ground for exclusion.

There issues here raise two separate evidentiary issues. To authenticate or identify an item of evidence, the proponent of the evidence "must produce evidence sufficient to support a finding that the item is what the proponent claims that it is." Fed. R. Evid. 901(a). Rule 902(11) provides a manner in which business records can be authenticated based on certification by the custodian of record.

Rule 803(6) provides an exception to the rule against hearsay for documents that are regularly conducted in the course of business. Pursuant to Rule 803(b) records of a regularly conducted activity is admissible where it is:

A record of an act, event, condition, opinion, or diagnosis if:

(A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Defendants argue that although they produced the raw time punch data, Plaintiffs have not taken any steps to authenticate the data or establish a foundation regarding what the data is, what it covers, what it was used for, the completeness of the data, and its relationship to the employee time records. While Defendants argue authentication, the data is raw time punch data. What the evidence is beyond that must be established by the party proffering the evidence at trial.

In their reply, Plaintiffs argue that Defendants failed to produce this evidence in discovery and therefore sanctions under Rule 37 are appropriate. Plaintiffs seek for the Court to

1   deem the raw punch data to be authentic and admissible.  To the extent that Plaintiffs appear to

2   take the position that evidence produced during discovery would be admissible at trial, they are

3   incorrect.  The party seeking admission of evidence at trial is required to comply with the

4   Federal Rules of Evidence regardless of whether the opposing party produced the evidence.

5          Plaintiffs do not dispute that the raw punch data was produced by Defendants.

6   Defendants assert that the raw punch data was produced in September 2013 and updated data

7   was produced in early 2015.  The discovery cut-off date for this action was July 3, 2015.  (ECF

8   No. 521.)  Plaintiffs received the raw punch data over one year prior to the discovery cut-off

9   date, and therefore, had an opportunity to propound discovery if necessary to address these

10  disputed issues.  Further, Plaintiffs' motion to seek Rule 37 sanctions is improperly brought in

11  their reply to Defendants' opposition.

12         In order to introduce raw time punch data at trial, Plaintiffs shall be required to establish

13  all evidentiary foundations.  To the extent that Plaintiffs rely on the December 16, 2014 order on

14  class certification, the Court merely found that the evidence showed that Defendant kept time

15  records and Defendants had not submitted evidence to show that the records were inaccurate.

16  (ECF No. 520 at 10-12.)  Most recently in considering Plaintiffs' motion for summary judgment,

17  the Court found that there was evidence that employees do not always accurately punch in and

18  out.  (ECF No. 573 at 16-18.)

19         Finally, Plaintiffs argue that Defendants have waived the ability to challenge the raw time

20  punch data, however, it is clear from the record that Defendants have consistently argued that the

21  raw time punch data is inaccurate.  (See ECF No. 520 at 12 ("Defendants argued that the time

22  records were inaccurate with respect to rest breaks. . .  During briefing on the original motion for

23  certification, Defendants repeatedly argued that many employees do not record their rest

24  breaks."); ECF No. 573 at 15 ("Defendants contend that it is unestablished whether an

25  employee's time punch accurately reflects whether an employee took a meal period or the length

26  of the meal period. . . ."); ECF No. 574 at 8 ("Defendants argue that Mr. O'Brien's report does

27  not take into account any data entry errors from employees' erroneous punches.").  Plaintiffs

28  have provided no basis for this Court to preclude Defendants from challenging the accuracy of

1   the raw time punch data or from arguing that the Payroll Verification Reports are more accurate.

2       Plaintiffs' motion in limine no. 4 is denied.

3       3.      Motion in Limine No. 5

4       Motion in limine no. 5 seeks to exclude evidence of job performance or discipline relying

5   on or referring to employee personnel files as they are irrelevant, would be unduly prejudicial,

6   and would constitute improper character evidence.   Additionally, Plaintiffs seek to preclude

7   Defendants from introducing, relying on or referring to employee personal files not produced

8   during discovery.   Defendants respond that evidence on job performance may be highly

9   probative and does not constitute improper character evidence.

10      Generally, the Court finds that evidence regarding an employee's job performance or that

11  the employee has been disciplined does not have any tendency to make a fact more or less

12  probable than it would be without the evidence and would not be of consequence in determining

13  the action.   Fed. R. Evid. 401.   However, Defendants seek to introduce evidence that Plaintiff

14  Widjaja was disciplined for failing to prepare a deployment chart scheduling meal and rest

15  breaks in support of their contention that they made efforts to comply with state law and that

16  mistakes of employees were the reason that breaks were not timely provided.   Instances such as a

17  supervisor failing to provide a break schedule would be relevant as to whether late or missed

18  break and meal periods were due to a uniform company policy as Plaintiffs contend or actions of

19  supervisors failing to comply with the established policy.

20      Plaintiffs seek to preclude evidence of job performance and discipline even for the

21  purposes of impeachment.   However, such a ruling would allow a witness to testify untruthfully

22  and prohibit Defendants from challenging the testimony.   The Court declines to grant the motion

23  to the extent that it precludes all such evidence for purposes of impeachment.   Additionally, the

24  Court can conceive of limited circumstances where such evidence could be relevant to prove the

25  bias of a witness.   The Court advises counsel that any assertion that job performance and

26  discipline evidence are intended to show bias will only be allowed where that witness's bias has

27  been placed at issue.   In other words, the Court will not allow a party to use bias as an excuse to

28  admit evidence that is irrelevant in this action.

Plaintiffs also argue that Defendants failed to provide personnel files for all class members in discovery, and therefore, they should be precluded from introducing the evidence at trial.   Defendants contend that they produced personnel files for all named class members. Defendants seek to use the personnel files to cross-examine Plaintiffs and class members.   To the extent that Plaintiffs argue that Rule 37(c) precludes the evidence from being offered at trial, Rule 37(c) provides that the party may not use evidence that is not provided as required by Rule 26(a).   Rule 26 specifically provides that initial disclosures are not required where the evidence is to be used solely for the purposes of impeachment.  Fed. R. Evid. 26(a)(1)(A)(ii).

Plaintiffs' Request for Production, Set Sixteen addressed discovery regarding Defendants' affirmative defenses.  (ECF No. 601-1 at 127-142.)  Request for Production No. 228 sought:

> All documents in support of YOUR Sixteenth Affirmative Defense that "The claims alleged in Plaintiff's Consolidated Complaint fail because the job performance of Plaintiffs and the alleged class members diverged from the employer's reasonable expectations" as set forth in Defendants Taco Bell Corp.'s and Taco Bell of America, Inc.'s Answer to the Consolidated Class Action Complaint, Docket No. 121.

(Id. at 138.)  While this interrogatory would be appropriate for the named class members, it would have required Defendants to search through the employee folder of every non-exempt employee that worked for Defendants from 2003 through the present to find all employment related job performance and discipline.  Although Plaintiffs did not provide Defendants response to this request, in the context of a class action, this Court has found that such a request would be overly burdensome.  Aldapa v. Fowler Packing Company Inc., 310 F.R.D. 583, 591 (E.D. Cal. October 29, 2015).  Plaintiffs similarly stated at the February 3, 2016 hearing that a request for every class members employment file would not have been granted as it would be found to be over burdensome.  If Plaintiffs had brought a motion to compel production of the documents it would not have been granted.  For that reason, the Court cannot find that the failure to produce the employee records of all putative class members in response to this interrogatory is a basis to exclude the evidence at trial.

Plaintiffs also contend that Defendants are prohibited from using documents in their

1    personnel files as they did not provide them in compliance with the California Labor Code.
2    Section 1198.5 provides that every employee has the right to inspect and receive a copy of his
3    personnel records.  If the employee submits a written request for a copy of the records, the
4    employer is required to provide them within thirty days.  Cal. Lab. Code § 1198.5(b)(1).  If an
5    employer refuses to allow the employee to inspect or copy personnel records the employee may
6    recover a penalty of $750.00 from the employer and receive injunctive relief.  Id. at §
7    1198.5(k)(l).  Nothing in the language of the statute provides that an appropriate remedy would
8    be exclusion of the evidence at trial.

9         Finally, for the limited purposes for which employee job performance or discipline would
10   be admissible, the Court finds that it would not be offered as character evidence nor does any
11   prejudice to Plaintiffs outweigh its probative value.  For the reasons discussed, the Court finds
12   that whether an employee's job performance or discipline is admissible is an issue that must be
13   decided during trial and cannot be decided in a motion in limine.

14        Plaintiffs' motion in limine no. 5 shall be denied.

15        4.    Motion in Limine No. 6

16        Plaintiffs move to preclude Defendants from arguing or presenting all evidence,
17   arguments, comments or references to the commonality, ascertainability, typicality, adequacy, or
18   superiority during trial.  Defendants respond that they do not intend to argue the merits of class
19   certification to the jury, but all evidence to defend in this action will in some manner relate to the
20   elements of Rule 23.  Further, Defendants contend that this motion should be denied as Plaintiffs
21   have not identified any specific evidence that is to be excluded.

22        To the extent that Plaintiffs contend that the elements of class certification are no longer
23   relevant, the Court would disagree.  As set forth in the pretrial order,

24        "the trial court has discretion to decertify a class at any time circumstances or
          newly discovered evidence make continued class action treatment improper."
25        Fed. Civ. Pro. Before Trial Ch. § 10:634 (The Rutter Group 2015).  "In deciding
          whether to decertify, a court may consider subsequent developments in the
26        litigation, including previous substantive rulings in the context of the history of
          the case, and the nature and range of proof necessary to establish the class-wide
27        allegations."  Negrete v. Allianz Life Ins. Co. of N. Am., 287 F.R.D. 590, 598
          (C.D. Cal. 2012) (internal punctuation and citations omitted).
28

1    (Pretrial Order 23, ECF No. 592.)  Since Rule 23 provides that a class can be decertified before

2    final judgment, Fed. R. Civ. P. 23(c)(1)(C), the elements continue to be relevant during trial.  To

3    the extent that Plaintiffs seek to prevent Defendants from arguing certification elements before

4    the jury, Defendants have not opposed the motion and it shall be granted.

5         To the extent that Plaintiffs seek to preclude any evidence that would relate to the Rule

6    23 elements, the motion shall be denied.  Plaintiffs have not identified any specific evidence to

7    be excluded.   Therefore, whether specific evidence is admissible cannot be accurately and

8    efficiently evaluated in a motion in limine and it is necessary to defer ruling until during trial

9    when the Court can better estimate the impact of the evidence on the jury.  Jonasson, 115 F.3d at

10   440.

11        Motion in limine no. 6 is granted in part and denied in part.  Defendants shall not argue

12   the elements of Rule 23 before the jury, and Plaintiffs' motion to exclude all evidence relating to

13   Rule 23 is denied.

14        5.      Motion in Limine No. 7

15        Plaintiffs' motion  in  limine  no. 7 seeks to exclude evidence regarding explicit

16   instructions to class members to skip meal or rest breaks.  Defendants argue that this evidence is

17   relevant to prove or disprove whether they had a uniform and consistent policy that violated state

18   law.  Plaintiffs reply that Defendants may only present evidence of how widely distributed the

19   Matrix was, whether it was intended to apply to all corporate owned restaurants, the extent that

20   managers were trained on the schematics, etc., and this evidence will be weighed by the jury.

21        For the reasons discussed throughout this order, the Court finds that Defendants are not

22   as limited as Plaintiffs argue in presenting evidence at trial.  Whether employees were instructed

23   to forego meal breaks or rest periods is probative as to the substance of Defendants' meal break

24   and rest period policy and whether breaks were missed because the Matrix reflected Defendants'

25   policy as Plaintiffs contend.  Therefore, Plaintiffs' motion in limine no. 7 to exclude evidence

26   regarding explicit instructions to class members to skip rest or meal breaks is denied.

27        6.      Motion in Limine No. 8

28        Motion in limine no. 8 seeks to exclude evidence regarding the likeability of Taco Bell.

1    Specifically, Plaintiffs seek to exclude evidence regarding whether an employee enjoyed
2    working for Taco Bell, liked their co-workers, were treated fairly, and/or whether they were
3    compensated fairly as irrelevant.  Defendants contend that whether an employee liked working
4    for Taco Bell is probative as to bias and witness credibility.  Additionally, the evidence can be
5    probative as to why an employee did not take a rest break or meal period.

6         Plaintiffs contend that whether an employee liked or did not like working for Taco Bell is
7    irrelevant, however as Defendants point out, if a witness did not like working for Taco Bell or
8    did not like his supervisors or believed he had been treated unfairly by Taco Bell that could go to
9    the witness' bias.

> Bias is a term used in the "common law of evidence" to describe the relationship
> between a party and a witness which might lead the witness to slant,
> unconsciously or otherwise, his testimony in favor of or against a party.  Bias may
> be induced by a witness' like, dislike, or fear of a party, or by the witness' self-
> interest.  Proof of bias is almost always relevant because the jury, as finder of fact
> and weigher of credibility, has historically been entitled to assess all evidence
> which might bear on the accuracy and truth of a witness' testimony.

14   United States v. Hankey, 203 F.3d 1160, 1171 (9th Cir. 2000) (quoting United States v. Abel,
15   469 U.S. 45, 52 (1984)).  Defendants are entitled to limited questioning to inquire into witness
16   bias.

17        Plaintiffs argue that Alivez v Pinkerton Government Servs., 286 F.R.D. 450 (C.D. Cal.
18   October 9, 2012), is instructive.  In Alivez, in support of their opposition to a motion for class
19   certification, the defendants submitted an expert opinion based on a survey of 30 employees.  Id.
20   at 458.  The survey was stricken as a discovery sanction, but even if it had not been stricken the
21   court stated it would have given "little weight to survey responses that 'may have indicated
22   overall satisfaction with the' defendant, 'but that may reveal more about [the respondent's]
23   loyalty than whether or not they had an ... experience that would render them class members.' "
24   Id. at 459.

25        While it is true that whether a witness likes Taco Bell's policies is not probative to the
26   issue of whether the policy complies with state law that is not the testimony that Plaintiffs seek
27   to exclude.  Contrary to Plaintiffs' contention that Alivez supports the argument that the
28   evidence should be excluded, the Alivez court indicated that it would have given little weight to

1   the survey due to the possibility that the responses went more to the loyalty of the respondents.

2   Similarly here, all such testimony should not be excluded, but to the extent that such testimony is

3   relevant here it is for the trier of fact to determine the weight to assign to the evidence.

4           Plaintiffs argue that the evidence should be excluded because it is prejudicial but do not

5   set forth any prejudice that will result as a result of the admission of such evidence.  The Court

6   finds that the probative value as it relates to witness bias is not outweighed by the danger of

7   unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or

8   needlessly presenting cumulative evidence.  Fed. R. Evid. 403.  Plaintiffs' motion to exclude

9   evidence that an employee enjoyed working for Taco Bell, liked their supervisors, or were

10  treated fairly is denied.

11          Plaintiffs' motion to exclude testimony regarding the likeability of Taco Bell is denied.

12          7.      Motion in Limine No. 9

13          Plaintiffs' motion in limine no. 9 seeks to preclude Defendants from altering the

14  testimony of their 30(b)(6) designee, Tawanda Starms.  Defendants counter that Plaintiffs motion

15  is hopelessly vague.  Plaintiffs' reply that they are only seeking to preclude Defendants from

16  altering the testimony of Tawanda Starms as attached to their October 8, 2014 motion for

17  summary judgment and October 29, 2014 motion for class certification.

18          The Court finds that Plaintiffs' request to preclude Defendants from altering the

19  testimony of Tawanda Starms is vague and would be unable to be enforced at trial.  First, it is

20  unclear what would "alter" the deposition testimony and therefore, the Court cannot determine

21  which evidence is sought to be excluded.

22          Second, Plaintiffs cite to no case that a party is excluded at trial from introducing

23  evidence that explains, or even contradicts, prior deposition testimony.  Plaintiffs rely on Munoz

24  v. Giumarra Vineyards Corp., No. 1:09-CV-0703 AWI JLT, 2015 WL 5350563, at *4 (E.D. Cal.

25  Sept. 11, 2015), to support the argument that Defendants may not offer evidence at trial to alter

26  Ms. Starms testimony.  In Coalition v. McCamman, 725 F.Supp.2d 1162, 1172 (E.D.Cal.2010),

27  the court considered the divide in case law regarding whether an agency is bound by the

28  testimony of its corporate designee or if evidence can be contradicted or used for impeachment

1   purposes.

2
3
4
5
6
7

> There is a marked divide in the caselaw.  Some courts suggest that an agency is bound by the testimony of its Rule 30(b)(6) designee.  Other courts hold that 'testimony given at a Rule 30(b)(6) deposition is evidence which, like any other deposition testimony, can be contradicted and used for impeachment purposes,' and that such testimony does not 'bind' the designating entity 'in the sense of [a] judicial admission.'  This treats the testimony as that of any witness, making it subject to correction and/or impeachment.  Other courts adopt a middle ground and hold that a party cannot rebut the testimony of its Rule 30(b)(6) witness when, as here, the opposing party has relied on the Rule 30(b)(6) testimony, and there is no adequate explanation for the rebuttal.

8   <u>Id.</u>  In considering the reasoning of <u>McCamman</u>, the <u>Munoz</u> court adopted the position that Rule

9   30(b)(6) testimony may be amplified or explained, so long as a material change or retraction is

10  not made without a reasonable basis.  2015 WL 5350563, at *4.  This Court agrees that Rule

11  30(b)(6) testimony may be contradicted as long as any material change is not made without a

12  reasonable basis.

13          Lastly, Plaintiffs offer Ms. Starms deposition testimony that the meal and rest break

14  matrixes were Taco Bell's policy.  (August 19, 2008 Depo. of Tawanda Starms 38:3-15, ECF

15  No. 601-1 attached as exhibit O); February 10, 2010 Depo. of Tawanda Starms 43:6-15, 174:2-8,

16  ECF No. 601-1 attached as Exhibit R).  However, this Court previously found that "Ms. Starms

17  testified that the timing of breaks was governed by a '2-2-2' system, whereby a rest break was

18  provided after two hours, a meal break provided after another two hours, and a second rest break

19  after another two hours."  (ECF No. 510 at 10.)  (ECF No. 510 at 10.)  Further, Ms. Starms

20  testified to other documents and training that would reflect Taco Bell's policy.  (August 19, 2008

21  Depo. of Tawanda Starms at 62-63, 66-67, 117; February 10, 2010 Depo. of Tawanda Starms at

22  17, 160.)  It will be for the jury to determine the weight to give to any testimony of Ms. Starms

23  that appears to be contradictory in determining the substance of Defendants policy.

24          To the extent that Plaintiffs seek to exclude any evidence that would contradict the

25  statement that the meal and rest break matrixes reflect Taco Bell's policy, the request must be

26  denied.  That is specifically the issue that is in dispute in this action and will be decided by the

27  jury.  All evidence presented by Defendants will be offered to show that Defendants' policy was

28  the 2-2-2 system and is not accurately reflected by the documents on which Plaintiffs rely.

1    Plaintiffs' motion in limine no. 9 to preclude Defendants from altering the testimony of
2    Tawanda Starms is denied.

3                                          **III.**

4                                        **ORDER**

5    Accordingly, it is HEREBY ORDERED that:

6    1.      Plaintiffs' motion in limine no. 1 to exclude the testimony of Mr. Crandall is
7            DENIED;

8    2.      Plaintiffs' motion in limine no. 2 to limit the testimony of Dr. Walker is
9            DENIED;

10   3.      Plaintiffs' motion in limine no. 3 to exclude evidence of meal period and rest
11           break violations is DENIED;

12   4.      Plaintiffs' motion in limine no. 4 to preclude Defendants from challenging the
13           accuracy of the raw time punch data and arguing that Payroll Verification
14           Reports are more accurate is DENIED;

15   5.      Plaintiff's motion in limine no. 5 is DENIED;

16   6.      Plaintiffs' motion in limine no. 6 to preclude Defendants from arguing or
17           presenting Rule 23 issues during trial is GRANTED IN PART AND DENIED
18           IN PART as follows.  Defendants shall not argue the elements of Rule 23 before
19           the jury, and Plaintiffs' motion to exclude all evidence relating to Rule 23 is
20           DENIED;

21
22   //
23   //
24   //
25   //
26   //
27   //
28   //

7.   Plaintiffs' motion in limine no. 7 to exclude evidence regarding explicit instructions to class members to skip meal periods or rest breaks is DENIED;

8.   Plaintiffs' motion in limine no. 8 to exclude evidence regarding the likeability of Taco Bell is DENIED; and

9.   Plaintiffs' motion in limine no. 9 to preclude Defendants from altering the testimony of Tawanda Starms is DENIED.

IT IS SO ORDERED.

Dated:   **February 4, 2016**

_____
UNITED STATES MAGISTRATE JUDGE