# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TACO BELL WAGE AND HOUR ACTIONS . | Case No. 1:07-cv-01314-SAB<br><br>ORDER SUSTAINING DEFENDANTS' OBJECTION TO DAMAGES TESTIMONY BY DR. JONATHAN WALKER |

Currently before the Court is Defendants' objection to expert testimony during the jury trial of this action. Plaintiffs have called Defendants' expert in presenting their case in chief and Defendants' have objected to having the expert testify as to damages in this action.

## I.

## BACKGROUND

This action is proceeding on claims that Taco Bell failed to provide meal and rest periods and pay meal period premiums in compliance with state law. Three classes have been certified in this action.

On December 11, 2015, following briefing and a <u>Daubert</u> hearing, this Court issued an order granting in part Defendants' motion to exclude testimony on damages from Plaintiffs' expert, Mr. Michael O'Brien. (ECF No. 547.) Defendants moved to exclude Mr. O'Brien from offering any expert testimony regarding the raw punch data as being flawed and unreliable. (<u>Id.</u>

1

at 3.)  The Court found that Mr. O'Brien had the foundation of knowledge, skill, and experience to proffer an expert opinion for processing and providing calculations on raw time punch data. (Id. at 4.)  The Court rejected Defendants' challenges to Mr. O'Brien's opinion regarding the raw time punch data.  (Id. at 4-8.)

However, in the December 11, 2015 order, the Court found "[t]he methodology that Mr. O'Brien used for calculating the aggregate damages figures is flawed because he used an average rate of pay for the class that he then multiplied by the number of violative shifts to calculate aggregate damages.  Mr. O'Brien has not provided any support from his industry for why he used an average rate of pay instead of the actual rates of pay when calculating the amount of damages."  (Id. at 9.)  "Mr. O'Brien's decision to calculate the aggregate damages using an average rate of pay for class members is one that falls "outside the range where experts might reasonably differ."  (Id.)

The court further found that:

> Based on Mr. O'Brien"s testimony, there were some shifts in the raw time punch data that had pay rates that he felt were erroneous, because they were as high as $100.  It appears that Mr. O'Brien was concerned about shifts that had erroneous pay rates or no pay information, so he used the average rate of all shifts. However, Mr. O'Brien applied the average pay rate that he calculated to all shifts and not only the shifts with erroneous or no pay information.  Again, there is no explanation before the Court as to why Mr. O'Brien did not just calculate the damages figures based on the actual rates of pay for any violations that were reflected in the raw punch data.  There is no explanation before the Court as to why using an average rate of pay for all of the violative shifts is an appropriate method of calculating the damages for violative shifts in this case.  Therefore, the Court finds that the methodology underlying Mr. O'Brien's damages analysis does not meet the reliability threshold set forth in FRE 702 and Daubert.
>
> Therefore, Mr. O'Brien's dollar figures of his aggregate damages analysis for the rest break premiums, meal period premiums, and underpaid meal premium classes for damages pursuant to California Labor Code Section 226.7 must be excluded.

(Id. at 10.)

A jury trial in this action commenced on February 22, 2016.  During their case in chief, Plaintiffs called Defendants' expert, Dr. Jonathan Walker.  Plaintiffs elicited testimony from Dr. Walker as to the raw punch data that was analyzed in this action without objection by Defendants.  Defendants did object when Plaintiffs' line of questioning moved into the area of damage calculations.  Defendants contend that since Dr. Walker's testimony was based on the

2

raw punch data as analyzed by Plaintiff's expert, it is not reliable and will not assist the jury. On this basis, Defendants seek to preclude Plaintiffs from questioning Dr. Walker regarding damage calculations included in his expert report.

## II.

## EVIDENTIARY HEARING TESTIMONY

On March 1, 2016, the Court excused the jury early and conducted an evidentiary hearing to determine if Dr. Walker could testify to the damages estimate set forth in his expert report. Dr. Walker testified that he was retained by Defendants to give an opinion in four areas and ultimately a fifth. He was to develop an opinion as to 1) whether the raw punch data was a reliable basis to determine the number of instances in which employees of corporate owned Taco Bell restaurants from 2003 through 2014 were not provided rest breaks prior to the fifth hour of work when they worked shifts longer than six hours;[1] 2) whether raw punch data was reliable for developing a list of instances in which employees who worked for more than six hours and less than seven hours were offered twenty minutes of net paid rest or were offered at least two ten minute breaks; 3) whether raw punch data was consistent with a uniform Taco Bell policy to only offer a meal break after the fifth hour of work for employees who worked more than six hours; 4) whether raw punch data was consistent with a uniform Taco Bell policy of only offering twenty minute, or alternately two ten minute, rest periods for employees working six to seven hours; 5) the reliability of Mr O'Brien's counts of the number of instances in which employees who worked these types of shifts did not receive timely meal or rest periods; and 6) to perform damage calculations in anticipation of damage calculations from Plaintiffs based on certain methodology that was provided to him.

This hearing concentrated on Taco Bell's retaining Dr. Walker to "ascertain and develop an opinion about the reliability of Mr. O'Brien's counts of the numbers of instances in which there were employees" who did not get paid for timely meal periods or did not get twenty minutes of net rest. In developing his opinion, Dr. Walker tabulated the raw punch data and

---

[1] All of the tasks assigned to Dr. Walker related to employees who worked for corporate owned Taco Bell restaurants from 2003 to 2014 unless otherwise noted.

1  conducted various analyses related to the data.  In assessing the data, Dr. Walker determined that
2  the raw punch data could not be relied upon to determine the number of instances that violations
3  alleged in this action occurred.  In developing an opinion in an action such as this, an economist
4  would not rely on raw punch data to measure damages.  Dr. Walker only used the raw punch data
5  because he was instructed to do so in anticipation of the damage model that would be proffered
6  by Plaintiffs' expert.

7  Dr. Walker testified that raw punch data is not a reliable basis to calculate damages for
8  failure to provide rest breaks or meal periods and something he would not do nor use to form his
9  expert opinion.  Dr. Walker testified that the calculation that he did was not a damage estimate,
10 and throughout his report he asserted that the analysis was not accurate.[2]  Dr. Walker testified
11 that he would not offer an opinion based on the premise that the raw punch data established
12 violations because the raw punch data is clearly not accurate.

13 While damage calculations were provided in his report, they are the opposite of his expert
14 opinion.  None of the damage figures included in his report reflect an accurate opinion by him of
15 damages in this action.  Dr. Walker testified that it is very clear from his expert report that one
16 cannot ascertain damages reliably based on the raw punch data.  Dr. Walker opined that one
17 could get a more accurate damages figure by relying on payroll verification reports, but even if
18 the payroll verification reports were used, he would not put his name on any damages estimate
19 because he could not determine whether there were missing rest or meal periods from looking at
20 any of the records in this action.

**II.**

**LEGAL STANDARD**

23 Initially, Defendants' objection focused on Plaintiffs' ability to call the defense expert
24 witness in Plaintiffs' case in chief to testify regarding damages.  "Decisions regarding the mode
25 and order of witness questioning lie within the district court's broad discretion."  Nat'l R.R.
26 Passenger Corp. v. Certain Temp. Easements Above R.R. Right Of Way In Providence, Rhode
27 Island, 357 F.3d 36, 42 (1st Cir. 2004); see also Fed. R. Evid. 611(a) ("The court should exercise

---

[2] The Court has marked the F.R.C.P. Rule 26(a)(2)(B) Report of Jonathan Walker as Court's Exhibit No. 3.

reasonable control over the mode and order of examining witnesses and presenting evidence. . . ."). There is no per se rule prohibiting a party from calling the opposing party's expert in their case in chief. Kerns v. Pro-Foam of S. Alabama, Inc., 572 F.Supp.2d 1303, 1309 (S.D. Ala. 2007). Courts have found that the weight of authority favors allowing a party to introduce opinion testimony of the opposing party's expert during their case in chief. De Lage Landen Operational Servs., LLC v. Third Pillar Sys., Inc., 851 F.Supp.2d 850, 853 (E.D. Pa. 2012). Alternatively, Courts have also found that there are reasons to preclude such testimony and such rulings have been upheld as not an abuse of discretion. See Holderbaum v. Carnival Corp., No. 13-24216-CIV, 2015 WL 4945736, at *5 (S.D. Fla. Aug. 20, 2015)(citing issues of practicality, logistics and ethics).[3] However, while the Court is mindful of Defendants' initial objections that a party cannot call the opposing party's expert in their case in chief, the Court decides this issue based upon it gatekeeping function of determining what is admissible evidence at trial. Fed. R. Evid. 104.

### III.

### ANALYSIS

In addressing the objection to Plaintiffs calling Dr. Walker in their case in chief, Defendants argue that Dr. Walker was not retained to offer an opinion on damages, but to offer rebuttal evidence based upon the expected testimony of Plaintiffs' expert. Defendants contended that Dr. Walker would testify that the damage estimates are not his opinion of damages in this action and are based on flawed data and methodology.

---

[3] Some of the courts have that have addressed this issue share a concern of the "explosive" unfair prejudice that would likely result if the jury were to discover that the expert called by one party had originally been hired by the other. See Peterson v. Willie, 81 F.3d 1033, 1037 (11th Cir.1996); House v. Combined Ins. Co. of America, 168 F.R.D. 236, 243 (N.D. Iowa 1996); Rubel v. Eli Lilly Co., 160 F.R.D. 458, 460 (S.D.N.Y.1995). Unlike the facts of this case, these cases are generally raised pretrial, in a motion in limine. Here, the explosive nature is reduced as Defendants' expert was called by Plaintiffs without objection. An additional theme permeates some of these cases which is this: "Federal Rules of Civil Procedure reflect a view that it would be unfair to allow a party to benefit from the effort and expense incurred by the other in preparing its case. See e.g., Ager v. Jane C. Stormont Hospital, 622 F.2d 496, 502 (10th Cir.1980). In other words, the general policy, which is not without exceptions, is that each side should prepare its own case at its own expense." Rubel v. Eli Lilly Co., 160 F.R.D. 458, 460 (S.D.N.Y.1995). What these and other cases show is that one should not rely as a general and well-established rule that a party can call an opposing party's expert. A Court is required assess each case based upon the facts and circumstances before it and decide the matter.

In this instance, Dr. Walker has been called by Plaintiffs' counsel and has testified as to his opinion of the raw punch data. However, it is clear from the testimony of Dr. Walker and his Fed. R. Civ. P. Rule 26(a)(2)(B) report that his opinion is that the raw punch data is not an accurate and reliable basis to determine if the violations alleged in this action occurred.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony in federal court.

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

"Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion. In sum, the trial court must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.' " Primiano v. Cook, 598 F.3d 558, 564 (9th Cir. 2010), as amended (Apr. 27, 2010). The court is required "to admit or exclude evidence based on its scientific reliability and relevance." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 982 (9th Cir. 2011).

Dr. Walker testified that the damage calculations are not his opinion because they do not meet the standards for expert testimony. Dr. Walker developed the estimates based upon the flawed procedure developed by Plaintiffs' expert, and an economist would not rely on the data provided to determine damages in this type of action. Dr. Walker stated that the damage estimates are not based on reliable data. As an economist, he would not rely on raw punch data in developing an opinion as to damages. In looking at the raw punch data, many of the records did not contain a pay field showing the hourly rate. Some of the fields contained numbers that were too large to be an hourly rate. Dr. Walker was directed to assume those numbers were weekly pay numbers so he divided them by 40 to get a more plausible number.

In deciding the admissibility of expert testimony, it is not the correctness of the expert's conclusions but the soundness of his methodology that is considered. Estate of Barabin v. AstenJohnson, Inc., 740 F.3d 457, 463 (9th Cir. 2014). Dr. Walker testified that an economist

1 would not use raw punch data to develop an opinion on damages and, if he had been asked to
2 provide a damages estimate based upon the data that was provided, he would not have accepted
3 the assignment. Dr. Walker stated that the data and methodology he was directed to use here are
4 not the type that would lead to a reliable opinion on damages. The Court finds that the
5 information sought to be elicited from the expert during this trial is not his opinion based on
6 sufficient facts or data, nor does Dr. Walker believe that it is the product of reliable principles
7 and methods.[4] For these reasons, the opinion on damages does not meet the threshold
8 requirements of admissibility under Rule 702.

9 While courts do exercise their discretion to allow a party to call the opposing party's
10 expert at trial, the cases generally deal with actions in which both sides have obtained an expert
11 opinion on a matter at issue in the case. In these cases, it is not disputed that the expert
12 testimony being elicited is the opposing party's expert opinion on the issue at hand. Kerns, 572
13 F.Supp.2d at 1304 (cause of fire); Nat'l R.R. Passenger Corp., 357 F.3d at 42 (fair market value);
14 De Lage Landen Operational Servs., 851 F.Supp.2d at 853 (whether unjust enrichment damages
15 were calculable and provable). Here, the opinion sought to be elicited from Dr. Walker is not his
16 opinion as to the damages in this action, as he would not use such methodology to access
17 damages. In this instance, the methodology used was solely to rebut the perceived testimony of
18 Plaintiffs' expert witness. Dr. Walker never provided an opinion as to damages using a
19 methodology to which he would subscribe. The Court finds that the evidence which Plaintiffs
20 seek to admit through Dr. Walker in this action is distinguishable from those cases in which
21 courts have allowed the plaintiff to call the opposing party's expert, as those cases involve
22 experts who are opining an opinion which they believe and which they are in support.

---

[4] In making these findings as to Dr. Walker and based upon the record before it, the Court is focusing on that the fact that this expert would not make this opinion but relied on parameters given to him by others- including Mr. O'Brien and counsel for the Defendants. His opinion was given in the context of a rebuttal. The fact that he arrives at figures does not say this is his opinion as to what damages should be. However, it is clear to the Court that Dr. Walker, as an economist, does not believe that he could rely on this data and methodology in developing an opinion on damages. To hold otherwise as to Dr. Walker would force him to testify to an opinion to which he does not believe. This aspect, including other reasons noted below, is another independent basis for exclusion of the testimony under Fed. R. Evid. 403 as misleading and confusing to the jury.

Here, Dr. Walker was not retained to develop an estimate of damages, but to determine if the raw punch data was a reliable manner of determining certain issues. In making these determinations he was requested to provide a damage analysis based on the data that was being relied on by Plaintiffs. However, throughout Dr. Walker's report, he opines that the raw punch data is not reliable and he noted the inconsistencies in the data. The damage estimate for late meal periods is prefaced by the statement "notwithstanding that late meal periods were very unusual and that the pattern of recorded meal period varied based on circumstances. . . ." He then stated the amount of damages under the assumption that a missing or late punch in the raw punch data showed liability. The Court finds that the testimony sought to be elicited by Plaintiffs as to damages is not Dr. Walker's expert opinion of the class damages in this action. At no time did Dr. Walker offer an opinion as to what damages should be based upon principles and methods he accepts as reliable.[5] If he did, the analysis of this Court would be much different.

Finally, the Court finds that the evidence should be excluded under Rules 401, 402 and 403 of the Federal Rules of Evidence. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and it is of consequence in determining the action. Fed. R. Evid. 401. Relevant evidence is admissible unless otherwise provided by the Federal Rules of Evidence. Fed. R. Evid. 402. Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

To the extent that the damage estimates have some relevance in this action, Dr. Walker will testify that they are not based on reliable data, do not reflect his opinion as to the damages in this action, and were not developed in a manner consistent with his training as an economist. Allowing this evidence to be presented to the jury through Dr. Walker and then having Dr.

---

[5] In fact, in seeking to exclude Plaintiff's expert, Mr. O'Brien, Defendant relied heavily on Dr. Walker's analysis to show why Plaintiff's expert methodology was flawed and why his opinion should be excluded.

Walker testify to the unreliability of the evidence provides a substantial risk of confusing the issues and misleading the jury. For this reason, the Court finds that the probative value of the evidence is substantially outweighed by the danger of confusing the issues and misleading the jury. Therefore the evidence is also excluded pursuant to Rule 403.

## IV.
## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that Defendants' objection to the testimony on damages sought to be offered through Dr. Walker is SUSTAINED.

IT IS SO ORDERED.

Dated: __**March 2, 2016**__

UNITED STATES MAGISTRATE JUDGE