1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8

| | |
|---|---|
| IN RE TACO BELL WAGE AND HOUR ACTIONS | Case No.  1:07-cv-01314-SAB<br><br>ORDER DENYING PLAINTIFFS' REQUEST FOR PRIVATE ATTORNEY GENERAL ACT PENALTIES<br><br>(ECF Nos. 714, 715, 716) |

9
10
11
12
13
14
15

## I.

## BACKGROUND

This is a consolidated action comprised of six underlying lawsuits.  The first action was filed on September 7, 2007.  (ECF No. 1.)  After other putative class actions were filed against Taco Bell, the cases were consolidated on June 9, 2009, and thereafter.  (ECF No. 109.)  This action proceeded to trial on the Third Amended Consolidated Complaint (the "TACC") and Taco Bell's Answer to the TACC.  (ECF Nos. 522, 532.)

Prior to trial three classes were certified as follows:

• Late Meal Period Class - All persons who work or worked as a non-exempt, hourly-paid employee at a corporate-owned Taco Bell restaurant in California from September 7, 2003, until July 1, 2013, who worked for a period of time in excess of six hours and who worked for periods longer than five hours without a meal period of not less than thirty minutes as reflected in Defendants' employees' time records.  (ECF Nos. 341, 344.)

1

- Underpaid Meal Premium Class - All persons who work or worked as a non-exempt, hourly-paid employee at a corporate-owned Taco Bell restaurant in California who, between September 7, 2003 until November 12, 2007, received at least one 30-minute automatic adjustment on Taco Bell's Time and Attendance System as reflected in Defendants' employees' time records.  (ECF No. 520.)

- Rest Period Class - All persons who work or worked as a non-exempt, hourly-paid employee at a corporate-owned Taco Bell restaurant in California from September 7, 2003, until December 24, 2014, who worked for a period of time in excess of six hours and less than seven hours without at least two rest periods of not less than ten minutes, as reflected in Defendants' employees' time records.  (ECF No. 520.)

A jury trial in this class action commenced on February 22, 2016.  On March 9, 2016, the jury returned a verdict in favor of Plaintiffs for the Underpaid Meal Premium Class and in favor of Defendants for the Late Meal Period and Rest Period Classes.  During trial, the parties agreed that the Court would determine penalties under the California Private Attorneys General Act of 2004 ("PAGA"), Cal. Lab. Code § 2698 et seq.  Currently before the Court is Plaintiffs' brief in support of penalties filed March 14, 2016.  Defendants filed an opposition on March 15, 2016.

An evidentiary hearing and oral argument were scheduled for March 16, 2016.  On this date, Counsel Andrew Sokolowsi, Monica Balderrama, Matthew Theriault, and Stuart Chandler were present for the class; and counsel Tracey Kennedy, Nora Stiles, Morgan Forsey, and John Makarewich were present for Defendants.  At the start of the hearing, Defendants raised the issue that Plaintiffs had provided a new report from Mr. O'Brien at approximately 9:30 the prior evening and requested that the report and all testimony from Mr. O'Brien be excluded based on the number of times that similar conduct had occurred.  The Court continued the hearing to March 17, 2016, so that Plaintiffs could provide the Court with evidence of what had been disclosed by Mr. O'Brien in regard to PAGA penalties during prior depositions.

The hearing reconvened on March 17, 2016.  Counsel Andrew Sokolowsi, Monica Balderrama, Matthew Theriault, and Stuart Chandler were present for the class; and counsel

1    Tracey Kennedy, Nora Stiles, and Morgan Forsey were present and John Makarewich appeared

2    telephonically for Defendants.  The parties presented argument on the expert, Mr. O'Brien's

3    testimony and evidence provided to Defendants during the expert discovery period and the

4    evidentiary hearing and oral argument were heard.

5        Having considered the pleadings filed by the parties, the evidence presented during the

6    trial of this matter and the evidentiary hearing, and the arguments made during the March 16 and

7    17, 2016 hearings, the Court issues the following order.

8                                                    **II.**

9                                          **LEGAL STANDARD**

10       Pursuant to PAGA, any provision of the California Labor Code that provides for the

11   assessment and collection of a civil penalty by the California Labor and Workforce Development

12   Agency ("LWDA") for a violation of the Labor Code may be recovered through a civil action

13   brought by an aggrieved employee on behalf of herself and other current or former employees.

14   Cal. Lab. Code § 2699(a).  An aggrieved employee is "any person who was employed by the

15   alleged violator and against whom one or more of the alleged violations was committed."  Cal.

16   Lab. Code § 2699(c).

17       Before bringing a civil action for statutory penalties, the aggrieved employee must

18   comply with Labor Code section 2699.3 which requires the employee to provide written notice

19   of the alleged Labor Code violations to both the employer and the LWDA.  Cal. Lab. Code §§

20   2699(a), 2699.3(a).  The notice must include the facts and theories to support the alleged

21   violation.  Cal. Lab. Code § 2699.3(a).  If the LWDA informs the employee that it does not

22   intend to investigate, or fails to respond within 33 days, the employee may commence a civil

23   action under PAGA.  Cal. Lab. Code § 2699.3(a)(1)(B).

24       In bringing a representative action under PAGA, the aggrieved employee is acting as the

25   proxy or agent of the state's labor law enforcement agencies.  Arias v. Superior Court, 46 Cal.

26   4th 969, 986 (2009).  An action under PAGA can be brought as a representative action under

27   California's Unfair Competition Law and does not have to be brought as a class action.  Arias,

28   46 Cal.4th at 975.

                                                      3

# III.

# ANALYSIS

Although Plaintiffs only prevailed on the claims for the Underpaid Meal Premium Class, they are seeking penalties under PAGA for all three classes and additional unspecified claims that were not certified in this action. Plaintiffs have provided evidence that they provided written notice as required by Labor Code section 2699.3.[1]

## A.     Mr. O'Brien's New Report is Excluded

After the jury returned its verdict in this action, Plaintiffs had Mr. O'Brien complete new analysis of the raw punch data for the PAGA time period to determine the number of underpaid meal premiums that would be represented in the raw punch data. At approximately 9:30 the evening prior to the hearing, Plaintiffs sent to Defendants a report with this new analysis provided by Mr. O'Brien. Plaintiffs argue that this new analysis was necessary due to the fact that the jury found liability for the Underpaid Meal Premium Class.

While Plaintiffs argue that this new analysis was required due to the jury verdict, the PAGA time period and who would qualify as a class member were apparent at the time that Mr. O'Brien did his pretrial expert analysis. The fact that the jury found liability did not require any

---

[1] During cross examination on Plaintiffs' letter to the LWDA, Defendants presented evidence that the letter did not exhaust the Underpaid Meal Premium class PAGA claims. The purpose of PAGA's "notice requirement is to give employers notice and to inform the LWDA of the potential labor code violations so that it may choose whether to investigate or prosecute on its own." Amey v. Cinemark USA Inc., No. 13-CV-05669-WHO, 2015 WL 2251504, at *13 (N.D. Cal. May 13, 2015). "To constitute adequate notice under § 2699.3(a), the notice must allege at least some 'facts and theories' specific to the plaintiff's principal claims; merely listing the statutes allegedly violated or reciting the statutory requirements is insufficient." Amey, 2015 WL 2251504 at *13 (citations omitted). "Parroting the statute that was violated is insufficient to provide notice under Section 2699.3." Id. (citing Archila v. KFC U.S. Properties, Inc., 420 Fed.Appx. 667, 669 (9th Cir. 2011)). Courts find that where no facts are alleged regarding the specific violations there has been insufficient notice to exhaust. See Ovieda v. Sodexo Operations, LLC, No. CV 12-1750-GHK SSX, 2013 WL 3887873, at *4 (C.D. Cal. July 3, 2013) (notice contains no facts specific to the principal meal and rest break claim and unpaid wages with no information about what the illegal policies and practices were); Alcantar v. Hobart Serv., No. ED CV 11-1600 PSG, 2013 WL 228501, at *3 (C.D. Cal. Jan. 22, 2013) (letter that states plaintiff is currently an employee and they are investigating claims that merely set forth the language of the statute); Soto v. Castlerock Farming & Transp. Inc., No. CIV-F-09-0701 AWI, 2012 WL 1292519, at *8 (E.D. Cal. Apr. 16, 2012) (employees have been employed in employer's business, payment has not been made for all work actually worked and permitted to be performed, and for all rest and meal periods, employer has violated Labor Code and list of Codes violated). Courts require a detailed level of specificity since the purpose of the notice is to allow for the possibility of correction without litigation. Holak v. K Mart Corp., No. 1:12-CV-00304-AWI-MJ, 2015 WL 2384895, at *3 (E.D. Cal. May 19, 2015) motion to certify appeal denied, No. 1:12-CV-00304-AWI, 2015 WL 4756000 (E.D. Cal. Aug. 11, 2015) (collecting cases).

While Plaintiffs' notice did not include any facts or the theory that employees were underpaid for missed or short meal breaks, since Defendants did not move to dismiss the PAGA claims for the Underpaid Meal Premium class for failure to exhaust, the Court finds that the failure to exhaust has been waived.

1  new analysis regarding the PAGA claims. Plaintiff's complaint contained the allegations
2  regarding the underpayment of the meal premium which would identify who the class members
3  were and the time period for the PAGA claims was discernable at the time that the complaint
4  was filed.

5  Based on the evidence presented at trial and this evidentiary hearing, the Court concludes
6  that establishing damages and penalties in this action were a secondary consideration pretrial and
7  an afterthought during the trial of this action by Plaintiffs. This resulted in Plaintiffs seeking to
8  have their expert prepare last minute reports to correct the deficiencies in the expert reports
9  provided during the expert discovery period. These reports prepared during trial were an attempt
10 to correct the deficiencies in the evidence on substantive damage and penalty issues. During the
11 trial, Plaintiffs attempted to present expert reports that were prepared after the trial commenced
12 in violation of the expert disclosure requirements and this Court's pretrial order.

13 Plaintiffs' failure to have their expert correctly assess damages and penalties prior to trial
14 is not sufficient to obtain relief from the requirement of Rule 26 or this Court's orders. The
15 Court finds that the new report is excluded as it was not disclosed prior to trial and was proffered
16 in violation of the pretrial order. Further, since the report did not contain analysis that was done
17 prior to the jury returning the verdict, the information which Plaintiffs seek to present through
18 this report was not developed by Mr. O'Brien during the pretrial discovery period and therefore
19 would not refresh his recollection.

20 Defendants argued that the Court should exclude Mr. O'Brien's testimony completely
21 due to the multiple attempts of counsel to present expert opinion that was not properly disclosed
22 prior to trial. In considering Mr. O'Brien's expert report, the Court notes that it contains three
23 calculations for PAGA penalties. The PAGA penalty calculation for the Underpaid Meal
24 Premium class states that it is for 2007 and the count is 37,490. Plaintiffs did provide
25 information on the PAGA penalties for the Underpaid Meal Premium Class in Mr. O'Brien's
26 report and he was allowed to proffer testimony from his report provided in compliance with the
27 scheduling orders. The Court denies Defendants' request to exclude Mr. O'Brien's testimony
28 regarding PAGA claims in its entirety.

**B.** **Plaintiffs Failed to Meet Their Burden of Proof to Establish Violation of California Law for the Late Meal Period and Rest Period Classes**

Plaintiffs contend that since the jury found that Taco Bell had a policy that failed to authorize and permit a second rest period and did not provide a meal period before the beginning of the fifth hour of work, Plaintiffs are entitled to PAGA penalties for the Late Meal Period and Rest Period Classes.

Plaintiffs argue that penalties under PAGA are required regardless of whether they have proved that any employee was injured by Defendants' conduct. However, Plaintiffs misrepresent the jury verdict. The jury did not find that Plaintiffs had not shown injury. The jury found that Plaintiffs had not proven by a preponderance of the evidence that class members were non-exempt employees who worked for a Taco Bell Corporate restaurant and either worked shifts longer than six but less than seven hours without being authorized and permitted to take a second ten minute or net twenty minute rest period or worked longer than six hours without being provided a meal period that began before the end of the fifth hour of work.

Although Plaintiffs argue that the jury was unwilling to award damages, the jury never got to consideration of damages. The jury found that Plaintiffs did not prove by a preponderance of the evidence that Taco Bell violated the Labor Code by providing late meal periods or failing to provide a second rest period. Plaintiffs are arguing that even if they failed to show that Taco Bell violated the Labor Code by implementing the policy they are still entitled to penalties solely due to the jury finding a policy.

During the March 16, 2016 hearing, Plaintiffs argued that the jury failed to find liability for the entire class period, but the Court should look at the evidence to determine if liability had been proven for a shorter time period. First, the parties to this action requested a jury trial. While the parties agreed to have the court determine PAGA penalties, there was no agreement to waive factual findings by the jury. Further, to the extent that this Court could do so, it would not find differently than the jury on these claims. During the trial of this matter, Plaintiffs presented some witness testimony, and some evidence regarding payroll verification reports and pay stubs. While Plaintiffs presented witness testimony in support of their claims, the named Plaintiffs had

credibility issues.  Both Plaintiff Medlock and Plaintiff Hardiman had been terminated from employment with Taco Bell for lying on their employment applications.  Trial Testimony of Sandrika Medlock 42:15-17, ECF No. 708; Trial Testimony of Lisa Hardiman 8:2-17, ECF No. 709.  Mr. Arriola, another previous employee testified that he was able to remember not receiving a timely meal period or second rest periods when he worked for Taco Bell over seven years ago, but when asked when he took his lunch a week prior to the hearing his estimate was based on his normal practice.  Reporter's Transcript of Proceedings 1346:1-24, ECF No. 724.

Dr. Walker testified that review of the raw punch data showed that the named class members did not tend to have recorded late meal periods.  Trial Testimony of Jonathan Walker 206:12-212:3.  Testimony was presented that employees worked for both corporate and franchise Taco Bells, and some employees were subject to on duty meal period agreements and might not punch out for meal periods.

Plaintiffs' case focused on the raw time punch data to prove that employees received late meal periods or were not provided with a second rest period.  The evidence presented at trial showed that the raw punch data was not the accurate reflection of the employee's time worked.  The evidence showed that there were manual changes made to correct the raw punch data at the restaurant level.  Reporter's Transcript of Proceedings 314:10-315:16, ECF No. 720.  Defendants proffered evidence that sometimes employees forgot to punch out and had their manager manually enter meal period information.  There could also have been times when the system was not available so rest and meal periods had to be entered manually into the payroll system.  Additionally, some employees received on duty meal periods and did not punch out for meal periods.

There was testimony that for each pay period, employees were provided with a payroll verification report which listed their hours and the meal and rest breaks provided.  The employee was to review the data for accuracy and then sign the report.  It was this data from the payroll verification report that was used to issue payroll checks.  Finally, Taco Bell presented evidence that meal and rest period schedules were provided for shifts and the employees were provided breaks every two hours

1    Similar to the jury, the Court finds that the evidence presented by Plaintiffs did not prove

2  by a preponderance of the evidence that there were non-exempt employees who worked for a

3  Taco Bell Corporate restaurant and either worked shifts longer than six but less than seven hours

4  without being authorized and permitted to take a second ten minute or net twenty minute rest

5  period or worked longer than six hours without being provided a meal period that began before

6  the end of the fifth hour of work during the class period.

7    Here, the jury's finding that Plaintiffs failed to meet their burden of proof is dispositive of

8  the PAGA claims for the Late Meal Period and Rest Period Classes.  Plaintiffs cannot rely on

9  evidence that the jury found insufficient to prove a violation of the Labor Code to seek penalties

10  under PAGA.  None of the cases cited by Plaintiff compel a different result.

11    In McKenzie v. Fed. Exp. Corp., 765 F. Supp. 2d 1222 (C.D. Cal. 2011), the plaintiffs

12  proved that defendants had violated the Labor Code by providing employees with paychecks that

13  were not accurate itemized statements of wages.  Id. at 1228-31.  While McKenzie held that the

14  plaintiffs did not need to prove injury due to the failure to provide accurate wage statements, it

15  does not stand for the proposition that a plaintiff need not prove a violation of the Labor Code to

16  obtain civil penalties.

17    Similarly, in Solis v. Regis Corp., 612 F. Supp. 2d 1085 (N.D. Cal. 2007), the trial court

18  found that defendants had violated Labor Code section 212 which requires payment of wages to

19  be by check payable on demand and without discount.  Id. at 1086.  The defendant processed

20  payroll checks on out of state checks which could and had resulted in a bank hold of up to five

21  days.  Id. at 1086.  The court found that for at least a year the defendant had violated the Labor

22  Code provision that paychecks be payable on demand without discount.  Id.  Defendants argued

23  that liability only attached to those class members whose checks had a hold placed on them or

24  had to pay a fee to cash their check.  Id.  The court held that regardless of whether a class

25  member was injured, the defendant violated the statute when it issued paychecks that could not

26  be cashed in the state on demand and without discount.  Id.  McKenzie and Solis are

27  distinguishable from this action.  Here, the jury found that Plaintiffs did not prove that

28  Defendants failed to provide a second rest period or a meal period that began prior to the

1 beginning of the fifth hour of work.  Therefore, Plaintiffs did not prove a violation of the Labor

2 Code for the Rest Period or Late Meal Period Classes.

3       Further, even if Plaintiffs were correct that the policy in and of itself violates California

4 Labor law, penalties are calculated based on the number of violations.  In California, the court's

5 primary intent in interpreting a statute is to determine the Legislature's intent.  Delaney v.

6 Superior Court, 50 Cal.3d 785, 798 (1990); Freedom Newspapers, Inc. v. Orange County

7 Employees Retirement System, 6 Cal.4th 821, 826 (1993) (superseded by statute on other

8 grounds).  In so doing, the court first looks to the statutory language as the words used are the

9 best indicators of the Legislature's intent.  Freedom Newspapers, Inc., 6 Cal.4th at 826.  The

10 words in the statute "are to be given their plain and commonsense meaning."  Amaral v. Cintas

11 Corp. No. 2, 163 Cal. App. 4th 1157, 1184 (2008).  If the language of the statute is clear and

12 unambiguous there is no need for construction or to look to Legislative intent.  Delany, 50 Cal.3d

13 at 798.  When the statute is ambiguous, the court considers evidence of the Legislature's intent

14 beyond the words in the statute such as the legislative history and the wider historical

15 circumstances of the statute's enactment.  Freedom Newspapers, Inc., 6 Cal.4th at 828.

16       Here, the language of the statute is clear.  PAGA provides civil penalties for **violations** of

17 the Labor Code.  Cal. Lab. Code § 2699(a) (emphasis added).  "[T]he civil penalty is one

18 hundred dollars ($100) for **each aggrieved employee** per pay period for the **initial violation** and

19 two hundred dollars ($200) for **each aggrieved employee** per pay period for each **subsequent**

20 **violation**."  Cal. Lab. Code § 2699(f)(2) (emphasis added).

21       Plaintiffs seek to have the Court consider the raw punch data and payroll verification

22 reports to determine the number of violations.  However, the jury has considered this evidence

23 and found the evidence insufficient to prove by a preponderance of the evidence that employees

24 of a corporate Taco Bell restaurant were denied a second rest period or not provided with a meal

25 period that began prior to the beginning of the fifth hour of work.  As Plaintiffs failed to meet

26 their burden of proving that Taco Bell violated the Labor Code for the Rest Period and Late Meal

27 Period Classes, they cannot receive penalties under PAGA for these classes based on the same

28 evidence which the jury found to be insufficient.  Plaintiffs' request for PAGA penalties for the

1  Late Meal Period and Rest Period Classes is denied.[2]

2      **C.      Underpaid Meal Premium Class**

3          Plaintiffs are seeking PAGA penalties for the Underpaid Meal Premium Class.

4  Defendants contend that Plaintiff Hardiman may only bring representative claims on behalf of

5  employees at the store in which she was employed.  A similar claim was made in <u>Cardenas</u>, and

6  rejected by the trial court.  796 F. Supp.2d at 1260.  A plaintiff need not identify every employee

7  or location for which the PAGA penalties would accrue.  <u>Id.</u>  Plaintiffs alleged here that Taco

8  Bell had a policy that was applied companywide that underpaid employees for a missed or short

9  meal period.  As found in the motion for class certification, the requirements to certify the

10  Underpaid Meal Premium Class were met; and Defendants have not provided any reason for the

11  Court to decertify the Underpaid Meal Premium Class.

12          Penalties under PAGA are mandatory.  <u>Amaral</u>, 163 Cal.App.4th at 1213.  As relevant

13  here, where the Labor Code does not provide a civil penalty, "the civil penalty is one hundred

14  dollars ($100) for each aggrieved employee per pay period for the initial violation and two

15  hundred dollars ($200) for each aggrieved employee per pay period for each subsequent

16  violation."  Cal. Lab. Code § 2699(f)(2).  The court may award less than the maximum penalty

17  where, "based on the facts and circumstances of the particular case, to do otherwise would result

18  in an award that is unjust, arbitrary and oppressive, or confiscatory."  Cal. Lab. Code §

19  2699(e)(2).  Where civil penalties are recovered, seventy-five percent is distributed to the Labor

20  and Workforce Development Agency, and the remaining twenty-five percent is distributed to the

21  "aggrieved employees."  Cal. Lab. Code § 2699(i).

22      1.      <u>Awarding PAGA Penalties Would Not Constitute Double Recovery</u>

23          Defendants argue that awarding penalties under PAGA for the underpayment of meal

24  premiums would be a double recovery.  Initially, the Court has already found that Defendants

25  waived the argument that premium payments are a penalty and not a wage by failing to raise the

26

27  [2] Plaintiffs argue that they should be able to seek PAGA penalties for uncertified claims raised in the complaint.  To the extent that Plaintiffs are seeking penalties for claims other than the late meal or missed rest periods, they do not identify any claims that were not certified for which they seek PAGA penalties.  Further, this action only went to

28  trial on the certified claims so no other claims were presented to the jury for determination of liability.

issue prior to the trial of this action.  (ECF No. 687 at 2-3.)  Further, Labor Code section No. 226.7(c) states:

> If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.

The damages awarded by the jury to the Underpaid Meal Premium Class were for failure to provide a full thirty minute meal period.  The Labor Code provides that due to the failure to provide the full thirty minute meal period, the employer must pay the employee one additional hour of compensation.  Since the Labor Code provides that employees were entitled to one hour of pay at the employee's regular rate of compensation for each workday a meal period was not provided, Defendants did not comply with California law by only paying one half hour of compensation.  The damages sought for PAGA by the Underpaid Meal Premium Class are for the failure to pay a full hour of pay to aggrieved employees.  The Court finds that awarding PAGA claims here would not be double recovery.

> 2.   <u>PAGA Penalties are Properly Assessed at One Hundred Dollars For Each Aggrieved Employee Per Pay Period Prior to the Filing of Lawsuit</u>

Defendants also argue that they should not be subject to subsequent violation penalties because they did not have prior notice that their conduct violated the law.  In <u>Amaral</u>, 163 Cal.App.4th at 1209, the California court addressed a similar situation in which the defendant argued it could not be subject to subsequent violation penalties until it was notified that it was violating the law.  The appellate court held that "[u]ntil the employer has been notified that it is violating a Labor Code provision (whether or not the Commissioner or court chooses to impose penalties), the employer cannot be presumed to be aware that its continuing underpayment of employees is a 'violation' subject to penalties.  However, after the employer has learned its conduct violates the Labor Code, the employer is on notice that any future violations will be punished just the same as violations that are willful or intentional—i.e., they will be punished at twice the rate of penalties that could have been imposed or that were imposed for the initial

1  violation." Id. at 1209; see also Amalgamated Transit Union Local 1309, AFL-CIO v. Laidlaw

2  Transit Servs., Inc., No. 05CV1199-IEG-CAB, 2009 WL 2448430, at *9 (S.D. Cal. Aug. 10,

3  2009) (finding for subsequent penalties the issue is whether the employer has been notified of a

4  violation); Willis v. Xerox Bus. Servs., LLC, No. 1:13-CV-01353-LJO, 2013 WL 6053831, at *6

5  (E.D. Cal. Nov. 15, 2013) (term "subsequent violations" is a term of art and for a plaintiff to

6  recover for a "subsequent violation" defendant must have had notice that it violated the Labor

7  Code).

8          In this instance, Plaintiffs have presented no evidence that Defendants had been provided

9  with notice that their policy of paying one-half hour of premium pay violated California law

10 prior to this lawsuit being filed.  The Court finds that penalties in this action would be properly

11 assessed at one hundred dollars for each aggrieved employee per pay period prior to the filing of

12 this lawsuit.

13         After being served with this lawsuit, Defendants would have been on notice that their

14 autopay policy of only paying one half hour of compensation for each missed or short lunch

15 period would be a violation of California law.  Review of the docket shows that the parties

16 stipulated to an extension of time for Defendants here to respond to the complaint which is

17 signed October 1, 2007.  As of this date, Defendants would be on notice of the violation and

18 further violations should be subject to subsequent violation penalties.  The Court notes that

19 Defendants changed their autopay policy to comply with state law on November 12, 2007.

20 Therefore, from October 1, 2007 through November 12, 2007, the subsequent penalties of

21 $200.00 should be assessed based upon the continuance of the policy after receiving notice that it

22 violated state law.

23         3.    Mr. O'Brien's Analysis is Not Reliable and Cannot be Used in Determining
                PAGA Penalties
24

25         Taco Bell employees are paid every two weeks.  The parties generally agree that the time

26 period at issue here is from August 23, 2006 (Plaintiffs) or August 26, 2006 (Defendants) to

27 November 12, 2007.  Mr. O'Brien testified that he calculated 34,490 auto pay violations for a

28 portion of this time period, from April 11, 2007 to October 31, 2007.

During the evidentiary hearing, Mr. O'Brien testified that in developing his opinion, he did not analyze payroll verification reports or payroll records in determining whether an autopay violation occurred. Mr. O'Brien testified that the payroll verification reports were provided in hardcopy form and were not reviewed because they could not be processed electronically. Therefore, he calculated the autopay violations based on the raw punch data. [3]

In using the raw punch data to calculate penalties, Mr. O'Brien recognized that the raw punch data does not include any autopay information. Mr. O'Brien based his calculations on the assumption that any violation that appeared in the raw punch data would generate an autopay. He based his analysis on finding a meal violation for the shift in the raw punch data.

Mr. O'Brien's analysis did not include any corrections that were made to the raw punch data or take into consideration any out of period adjustments that were made to payroll and included employees who were not eligible for autopay. He did not review any information on individuals who had received autopay to verify that his hypothesis was correct. Mr. O'Brien testified at the hearing that he was not aware of any adjustments that were made to the raw punch data or the percentage of alleged violations that would have been adjusted so that no autopay would have generated. Mr. O'Brien was not aware of which job titles received autopay or which job titles were excluded from autopay.

Although, as Mr. O'Brien testified, there is some relation between the raw punch data and autopay, his calculations do not include any corrections which were not in the raw punch data which would have caused autopay to not generate. Further, Mr. O'Brien included violations for the Late Meal Period and Rest Period Classes in his calculation for the Underpaid Meal Premium Class PAGA penalties. Mr. O'Brien estimated that approximately two-thirds of the calculation for PAGA penalties for the Underpaid Meal Premium Class include late meal periods and missed second rest periods which are not part of this class. The calculations for PAGA penalties for the Underpaid Meal Premium Class are therefore over inclusive; and Mr. O'Brien

---

[3] During the trial, Plaintiffs asserted that the payroll verification reports were not used to calculate damages because it would have been too expensive to analyze the data in the format in which it was provided.

1  provided no basis for his estimate that the number of autopay violations would be one-third of

2  the number provided in his report.

3        The Court finds that Mr. O'Brien's estimate that the autopay violations would be one-

4  third of the number he provided is speculation and not a standard which this Court could assess

5  damages for an amount certain when the court applies the law of damages.  See Bigelow v. RKO

6  Radio Pictures, 327 U.S. 251, 264 (1946) (damages may not be based on guesswork or

7  speculation but must be a just and reasonable estimate based on relevant data).  In fact, to go the

8  one step further, the raw punch data is not a proper measure of autopay violations on which to

9  base PAGA penalties.  In order to arrive at a level of certainty that is not speculative as to the

10  amount of PAGA penalties here, Mr. O'Brien should have reviewed and analyzed the payroll

11  verification reports or Defendants' payroll records to determine the autopay that actually

12  generated.  Here, Plaintiffs made a strategic decision to not evaluate the payroll verification

13  reports because it would be "more expense."  In other words, evidence was available by which

14  Plaintiffs could have determined the number of autopay violations, but they choose not to

15  evaluate the relevant data and choose to base their estimates on the raw punch data that does not

16  show when autopay generated.

17        For these reasons, the Court finds that the analysis provided by Mr. O'Brien is inaccurate

18  and incomplete.  Additionally, the Court finds it troubling that during the evidentiary hearing,

19  when questioned on how his report informed Defendants of the analysis used in creating the

20  report, Mr. O'Brien provided a formula that had to be entered into the spreadsheet in order to

21  show how damages were calculated.  The Court finds no analysis in Mr. O'Brien's report from

22  which Defendants could determine how the penalties were calculated to enable them to challenge

23  the accuracy of the opinion.

24        For these reasons, the Court finds that Mr. O'Brien's testimony does not provide a

25  reliable basis for the Court to determine the number of autopay violations that occurred in this

26  action.  Mr. O'Brien was unable to provide a reliable estimate of the number of times that class

27  members received autopay in this action, much less during the time period relevant here.

28        4.   Determining Violations by Review of Payroll Verification Reports

Plaintiffs argue that the Court can determine the number of autopay violations by reviewing the payroll verifications reports that were entered into evidence in Exhibit 37. Plaintiffs request that the Court determine the number of violations by going through the hundreds of thousands of pages provided electronically on Exhibit 37 to determine the number of violations by pay period.  (Ron at IT)  However, it is Plaintiffs' burden to produce evidence in support of their claims in a manner that can be decided by the trier of fact.

Here, Plaintiffs have produced hundreds of thousands of pages of payroll verification reports which are not in order by date or any other manner in which the Court could review them for the purpose of deciding PAGA penalties.  Mr. O'Brien stated that he was unable to process the data because it would be too onerous due to being in hardcopy format.  Plaintiffs' counsel represented that four attorneys spent at least twenty hours the prior evening going through the payroll verification reports and found over 4,500 violations for just a portion of the relevant time period.  According to Plaintiffs, this was only a part of the violations and there are still thousands and thousands of pages to sift through.

The Court has viewed Exhibit 37 to determine if there is some reasonable manner to search the documents to determine PAGA violations for the relevant time period.  Exhibit 37 is a hard drive which contains three folders labeled Part A through C.  Part A contains one file which is 774 megabytes in size and includes 1 file with 17,837 Paycheck Verification Reports.  Part B is 37.8 gigabytes in size and contains 29,017 files.  As best the Court can determine, these files contain from a single to approximately 100 Paycheck Verification Reports.  Part C contains 12 files which contain from 13 to over 26,000 Paycheck Verification Reports.  One of the folders in Part C, 56-15, contains 993 megabytes of data in nine files which cannot be opened.  Further, the Court attempted to search those files which could be accessed by using the autopay code, but the quality of the documents does not allow such a search.  The Court finds that reviewing Exhibit 37 would require a manual review of each document within each of the folders to determine if any of the payroll verification reports are within the relevant time period and contain an autopay. It is not possible for the Court to estimate the amount of time that would be required to perform such a task.

There are two main ways that parties can present voluminous documents at trial.  United States v. White, 737 F.3d 1121, 1135 (7th Cir. 2013).  First, the party can offer "the information in a summary exhibit under Federal Rule of Evidence 1006, in order to 'to prove the content of voluminous writings ... that cannot be conveniently examined in court.'  If admitted this way, the summary itself is substantive evidence—in part because the party is not obligated to introduce the underlying documents themselves."  White, 737 F.3d at 1135.  These summaries must fairly represent the documents and be accurate and nonprejudicial.  United States v. Milkiewicz, 470 F.3d 390, 398 (1st Cir. 2006).  A summary under Rule 1006 must not make arguments about the inferences the jury should draw from the documents.  White, 737 F.3d at 1135.

The second manner of presentation is a pedagogical chart offered pursuant to the court's control of evidence under Federal Rule of Evidence 611(a).  White, 737 F.3d at 1135.  A chart proffered under Rule 611 may be less neutral in presentation as it is used to illustrate or clarify the party's position.  Milkiewicz, 470 F.3d at 398.  These charts are not substantive evidence but are only to aid the jury in its evaluation of other evidence.  White, 737 F.3d at 1135.

Here, the only summary provided to Defendants prior to trial was the expert's analysis of raw time punch data to show the number of alleged violations for each of the three classes.  This analysis by the expert was not provided to Defendants in compliance with the court's scheduling and pretrial orders and was therefore excluded at trial.  While Plaintiffs offered two other "summaries" of the raw punch data during the trial, these summaries were withdrawn before the Court had the opportunity to rule on Defendants' objections to the summaries.

Further, the payroll verification reports, which are several hundred thousand documents, are clearly voluminous documents for which a Rule 1006 summary could have been provided. The Court notes that only a portion of these documents are relevant to the Underpaid Meal Premium Class and only a fraction of those documents are relevant to PAGA penalties. Plaintiffs did not have any analysis done of the payroll verification reports prior to trial; and therefore no charts or summaries were prepared or offered to prove the number of times that employees received autopay.

1    Rule 1006 provides that the proponent of the summary must make the originals or

2  duplicates available for examination or copying by the other party at a reasonable time or place.

3  Plaintiffs argue that the documents were available for examination by Defendants prior to trial

4  because they are Defendants' payroll records.  While Rule 1006 does not specify the time that

5  summaries must be made available to the opposing party, it does not allow a party to spring

6  summaries of voluminous documents on the opposing party so late in the proceedings that the

7  party cannot check their accuracy prior to trial.  Fidelity National Title Insurance Co. of New

8  York v. Intercounty National Title Insurance Co., 412 F.3d 745, 753 (7th Cir. 2005).  Since

9  demonstrative evidence such as summaries "can be quite potent, the proponent should have the

10 opportunity to review each item of evidence and raise any objections" prior to it being shown to

11 the trier of fact.  Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence Manual, §

12 9.05[1] at 9-27 (Joseph M. McLaughlin, ed., Matthew Bender 2015).

13    In this instance, Plaintiffs sought to introduce an oral summary of documents on the final

14 day of the trial.  No summary was provided to Defendants and they therefore had no opportunity

15 to verify the accuracy of the summary.  Plaintiffs also sought to provide a summary of the

16 Exhibit 37 after the hearing.  Defendants objected to a continuation for Plaintiffs to prepare

17 further evidence in this action.

18    This exhibit or a later prepared exhibit would be offered in violation of this Court's

19 pretrial order which provided that all exhibits must be listed in the pretrial order and would not

20 be admitted unless the parties stipulate or upon a showing of manifest injustice.  Sec. Am.

21 Pretrial Order 41, ECF No. 608.  To determine if manifest injustice would result, the Court

22 considers the degree of prejudice to Plaintiffs if the order is not modified; the degree of prejudice

23 to Defendants if the order is modified; the impact of modification of modification at the stage of

24 the proceedings on the orderly and efficient conduct of the case; and the degree of willfulness,

25 bad faith or inexcusable neglect on the part of Plaintiffs.  United States v. First Nat. Bank of

26 Circle, 652 F.2d 882, 887 (9th Cir. 1981).  If the Court finds, upon consideration of these factors,

27 that refusal to allow a modification might result in injustice while allowance would cause no

28

1  substantial injury to the opponent and no more than slight inconvenience to the court, a

2  modification should ordinarily be allowed.  Id.

3      The failure to modify the scheduling order will result in substantial prejudice to Plaintiffs

4  as they have presented no evidence by which they can establish the penalties in this action.

5  However, Defendants would be prejudiced by not being provided with the opportunity to check

6  the veracity of the summary which had never been produced during the trial or before.  This

7  prejudice to Defendants could be avoided by continuing this matter to allow Plaintiffs to prepare

8  a proper summary of the payroll verifications reports and then providing Defendants with the

9  opportunity to review the summary for accuracy.  However, this action has been proceeding for

10  nine years, and a three week trial has been conducted.  The jury returned a verdict on March 9,

11  2016, and the PAGA hearing was set for March 16, 2016.  ECF No. 701.  Despite having

12  approximately a week to address the issue, Plaintiffs did not prepare the summary at issue here

13  until after the March 16, 2016 hearing.  The Court finds that Plaintiffs inexcusable neglect

14  outweighs the prejudice to Plaintiffs in this action.

15      Plaintiffs should have been aware from early on in this action that the raw punch data did

16  not contain reliable information from which PAGA penalties could be ascertained.  Further, the

17  order partially excluding Plaintiffs' expert's testimony on damages was filed on December 11,

18  2015.  (ECF No. 574.)  At this time, Plaintiffs should have been aware of the problems with

19  using the raw punch data to prove PAGA penalties in this action.  It was also clear during the

20  pretrial proceedings that Defendants were contesting the use of the raw punch data to establish

21  damages in this action.  Plaintiffs had ample opportunity during the nine years after this action

22  was filed to analyze the payroll verification reports.

23      Additionally, during trial the Court conducted an evidentiary hearing with Defendants'

24  expert when Plaintiffs attempted to have him testify on their theory of damages.  During this

25  hearing, Defendants' expert testified that the raw punch data was not a proper basis for

26  determining violations or damages in this action.  Further, it was evident during the trial that the

27  raw punch data did not include any information regarding when autopay generated.  Even after

28  the jury returned their verdict, Plaintiffs did not prepare a summary of the payroll verification

1  reports, but had their expert prepare a new analysis of the raw punch data. It was not until after

2  the PAGA hearing was continued that Plaintiffs decided to review the payroll verification reports

3  to prepare a summary of the tens of thousands of documents at issue here. The Court finds that

4  Plaintiffs' have not met their burden of establishing manifest injustice due to the failure to admit

5  the summary of the payroll verification reports.

6      Here, Plaintiffs are seeking to have the Court do what they declined to do because of the

7  time and expense that was involved. Plaintiffs seek to have this Court review hundreds of

8  thousands of pages of documents to see which payroll verification reports contain autopay,

9  determine which of the documents apply to the relevant time period, and compile those

10 violations by pay period to determine the PAGA penalty and determine whether that was a first

11 of second violation necessitating the imposition of $100 or $200. Based upon the manner in

12 which Plaintiffs presented their evidence in this action, the Court is unable to determine the

13 number of PAGA violations by a preponderance of evidence and arrive at a figure for PAGA

14 penalties. The Court finds that any amount of PAGA penalties would be mere speculation.

15     While Plaintiffs have not provided any authority addressing such a situation, the Court

16 finds the case cited by Plaintiffs in their Rule 50(a) opposition to be instructive. In <u>Managed</u>

17 <u>Care Sols., Inc. v. Essent Healthcare, Inc.</u>, 694 F.Supp.2d 1275, 1276 (S.D. Fla. 2010), the Court

18 addressed defendants argument that the case should not be decided by the jury because the

19 evidence was too voluminous and complicated. The court stated that the fact that the case

20 required aggregating thousands of receivables did not make determining damages unduly

21 complex or unnecessarily extensive. <u>Id.</u> at 1281-82. Rule 1006 of the Federal Rules of Evidence

22 allows the parties to present the contents of voluminous documents in a form that can concisely

23 present to the jury the total amount of receivables that are at issue. <u>Id.</u> at 1282. Expert testimony

24 can be presented on the issue. <u>Id.</u>

25     Here, due to the expense of reviewing the payroll verification reports, Plaintiffs decided

26 not to provide expert analysis or prepare a summary of the payroll verification reports prior to

27 trial of this action. The Court has attempted to review the evidence presented here but based

28 upon the voluminous nature of the records, the fact that some records are inaccessible and the

1  inability to determine whether it is second or first violation that Plaintiffs have failed to prove by

2  a preponderance of the evidence an amount certain as to PAGA damages for this offense.

3  Additionally, even if the Court had the time and resources to go through each and every piece of

4  paper and the files contained in Exhibit 37 to determine 1) whether there was evidence that met

5  Plaintiffs' burden; and 2) whether a violation was the first or second violation for purposes of the

6  time period from October 1, 2007 through November 12, 2007, and then aggregate the violations

7  by pay period, a penalty amount would still be speculative for the reasons stated.  As discussed

8  throughout this order, this was a task that should have been completed by Plaintiffs prior to trial

9  of this action.

10         5.      Amount of PAGA Penalties Proved by Plaintiffs

11         The Court finds a hard copy of Plaintiff Medlock's payroll verification reports which

12  were admitted into evidence.  Pls.' Exhibit 39.  However, review of Plaintiff Medlock's payroll

13  verification reports shows that the last autopay she received was for the pay period of August 9,

14  2006 through August 22, 2006.  Id.  Plaintiff Medlock's payroll verification reports for pay

15  periods after August 23, 2006 do not show any further autopay during the period for which

16  Defendants are liable for PAGA penalties.  Plaintiff Medlock has not shown that she received

17  autopay during the time period relevant to the Underpaid Meal Premium Class PAGA penalties.

18         6.      Plaintiff's Have Not Proven Number of PAGA Penalties

19         In reviewing the evidence presented by Plaintiffs in this action, the Court finds that any

20  award of penalties would be purely based upon speculation and not supported by the evidence.

21  Based upon the manner in which the evidence was presented by Plaintiffs during the trial of this

22  action and the evidentiary hearing, the Court finds that Plaintiffs have not proven the amount of

23  penalties under PAGA for the relevant time period.  For this reason, Plaintiffs have not met their

24  burden at trial of proving any autopay violations occurred during the time period relevant to

25  PAGA penalties and no PAGA penalties shall be awarded.

26     **D.    Unfair Competition Law**

27         Plaintiffs seek to provide further briefing to receive restitution on the unpaid meal period

28  and late meal period claims under California's Unfair Competition Law ("UCL").  The UCL

20

1   prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive,

2   untrue or misleading advertising."  Cal Bus. & Prof. Code § 17200.  "An act can be alleged to

3   violate any or all three of the prongs of the UCL—unlawful, unfair, or fraudulent."  Stearns v.

4   Select Comfort Retail Corp., 763 F.Supp.2d 1128, 1149 (N.D. Cal. 2010) (quoting Berryman v.

5   Merit Prop. Mgmt., Inc., 152 Cal.App.4th 1544, 1554 (2007)).

6        "For an action based upon an allegedly unlawful business practice, the UCL 'borrows

7   violations of other laws and treats them as unlawful practices that the unfair competition law

8   makes independently actionable.' "  Stearns, 763 F.Supp.2d at 1150 (citation omitted); see also

9   Smith v. State Farm Mutual Automobile Ins. Co., 93 Cal.App.4th 700, 718-19 (2001) ("An

10  'unlawful' business activity includes 'anything that can properly be called a business practice

11  and that at the same time is forbidden by law.").

12       Since the jury found that Plaintiffs had not proved by a preponderance of the evidence

13  that employees of Taco Bell were deprived of a second rest break or not provided with a meal

14  period that began before the start of the fifth hour of work, there is no violation of other laws to

15  be made independently actionable under the UCL.  To the extent that Plaintiffs seek this Court to

16  review the evidence and make a factual finding different than that returned by the jury, a motion

17  for damages under the UCL is not the proper vehicle.  Plaintiffs' request to brief whether they

18  should receive restitution under the UCL is denied.

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

**IV.**

**CONCLUSION AND ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that:

1.      Plaintiffs' motion for PAGA penalties on the Late Meal Period and Rest Period Class claims are DENIED;

2.      Plaintiffs' request to submit additional briefing on restitution under the UCL is DENIED; and

3.      Plaintiffs' request for an award of penalties under PAGA is DENIED.

IT IS SO ORDERED.

Dated:   **April 8, 2016**

UNITED STATES MAGISTRATE JUDGE