# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TACO BELL WAGE AND HOUR ACTIONS | Case No. 1:07-cv-01314-SAB |
| | ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY FEES, LITIGATION EXPENSES, AND ENHANCEMENT AWARDS |
| | (ECF Nos. 751, 754, 760, 771, 775, 776) |

Currently before the Court is Plaintiffs' motion for attorney fees. Oral argument on the motion was heard on June 15, 2016. Matthew Theriault, Monica Balderrama, Andrew Sokolowski, Stuart Chandler were present and Jerusalem Beligan appeared telephonically for the class and Tracey Kennedy, Nora Stiles, Morgan Forsey, and John Makarewich were present for Defendants Taco Bell Corp. and Taco Bell of America, Inc. Having considered the moving, opposition and reply papers, the declarations and exhibits attached thereto, arguments presented at the June 15, 2016 hearing, as well as the Court's file, the Court issues the following order.

## I.

## BACKGROUND

A jury trial was held in this action beginning on February 22, 2016, on the claims of three classes which had been certified in this action: the Late Meal Period Class, the Underpaid Meal Period Class, and the Rest Period Class. The parties agreed to have the Court decide Plaintiffs'

claims under California's Private Attorney General Act ("PAGA").  On March 9, 2016, the jury returned a verdict.  At the conclusion of the presentation of evidence, Defendants moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure.

The jury found that the Late Meal Period Class had proved that Defendant had a standardized or uniform policy that did not provide meal periods that began before the end of the fifth hour an employee worked for the relevant time period.  But the Class did not prove that during the relevant time period class members were non-exempt employees who worked for a corporate Taco Bell Corporate restaurant and worked shifts longer than six hours without being provided a meal period that began before the end of the fifth hour of work.

Similarly, the jury found that the Rest Period Class had proved that Defendant had a standardized or uniform company-wide policy that did not authorize and permit a second ten minute or a net twenty minute rest period when an employee worked more than six hours and less than seven hours.  But the Class did not prove that that during the relevant time period class members were non-exempt employees who worked for a corporate Taco Bell Corporate restaurant and worked shifts longer than six hours but less than seven hours without being authorized and permitted to take a second ten minute or net twenty minute rest period.

The jury found that the Underpaid Meal Premium Class had proved that from September 7, 2003 through November 12, 2007, Defendant had a standardized or uniform company-wide policy that underpaid meal premiums for missed or short meal periods and that during this time period the class members were non-exempt employees who worked for a Taco Bell Corporate restaurant and missed or received short meal periods and were paid a meal premium payment of less than one full hour of compensation.  The jury awarded damages in the amount of $495,913.66 to the Underpaid Meal Premium Class.

On May 9, 2016, Plaintiffs filed a motion for attorney fees, litigation expenses, and incentive awards.  (ECF No. 751.)  Plaintiffs filed a revised declaration in support of the motion for attorney fees on May 13, 2016.  (ECF No. 754.)  Defendants filed an opposition to the motion

for attorney fees on June 1, 2016.[1]  (ECF No. 760.)  On June 10, 2016, Plaintiffs filed a reply. (ECF No. 771.)  On June 17, 2016, Plaintiffs filed a supplemental briefing on the authority to issue incentive awards.  (ECF No. 775.)  Defendants filed a supplemental response on June 21, 2016.  (ECF No. 776.)

## II.

## LEGAL STANDARD

Under the "American Rule", each party to a lawsuit ordinarily bears its own attorney fees unless there is express statutory authorization to award attorney fees.  Hensley v. Eckerhart, 461 U.S. 424, 429 (1983).  In a diversity action, the federal district court applies the substantive law of the forum state, which in this instance is California.  Kabatoff v. Safeco Ins. Co. of Am., 627 F.2d 207, 209 (9th Cir. 1980).   In general, California law only allows a prevailing party to recover attorney's fees when a statute or an agreement of the parties provides for fee shifting. Kirby v. Immoos Fire Prot., Inc., 53 Cal.4th 1244, 1248 (2012).

Pursuant to Labor Code Section 218.5, a party may recover reasonable attorney fees and costs where he prevails in "any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions."  Cal. Lab. Code § 218.5(a).  Section 1194 allows an employee to recover reasonable attorney fees and costs if he prevails in an action to recover the full amount of minimum wage or overtime compensation. Cal. Lab. Code § 1194(a). The California Supreme Court has held that a party who prevails on an action brought under Labor Code section 226.7 cannot recover attorney fees and costs under Labor Code Sections 218.5 or 1194.  Kirby, 53 Cal.4th at 1248.

California has provided an exception to the American Rule in section 1021.5 of the California Code of Civil Procedure which allows a successful party in an action to recover attorney fees where the action has "has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has

---

[1] Defendants' opposition to the motion for attorney fees that contained objections to the evidence presented by Plaintiffs in support of their motion.  Defendants have made objections to the declarations supporting the motion for attorney fees, the Court finds that the objections are generally unpersuasive, and unless otherwise specifically addressed, are considered overruled.

been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." Graham v. DaimlerChrysler Corp., 34 Cal.4th 553, 565 (2004), as modified (Jan. 12, 2005) (quoting Cal. Code Civ. P. § 1021.5). The private attorney general doctrine rests on the recognition that lawsuits which are privately initiated are often essential to effectuate fundamental public policies which are embodied in constitutional or statutory provisions. Graham, 34 Cal.4th at 565. The fundamental objective of the private attorney general doctrine is to encourage suits which enforce important public policies by providing attorney fees to successful litigants. Id.

### III.

### ANALYSIS

**A.    Plaintiffs are Entitled to Attorney Fees for the Underpaid Meal Premium Class Under California Code of Civil Procedure section 1021.5**

1.    Attorney Fees

Plaintiffs seek attorney fees pursuant to section 1021.5 arguing that this action enforced an important wage law governing meal breaks that benefited a large class of individuals. Plaintiffs contend that this action caused Taco Bell to remedy an unlawful policy of only paying employees one-half hour of premium pay for missed or short meal breaks. Defendants counter that Plaintiffs have not shown that this action resulted in the enforcement of an important right affecting the public interest. Furthermore, Defendants argue that Plaintiffs have not established that any significant benefit has been conferred on a large class of persons. Defendants also claim that Plaintiffs cannot prevail on a catalyst theory because they cannot establish that this lawsuit caused Taco Bell to provide the primary relief sought.[2]

In determining whether an award of attorney fees should be granted, "[t]he trial court in

---

[2] Defendants argue that the motion for attorney fees is untimely. The Court has considered and rejected this argument in the order addressing Plaintiff's motions for judgment as a matter of law and to amend the judgment. A judgment or order is entered "when it is entered in compliance with Rules 58 and 79(a) of the Federal Rules of Civil Procedure." Ingram v. ACandS, Inc., 977 F.2d 1332, 1336 (9th Cir. 1992) (quoting Fed. R. App. P. 4(a)(7)). The date of judgment is the date on which the Clerk of the Court entered the judgment in the docket. Cedar Creek Oil & Gas Co. v. Fid. Gas Co., 238 F.2d 298, 301 (9th Cir. 1956); see also Nat'l Sav. Bank of Albany v. Jefferson Bank, 127 F.R.D. 218, 223 (S.D. Fla. 1989) ("an order is 'entered' not when it is signed by the judge, nor when it is 'filed' (i.e., file stamped), but rather when it is actually recorded on the docket sheet").

1    its discretion 'must realistically assess the litigation and determine, from a practical perspective,

2    whether or not the action served to vindicate an important right so as to justify an attorney fee

3    award' under section 1021.5." Graham, 34 Cal.4th at 566 (quoting Woodland Hills Residents

4    Assn., Inc. v. City Counsel ("Woodland Hills"), 23 Cal.3d 917, 938 (1979)).  In this instance, the

5    Court finds that Plaintiffs are entitled to recover fees for the Underpaid Meal Premium Class

6    claim in this action.  While Defendants argue that Plaintiffs' have not demonstrated that this

7    lawsuit caused Taco Bell to provide the primary relief sought, within several months of this

8    lawsuit being filed Taco Bell changed its autopay policy to pay employees one hour of premium

9    pay for missed or short meal periods to comply with California law.  The timing of the change in

10   the amount of autopay, from one-half to one full hour of pay, is circumstantial evidence from

11   which the Court finds that this lawsuit was the reason that Taco Bell changed its autopay policy.

12         Further, while Defendants argue that Plaintiffs did not prove that a large class of persons

13   received a significant benefit from the policy change, during the four years prior to the policy

14   change the jury found that there were 134,419 violations of state law.  These violations would

15   have continued had the policy not changed.  So this lawsuit benefited not only the class members

16   who will receive compensation by the jury's verdict here, but all those employees who received

17   the statutory amount of autopay due to the policy change.  The Court finds that this action

18   conferred a significant benefit on a large class of persons.

19         At the June 15, 2016 hearing, Defendants argued that Plaintiffs are not entitled to fees

20   pursuant to section 1021.5 because they were bringing this action for their personal benefit.  The

21   plaintiffs personal motivation does not diminish the fact that Plaintiffs pursued this action on

22   behalf of Defendants' past and future employees and received an award on behalf of some of

23   these employees.  "No more is required to satisfy the 'significant benefit,' 'public interest,' and

24   'large class of persons' requirements of section 1021.5." Estrada v. FedEx Ground Package

25   Sys., Inc., 154 Cal.App.4th 1, 17  (2007).

26         While Defendants are correct that section 1021.5 does not provide that a plaintiff is

27   entitled to attorney fees for an action brought under section 226.7, section 226.7 requires an

28   employer to provide a meal period mandated pursuant to an applicable statute, regulation,

5

1   standard or order.  The Court finds that the rights conferred by section 226.7, which apply to all

2   non-exempt employees, are important rights under California law.

3       A California appellate court recently discussed whether the necessity and financial

4   burden of private enforcement are such as to make an award of attorney fees and costs

5   appropriate.  See Davis v. Farmers Ins. Exch., 245 Cal.App.4th 1302, 1329 (2016), as modified

6   on denial of reh'g (Apr. 21, 2016).  "The purpose of an award of attorneys' fees pursuant to

7   section 1021.5 is to encourage suits that enforce 'common interests of significant societal

8   importance, but which do not involve any individual's financial interest to the extent necessary

9   to encourage private litigation to enforce the right."  Davis, 245 Cal.App.4th at 1329.

> "The financial burden of private enforcement requirement means that an award of
> attorney fees under section 1021.5 of the Code of Civil Procedure is only
> appropriate when the cost of the claimant's legal victory transcends his or her
> personal interest—i.e., when the necessity for pursuing the lawsuit placed a
> burden on the plaintiff out of proportion to his or her individual stake in the
> matter."  "Section 1021.5 was not designed as a method for rewarding litigants
> motivated by their own pecuniary interests who only coincidentally protect the
> public interest."  "Private attorney general fees are not intended to provide
> insurance for litigants and counsel who misjudge the value of their case, and
> vigorously pursue the litigation in the expectation of recovering substantial
> damages, and then find that the jury's actual verdict is not commensurate with
> their expenditure of time and resources."  The relevant issue is " 'the estimated
> value of the case at the time the vital litigation decisions were being made.' "

18  Id. at 1329-30 (internal citations omitted).  The court in Davis found that at every critical

19  juncture, the plaintiff expected a substantial financial recovery and this was sufficient motivation

20  to pursue the action.  Id. at 1330.

21      "[T]he necessity and financial burden requirement 'really examines two issues: whether

22  private enforcement was necessary and whether the financial burden of private enforcement

23  warrants subsidizing the successful party's attorneys.' "  In re Conservatorship of Whitley

24  ("Whitley"), 50 Cal.4th 1206, 1214 (2010) (quoting Lyons v. Chinese Hosp. Assn., 136

25  Cal.App.4th 1331, 1348 (2006)).  The "necessity" of private enforcement "looks to the adequacy

26  of public enforcement and seeks economic equalization of representation in cases where private

27  enforcement is necessary."  Whitley, 50 Cal.4th at 1215 (citations omitted).

28

1    Here, Plaintiffs argue that private enforcement was necessary because the public

2    enforcement agency declined to investigate the claims against Defendants.   However, as the

3    Court has previously found, Plaintiffs did not raise the issue that Defendants were underpaying

4    the meal premium claim to the LWDA.   (See Order Denying Plaintiffs' Request for Private

5    Attorney General Act Penalties 4 n.1, ECF No. 742.)   Plaintiffs argued at the June 15, 2016

6    hearing that the LWDA does not prosecute actions such as this due to the lack of resources.

7    Although Plaintiffs did not raise the meal premium issue before the LWDA, the Court shall

8    assume for the purposes of this motion that private enforcement was necessary.

9    The "financial burden of private enforcement" prong focuses "not only on the costs of the

10   litigation but also any offsetting financial benefits that the litigation yields or reasonably could

11   have been expected to yield.   Whitley, 50 Cal.4th at 1215.   "An award on the 'private attorney

12   general' theory is appropriate when the cost of the claimant's legal victory transcends his

13   personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the

14   plaintiff 'out of proportion to his individual stake in the matter.' "   Id. (quoting Woodland Hills,

15   23 Cal.3d at 941).   This focuses on the financial burdens and incentives involved in bringing the

16   action.   Whitley, 50 Cal.4th at 1215.

17   In making this determination, the court approximates the estimated value of the action at

18   the time that the vital litigation decisions were made and then considers the costs of the litigation

19   (attorney fees, deposition costs, expert witness fees) which were required to bring the action to

20   fruition.   Whitley, 50 Cal.4th at 1215.   The court then considers the estimated value of the action

21   beside the actual cost and makes a value judgment on whether the bounty of the court awarded

22   fee should be provided to encourage the sort of litigation involved in the case.   Id.   The award of

23   attorney fees is not appropriate where the expected value of the litigants' own monetary award

24   exceeds the actual litigation costs by a substantial margin.   Id.

25   Plaintiffs argue that the small amount of recovery for each Plaintiff was small and the

26   litigation costs to bring a class action would vastly outstrip Plaintiffs' expected recovery.

27   However, the case law directs the Court to consider the value of the litigation, not the value of

28   the individual claims in a class action.   Prior to the trial in this action, Plaintiffs were seeking

1    damages and penalties of over $46 million for the Rest Period Class; over $125 million for the

2    Late Meal Period Class; and over $10 million for the Underpaid Meal Premium Class.  (ECF No.

3    562-1 at 55-58.)   Only twenty-five percent of the penalties would be received by Plaintiffs,

4    therefore the estimated value of this action was approximately $65.1 million.  This does not

5    include the claims that were dismissed during the pendency of the litigation.  The Court finds

6    that at the time that the vital litigation decisions were made, the bounty of a court awarded fee

7    was not necessary to encourage the sort of litigation involved in the case.  In making this

8    determination, the court considers the attorney fees incurred in prosecuting this action, including

9    those which Plaintiffs have stated were omitted from their fee request.

10        However, the Court also considers that Plaintiffs proved that Defendants violated

11   California law by paying only one half hour premium pay to the Underpaid Meal Premium Class.

12   Although Plaintiffs proved the violation of the law, they failed to prove the penalty due because

13   of the violation.  Had Plaintiffs submitted sufficient evidence to prove the penalty due, they

14   would have been entitled to attorney fees pursuant to California's Private Attorney General Act.

15   Therefore, upon consideration of the factors warranting attorney fees pursuant to section 1021.5,

16   the Court finds that attorney fees should be awarded in this instance.

17        2.    Costs

18        Plaintiffs argue that they should also be reimbursed for their costs.[3]  In a diversity action,

19   federal not state law controls the issue of costs.  Aceves v. Allstate Ins. Co., 68 F.3d 1160, 1167

20   (9th Cir. 1995); see also 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure

21   ("Wright and Miller") § 2669 (3d ed. 1998).  Under federal law, 28 U.S.C. § 1920 "define[s] the

22   full extent of a federal court's power to shift litigation costs absent express statutory authority."

23   Grove v. Wells Fargo Fin. California, Inc., 606 F.3d 577, 579 (9th Cir. 2010).   Those costs

24   taxable under section 1920 are limited to relatively minor, incidental expenses.  Taniguchi v.

25   Kan Pac. Saipan, Ltd., 132 S. Ct. 1997, 2006, (2012).   "Taxable costs are a fraction of the

26   nontaxable expenses borne by litigants for attorneys, experts, consultants, and investigators.  It

27

28   [3] In their reply, Plaintiffs voluntarily withdrew $60,549.00 from their requested costs.  (ECF No. 771 at 22; ECF No. 771-1 at ¶ 21.)

8

1   comes as little surprise, therefore, that 'costs almost always amount to less than the successful

2   litigant's total expenses in connection with a lawsuit.' " <u>Taniguchi</u>, 132 S. Ct. at 2006 (quoting

3   Wright and Miller § 2666, p. 203).

4          Further, while Plaintiffs argue that they should be able to receive costs normally received

5   under California law, Plaintiffs' provide no authority to receive non-taxable costs under

6   California law in the situation here.  Section 1021.5 provides for attorney fees but is silent on the

7   issue of costs and Plaintiffs provide no state authority authorizing reimbursement of costs

8   pursuant to section 1021.5.  The California Supreme Court considered the issue of recovery of

9   costs under section 1021.5, specifically expert witness fees.  <u>Olson v. Auto. Club of S.</u>

10  <u>California</u>, 42 Cal. 4th 1142 (2008).  "[T]he costs of a civil action consist of the expenses of

11  litigation, usually excluding attorney fees." <u>Olson</u>, 42 Cal.4th at 1148 (internal punctuation and

12  citation omitted).  California follows the common law rule that parties to litigation must bear

13  their own costs unless the right to costs is provided by statute.  <u>Id.</u> at 1149.  The Supreme Court

14  held that nothing in the plain language of section 1021.5 provides for the award of costs.  <u>Id.</u> at

15  1157 (2008).  While taxable costs may be recoverable where the underlying statute provides for

16  costs, that is not the situation here.  Accordingly, under California law, Plaintiffs are not entitled

17  to additional costs other than those enumerated in 28 U.S.C. § 1920 in this action.

18         The Court finds Plaintiffs citation to <u>Trustees of Const. Indus. & Laborers Health &</u>

19  <u>Welfare Trust v. Redland Ins. Co. ("Redland")</u>, 460 F.3d 1253, 1257 (9th Cir. 2006),

20  distinguishable.  The <u>Redland</u> court was addressing the recovery of computer based legal

21  research costs as attorney fees. <u>Id.</u> at 1257-58.  <u>Redland</u> does not stand for the proposition that

22  all costs of litigation can be recovered on a motion for attorney fees.  Most of the costs sought

23  here, office supplies, document review, travel expenses and parking costs, experts and consulting

24  services, translation, research fees, mediation expenses, telephone fees, copying and

25  exemplification costs, service fees, and court fees, are not the type of expenses contemplated to

26  be charged as attorney fees by <u>Redland</u>.[4]

27

28  [4] That fact that an attorney includes an item on the client's billing statement does not equate to the item being
    considered attorney fees.  As discussed in <u>Redland</u>, it is only where it is the custom in the local market to bill the

Similarly Plaintiffs other citations to cases allowing costs are distinguishable as the underlying statutes provide for reimbursement of costs.  See Parkinson v. Hyundai Motor Am., 796 F. Supp. 2d 1160, 1165 (C.D. Cal. 2010) (awarding costs under California Consumers Legal Remedies Act which provides for an award of costs and attorney fees); Johnson v. General Mills, Inc., No. SACV 10-00061-CJC(ANx), 2013 U.S.Dist. Lexis 90338, at *22 (C.D. Cal. June 17, 2013) (awarding costs at settlement pursuant to the stipulation of the parties[5]); Torchia v. W.W. Grainger, Inc., 304 F.R.D. 256, 278 (E.D. Cal. 2014) (same); cf. Muniz v. United Parcel Serv., Inc., No. C 09-01987 CW, 2011 WL 3740808, at *6 (N.D. Cal. Aug. 23, 2011), aff'd in part, vacated in part, 738 F.3d 214 (9th Cir. 2013) (awarding costs under section 1920 and denying costs for office supplies as not authorized by the statute).

Further, to the extent that costs are recoverable in this action under section 1920, the Local Rule provides that within fourteen days from the entry of judgment the prevailing party may file a bill of costs.[6]  Local Rule 292; Fed. R. Civ. P. 54(d).  The Court has addressed Plaintiffs' timely filed bill of costs detailing these allowable costs.  Plaintiffs have provided no reason for the untimely filing seeking additional costs, and have not shown good cause to enlarge the time to file costs.  Therefore, the additional costs recoverable under 28 U.S.C. § 1920 sought by this motion are denied as untimely.

### B.    Attorney Fees

Plaintiffs seek attorney fees in the amount of $7,323,777.50.  Defendants counter that Plaintiffs requested hourly rates and stated hours are unreasonable and should also be reduced due to their limited success in this action.

California and the Ninth Circuit utilize the "lodestar" approach for assessing reasonable

---

items separately to the client that the court would consider if the work could be billed as attorney fees.  Redland, 460 F.3d at 1256-57.

[5] The Federal Rules of Civil Procedure provide that in a class action the court may award attorney fees and nontaxable costs where they are authorized by law or by the parties' agreement.  Fed. R. Civ. P. § 23(h).

[6] The costs recoverable under section 1920 are similar to, but more limited, than those costs allowed under California Code of Civil Procedure section 1033.5.  See section 1033(b) detailing those costs not recoverable except when expressly authorized by law, however section 1033(c) provides the court discretion in awarding costs.

attorney fees, where the number of hours reasonably expended is multiplied by a reasonable hourly rate. <u>Gonzalez v. City of Maywood</u>, 729 F.3d 1196, 1202 (9th Cir. 2013); <u>Ketchum v. Moses</u>, 24 Cal. 4th 1122, 1131, 17 P.3d 735, 741 (2001). "[T]he lodestar is the basic fee for comparable legal services in the community; it may be adjusted by the court based on factors including, as relevant herein, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." <u>Ketchum</u>, 24 Cal.4th at 1132.

California courts consider the reasonableness of an attorney fee by considering a variety of factors: " the nature of the litigation, its difficulty, the amount involved, the skill required and the skill employed in handling the litigation, the attention given, the success of the attorney's efforts, his learning, his age, and his experience in the particular type of work demanded; the intricacies and importance of the litigation, the labor and the necessity for skilled legal training and ability in trying the cause, and the time consumed. <u>Martino v. Denevi</u>, 182 Cal.App.3d 553, 558 (1986).[7] "To enable the trial court to determine whether attorney fees should be awarded and in what amount, an attorney should present '(1) evidence, documentary and oral, of the services actually performed; and (2) expert opinion, by [the applicant] and other lawyers, as to what would be a reasonable fee for such services.' " <u>Martino</u>, 182 Cal.App.3d at 558 (citations omitted).

"The principle that attorney fees should not be reduced solely because a litigant did not succeed on all claims or theories is based on the practical reality that "it is impossible for an attorney to determine before starting work on a potentially meritorious legal theory whether it will or will not be accepted by a court years later following litigation." <u>Hogar v. Cmty. Dev.</u>

---

[7] In determining a reasonable fee, federal law takes into account the factors set forth in <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 69-70 (9th Cir. 1975): (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client and (12) awards in similar cases [.]"). <u>McGrath v. County of Nevada</u>, 67 F.3d 248, 252 (9th Cir. 1995).

Com. of City of Escondido, 157 Cal.App.4th 1358, 1369 (2007), as modified (Jan. 10, 2008). However, "where a plaintiff has achieved limited success or has failed with respect to distinct and unrelated claims" a reduction in the lodestar is appropriate. Hogar, 157 Cal.App.4th at 1369. The party seeking fees has the burden to prove that the fees sought are reasonable. Ctr. For Biological Diversity v. Cty. of San Bernardino, 188 Cal. App. 4th 603, 615 (2010), as modified (Oct. 18, 2010).

1.    Hours Reasonably Expended

Plaintiffs are seeking to be compensated for 12,876.9[8] hours expended in this litigation by five different firms: 6,333.5 hours by Capstone Law, APC; 4,767.3 hours by Initiative Legal Group APC; 545 hours by Stuart Chandler, APC; 515.1 hours by Law Offices of Mark Yablonovich; and 716 hours by Bisnar Chase. Defendants argue that due to the number of law firms involved in this action, the case was overstaffed which resulted in expending an unreasonable number of hours.

It is within the discretion of the trial court to determine whether the amount of fees requested are reasonable. Christian Research Inst. v. Alnor, 165 Cal.App.4th 1315, 1321 (2008). Even where the award of attorney fees are mandatory the submission of an inflated fee request constitute a special circumstance and the court may adjust the fee downward or deny an unreasonable fee altogether. Christian Research Inst., 165 Cal.App.4th at 1321. Plaintiffs are seeking recovery for fees of multiple firms, some of whom did not present any evidence that any work in this action was on the claims that went to trial, much less on the Underpaid Meal Premium Class that prevailed at trial. As discussed below, the attorneys billed over 180 hours for performing duties that should be part of the overhead and are not compensable as attorney fees. Hours are billed that relate to the claims that were dismissed from this action. Over 700 hours were billed for interoffice communication. Multiple attorneys billed time for the same events and to review the same documents. This supports Defendants' analyst's opinion that an excessive amount of hours are billed due to the number of attorneys assigned to this action. For

---

[8] Total request as amended pursuant to the revised declaration of Mark Yablonovich. (ECF N0. 754 at 3.)

the reasons discussed below, the Court finds that the fee request in this instance is unreasonably inflated.

### a.  Bisnar Chase

Defendants object to the hours requested by Bisnar Chase on the grounds that there are no supporting documents to support the hours requested.  Bisnar Chase has submitted the declaration of Jerusalem F. Beligan stating that the firm is counsel of record for Plaintiff Endang Widjaja.  (ECF No. 751-22.)  The firm is seeking 182 hours for Brian D. Chase, 518 hours for Jerusalem Beligan, and 16 hours for Sarah Serpa.  (Id. at 2.)  The declaration contains no time records or discussion as to the services provided.

While federal courts require an attorney to maintain and submit contemporaneous, complete and standardized time records in an application for attorney fees, contemporaneous time records are not required in California in order to recover attorney fees.  Martino, 182 Cal.App.3d at 559.  In California, the "testimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records."  Id.  "Declarations of counsel setting forth the reasonable hourly rate, the number of hours worked and the tasks performed are sufficient."  Concepcion v. Amscan Holdings, Inc., 223 Cal.App.4th 1309, 1324 (2014).

In this action, Bisnar Chase represented Plaintiff Widaja.  On February 11, 2009, Plaintiff Widaja filed a class action complaint alleging claims for failure to reimburse expenses, failure to provide rest periods, violation of the California Business and Professions Code section 17200 and conversion.  (ECF No. 132 at 3.)  The action was consolidated into this action on October 22, 2009.  (Id. at 4.)  While detailed time records are not required, counsel still must submit sufficient evidence for the court to find that the hours requested were reasonably expended in this action.  Here, Bisnar-Chase did not present any evidence of the tasks performed in this action.  Bisnar Chase has not met the burden to present sufficient evidence for the Court to find that any of the hours requested were reasonably spent on the claims that proceeded to trial in this action.  Additionally, as discussed below, Plaintiffs are only entitled to attorney fees for the claims of the Underpaid Meal Premium Class and Bisnar-Chase has presented no evidence that

1   any hours expended in this action were on behalf of the Underpaid Meal Premium Class.

2   Accordingly, the Court denies Bisnar Chase's request to be reimbursed for 716 hours in this

3   action.

4          **b.      Overhead Billing**

5          Defendants identify time records to show that attorneys billed 190.55 hours for tasks that

6   are non-compensable attorney functions, such as preparation of proofs of service, electronically

7   filing documents, supervising the filing of documents, and preparing documents for mailing.

8   Generally, "necessary support services for attorneys, e.g., secretarial and paralegal services, are

9   includable within an award of attorney fees." City of Oakland v. McCullough, 46 Cal.App.4th 1,

10  7 (1996).

11         The Court has reviewed the list of overhead billing provided by Defendants' analyst.

12  (ECF No. 760-1 at 123-127.)  Mr. Jardini[9] identified 113.7 hours which he identified as tasks that

13  were non-compensable attorney functions.  Generally, the Court finds that these services are not

14  compensable as attorney time as they reflect clerical tasks or supervision of clerical tasks.  The

15  Court finds that 6.3 of the hours identified are compensable as follows:

16

| Entry Date | Timekeeper | Description | Hours |
|---|---|---|---|
| 2/23/15 | JSL | Legal research re ex parte procedures | .2 |

18

19  ───────────────────

[9] Plaintiffs proffer multiple objections to the declaration of Mr. Jardini.  (ECF No. 771-4.)  To the extent that
20  Plaintiffs object to the opinion of Mr. Jardini claiming it does not meet the requirements of Daubert, as addressed in
the order denying Plaintiff's ex parte request to continue the hearing on the motion for attorney fees, the Court finds
21  that Mr. Jardini's declaration is sufficient to establish that Mr. Jardini is qualified to proffer an opinion based upon
the facts in this action.  While Plaintiffs cite cases in which Mr. Jardini's opinion was rejected or questioned because
22  he was not sufficiently experienced in the type of litigation at issue, Mr. Jardini has shown that he has significant
experience in class action practice in wage and hour litigation such as that at issue here.  (ECF No. 764 at 2-5.)
23  Further, while Plaintiffs argue that Mr. Jardini's opinion is based on insufficient review of the record because he did
not examine all the documents in the record, the Court finds such review not to be necessary to offer an opinion
24  regarding what a reasonable number of hours to litigate an action of this type would be.  The question of
reasonableness addresses not only the number of hours spent individual tasks but whether the tasks that were
25  pursued were reasonable in the context of the litigation.  The Court shall only consider Mr. Jardini's opinion to the
extent that it addresses the reasonableness of the hours billed in this action.  While Plaintiffs object because Mr.
26  Jardini cited federal principles in support of his reasonableness evaluation, the Court finds that in the context of the
reasonableness of the hours expended the analysis between federal and state law is sufficiently similar to consider
27  Mr. Jardini's analysis.  Plaintiffs' objections are overruled on this basis.

        As the Court is only considering Mr. Jardini's analysis for the purpose of determining the reasonableness of
28  the hours requested, the objections to other portions of Mr. Jardini's testimony shall not be addressed.

14

| 1/18/16 | DS | Prepare for attend meeting with Jeff Gold Trial Technologies | 1.5 |
|---|---|---|---|
| 2/14/08 | GY-I | Prepare joint report for filing | .7 |
| 4/18/08 | GY-I | Research regarding deposition procedures | .3 |
| 4/30/08 | GY-I | Research regarding changes to deposition transcript | .6 |
| 6/22/09 | SW-I | Researched FRCP regarding service | .5 |
| 2/13/14 | JLI-I | Legal research regarding responses and objections to interrogatories in California Practice Guide | 1.9 |
| 2/13/14 | JLI-I | Legal research regarding responses and objection to interrogatories in Federal Rules of Civil Procedure | .6 |

The Court shall reduce the requested hours by the remaining 184.5 hours identified in Exhibit 2 pages 86 through 101 of Mr. Jardini's declaration.

### c.     Interoffice Communication

Mr. Jardini identifies 718.55 hours spent in interoffice communication that Defendants contend are excessive.  The Court does find that due to the number of firms and attorneys handling this action interoffice communication hours were excessive.  While due to the nature of this action a certain amount of interoffice communication could reasonably be billed to a client, 718.55 hours is unreasonably excessive.  The Court notes that in reviewing the communication entries multiple attorneys billed for the same communication.

This case spanned a period of approximately eight and one half years.  The missed meal period and missed rest period claims were stayed on September 9, 2011.  The Court finds that based upon the nature and length of this action approximately 200 hours of interoffice communication would be a reasonable amount of hours to have expended during the pendency of this action.   This would average to approximately two hours of consultation per month.  Plaintiff's request shall be reduced by 500 hours to compensate for excessive hours billed for interoffice communication.

### d.     Hours Billed

Plaintiffs seek approximately 2,300 hours for work on class certification motions, over

1    1700 hours for other motion practice, and approximately 4,000[10] hours for pre-trial and trial

2    work.  (ECF No. 751-1 at 20-21.)  Defendants seek to have Plaintiffs' request reduced due to

3    excessive billings for motion practice.  Defendants request that the Court reduce the 2,300 hours

4    billed for class certification and 1,700 hours billed for other motions to 1,875 hours.  Defendants

5    further cite to Mr. Jardini's opinion that a reasonable number of hours for a trial such as this

6    would be less than 1,200 for all claims and requests the hours for trial work be reduced by 2,800

7    hours.  Defendant argues that there are still 7,000 hours billed for additional services in this

8    action that should be reduced.

9          The district court may reduce the hours by 1) conducing "an hour by hour analysis of the

10   fee request," and excluding "those hours for which it would be unreasonable to compensate the

11   prevailing party[;]" or 2) "when faced with a massive fee application the district court has the

12   authority to make across-the-board percentage cuts either in the number of hours claimed or in

13   the final lodestar figure as a practical means of [excluding non-compensable hours] from a fee

14   application."  Gonzalez, 729 F.3d at 1203 (quoting Gates v. Deukmejian, 987 F.2d 1392, 1399

15   (9th Cir. 1992)).  The Court agrees that an unreasonable amount of hours have been billed in this

16   action and finds that Plaintiffs billed unreasonably excessive hours starting early in this action.

17   For example, review of the billing records show that on December 18, 2009, two attorneys billed

18   7.2 hours to prepare a two page stipulation and proposed order to continue dates in the

19   scheduling order.  (ECF No. 86.)  Even considering the time needed to confer on dates, two

20   hours would be more than reasonable for this task.

21         On October 29, 2009, 3 attorneys billed a total of 5.2 hours for work on the amended

22   consolidation order.  (ECF No. 134.)  This document is substantially similar to the amended

23   consolidation order filed on June 6, 2009 with just the addition of several paragraphs identifying

24   the new parties.  (ECF No. 106-1.)  One hour would be more than adequate to have conferred

25   and made the additions to this amended order.

26         On October 13, 2009, 2 attorneys billed 8.10 hours to prepare a 2 page motion to compel

27

28   [10] The Court notes this would equate to 500 days worked at 8 hours per day or over 330 days worked at 12 hours per day.

1   the deposition of the person most knowledgeable which contains only factual statements and no

2   law or legal analysis.  (ECF No. 138.)  The Court finds upon review of this document that two

3   hours would be more than reasonable to spend preparing this document.

4        From January 26, 2014 to April 18, 2014, three attorneys billed 28.9 hours to review and

5   revise the mediation statement.  This is in addition to the initial hours billed to prepare the

6   statement and 28.95 hours billed by three attorneys to prepare for and attend the single day

7   mediation which occurred on April 29, 2014.  On November 14, 2014, three attorneys billed 4.6

8   hours to review and analyze two six page orders issued by this court.

9        Review of the time records provided by the Law Offices of Mark Yablonovich shows

10  services billed for the claims of Kevin Taylor.  Review of Mr. Taylor's payroll verification

11  reports demonstrates that he never worked six hours, and therefore was not a member of any

12  class in this action.  (ECF No. 760-1 at 23-35.)  Review of these time records provided by the

13  Law Offices of Mark Yablonovich demonstrates that a significant number of hours were billed

14  for review of documents created by other attorneys or orders issued by this court which were also

15  reviewed by other attorneys.  These hours are not reasonably charged to Defendants where they

16  were for the purpose of keeping the firm updated on the status of the action.

17       Based upon the Court's observations of trial, a considerable amount of hours were billed

18  due to the failure of counsel to have adequately prepared their case on damages.  Due to the

19  manner in which Plaintiffs determined to prosecute this action, Plaintiffs spent a considerable

20  amount of time preparing and addressing documents with the Court that were not admissible or

21  were withdrawn before the Court could rule on admissibility.

22       Further, the Court has reviewed the hours billed for the PAGA hearing which began in

23  the afternoon of March 16, 2016 and concluded on March 17, 2016.  On March 12, 2016,

24  Capstone billed 13.6 hours for the work of 2 attorneys to prepare for, research, draft and revise

25  the PAGA brief.  On March 13, 2016, Capstone billed for 12 hours for 2 attorneys to plan for and

26  prepare for the hearing; Initiative billed for 4.5 hours for legal research.  On March 14, 2016,

27  Capstone billed for 25.8 hours for 4 attorneys to review and revise the brief, plan for and prepare

28  for the hearing; Yablonovich billed .5 hours for 2 attorneys to review documents; and Mr.

Chandler billed 1.5 hours to review the PAGA issues and brief.  On March 15, 2016, Capstone billed 22 hours for 3 attorneys to plan and prepare for the hearing; Yablonovich billed .2 hours to review the brief; and Mr. Chandler billed .3 hour to review Defendants' brief.  On March 16, 2016, Capstone billed for 43 hours for 4 attorneys to attend and plan and prepare for the hearing; Initiative billed for 19.2 hours for 2 attorneys to prepare for and attend the hearing; Yablonovich billed .2 hours to review the minutes of the hearing; and Mr. Chandler billed 9.2 hours to meet with counsel, attend the hearing and research.  On March 17, 2016, Capstone billed for 23.7 hours for 3 attorneys to plan, prepare for, research, and attend the hearing; Initiative billed for 10.5 hours to prepare for and attend the hearing; and Mr. Chandler billed 8.7 hours to attend the hearing.

The record shows that Plaintiffs billed for 194.9 hours to write the PAGA brief which is substantively just over 8 pages in length, and to prepare for and attend the day and a half hearing on the PAGA penalties.  Also, for this hearing, on March 16, 2016, the attorneys billed over 30 hours of attorney time for reviewing the payroll verification reports to determine which employees had received autopay which is a task that should have been performed by non-attorneys.  This is in addition to any time that was spent prior to the trial to prepare the PAGA claim.  Based upon the review of the billing records submitted the Court finds that this is indicative of the grossly excessive billing that occurred in this action.

Based upon the review of the reports created by Mr. Jardini and the Court's independent review of random records in the billing submitted by counsel, the Court finds that a reduction of hours is warranted.  The Court finds that the overbilling that occurred was significant and therefore, the Court shall apply a thirty percent reduction for the excessive billing which is demonstrated from the initiation of this action.

### e.    Reduction for Work on Unsuccessful Claims

Plaintiffs claim that the class claims in this action are related and intertwined so they should be reimbursed for the work on all the class claims.   Defendants argue that Plaintiffs' request for fees and costs should be reduced due to their limited success in this action.

"Under state law as well as federal law, a reduced fee award is appropriate when a

1    claimant achieves only limited success."  Chavez v. City of Los Angeles, 47 Cal.4th 970, 989

2    (2010).  In considering the reasonableness of a fee request where the plaintiff prevails on a single

3    claim, courts have found that "a fee request that appears unreasonably inflated is a special

4    circumstance permitting the trial court to reduce the award or deny one altogether."  Chavez, 47

5    Cal.4th at 990.  Claims are unrelated if the different claims for relief are based on different facts

6    and legal theories.  Harman v. City & Cty. of San Francisco, 158 Cal. App. 4th 407, 417 (2007).

7    Counsel's work on behalf of unrelated claims are not expended in pursuit of the ultimate result

8    received; and therefore, no fees should be awarded for the work on unrelated unsuccessful

9    claims.  Harman, 158 Cal.App.4th at 417.  However, '[a]ttorneys fees need not be apportioned

10   between distinct causes of action where plaintiff's various claims involve a common core of facts

11   or are based on related legal theories.'  Apportionment is not required when the issues in the fee

12   and nonfee claims are so inextricably intertwined that it would be impractical or impossible to

13   separate the attorney's time into compensable and noncompensable units."  Id.

14        This action proceeded to trial on the claims of three classes: the Underpaid Meal

15   Premium Class, the Late Meal Period Class, and the Rest Period Class.  Plaintiffs argue that the

16   three classes are related.  Defendants counter that the classes are unrelated and total hours

17   requested should be reduced by the hours spent on the unsuccessful claims.

18        The Court finds that the three classes in this action presented three independent and

19   unrelated legal theories for recovery.  The Rest Period Class alleged that Taco Bell had a policy

20   of not providing a second rest period when an employee worked a shift that was more than six

21   but less than seven hours.  The Rest Period Class claims are based upon the California Labor

22   Code requirement that employees must receive a net ten minute rest period for every four hours

23   or major fraction thereof worked.  Brinker Rest. Corp. v. Superior Court, 53 Cal.4th 1004, 1028

24   (2012).

25        The Late Meal Period Class alleged that Taco Bell had a policy of failing to provide a

26   meal period that began before the fifth hour of work when an employee worked a shift that was

27   longer than six hours.  California Labor Code section 512 provides that an employer may not

28   employ an employee to work a period of more than five hours per day without providing the

employee with a meal period of not less than thirty minutes, absent a mutual waiver in certain circumstances.  This meal period is required to begin before the end of the fifth hour of work.  Brinker Rest. Corp., 53 Cal.4th at 1042.  On this theory of liability, the violation occurs when a meal period is not provided before the end of the fifth hour of work and it is irrelevant whether or not a meal period is provided later in the shift.

The Underpaid Meal Premium Class that prevailed at trial claimed that Taco Bell had a policy of paying one-half hour of premium pay when an employee received a short meal period or missed a meal period.  This payment was automatically paid to employees within certain job classifications when the payroll system recognized a meal period was less than thirty minutes or was missed.  This class is not based on any rest period violation.  Further, the timing of the meal period is irrelevant to the claims for this class.

Finally, while all three of the classes were seeking a premium payment, the Court finds that the facts underlying the claims for the classes are not related.  The Late Meal Period and Rest Period class claims were based on the Matrix and employee handbook documents which set forth the timing of rest and meal periods.  These classes claimed that they were not paid a premium payment for receiving a late meal period or not receiving a rest break.  The Underpaid Meal Premium Class claims were based on a payroll policy of automatically paying a half hour of the employee's regular rate of compensation when the system recognized that the employee did not receive a full thirty minute meal period.  These employees received a premium payment, but were contending that the payment was not the full amount owed pursuant to the statute.

The claims of the three classes do not involve a common core of facts nor does the Court find that they based on related legal theories.  These claims are not so inextricably intertwined that it would be impractical or impossible to separate the attorney's time into compensable and non-compensable units.  The Late Meal Period and Rest Period Class claims were based upon the timing of the meal or rest period.  Therefore, the discovery related to the timing of the employee's break was relevant as to whether Taco Bell had violated the Labor Code.  However, the timing of the meal period had little if any relevance to the Underpaid Meal Premium Class claims.  By issuing autopay, it was established that the system documented that the employee

20

had received a short or no meal period.  Therefore, the only issues for the Underpaid Meal Premium Class was whether the policy complied with state law, which employees received autopay, and the hourly rate for the employees that received autopay.

Finally, while Plaintiffs argue that they are entitled to fees on failed theories of recovery, this is not a situation where Plaintiffs were alleging multiple theories of recovery based on the same set of facts.  There were three distinct classes in this action and the theory of recovery for each class was distinct and unrelated.  While the Late Meal Period and Rest Break Classes relied on the matrix and Taco Bell's written employee policies, the Underpaid Meal Premium Class was based on a payroll policy.

For these reasons, the Court finds that Plaintiffs are only entitled to attorney fees reasonably spent in prosecuting the Underpaid Meal Premium Class claims in this motion.

With the reductions set forth above, the Court has found that 8,033.48 hours are a reasonable number of hours to have spent on the claims in this action.  Defendants seek a seventy-five percent reduction in the number of hours to compensate for the time spent on the unsuccessful claims.  Defendants contend that 1,884.79 hours (25% of 7,539.15) would be a reasonable number of hours for Plaintiffs to have spent on the Underpaid Meal Premium Class claims.  Plaintiffs argue that Defendants arbitrarily seek to impose a reduction in the hours without providing any basis to do so.

As set forth herein, Plaintiffs are not entitled to compensation for time spent on the unsuccessful claims in this action.  Plaintiffs billing records do not demonstrate any manner in which the Court can identify the specific hours spent on the claims brought in this action.  "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.  So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."  Fox v. Vice, 563 U.S. 826, 838, 131 S. Ct. 2205, 2216, 180 L. Ed. 2d 45 (2011).  Accordingly, the Court shall determine the percentage of a reduction that would be required to reasonably compensate Plaintiffs for work on the Underpaid Meal Premium Class.  See Hensley, 461 U.S. at 435-36.

In making this determination, the Court finds that a significant amount of the time at trial

1 and during motion practice was devoted to claims other than the Underpaid Meal Premium Class

2 claims.  For example in the original motion for class certification, the Late Meal Break Class and

3 Rest Break Class discussion was devoted to approximately eight pages of the brief, while the

4 Underpaid Meal Premium Class discussion was devoted to approximately two pages of the brief.

5 (ECF No. 185-1.)  Similarly other filings demonstrate that a significant amount of the issues

6 addressed were unrelated to the Underpaid Meal Premium Class claims (ECF Nos. 305, 315,

7 424), or did not address the Underpaid Meal Premium Class claims (ECF Nos. 477, 494).

8        This is consistent with Court's view of the evidence presented at trial.  Specifically upon

9 review of the trial testimony, Plaintiffs Medlock and Hardiman were the only employees

10 testifying at trial who proffered testimony regarding the Underpaid Meal Premium Class claims.

11 Similarly, during the trial of this action, the majority of the testimony was directed to proving

12 that the matrix and employee handbook were Defendants' policies regarding the timing of meal

13 and rest periods.

14       Based upon the Court's experience with this action and review of the time records,

15 including the discussion included herein, the Court finds that a reduction of fifty percent is

16 appropriate to compensate Plaintiffs' counsel for the hours reasonably expended on the claims of

17 the Underpaid Meal Premium Class.

18       **f.    Reasonable Hours Billed**

19       The Court has considered Plaintiffs other reasons for reducing the hours, such as block

20 billing and vague billing entries, and finds no further reduction is warranted.  The Court finds

21 that 4,016.74 hours are a reasonable amount to be billed in this action which are calculated as

22 follows:

| | |
|---|---|
| Hours Initially Requested | 12,876.90 |
| Bisnar Chase Reduction | 716.00 |
| Overhead Reduction | 184.50 |
| Communication | 500.00 |
| Thirty Percent Reduction | 3,442.92[11] |
| Hours Reasonably Billed | 8,033.48 |
| 50% reduction for unsuccessful claims | 4,016.74 |
| Total Hours Reasonably Billed | 4,016.74 |

[11] 30% of 11,476.4.

1        3.      Reasonable Hourly Rate

2        Plaintiffs request the hourly rates be based on the "home market rate."  Defendants

3  counter that Plaintiffs have not demonstrated that local counsel was not available and the hourly

4  rate should be based on the reasonable rates in the local community.

5        The lodestar rate is calculated by multiplying the hours reasonably spent in the litigation

6  by the "hourly prevailing rate for private attorneys in the community conducting noncontingent

7  litigation of the same type."  Ketchum, 24 Cal.4th at 1133.  This is the hourly amount for which

8  attorneys of like skill in the area would typically be entitled.  Id.  The Supreme Court explained

9  that the loadstar amount is to be determined based upon the prevailing market rate in the relevant

10  community.  Blum v. Stenson, 465 U.S. 886, 896 (1984).  The "relevant legal community" for

11  the purposes of the lodestar calculation is generally the forum in which the district court sits.

12  Gonzalez, 729 F.3d at 1205.  Courts have considered the hourly rate based on counsel's "home

13  market rate" where the party shows that local counsel was not available.  Ctr. For Biological

14  Diversity, 188 Cal.App.4th at 617.  However, it is an abuse of discretion to apply higher rates for

15  out of town counsel where the plaintiff has not shown that hiring local counsel was impractical.

16  Id.

17        Mr. Chandler states in his declaration that he has been practicing in the Fresno area since

18  1979 and has been a past President of the Fresno Trial Lawyer's Association.  (Decl. of Stuart

19  Chandler ¶ 13, ECF No. 751-3.)  While there were several successful local trial lawyers, Mr.

20  Chandler states that in 2007 when Plaintiffs hired counsel there was only one local firm handling

21  wage and hour class actions.[12]  (Id.)  Mr. Chandler believes that this firm was relatively new to

22  _____

[12] Defendants object to paragraph 13 of Mr. Chandler's declaration on the grounds that it lacks foundation and
23  personal knowledge, is improper argument and is irrelevant.  Evidence is relevant if it has a tendency to make a fact
more or less probable than it would be without the evidence and is of consequence in determining the action.  Fed.
24  R. Evid. 401.  Whether there were local attorney's available to serve as counsel in this action is relevant to the issue
of whether the hourly rates would be reimbursed by the local market rate or the attorney's home market rate.
25  Defendants' objection on the ground of relevance is overruled.

26  Mr. Chandler has established sufficient personal knowledge to testify regarding the types of representation that were
available in the community based upon his practice in this area and his position as President of the Fresno Trial
27  Lawyer's Association.  However, Mr. Chandler has not laid the foundation or shown personal knowledge regarding
the financial resources or staffing available to local firms to opine regarding whether local attorneys would have had
28  the resources to represent Plaintiffs in this action.  Defendants' objection on the basis of foundation is overruled in
part and sustained in part.

1   the wage and hour area in 2007.  (Id.)  Mr. Chandler's declaration establishes that local counsel

2   was available in the local community when this action was filed.  Whether local counsel would

3   have had to associate with out of town counsel is irrelevant for the purposes of this motion.

4         Plaintiff Medlock states that she reached out to several attorneys in the local area who

5   declined to accept her case because it would be too expensive.  (Decl. of Sandrika Medlock ¶ 9,

6   ECF No. 751-19.)  Plaintiff does not indicate how many attorneys she contacted or if any of the

7   attorneys she contacted were engaged in employment litigation.  The Court finds that Plaintiffs

8   have not met their burden to show that it was impracticable to hire a local attorney to litigate this

9   action on behalf of the class.  The rates applied in this action shall be those for attorneys in the

10  local community.

11        While Plaintiffs submit the National Law Journal's survey of billing rates for the largest

12  U.S. law firms (ECF No. 751-2 at 701-713; ECF No. 751-6), this document does not address the

13  rates in the local community which in this case is Fresno, California.  Therefore, the Court finds

14  this document to be irrelevant to the rates to apply in this action.  Similarly, Plaintiffs submit

15  declarations regarding the rates which were filed in state and federal cases in the Central District

16  of California and a nationwide sampling of billing rates. (ECF No. 751-2 at 542-937.)  None of

17  these documents address the prevailing rates in this local community.  Plaintiffs have provided

18  no evidence of the prevailing rates in the local economy, accordingly, the Court relies on its own

19  knowledge of customary legal local rates and experience with the legal market in setting a

20  reasonable hourly rate.  Ingram v. Oroudjian, 647 F.3d 925, 926 (9th Cir. 2011).

21        Plaintiffs seek hourly rates ranging from $710.00 to $245.00 per hour.  In the Fresno

22  Division of the Eastern District of California, attorneys with experience of twenty or more years

23  of experience are awarded $350.00 to $400.00 per hour.  See Torchia, 304 F.R.D. at 277

24  (awarding attorney with twenty-five years of experience $380.00 per hour in wage and hour class

25  action); $350 per hour); Sanchez v. Frito-Lay, Inc., No. 1:14-CV-00797 AWI, 2015 WL

26  4662636, at *18 (E.D. Cal. Aug. 5, 2015), report and recommendation adopted, No. 1:14-CV-

27  797-AWI-MJS, 2015 WL 5138101 (E.D. Cal. Aug. 26, 2015) (finding reasonable rate for

28  attorney with twenty years of experience was $350 per hour in a wage and hour class action);

1  <u>Torres v. Pet Extreme</u>, No. 1:13-CV-01778-LJO, 2015 WL 224752, at *11 (E.D. Cal. Jan. 15,

2  2015), amended, No. 1:13-CV-01778-LJO, 2015 WL 648241 (E.D. Cal. Feb. 5, 2015) (finding

3  $400.00 per hour reasonable hourly rate for experienced counsel in class action); <u>Willis v. City

4  of Fresno</u>, No. 1:09-CV-01766-BAM, 2014 WL 3563310, at *12 (E.D. Cal. July 17, 2014)

5  adhered to on reconsideration, No. 1:09-CV-01766-BAM, 2014 WL 4211087 (E.D. Cal. Aug.

6  26, 2014) (awarding attorneys with over twenty five years of experience $380.00 per hour);

7  <u>Jadwin v. County of Kern</u>, 767 F.Supp.2d 1069, 1169 (E.D. Cal. 2011) (finding an hourly rate of

8  $350.00 is near the top range of hourly rates in the Fresno Division and awarding $380.00 per

9  hour to an attorney with 40 years of experience); <u>Miller v. Schmitz</u>, No. 1:12-CV-00137-LJO,

10  2014 WL 642729, at *3 (E.D. Cal. Feb. 18, 2014), appeal dismissed (July 10, 2014), motion for

11  relief from judgment denied, No. 1:12-CV-00137-LJO, 2014 WL 1689930 (E.D. Cal. Apr. 29,

12  2014) (awarding $350.00 per hour to Mr. Little who has twenty five years of experience, <u>see</u>

13  ECF No. 218); <u>Silvester v. Harris</u>, No. 1:11-CV-2137 AWI SAB, 2014 WL 7239371, at *4 (E.D.

14  Cal. Dec. 17, 2014) (awarding attorneys with twenty years of experience $335.00 and $375.00

15  per hour); <u>Verduzco v. Ford Motor Co.</u>, No. 1:13-CV-01437-LJO, 2015 WL 4131384, at *4

16  (E.D. Cal. July 9, 2015) report and recommendation adopted, No. 1:13-CV-01437-LJO, 2015

17  WL 4557419 (E.D. Cal. July 28, 2015) (awarding attorney with over 40 years of experience

18  $380.00 per hour).

19        Courts in the Eastern District of California, Fresno Division, have found that the

20  reasonable hourly rates for competent attorneys with less than fifteen years of experience are

21  $250 to $350 per hour.  <u>White v. Rite of Passage Adolescent Treatment Centers and Schools</u>, No.

22  1:13-cv-01871-LJO-BAM, 2014 WL 641083, at *5 (E.D. Cal. Feb. 18, 2014) (awarding $300.00

23  per hour for counsel with six years of experience in representation action under the California

24  Private Attorney General Act of 2004); <u>see</u> <u>Torchia</u>, 304 F.R.D. at 277 (awarding attorney with

25  seven years of experience $300.00 per hour in wage and hour class action); <u>Sanchez</u>, 2015 WL

26  4662636, at *18 ((finding reasonable rate for attorney with fourteen years of experience was

27  $275.00 per hour in a wage and hour class action); <u>Jones v. Lehigh Southwest Cement Co., Inc.</u>,

28  No. 1:12-cv-00633-AWI, 2014 WL 346619, at *6 n.3 (E.D. Cal. Jan. 30, 2014) (awarding

$280.00 and $215.00 per hour in employment action); <u>Williams v. Ruan Transport Corp.</u>, No. 13-cv-01157-LJO, 2013 WL 6623254, at *6 (E.D. Cal. Dec. 16, 2013) (this Court awarded $375.00 per hour to attorney with over thirty years of experience and $325.00 per hour to attorney with fifteen years of experience in employment action); <u>Ramirez v. Merced County</u>, No. 1:11-cv-00531-AWI-DLB, 2013 WL 4780440, at *9 (E.D. Cal. Sept. 5, 2013) (awarding $350.00 per hour to attorney with more than 30 years of experience and $250.00 for attorney with 14 years of experience); <u>Jadwin</u>, 767 F.Supp.2d at 1134 (awarding hourly rates of $350.00 for attorney with 14 years of experience, $275.00 for attorney with 11 years of experience, and $295.00 for contract attorney with 18 years of experience in employment action).

Courts in this division find that the prevailing rate for an attorney with less than two years of experience would range from $125.00 to $200.00 per hour.  See <u>Miller</u>, 2014 WL 642729, at *2 (awarding $125.00 per hour for attorney with nine months of experience); <u>Gerawan Farming, Inc. v. Rehrig Pac. Co.</u>, No. 1:11-CV-1273 LJO BAM, 2013 WL 6491517, at *11 (E.D. Cal. Dec. 10, 2013) (awarding $150.00 per hour for a new attorney who worked on a complicated patent dispute); <u>Fitzgerald v. Law Office of Curtis O. Barnes</u>, No. 1:12-CV-00071-LJO, 2013 WL 1627740, at *4 (E.D. Cal. Apr. 15, 2013) report and recommendation adopted, No. 1:12-CV-00071 LJO, 2013 WL 1896273 (E.D. Cal. May 6, 2013) (awarding attorney with one year of experience $200.00 per hour); <u>Silvester</u>, 2014 WL 7239371, at *4 (awarding attorneys with one year experience $150.00 and $175.00 per hour).

### a.    Arthur Meneses

Mr. Meneses seeks $710.00 per hour in this action.  Mr. Meneses graduated from UCLA Law School and was admitted to practice law in California in 1982.  (ECF No. 751-4 at ¶ 12.) Mr. Meneses is a partner at Initiative.  (<u>Id.</u> at ¶ 10.)  While Plaintiffs have failed to set forth any qualifications for Mr. Meneses, the Court finds that due to his position as a partner at Initiative and his significant years practicing in California, he is entitled to $400.00 per hour in this action.

### b.    Monica Balderrama

Ms. Balderrama is seeking $685.00 per hour in this action.  Ms. Balderrama graduated from Loyola Law School in 1996 and was admitted to the California Bar in December 1998.

1   (ECF No. 751-4 at ¶¶ 2, 3.)  Ms. Balderrama clerked for a bankruptcy judge for two years before

2   practicing civil litigation including breach of contract, defamation, fraud, and general business

3   litigation.  (Id.)  Ms. Balderrama joined Initiative in 2004 and has been primarily engaged in

4   managing wage and hour class actions in various stages of litigation.  (Id.)

5       Ms. Balderrama has been practicing law for just over 18 years and has been engaged in

6   wage and hour litigation for the past 14 years.  The Court finds that $350.00 per hour is a

7   reasonable rate of compensation based upon Ms. Balderrama's experience and the skill exhibited

8   in this action.

9       **c.   Miriam Schimmel**

10      Ms. Schimmel is seeking $680.00 per hour.  Ms. Schimmel graduated from Loyola Law

11  School in 1996.  (ECF No. 751-2 at ¶ 117; ECF No. 751-4 at ¶ 12.)  Ms. Schimmel worked for

12  Initiative prior to joining Capstone.  (ECF No. 751-2 at ¶ 117.)  Ms. Schimmel supervised junior

13  attorneys in the day to day litigation, oversaw litigation strategy, and took a deposition in this

14  action.  (Id.)  Ms. Schimmel left Capstone in the winter of 2013.  (Id.)

15      Plaintiffs have provided no information on the type of law practiced by Ms. Schimmel or

16  her experience in the area of wage and hour class actions.  The Court finds that $325.00 per hour

17  would be reasonable compensation for Ms. Schimmel's efforts in this action.

18      **d.   Matthew Theriault**

19      Mr. Theriault is seeking $670.00 per hour in this action.  Mr. Theriault graduated from

20  Western New England School of Law in Springfield, Massachusetts and began practicing law in

21  2001.  (ECF No. 751-2 at ¶ 102.)  He originally litigated consumer actions involving auto dealer

22  fraud, loan financing, and unlawful debt collection practices.  (Id.)  Mr. Theriault moved to

23  California and was admitted to the California Bar in September 2006, and joined a firm litigating

24  wage and consumer actions.  (Id.; ECF No. 751-4 at ¶ 12.)  Mr. Theriault was eventually made a

25  partner in the firm and then became a partner in Capstone.  (ECF No. 751-3 at ¶¶ 100, 102.)

26      Mr. Theriault has been practicing law for 16 years, and has been practicing in the area of

27  wage and hour class actions for approximately 10 years.  Based upon Mr. Theriault's experience

28  in the area of class action litigation and the Court's observation of his skill during the pendency

1    of this matter, the Court finds that $325.00 per hour is reasonable reimbursement for his efforts
2    in this matter.

3            **e.      Joseph Cho**

4            Mr. Cho is seeking $655.00 per hour.  Mr. Cho graduated from USC Law School and was
5    admitted to the California Bar in December 2001.  (ECF No. 251-4 at ¶ 12.)  Mr. Cho has been
6    practicing law for fifteen years and is a former senior associate.  Based on this limited
7    information, the Court finds a reasonable rate of compensation for Mr. Cho is $300.00 per hour.

8            **f.      Cory Lee**

9            Mr. Lee is seeking $595.00 per hour.  Mr. Lee graduated from UC Hastings School of
10   Law and was admitted to the California Bar in December 2001.  (ECF No. 251-4 at ¶ 12.)  Mr.
11   Lee has been practicing law for fifteen years and is a former senior associate.  Based upon this
12   limited information, the Court finds that Mr. Lee should be compensated at $300.00 per hour.

13           **g.      Andrew Sokolowski**

14           Mr. Sokolowski is seeking $570.00 per hour in this action.  Mr. Sokolowski graduated
15   from Loyola Law School in 2003, was admitted to the California Bar in November 2003, and
16   began practicing as a litigation associate at an international law firm.  (ECF No. 751-2 at ¶ 110;
17   ECF No. 751-4 at ¶ 12.)  He later practiced consumer protection and consumer fraud class
18   actions.  (ECF No. 751-2 at ¶ 109.)  Mr. Sokolowski concentrates his practice on wage and hour
19   and consumer protection class actions.  (Id.)  Mr. Sokolowski has been selected as one of
20   Southern California's "Super Lawyers –Rising Stars" in 2013 through 2015.  (Id. at ¶ 110.)

21           Mr. Sokolowski has been practicing for approximately thirteen years.  Mr. Sokolowski
22   has an unknown amount of experience in the area of wage and hour class actions such as those at
23   issue here.  Based on Mr. Sokolowski's experience and the Court's observation of his skill in this
24   matter, the Court finds that a reasonable rate of compensation for Mr. Sokolowski is $300.00 per
25   hour.

26           **h.      David Cheng**

27           Mr. Cheng is seeking $520.00 per hour.  Mr. Cheng graduated from Boston College of
28   Law in 2005, and was admitted to the California Bar in December 2005.  (ECF No. 751-2 at ¶

118; ECF No. 751-4 at ¶ 12.)  Mr. Cheng worked on this action until he left the firm in the summer of 2013.  (ECF No. 751-2 at ¶ 118.)

Mr. Cheng was a former associate, and has eleven years of experience with an unknown amount of experience in the area of wage and hour class actions.  Based on this information, the Court sets Mr. Cheng's compensation at $250.00 per hour.

**i.    Shawn Westrick**

Mr. Westrick is seeking $510.00 per hour in this action.  Mr. Westrick graduated from the UCLA law school and was admitted to the California Bar in December 2004.  (ECF No. 751-4 at ¶ 12.)

Mr. Westrick was an associate, and has twelve years of experience with an unknown amount of experience in the area of wage and hour class actions.  Based on this information, the Court sets Mr. Westrick's compensation at $260.00 per hour.

**j.    Gregory Yu**

Mr. Yu is seeking $510.00 per hour in this action.  Mr. Yu graduated from the USC Law School and was admitted to the California Bar in May 2004.  (ECF No. 751-4 at ¶ 12.)

Mr. Yu was an associate, and has twelve years of experience with an unknown amount of experience in the area of wage and hour class actions.  Based on this information, the Court sets Mr. Yu's compensation at $260.00 per hour.

**k.    Sharla Manley**

Ms. Manley is seeking $490.00 per hour.  Ms. Manley graduated from the USC Law School and was admitted to the California Bar in December 2005.  (ECF No. 751-4 at ¶ 12.)

Ms. Manley was an associate, and has eleven years of experience with an unknown amount of experience in the area of wage and hour class actions.  Based on this information, the Court sets Ms. Manley's compensation at $250.00 per hour.

**l.    Katherine Den Blyder**

Ms. Den Blyder seeks $445.00 per hour.  Ms. Den Blyder graduated from the Fordham School of Law in 2007, and was admitted to the California bar in July 2008.  (ECF No. 751-2 at ¶ 119; ECF No. 751-4 at ¶ 12.)  Ms. Den Blyder was the mid-level associate handling all aspects

of this case until she left the firm in 2013.  (ECF No. 751-2 at ¶ 119.)

Ms. Den Blyder was an associate, and has eight years of experience with an unknown amount of experience in the area of wage and hour class actions.  Based on this information, the Court sets Ms. Den Blyder's compensation at $225.00 per hour.

**m.    Megan Momeni**

Ms. Momeni seeks $$440.00 per hour.  Ms. Momeni graduated from the Chapman School of Law and was admitted to the California Bar in December 2007.  (ECF No. 751-4 at ¶ 12.)

Ms. Momeni was an associate, and has twelve years of experience with an unknown amount of experience in the area of wage and hour class actions.  Based on this information, the Court sets Mr. Westrick's compensation at $225.00 per hour.

**n.    Jonathan Lee**

Mr. Lee seeks $420.00 per hour.  Mr. Lee graduated from Pepperdine University School of Law in 2009, and was admitted to the California Bar in December 2009.  (ECF No. 751-2 at ¶ 115; ECF No. 751-4 at ¶ 12.)   Prior to joining Capstone, Mr. Lee defended employers and insurance companies in worker's compensation actions.  (ECF No. 751-2 at ¶ 115.)

Mr. Lee was an associate, and has seven years of experience with an unknown amount of experience in the area of wage and hour class actions.  Based on this information, the Court sets Mr. Lee's compensation at $220.00 per hour.

**o.    Joseph Liu**

Mr. Liu seeks $395.00 per hour.  Mr. Liu graduated from Whittier College of Law and was admitted to the California Bar in June 2008.  (ECF No. 751-4 at ¶ 12.)

Mr. Liu was an associate, and has eight years of experience with an unknown amount of experience in the area of wage and hour class actions.  Based on this information, the Court sets Mr. Lu's compensation at $225.00 per hour.

**p.    Glenn Danas**

Mr. Danas seeks $595.00 per hour.  Mr. Danas graduated from Emory University School of Law in 2001 and after law school clerked for a district judge in the Northern District of

1    Alabama.  (ECF No. 751-2 at ¶ 104.)  Mr. Danas began his career at an international law firm
2    primarily focused on antitrust and securities litigation.  (Id.)  Mr. Danas heads the complex
3    motion and appeals practice group for Capstone.  (Id.)  Mr. Danas is a leading authority on
4    arbitration law and PAGA actions, and was recently honored for his work as lead counsel in
5    Iskanian v. CLS Transportation Los Angeles, 59 Cal.4th 348 (2014) and is recognized by the
6    Daily Journal as one of California's Top 20 Lawyers under 40 for 2013.  (Id.)

7         Mr. Danas is a partner at Capstone with fifteen years of experience and an unknown
8    amount of experience in the area of wage and hour class actions.  The Court notes Mr. Dana's
9    experience in arbitration law, however this was not at issue in this action.  Recognizing Mr.
10   Dana's experience, the Court finds that reasonable compensation for his efforts in this action
11   would be $350.00 per hour.

12        **q.    Robert Drexler**

13        Mr. Drexler seeks $695.00 per hour in this action.  Mr. Drexler graduated from Case
14   Western Reserve University Law School and has more than 25 years of experience litigating
15   wage and hour and consumer rights class actions.  (Id. at ¶¶ 107, 108.)  Before Mr. Drexler
16   joined Capstone in 2014, he was the head of the class action group and lead a class action team at
17   different law firms.  (Id. at ¶¶ 107, 108.)  Mr. Drexler has been selected as one of Southern
18   California's Super Lawyer every year from 2009 through 2015.  (Id. at ¶ 107.)

19        Mr. Drexler is senior counsel at Capstone.  He has more than twenty five years of
20   experience in litigating wage and hour class actions.  The Court finds that $400.00 per hour
21   would reasonably compensate Mr. Drexler for his efforts in this action.

22        **r.    Jennifer Bagosy**

23        Ms. Bagosy is seeking $595.00 per hour.  Ms. Bagosy graduated from Georgetown
24   University Law Center in 2002.  (ECF No. 751-2 at ¶ 114.)  Ms. Bagosy litigated breach of
25   contract and patent infringement cases.  (Id.)  In 2011, Ms. Bagosy began specializing in
26   securities litigation, D&O liability litigation, bank-failure related litigation and professional
27   responsibility.  (Id.)  Ms. Bagosy joined Capstone in late 2015 providing support to the trial
28   team.  (Id. at ¶ 113.)  She specializes in employment and consumer class action litigation with an

1  emphasis on trial preparation.  (Id.)

2        Ms. Bagosy has fourteen years of experience with less than one year of experience in the

3  area of class actions.  Despite her lack of experience in the area of wage and hour or class

4  actions, the Court recognizes the role played by Ms. Bagosy in this action was trial support.  The

5  Court finds that $300.00 per hour would reasonably compensate Ms. Bagosy for her efforts in

6  this action.

7        **s.**      **Ryan Wu**

8        Mr. Wu seeks $595.00 per hour.  Mr. Wu graduated from University of Michigan Law

9  School in 2001.  (ECF No. 751-2 at ¶ 112.)  Mr. Wu began his career litigating international

10  commercial disputes and commercial actions governed by the UCL.  (Id.)  Mr. Wu is senior

11  counsel charged with handling complex briefing and appeals.  (Id. at ¶ 111.)

12        Mr. Wu has fifteen years of experience and an unknown amount of experience in wage

13  and hour class actions.  The Court finds that $300.00 per hour would reasonably compensate Mr.

14  Wu for his efforts in this action.

15        **t.**      **Stan Karas**

16        Mr. Karas is seeking $595.00 per hour.  Mr. Karas graduated from UC Berkley School of

17  law.[13]  (ECF No. 751-2 at ¶ 106.)  At the beginning of his career he handled complex

18  commercial and real estate litigation.  (Id.)  He changed firms where he began specializing in

19  class action and intellectual property.  (Id. at ¶ 105.)  Mr. Karas became primary counsel on this

20  action starting in 2014.  (Id.)

21        Plaintiffs have provided no information on when Mr. Karas graduated from law school,

22  when he began practicing law, or if he has experience in the area of wage and hour class actions

23  prior to 2014, other than his published law review articles.  Accordingly, the Court finds that

24  $200.00 per hour is reasonable compensation for Mr. Karas efforts in this action.

25        **u.**      **Daniela Saspe**

26        Ms. Saspe seeks $245.00 per hour in this action.  Ms. Saspe graduated from Loyola

27

28  _____

[13] Plaintiffs do not indicate when Mr. Karas graduated from law school, but he published several law review articles in 2002 so the Court assumes he was in law school at this time.  (ECF No. 751-2 at ¶ 106.)

School of Law in 2014.  (ECF No. 751-2 at ¶ 116.)  Prior to joining Capstone in late 2015, Ms. Saspe was part of a trial team that litigated a personal injury claim and a products liability claim. (Id.)

Ms. Saspe has less than two years of experience and has only been practicing in the area of wage and hour class action for about six months.  Accordingly, the Court finds that $125.00 per hour is reasonable compensation for Ms. Saspe's efforts in this litigation.

### v.       Stuart Chandler

Mr. Chandler has been a licensed and practicing attorney since November 1979.  (ECF No. 751-3 at ¶ 2.)  Mr. Chandler is a sole practitioner in Fresno, California and joined the team on January 22, 2016 to be lead trial attorney.  (Id. at ¶¶ 2, 3.)  For the past thirty years, Mr. Chandler has been representing plaintiffs in civil litigation.  (Id. at ¶ 4.)  Mr. Chandler has been co-counsel on several wage and hour class actions that settled.  (Id. at 12.)

Based on Mr. Chandler's significant legal and trial experience and his performance during the trial, the Court finds that $425.00 per hour is reasonable compensation for his efforts as trial counsel in this action.

### w.       Non-Attorney Hourly Rates

Mr. Chandler seeks fees for three support staff, Kimberley Burton and Michelle Gaskin at $100.00 per hour and Timothy Gelegan at $200.00 per hour.  In his declaration, Mr. Chandler states that he is a solo practitioner with four non-lawyer support staff.  (ECF No. 751-3 at ¶ 10.) Notably, no information is provided regarding the education, experience, or qualifications of any of these timekeepers.

In this division, the reasonable rate of compensation for a paralegal would be between $75.00 to $150.00 per hour depending on experience.  Sanchez, 2015 WL 4662636, at *18 ((finding reasonable rate for paralegal was $125.00 per hour and legal assistant was $75.00 per hour in a wage and hour class action); see also Willis, 2014 WL 3563310, at *14; Miller, 2014 WL 642729, at *2 (awarding $100.00 per hour for a paralegal); Silvester, 2014 WL 7239371, at *4 (current reasonable rate for paralegal work in Fresno is between $75.00 and $150.00 depending on experience); Gordillo v. Ford Motor Co., No. 1:11-CV-01786 MJS, 2014 WL

2801243, at *6 (E.D. Cal. June 19, 2014) (awarding $125.00 per hour for paralegal work).

No information has been provided regarding the non-attorney support staff, the Court is unable to determine if they are paralegals or legal assistants. Therefore, the Court sets the compensation for the non-attorney staff at $75.00 per hour.

**x.   Hourly Compensation**

Accordingly, the Court finds the following to be the reasonable hourly rates to be used in this action.

| Name | | Experience | Requested Rate | Adjusted Rate |
|---|---|---|---|---|
| G. Arthur Meneses | Partner | 30 + years | $710.00 | $400.00 |
| Monica Balderrama | Partner | 18 years | $685.00 | $350.00 |
| Miriam Schimmel | Sr. Associate | 20 years | $680.00 | $325.00 |
| Matthew T. Theriault | Partner | 16 years | $670.00 | $325.00 |
| Joseph Cho | Sr. Associate | 15 years | $655.00 | $300.00 |
| Cory Lee | Sr. Associate | 15 years | $595.00 | $300.00 |
| Andrew Sokolowski | Sr. Associate | 13 years | $570.00 | $300.00 |
| David Cheng | Associate | 11 years | $520.00 | $250.00 |
| Shawn Westrick | Associate | 12 years | $510.00 | $260.00 |
| Gregory Yu | Associate | 12 years | $510.00 | $260.00 |
| Sharla Manley | Associate | 11 years | $490.00 | $250.00 |
| Katherine Den Blyder | Associate | 8 years | $445.00 | $225.00 |
| Megan Momeni | Associate | 8 years | $440.00 | $225.00 |
| Jonathan Lee | Associate | 7 years | $420.00 | $220.00 |
| Joseph Liu | Associate | 8 years | $395.00 | $225.00 |
| Glenn Danas | Partner | 15 years | $595.00 | $350.00 |
| Robert Drexler | Sr. Counsel | 25 + years | $695.00 | $400.00 |
| Jennifer Bagosy | Litigation Specialist | 14 years | $595.00 | $300.00 |

| Ryan Wu | Sr. Counsel | 15 years | $595.00 | $300.00 |
|---|---|---|---|---|
| Stan Karas | Unknown | Unknown | $595.00 | $200.00 |
| Daniela Saspe | Unknown | 2 years | $245.00 | $125.00 |
| Stuart Chandler | Sole Practitioner | 30+ years | $700.00 | $425.00 |
| Kimberley Burton | Non-Attorney | Unknown | $100.00 | $75.00 |
| Michelle Gaskin | Non-Attorney | Unknown | $100.00 | $75.00 |
| Timothy Gelegan | Non-Attorney | Unknown | $200.00 | $75.00 |

In determining the lodestar amount the Court shall use a blended rate for hourly compensation. In determining the blended rate, the Court considered the percentage of time billed by each time keeper and the individual hourly rate for each time keeper. The Court shall use a blended rate of $288.00 per hour as the rate of compensation for the time reasonably spent in this action.

5.    Lodestar Calculation

Multiplying the reasonable hours billed in this action, 4,016.74, by the blended rate of $288.00 per hour, the Court finds that the award of attorney fees in this action shall be $1,156,821.12. Considering Plaintiff's limited success in this action and the damages awarded by the jury to the Underpaid Meal Premium Class, the Court finds that this amount reasonably compensates Plaintiffs for their efforts in this action.

6.    Multiplier

Plaintiffs also seek a multiplier of 1.5 to enhance their attorney fees. Defendants counter that no multiplier is warranted.

There is a strong presumption that the lodestar represents the reasonable fee. Sobel v. Hertz Corp., 53 F. Supp. 3d 1319, 1327 (D. Nev. 2014). A "trial court is not required to include a fee enhancement to the basic lodestar figure for contingent risk, exceptional skill, or other factors, although it retains discretion to do so in the appropriate case; moreover, the party seeking a fee enhancement bears the burden of proof. In each case, the trial court should consider whether, and to what extent, the attorney and client have been able to mitigate the risk

of nonpayment, e.g., because the client has agreed to pay some portion of the lodestar amount regardless of outcome." Ketchum, 24 Cal. 4th at 1138.   Awarding a multiplier is in the discretion of the trial court. Hogar, 157 Cal.App.4th at 1371.

Courts consider whether the services were performed on a contingent fee basis because the fee must be higher than a fee for the same legal services paid as they are performed. Ketchum, 24 Cal.4th at 1132.  Fee enhancements are intended to compensate the attorney for the risk of loss associated with contingency cases.  Id. at 1133.  Therefore, this factor weighs in favor of a multiplier.

Since the hourly rate already considers the skill and experience of the attorney, "[a] trial court should award a multiplier for exceptional representation only when the quality of representation far exceeds the quality of representation that would have been provided by an attorney of comparable skill and experience billing at the hourly rate used in the lodestar calculation." Ketchum, 24 Cal. 4th at 1139.  The court finds that this case did not demonstrate a quality of representation that far exceeds the quality of representation that would have been provided by an attorney of comparable skill and experience billing at the hourly rate used in the lodestar calculation.  First, the Court notes that while this trial proceeded to trial on the claims of three classes, Plaintiffs only proved the claims of the Underpaid Meal Premium Class. Additionally, Plaintiffs were seeking over $10 million dollars for the Underpaid Meal Premium Class and were only awarded damages in the amount of $495,913.66.

Additionally, the Court considers that, due to the manner in which Plaintiffs chose to present their evidence, there was a lack of evidence that employees were subjected to the policies which were found by the jury.  Counsel did not present their evidence in a cohesive manner which could have been comprehended by the jury to find that corporate Taco Bell employees were denied rest breaks or received late lunch breaks.

Plaintiffs relied solely upon the examination of the raw punch data in proving their damages.  In presenting evidence during the PAGA hearing, after the trial, Plaintiffs had their expert prepare a new expert report addressing the damages of the Underpaid Meal Premium Class.  This should have been completed and disclosed during the period in which expert

1  discovery was open.  It should have been evident well before trial that the expert analysis of the
2  raw punch data on the Underpaid Meal Premium Class claims was flawed.  The failure to
3  address the problems with the expert analysis resulted in the Court being unable to determine the
4  PAGA penalties for the Underpaid Meal Premium Class.  This is a strong factor in why the
5  multiplier for counsel is not appropriate in this case.

6       Plaintiffs argue the complexity of this action supports the application of a multiplier.
7  Plaintiffs argue that <u>Brinker</u> and <u>Wal-Mart Stores v. Dukes</u>, 131 S. Ct. 2541 (2011), changed the
8  complexion of the case.  However, <u>Brinker</u> did not change any issue relevant to the Underpaid
9  Meal Premium Class.  While Plaintiffs have asserted that <u>Brinker</u> stands for the proposition that
10  a written policy that violates the law establishes liability, that was not an issue with the
11  Underpaid Meal Premium Class.

12       The Underpaid Meal Class claim was based upon the payroll system which automatically
13  paid a half hour of premium pay when an employee missed or received a short meal period.  The
14  Underpaid Meal Premium Class did not present any novel or complex issues.  The payroll
15  records should have contained the data that would prove this claim.  The complexity for this
16  class was in establishing the amount of damages the class sustained due to the illegal payroll
17  policy.  Here, Plaintiffs choose not to analyze the payroll records to establish which employees
18  received autopay during the relevant time period and instead relied upon the raw punch data.
19  Plaintiffs' decision to rely on data that did not show which employees received autopay weighs
20  against awarding a fee enhancement in this action.

21       In this instance, the Court finds that a multiplier is not warranted to enhance the attorney
22  fees awarded.  The Court denies Plaintiffs' request for a multiplier to enhance the award of
23  attorney fees.

24       **C.    Enhancement Award**

25       Plaintiffs Medlock and Hardiman seek an enhancement award for acting as class
26  representatives in this action.  Defendants counter that Plaintiffs are not entitled to an
27  enhancement award as their participation in this action was not extraordinary.  At the June 15,
28  2016 hearing, the parties were granted the opportunity to file supplemental briefing on the

37

1   authority to give enhancement awards to the class representatives in this action.

2         Plaintiffs provide no legal authority to support an award of enhancement payments to the

3   class representatives in the situation presented here.  Rather than providing authority to give

4   incentive awards, Plaintiff respond that there is no authority to hold that service awards or

5   incentive awards are only limited to Plaintiffs who achieve a settlement.  Plaintiffs appear to

6   concede that there is no authority to tax incentive awards to a defendant in the situation

7   confronted here.

8         In most cases in which the class representatives receive an enhancement payment it

9   comes from the common fund upon settlement.  The Court notes that this is not an action in

10  which the parties have settled and a common fund is available to pay an enhancement payment.

11  Accordingly, the question to be considered here is whether enhancement awards can be taxed

12  against Defendants in this action?

13        There is no statutory authority to award incentive payments to class members.  Newberg

14  on Class Actions § 17:4 (5th ed.).  "In fee-shifting cases, courts must look to the underlying

15  statute for authority to tax a defendant for an incentive award."  Id.  "Because no statutes do

16  authorize such awards, incentive awards are rare in fee-shifting cases, absent a defendant's

17  agreement to pay such awards."  Id.

18        Rule 23 of the Federal Rules of Civil Procedure provides that "[i]n a certified class

19  action, the court may award reasonable attorney's fees and nontaxable costs that are authorized

20  by law or by the parties' agreement."  Here, the parties have not agreed to tax costs for incentive

21  awards so such costs must be authorized by law in order to be awarded.  There are taxable and

22  non-taxable costs in a lawsuit.  Taxable costs which are "governed by Rule 54(d)(1) and § 1920

23  are quite limited in nature."  Id. at § 16:4.  "Taxable costs are limited to relatively minor,

24  incidental expenses as is evident from § 1920, which lists such items as clerk fees, court reporter

25  fees, expenses for printing and witnesses, expenses for exemplification and copies, docket fees,

26  and compensation of court-appointed experts."  Taniguchi., 132 S. Ct. at 2006.  Most costs in a

27  class action lawsuit are nontaxable costs.  Newberg on Class Actions § 16:4.  These nontaxable

28  costs generally recognized are: photocopying expenses; telephone and facsimile charges;

1   postage, messenger, and express mail service charges; travel costs, including meals and

2   transportation incidental to travel; and computer assisted legal research. Id. at § 16:5.

3        Incentive awards "are payments to class representatives for their service to the class in

4   bringing the lawsuit." Radcliffe v. Experian Information Solutions Inc., 715 F.3d 1157, 1163

5   (9th Cir. 2013). These awards are fairly typical in class actions. Rodriguez v. W. Publ'g Corp.,

6   563 F.3d 948, 958 (9th Cir. 2009). The awards come out of the class's recovery in instances

7   where the class receives a monetary settlement. Radcliffe, 715 F.3d at 1163. As the Sixth

8   Circuit recently stated in In re Dry Max Pampers Litig., 724 F.3d 713 (6th Cir. 2013), "to the

9   extent that incentive awards are common, they are like dandelions on an unmowed lawn —

10  present more by inattention than by design." 724 F.3d at 722.

11       In the absence of a common fund and the agreement by the defendant to award an

12  enhancement payment upon settlement, courts generally do not award incentive payments to the

13  class representatives regardless of the extent of their participation in the action. See Hadix v.

14  Johnson, 322 F.3d 895, 899 (6th Cir. 2003) (after issuance of consent decree, forcing defendants

15  to pay an incentive award is an additional expenditure and is impermissible); Estep v. Blackwell,

16  No. 1:06CV106, 2006 WL 3469569, at *7 (S.D. Ohio Nov. 29, 2006) (denying incentive award

17  where defendant did not agree to it in the settlement agreement); but see Karraker v. Rent-A-Ctr.,

18  Inc., 492 F.3d 896, 900 (7th Cir. 2007) (addressing whether the award of an incentive award

19  where there was no settlement fund granted prevailing party status on class representative for

20  purpose of fee shifting); Sauby v. City of Fargo, No. 3:07-CV-10, 2009 WL 2168942, at *3

21  (D.N.D. July 16, 2009) (approving incentive awards to be paid by defendants in a settlement

22  where attorney fees, costs and related expenses were apparently to be paid outside the common

23  fund).

24       As previously stated, in a diversity action, federal not state law controls the issue of costs.

25  Aceves, 68 F.3d at 1167. Plaintiffs argue that incentive awards are similar to reasonably

26  necessary nontaxable costs. However, Courts have rejected the argument that incentive awards

27  are costs. Incentive awards are neither attorney fees nor costs incurred during the pendency of

28  the action nor would they fall within the costs allowed under Redland, 460 F.3d at 1257-58, as

they are not the types of expenses that Plaintiffs' attorney could bill to a client.  The Court also notes that the cases Plaintiffs cite in support of the award of enhancement payments all address the issue in the context of settlement where the defendant has agreed to pay the award.

Plaintiffs seek to have this Court exercise its discretion to give enhancement awards to the class representatives.  While the Court does have discretion under section 1920 to award or deny costs, such discretion does not extend to award expenses beyond those authorized by the statute.  Taniguchi, 132 S. Ct. at 2006.  In this instance, the parties did not settle this action and Defendants have not agreed to pay an enhancement award to class representatives.  The Court finds no authority to award such a payment absent the consent of the defendant in this action.

Accordingly, Plaintiffs Medlock and Hardiman's request for an enhancement award is denied.

## IV.

### ORDER AND CONCLUSION

Based on the foregoing, Plaintiffs motion for attorney fees, costs, and enhancement awards is GRANTED IN PART AND DENIED IN PART as follows:

1.      Plaintiffs are awarded attorney fees in the amount of $1,156,821.12;

2.      Plaintiffs' motion for costs is DENIED; and

3.      Plaintiffs Medlock and Hardiman's motion for incentive awards is DENIED.

IT IS SO ORDERED.

Dated:   **July 15, 2016**

UNITED STATES MAGISTRATE JUDGE