# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TACO BELL WAGE AND HOUR ACTIONS | Case No.  1:07-cv-01314-SAB |
| | ORDER DENYING DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW OR MOTION FOR A NEW TRIAL, AND GRANTING PLAINTIFFS' MOTION TO AMEND THE JUDGMENT |
| | JUDGMENT IS ENTERED IN FAVOR OF THE UNDERPAID MEAL PREMIUM CLASS AND AGAINST DEFENDANTS ON THE UCL CLAIM; AND JUDGMENT IS ENTERED IN FAVOR OF DEFENDANTS AND AGAINST THE LATE MEAL PERIOD CLASS AND REST PERIOD CLASS ON THE UCL CLAIMS |
| | (ECF Nos. 747, 748, 749, 755, 757, 758, 759, 766, 767, 768) |

Before the Court is Plaintiffs' motion for judgment as a matter of law or motion for a new trial and motion to amend the judgment and Defendants Taco Bell Corp. and Taco Bell of America, Inc.'s motion for judgment as a matter of law pursuant to Federal Rules of Civil Procedure 50(b).  Oral argument on the motions was heard on June 15, 2016.  Matthew Theriault, Monica Balderrama, Andrew Sokolowski, and Stuart Chandler were present and Jerusalem Beligan appeared telephonically for the Class; and Tracey Kennedy, Nora Stiles,

1

Morgan Forsey, and John Makarewich appeared for Defendants.  Having considered the moving, opposition and reply papers, the declarations and exhibits attached thereto, arguments presented at the June 15, 2016 hearing, as well as the Court's file and the evidence presented during the trial of this matter, the Court issues the following order.

# I.

# BACKGROUND

### A.    Trial

A jury trial was held in this action beginning on February 22, 2016, on the claims of three classes which had been certified in this action: the Late Meal Period Class, the Underpaid Meal Period Class, and the Rest Period Class.  The parties agreed to have the Court decide Plaintiffs' claims under California's Private Attorney General Act ("PAGA").  On March 9, 2016, the jury returned a verdict.  At the conclusion of the presentation of evidence, Defendants moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure.

The jury found that the Late Meal Period Class had proved that Defendants had a standardized or uniform policy that did not provide meal periods that began before the end of the fifth hour an employee worked for the relevant time period.  But the Class did not prove that during the relevant time period class members were non-exempt employees who worked for a corporate Taco Bell Corporate restaurant and worked shifts longer than six hours without being provided a meal period that began before the end of the fifth hour of work.

Similarly, the jury found that the Rest Period Class had proved that Defendants had a standardized or uniform company-wide policy that did not authorize and permit a second ten minute or a net twenty minute rest period when an employee worked more than six hours and less than seven hours.  But the Class did not prove that during the relevant time period class members were non-exempt employees who worked for a corporate Taco Bell Corporate restaurant and worked shifts longer than six hours but less than seven hours without being authorized and permitted to take a second ten minute or net twenty minute rest period.

The jury found that the Underpaid Meal Premium Class had proved that from September 7, 2003 through November 12, 2007, Defendant had a standardized or uniform company-wide

1  policy that underpaid meal premiums for missed or short meal periods and that during this time

2  period the class members were non-exempt employees who worked for a Taco Bell Corporate

3  restaurant and missed or received short meal periods and were paid a meal premium payment of

4  less than one full hour of compensation.   The jury awarded damages in the amount of

5  $495,913.66 to the Underpaid Meal Premium Class.

6        On March 11, 2016, the Court heard oral argument on Defendants' Rule 50(a) motion.

7  On March 14, 2016, an order was filed denying Defendants' Rule 50(a) motion.   On March 16

8  and 17, 2016, a bench trial was conducted on Plaintiffs' PAGA claim.   Plaintiffs' claim for

9  PAGA penalties was denied on April 8, 2016, and judgment was entered.

10        On May 6, 2016, Defendants filed a renewed motion for judgment as a matter of law

11  pursuant to Rule 50(b).   On May 9, 2016, Plaintiffs filed a motion for judgment as a matter of

12  law or a motion for a new trial, a motion to amend the judgment, a motion for deferral of ruling

13  on their motion for attorney fees, and a motion for attorney fees.[1]   On May 13, 2016, Plaintiffs

14  filed a revised declaration in support of the motion for attorney fees.   On May 25, 2016,

15  Plaintiffs filed a notice of supplemental authority relating to Plaintiffs' motion for judgment as a

16  matter of law and motion for new trial.   On June 1, 2016, Plaintiffs filed an opposition to

17  Defendants' motion for judgment as a matter of law; and Defendants filed an opposition to

18  Plaintiffs' motion to amend the judgment, and an opposition to Plaintiffs' motion for judgment

19  as a matter of law.   On June 8, 2016, Defendants filed a reply in support of their motion for

20  judgment as a matter of law, and Plaintiffs filed a reply to the opposition to the motion to amend

21  judgment and motion for judgment as a matter of law and new trial.

22        **B.**     **Factual History**

23        This is a consolidated action comprised of six underlying lawsuits.   The first action was

24  filed on September 7, 2007.   After other putative class actions were filed against Taco Bell, the

25  cases were consolidated on June 9, 2009, and thereafter.   This action proceeded to trial on the

26  Third Amended Consolidated Complaint (the "TACC") and Taco Bell's Answer to the TACC.

27        Plaintiffs asserted employment-related individual and class action claims against their

28

---

[1] Plaintiffs' motion regarding attorney fees shall be addressed by separate order.

3

former employer Defendant Taco Bell.  Prior to trial all the individual claims were settled.  This action proceeded to trial on the three classes which were certified and defined as follows at the time of trial:

- All persons who work or worked as a non-exempt, hourly-paid employee at a corporate-owned Taco Bell restaurant in California from September 7, 2003, until July 1, 2013, who worked for a period of time in excess of six hours and who worked for periods longer than five hours without a meal period of not less than thirty minutes as reflected in Defendants' employees' time records.

- All persons who work or worked as a non-exempt, hourly-paid employee at a corporate-owned Taco Bell restaurant in California from September 7, 2003, until December 24, 2014, who worked for a period of time in excess of six hours and less than seven hours without at least two rest periods of not less than ten minutes, as reflected in Defendants' employees' time records.

- All persons who work or worked as a non-exempt, hourly-paid employee at a corporate-owned Taco Bell restaurant in California who, between September 7, 2003 until November 12, 2007, received at least one 30-minute automatic adjustment on Taco Bell's Time and Attendance System as reflected in Defendants' employees' time records.

Plaintiff Hardiman also sought penalties under PAGA for the certified claims stated above.

## II.

## LEGAL STANDARD

### A.    Motion for Judgment as a Matter of Law

Rule 50 of the Federal Rules of Civil Procedure governs judgment as a matter of law. Rule 50(a) provides that "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:  (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the

4

controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(a)(1).  The motion must be made before the action is submitted to the jury and "must specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a)(2).

Rule 50(b) provides that a party may bring a renewed motion for judgment as a matter of law after trial. Fed. R. Civ. P. 50(b).  A Rule 50(b) motion is not a freestanding motion, but is a renewed motion under Rule 50(a).  E.E.O.C. v. Go Daddy Software, Inc., 581 F.3d 951, 961 (9th Cir. 2009).  Since a Rule 50(b) motion is a renewed motion, it is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion.  Id.  "A party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion."  Freund v. Nycomed Amersham, 347 F.3d 752, 761 (9th Cir. 2003).

In considering a motion for judgment as a matter of law, the court cannot make credibility determinations or weigh the evidence.  Go Daddy Software, Inc., 581 F.3d at 961.  The court "must view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor."  Id. at 961 (quoting Josephs v. Pac. Bell, 443 F.3d 1050, 1062 (9th Cir.2006)).  "The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict."  Go Daddy Software, Inc., 581 F.3d at 961 (quoting Josephs, 443 F.3d at 1062).

A renewed motion for judgment as a matter of law is properly granted "if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict."  Escriba v. Foster Poultry Farms, Inc., 743 F.3d 1236, 1242 (9th Cir. 2014) (quoting Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir.2002)).  The jury's verdict must be upheld if there is substantial evidence that is adequate to support the findings of the jury, even where contrary findings are also possible. Escriba, 743 F.3d at 1242.

## B.    Motion for New Trial

Rule 59(a) of the Federal Rules of Civil Procedure provides that the court may grant a motion for a new trial on some or all issues "after a jury trial, for any reason for which a new

trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Historically, the grounds that have been recognized to grant a new trial include, but are not limited to, claims "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007) (quoting Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940)). The Ninth Circuit has held that "[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." Molski, 481 F.3d at 729 (quoting Passantino v. Johnson & Johnson Consumer Prods., 212 F.3d 493, 510 n. 15 (9th Cir.2000)). Therefore, in considering the Rule 59 motion brought by the party against whom a verdict has been returned, the district court must weigh the evidence as the court saw it, "and set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence." Molski, 481 F.3d at 729.

### C. Motion to Amend Judgment

Pursuant to Rule 59(e) a party may move to alter or amend the judgment within 28 days after entry of the judgment. The specific grounds for amendment of judgment are not set forth in Rule 59(e) and the district court has considerable discretion in granting or denying the motion. Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1111 (9th Cir. 2011). "[A] Rule 59(e) motion is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.' " Wood v. Ryan, 759 F.3d 1117, 1121 (9th Cir.), cert. denied, 135 S. Ct. 21, (2014) (quoting Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000)). "In general, there are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law." Allstate Ins. Co., 634 F.3d at 1111.

/ / /

1   **III.**

2   **ANALYSIS**

3   **A.    Defendants' Motion for Judgment as a Matter of Law**

4       Defendants contend that Plaintiffs failed to present any evidence that would allow the

5   jury to perform the legally required damages calculation for the Underpaid Meal Premium Class;

6   and therefore, Defendants are entitled to judgment as a matter of law.  Defendants argue that to

7   prove damages for a violation of Labor Code section 226.7(c), Plaintiffs were required to

8   establish: 1) the identities of the affected Class Members; 2) the Class Members' regular rate of

9   pay at the time of the meal period violations; and 3) that under payment occurred.  Defendants

10  argue that this evidence was not presented at trial.  Plaintiffs argue that there is substantial

11  evidence to support the jury's verdict.

12      Defendants argue that the only documents introduced at trial are the payroll verification

13  reports ("PVRs") and Plaintiffs did not secure expert analysis of these documents because it

14  would be too expensive.  Defendants contend that since Plaintiffs did not introduce any analysis

15  of these records, the jury was left to analyze these 9 million pages of documents that were not

16  organized by date, employee name, employee number and were not electronically searchable.

17  Further, Defendants argue that Plaintiffs did not introduce any pay records for the Underpaid

18  Meal Premium Class or any other records indicating an actual payment of a meal premium to

19  members of the Underpaid Meal Premium Class.  Defendants argue that Plaintiffs did not

20  produce any evidence of the class members' regular rate of compensation making it impossible

21  for the jury to determine damages.  Finally, Defendants argue that the jury improperly relied on

22  argument of counsel in determining the number of violations.

23      Pursuant to California law, if an employer fails to provide meal periods or rest periods in

24  compliance with California law, "the employer shall pay the employee one additional hour of

25  pay at the employee's regular rate of compensation for each workday that the meal or rest or

26  recovery period is not provided."  Cal. Lab. Code § 226.7(c).  Courts have long held that "the

27  necessity for an individual determination of damages does not weigh against class certification.

28  The community of interest requirement recognizes that 'ultimately each class member will be

1  required in some manner to establish his individual damages." <u>Bell v. Farmers Ins. Exch.</u>, 115

2  Cal.App.4th 715, 742 (2004), as modified on denial of reh'g (Mar. 9, 2004) (collecting cases).

3  Defendants' argument here is that the individual members of the class did not establish their

4  damages because Plaintiffs did not present sufficient evidence to identify the class members who

5  received auto pay, and additionally, there was no evidence by which the jury could determine the

6  employee's regular rate of compensation.

7       In deciding a motion for judgment as a matter of law, the court must affirm the judgment

8  if there is substantial evidence to support the verdict.  <u>Landes Const. Co. v. Royal Bank of</u>

9  <u>Canada</u>, 833 F.2d 1365, 1371 (9th Cir. 1987).  "Substantial evidence is such relevant evidence as

10 reasonable minds might accept as adequate to support a conclusion even if it is possible to draw

11 two inconsistent conclusions from the evidence." <u>Landes Const. Co.</u>, 833 F.2d at 1371.

12      Defendants argued at the June 15, 2016 hearing that there was no evidence presented to

13 connect any class member with an autopay and the hourly rate for the violation.  Defendants

14 contend that the jury was required to be presented with the individual class member's rate of pay

15 at the time of the violation to comply with the statutory scheme for damages.  Defendants argue

16 that the damage amount returned by the jury was speculation.  Plaintiffs responded that the raw

17 punch records and PVRs contain all the information the jury needed to calculate damages in this

18 action.  Plaintiffs argue that the experts' testimony regarding the punch data was sufficient for

19 the jury to identify the rate of pay in the punch data.  For example, Plaintiffs argue that Dr.

20 Walker testified that his review of the punch data showed a very small percentage of records that

21 did not include the rate of pay.[2]

22      As Defendants concede, the PVRs were admitted into evidence and show which

23 individual class members were entitled to the half-hour of premium pay during the relevant time

24 period.  While Defendants argue in their reply brief that the PVR does not demonstrate that the

25 employee actually received autopay or was legally entitled to it, the jury could reasonably find

26 that where the payroll system identified an employee who had a short or missed meal period, the

27 ───────────────
[2] The Court notes that this appears to be contrary to Plaintiffs' argument during trial that they were entitled to a
"reasonable and just inference" instruction because the raw punch data did not include accurate records of the

28 employees' rate of pay.

1   employee was entitled to the payment and that if the missed or short meal period was

2   documented on the PVR autopay issued for the employee.

3       At trial, Plaintiffs proffered expert testimony by Mr. O'Brien.  Mr. O'Brien testified that

4   he analyzed the raw punch data to determine the number of meal periods that did not begin

5   before the end of the fifth hour of work when an employee worked more than six hours, shifts

6   where the employee worked more than six hours but less than seven without having at least two

7   rest periods before the beginning of the seventh hour, and shifts where there was a partial

8   payment due to the fact that the shifts were not qualifying shifts for the purpose of meal breaks.

9   (Trial Testimony of Michael Dennis O'Brien 31:3-17, ECF No. 710.)

10      Mr. O'Brien testified that the number of employees who were affected by alleged meal

11  period violations in this action is 28,691.  (ECF No. 710 at 31:6-12; 52:5-15; 124:21-19.)  The

12  time period for these violations was September 2003 through July 1, 2013.  (ECF No. 710 at

13  31:17-22; 53:1-11.)  This number represents the number of employees that worked shifts in

14  excess of six hours and did not have a thirty minute lunch that commenced prior to the start of

15  the fifth hour of work.  (ECF No. 710 at 31:23-32:3; 35:1-21; 52:5-15.)  Mr. O'Brien also

16  counted meal breaks that were shorter than 30 minutes.  (Id. at 39:16-25.)  For this time period

17  there were 1,761,329 shifts in which a thirty minute meal period was not recorded prior to the

18  end of the fifth hour of work.  (Id. at 62:12-17.)

19      Mr. O'Brien testified that he also counted the number of times that a full meal period was

20  not recorded that started before the end of the fifth hour of work from September 7, 2003 through

21  November 12, 2007.  (ECF No. 68:15-19.)  There were approximately 795,550 incidents.  (ECF

22  No. 710 at 68:15-69:19.)  The raw punch data did not indicate whether any employee received

23  autopay.  (ECF No. 710 at 117:19-25.)

24      Defendants' expert, Dr. Walker, also testified at trial.  Dr. Walker testified that he

25  identified 2,511,475 shifts or 38 percent of all shifts at least six hours long that did not have a

26  meal period that commenced before the end of the fifth hour of work.  (ECF No. 711 at 30:21-

27  14.)  This number includes shifts that had a timely paid meal period.  (ECF No. 711 at 32:21-5.)

28  There were 888,694 shifts that were worked by managers and would have to be deducted from

1   the total.  (ECF No. 711 at 35:12-21.)  Dr. Walker found 377,355 shifts that had paid meal

2   breaks.  (ECF No. 40:14-41:3.)  Between the years of 2003 and 2007, Dr. Walker found 134,819

3   missing meal breaks in the raw punch data.  (ECF No. 45:1-46:17.)  This included meal breaks of

4   less than 30 minutes.  (ECF No. 47:13-20.)

5       The jury returned a verdict finding in favor of the Underpaid Meal Premium Class.  (ECF

6   No. 696 at 3.)  The jury found that from September 7, 2003 through November 12, 2007,

7   134,419 class members were underpaid for a missed or short meal period.  (Id.)  The Court finds

8   that substantial evidence in the record supports the jury's finding as to the number of violations.

9   While Defendants argue that the jury improperly relied on opposing counsel's closing argument,

10  there was evidence introduced during the trial that corrections were made to the raw punch data

11  before payroll was issued.  Therefore, the number of violations reflected in the raw punch data

12  would be higher than the actual number of autopay that was generated.  The jury could have

13  reasonably found that Dr. Walker's estimate of the number of violations was high and made a

14  deduction to account for corrections made during the process of generating payroll.

15      Defendants also argue that Plaintiffs presented no evidence by which the jury could

16  determine the individual employees or the hourly rates for the specific employees that received

17  autopay.  The jury is not required to know the identity of the individual class members, but just

18  to be able to determine the number of violations and the amount of damages to the class.

19      In California, "the law tolerates more uncertainty with respect to damages than to the

20  existence of liability."  Duran v. U.S. Bank Nat. Assn., 59 Cal.4th 1, 40 (2014).  "Uncertainty of

21  the fact whether any damages were sustained is fatal to recovery, but uncertainty as to the

22  amount is not."  Duran, 59 Cal.4th at 40 (quoting Bruckman v. Parliament Escrow Corp., 190

23  Cal.App.3d 1051, 1061 (1987)).  Here, the raw punch data included the hourly rates of

24  employees.  Further, the jury was presented with evidence of the minimum hourly wage during

25  the relevant time period.

26      The Court finds that there is sufficient evidence to support the jury's verdict.  Lakeside-

27  Scott v. Multnomah Cty., 556 F.3d 797, 803 (9th Cir. 2009) (judgment as a matter of law is

28  appropriate when the jury could have only relied on speculation to reach its verdict).

1    Defendants' renewed motion for judgment as a matter of law is denied.

2         **B        Plaintiffs' Motion for Judgment as a Matter of Law**

3         Plaintiffs request judgment as a matter of law on behalf of the Late Meal Period and Rest

4    Period Classes.  Plaintiffs argue that under California law they are entitled to judgment as the

5    jury found that Defendants had a policy that did not provide timely meal and rest periods; and

6    therefore, the verdict is inconsistent.  Defendants argue that Plaintiffs' motion is untimely and is

7    seeking reconsideration of prior orders of the Court.

8         1.    Plaintiff's Motion for Judgment as a Matter of Law is Timely

9         Initially, the Court shall address Defendants' argument that Plaintiffs' motions are

10   untimely.  As relevant here, a renewed motion for judgment as a matter of law must be filed no

11   later than 28 days after the entry of judgment.  Fed. R. Civ. P. 50(b).  The judgment here was

12   signed on April 8, 2016, and was entered on the docket on April 11, 2016.  (ECF No. 744.)

13   Without citing any legal authority addressing the issue, Defendants are arguing that the 28 days

14   began to run on the date the judgment was signed and the current motions are therefore untimely.

15        A judgment or order is entered "when it is entered in compliance with Rules 58 and 79(a)

16   of the Federal Rules of Civil Procedure."  Ingram v. ACandS, Inc., 977 F.2d 1332, 1336 (9th Cir.

17   1992) (quoting Fed. R. App. P. 4(a)(7)).  "Rule 58 requires that every judgment be set forth on a

18   separate document, and Rule 79(a) details the civil docketing procedure to be followed by the

19   district court clerk when entering the judgment."  Beaudry Motor Co. v. Abko Properties, Inc.,

20   780 F.2d 751, 754 (9th Cir. 1986).  The date of judgment is the date on which the Clerk of the

21   Court entered the judgment in the docket.  Cedar Creek Oil & Gas Co. v. Fid. Gas Co., 238 F.2d

22   298, 301 (9th Cir. 1956); see also Nat'l Sav. Bank of Albany v. Jefferson Bank, 127 F.R.D. 218,

23   223 (S.D. Fla. 1989) ("an order is 'entered' not when it is signed by the judge, nor when it is

24   'filed' (i.e., file stamped), but rather when it is actually recorded on the docket sheet").  The

25   judgment in this action was entered on the docket sheet on April 11, 2016, and Plaintiffs had

26   twenty-eight days to file the instant motion.  Plaintiffs' motions are timely filed.

27        2.    The Verdict is Not Inconsistent

28        While generally a Rule 50(a) motion is required to bring a motion under Rule 50(b),

"[w]hen a special verdict does not support a judgment a reviewing court may make an exception to the Rule 50(b) requirement of a motion for directed verdict as a prerequisite to a motion for [judgment as a matter of law]."  Pierce v. S. Pac. Transp. Co., 823 F.2d 1366, 1369 (9th Cir. 1987).  Plaintiffs argue that this exception applies here because under Brinker Restaurant Corp. v. Super. Ct., 53 Cal.4th 1004 (2012), liability is established by the finding that Defendants had a policy that violated California law.  Therefore, Plaintiffs contend that the jury's finding that they did not prove that by a preponderance of the evidence that, during the time period from September 7, 2003 through July 1, 2013, Late Meal Period Class members were non-exempt employees who worked for a Taco Bell Corporate restaurant and worked shifts longer than six hours without being provided a meal period that began before the end of the fifth hour of work or that, during the time period from September 7, 2003 through December 24, 2014, Rest Period Class members were non-exempt employees who worked for a Taco Bell Corporate restaurant and worked shifts longer than six hours but less than seven hours without being authorized and permitted to take a second ten minute or net twenty minute rest period is inconsistent.

As relevant here, to prevail on a claim for failure to provide rest breaks, a plaintiff must prove that he worked more than six hours without being provided one twenty minute rest period or two ten minute rest periods.  Brinker, 53 Cal.4th at 1028-1030.  To prevail on the claim for failure to provide meal periods, a plaintiff must prove that he worked more than five hours per day without being provided a meal period of not less than thirty minutes that began before the end of the fifth hour of work.  Cal. Lab. Code § 512(a).

In Brinker, the California Superior Court considered the issue of class certification.  Brinker Rest. Corp., 53 Cal.4th at 1017.  The court stated:

> In reversing class certification, the Court of Appeal concluded that because rest breaks can be waived—as all parties agree— "any showing on a class basis that plaintiffs or other members of the proposed class missed rest breaks or took shortened rest breaks would not necessarily establish, without further individualized proof, that Brinker violated" the Labor Code and Wage Order No. 5.  This was error.  An employer is required to authorize and permit the amount of rest break time called for under the wage order for its industry.  If it does not—if, for example, it adopts a uniform policy authorizing and permitting only one rest break for employees working a seven-hour shift when two are required—it has violated the wage order and is liable.  No issue of waiver ever arises for a rest break that was required by law but never authorized; if a break is not authorized,

1    an employee has no opportunity to decline to take it.  As Hohnbaum pleaded and
2    presented substantial evidence of a uniform rest break policy authorizing breaks
     only for each full four hours worked, the trial court's certification of a rest break
3    subclass should not have been disturbed.

Brinker Rest. Corp., 53 Cal.4th at 1033.  Based upon this language, Plaintiffs have consistently

argued that they only need to show a policy exists to prove liability in this action.

The Court does not find Brinker to so hold.  Notably, Brinker only dealt with whether

class certification was appropriate and extending the position that a policy alone is sufficient to

establish liability without any showing that the plaintiffs were subjected to the policy is not a

reasonable application of the law.  See Campbell v. Vitran Express Inc., No.

CV1105029RGKSSX, 2016 WL 873009, at *4 (C.D. Cal. Mar. 2, 2016) (to determine liability

based solely on a facially defective policy "would be logically absurd and legally erroneous").

Plaintiffs ignore the language that the uniform policy must be consistently applied.  See

Brinker, 53 Cal.4th at 1033.  The issue of waiver addressed in Brinker does not arise if the policy

is not applied to the class.  Further, Plaintiffs' position eliminates the requirement that Plaintiffs

show causation.  Plaintiffs point to no case holding that at trial the class is not required to prove

that the policy was applied to them and caused an injury.

As discussed in Faulkinbury v. Boyd & Associates, Inc., 216 Cal.App.4th 220 (2013), at

class certification, the court "must focus on the policy itself and address the issue as to whether

the legality of the policy can be resolved on a class wide basis."  Id. at 232.  The court is

determining whether the claim is amendable to class wide treatment.  Id. at 233.  "Claims

alleging that a uniform policy consistently applied to a group of employees is in violation of the

wage and hour laws are of the sort routinely, and properly, found suitable for class treatment."

Id. (quoting Brinker, 53 Cal.4th at 1033).  Similarly, all the cases cited by Plaintiffs address class

certification.  See Bradley v. Networkers Int'l, LLC, 211 Cal.App.4th 1129, 1145, 150 (2012), as

modified on denial of reh'g (Jan. 8, 2013) ("when an employer has not authorized and not

provided legally-required meal and/or rest breaks, the employer has violated the law and the fact

that an employee may have actually taken a break or was able to eat food during the work day

does not show that individual issues will predominate in the litigation"); Benton v. Telecom

1  Network Specialists, Inc., 220 Cal.App.4th 701, 729 (2013) ("Under Brinker, TNS would

2  become liable to the class upon a determination that its uniform lack of a meal and rest policy

3  violated the applicable wage order.  The mere fact that some technicians may have taken breaks

4  (or declined to take breaks) based on information they received from other sources (i.e., the

5  staffing companies) does not show that individual issues will predominate in the litigation."

6  (internal citations and punctuation omitted); Brewer v. Gen. Nutrition Corp., No. 11-CV-3587

7  YGR, 2015 WL 9460198, at *2 (N.D. Cal. Dec. 28, 2015) ("In deciding whether a class is

8  properly certified, it would be error for the Court to focus on whether some individuals were able

9  to take breaks or chose to forego breaks.  Whether some individuals were able to take breaks, or

10  voluntarily chose not to take a break that was offered, are matters of individual damages.").

11     None of these cases support Plaintiffs' position that they are not required to prove that

12  they were employees of Defendants who were subjected to the policy to prevail at trial.

13  Plaintiffs are correct that whether or not some employees were permitted to take breaks does not

14  defeat liability.  However, the issue addressed by Questions No. 2 and 10 on the verdict form is

15  not whether some employees were permitted to take breaks, but whether Plaintiffs' proved they

16  were employees of Defendants who worked the requisite number of hours and were not provided

17  with a rest or meal period.  The jury found that Plaintiffs did not prove this element by a

18  preponderance of the evidence and, as the Court discussed in the Order Denying Plaintiffs'

19  Request for Private Attorney General Act Penalties which is discussed below at III.C.1,

20  Defendants submitted sufficient evidence for the jury to make such a finding.  (ECF No. 742 at

21  6:3-8:6.)

22     The Court finds that Plaintiffs must not only prove that there was an illegal policy, but

23  also that the policy was uniformly applied to the class.  See Campbell, 2016 WL 873009, at *5

24  ("Plaintiffs must still prove at trial that the policy's application deprived workers of their meal

25  and rest breaks.").  For this reason, the Court finds that the verdict was not inconsistent.

26  Plaintiffs' motion for judgment as a matter of law is denied.

27  **C.     Plaintiff's Motion for A New Trial**

28     Plaintiffs also move for a new trial on the ground that the jury's verdict is against the

1   clear weight of the evidence.  Defendants respond that there is no reason to disturb the jury's

2   verdict.  The Court shall address each of Plaintiffs' stated reasons to grant a new trial.

3        The existence of substantial evidence to support the verdict does not prevent the court

4   from granting a new trial where the court finds the verdict is against the clear weight of the

5   evidence.  Landes Const. Co., 833 F.2d at 1371.  In deciding a motion for new trial the court may

6   weigh the evidence and assess the credibility of witness.  Id.  The court need not view the

7   evidence in the light most favorable to the prevailing party.  Id.  "Doubts about the correctness of

8   the verdict are not sufficient grounds for a new trial: the trial court must have a firm conviction

9   that the jury has made a mistake."  Id. at 1372.

10       1.    Verdict on Late Meal Period and Rest Period Claims

11       Plaintiffs allege that the evidence at trial demonstrates that Defendants' meal and rest

12   period policy was uniformly applied to all non-exempt restaurant employees.  Plaintiffs contend

13   that the jury's verdict was against the clear weight of the evidence.  Defendants counter that the

14   Court has already addressed Plaintiffs' argument and determined they did not carry their burden

15   of proof at trial when ruling against Plaintiffs' request for PAGA penalties.  Defendants contend

16   that the evidence presented at trial supports the jury's verdict.

17       In ruling on Plaintiffs' request for PAGA penalties, the Court considered Plaintiffs'

18   argument that the jury erred by failing to find liability for the Late Meal Period and Rest Period

19   classes.

> [T]o the extent that this Court could do so, it would not find differently than the
> jury on these claims.  During the trial of this matter, Plaintiffs presented some
> witness testimony, and some evidence regarding payroll verification reports and
> pay stubs.  While Plaintiffs presented witness testimony in support of their claims,
> the named Plaintiffs had credibility issues.  Both Plaintiff Medlock and Plaintiff
> Hardiman had been terminated from employment with Taco Bell for lying on
> their employment applications.  Trial Testimony of Sandrika Medlock 42:15-17,
> ECF No. 708; Trial Testimony of Lisa Hardiman 8:2-17, ECF No. 709.  Mr.
> Arriola, another previous employee testified that he was able to remember not
> receiving a timely meal period or second rest periods when he worked for Taco
> Bell over seven years ago, but when asked when he took his lunch a week prior to
> the hearing his estimate was based on his normal practice.  Reporter's Transcript
> of Proceedings 1346:1-24, ECF No. 724.
>
> Dr. Walker testified that review of the raw punch data showed that the named
> class members did not tend to have recorded late meal periods.  Trial Testimony
> of Jonathan Walker 206:12-212:3.   Testimony  was  presented  that  employees

worked for both corporate and franchise Taco Bells, and some employees were subject to on duty meal period agreements and might not punch out for meal periods.

Plaintiffs' case focused on the raw time punch data to prove that employees received late meal periods or were not provided with a second rest period. The evidence presented at trial showed that the raw punch data was not the accurate reflection of the employee's time worked. The evidence showed that there were manual changes made to correct the raw punch data at the restaurant level. Reporter's Transcript of Proceedings 314:10-315:16, ECF No. 720. Defendants proffered evidence that sometimes employees forgot to punch out and had their manager manually enter meal period information. There could also have been times when the system was not available so rest and meal periods had to be entered manually into the payroll system. Additionally, some employees received on duty meal periods and did not punch out for meal periods.

There was testimony that for each pay period, employees were provided with a payroll verification report which listed their hours and the meal and rest breaks provided. The employee was to review the data for accuracy and then sign the report. It was this data from the payroll verification report that was used to issue payroll checks. Finally, Taco Bell presented evidence that meal and rest period schedules were provided for shifts and the employees were provided breaks every two hours.

Similar to the jury, the Court finds that the evidence presented by Plaintiffs did not prove by a preponderance of the evidence that there were non-exempt employees who worked for a Taco Bell Corporate restaurant and either worked shifts longer than six but less than seven hours without being authorized and permitted to take a second ten minute or net twenty minute rest period or worked longer than six hours without being provided a meal period that began before the end of the fifth hour of work during the class period.

(ECF No. 742 at 6:25-:8:6.)

While Plaintiffs cite to evidence to support their claims, both side submitted conflicting evidence to support their position regarding whether Defendants violated California Labor law. It was for the jury to consider this evidence to determine if Plaintiffs proved their claims by a preponderance of the evidence. The Court does not have a firm conviction that the jury made a mistake. Landes Const. Co., 833 F.2d at 1371. The Court finds that the jury's finding that Plaintiffs did not meet their burden of proof for the Late Meal Period and Rest Period classes was not against the clear weight of the evidence.

2.    Willful Finding

Plaintiffs next argue that the clear weight of the evidence demonstrates that Defendants willfully failed to comply with the Labor Code for the purposes of Labor Code Section 203. Defendants counter that the Plaintiffs had to show more than a failure to pay wages on

16

1   termination and failed to meet their burden at trial.

2       Labor Code section 203 provides that "[i]f an employer willfully fails to pay, without

3   abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.9, 202, and 205.5,

4   any wages of an employee who is discharged or who quits, the wages of the employee shall

5   continue as a penalty from the due date thereof at the same rate until paid or until an action

6   therefor is commenced; but the wages shall not continue for more than 30 days."  Therefore,

7   penalties are only triggered if the failure to pay was willful.  "As used in section 203, "willful"

8   merely means that the employer intentionally failed or refused to perform an act which was

9   required to be done.  Barnhill v. Robert Saunders & Co., 125 Cal. App. 3d 1, 7 (1981).

10      Plaintiffs contend that the jury's finding that Defendants owed the Underpaid Meal

11  Premium Class $495,913.66 in premium payments shows that this amount was required to be

12  paid to the employees.  Plaintiffs quote this Court's order addressing Defendants' argument that

13  there was a good faith dispute as to whether wages were due.  (See ECF No. 687 at 4:4-26.)

14  Plaintiffs argue there was no good faith dispute that the wages were due and that Defendants

15  failure to pay the premium payments prior to the trial of this action establishes that the conduct

16  was willful.  However, it was for the jury to determine whether the conduct of Defendants was

17  willful.

18      "A willful failure to pay wages within the meaning of Labor Code Section 203 occurs

19  when an employer intentionally fails to pay wages to an employee when those wages are due."

20  Amaral v. Cintas Corp. No. 2, 163 Cal. App. 4th 1157, 1201 (2008).  The jury was instructed that

21  " 'willfully' means that the employer intentionally failed or refused to pay the wages."  (ECF No.

22  694 at 49.)

23      During the June 15, 2016 hearing, Plaintiffs argued that the failure to comply with the

24  law itself proves the act was willful and not a good faith mistake.  Defendants responded that

25  section 203 is not a strict liability statute.  Plaintiffs cite to Davis v. Morris, 37 Cal.App.2d 269,

26  274, (1940), for the proposition that all that is required to find willfulness is that the action

27  occurred and was within the defendants control.  While Plaintiffs argue that Davis does not

28  require intent, the opinion states, "In civil cases, the word 'willful,' as ordinarily used in courts

1  of law, does not necessarily imply anything blamable, or any malice or wrong toward the other

2  party, or perverseness or moral delinquency, but merely that the thing done or omitted to be done

3  was done or omitted **intentionally**.  It amounts to nothing more than this: That the person knows

4  what he is doing, **intends to do what he is doing**, and is a free agent."  Davis, 37 Cal.App.2d at

5  274 (emphasis added).  Contrary to Plaintiffs argument, willfulness has an element of intent to

6  commit the act.

7       In this instance, evidence was presented at trial that Defendants' payroll system

8  automatically paid one-half hour of premium pay when it detected a missed or short meal period.

9  As the Court has previously found in addressing the failure to pay one hour of compensation in

10  Plaintiffs' motion for PAGA penalties, "Plaintiffs have presented no evidence that Defendants

11  had been provided with notice that their policy of paying one-half hour of premium pay violated

12  California law prior to this lawsuit being filed."  (ECF No. 742 at 11:8-10.)  The Court noted that

13  Defendants changed their autopay policy within several months of receiving notice of this action.

14  (Id. at 12:13-22.)  The evidence presented to the jury is susceptible of the interpretation that

15  Defendants were attempting to comply with California law by paying one-half hour of premium

16  pay and were unaware that their policy of paying only one half hour of premium pay was not

17  lawful and corrected the policy once it was brought to their attention by the filing of this lawsuit.

18       Plaintiffs additionally argue that willfulness is demonstrated because Defendants did not

19  pay all wages due upon separation.  The Court construes the argument to be that employees who

20  were paid one half-hour of pay and were owed an additional half-hour of premium pay when

21  they separated from employment were not paid that additional half hour of pay.  Defendants

22  respond that Plaintiffs presented no evidence that any employee who left employment was not

23  paid all wages due on termination.

24       Plaintiffs point to no evidence presented during the trial of this action to show that any

25  employee separated from employment, was owed an additional half-hour of autopay, and was

26  not paid the amount due after this lawsuit was filed.  The Court has reviewed the transcript of the

27  trial and finds that only two of the witnesses testified to receiving autopay: Plaintiff Medlock

28  who was terminated in May 2007, and Plaintiff Hardiman who was also terminated sometime in

2007.  (ECF No. 721 at 505:7-9; ECF No. 725 at 1513:19-20.)   This action was filed in September 2007, and it was after this time that Defendants changed their policy to pay one full hour of premium pay for a missed or late meal period.  The jury could reasonably have found that both Plaintiffs Medlock and Hardiman were terminated prior to Defendants being noticed by this lawsuit that their autopay policy violated state law.  Therefore, the jury could reasonably assume that the failure to pay Plaintiffs Medlock and Hardiman any additional autopay that might have been due on separation was not intentional for the same reasons discussed above.  To the extent that there was expert testimony that employees separated from employment, there was no evidence presented to show that any employee who received autopay separated from employment after this action was filed and was not paid wages due upon separation.

Accordingly, the Court finds that the jury's finding that Defendants' conduct was not willful was not against the clear weight of the evidence.[3]

3.      Inconsistent Verdicts

Plaintiffs' argument that the jury verdict was inconsistent has been addressed in III.B. The questions asked in Questions 1 and 2 and 9 and 10 of the verdict form are not substantially similar.  Questions 1 and 9 asked whether Defendants had a standardized or uniform company-wide policy.  Questions 2 and 10 asked whether the class members had proved that during the relevant time period they were employees of Defendant and had been subjected to the alleged violations.  The Court finds that the verdict was not inconsistent nor did requiring Plaintiffs to prove that they were employees of Defendants during the relevant time period who sustained damage due to the policy increase Plaintiffs' burden at trial.

4.      Preclusion of Dr. Walker's Testimony

Plaintiffs contend that they are entitled to a new trial due to the Court's sustaining Defendants' objection to Dr. Walker's testimony regarding damages.  Plaintiffs contend that Dr. Walker misrepresented the damages analysis he performed for Defendants in this action. However, Dr. Walker consistently in his expert report and during the evidentiary hearing stated

---

[3] Plaintiffs argue that Defendants did not show that they paid any employees the wages owed at the time of their separation.  However, at trial the burden is on Plaintiffs to prove their claims by a preponderance of the evidence. Defendants have no burden of proof at trial.

1   that using the raw punch data was not a reliable basis on which to assess damages in this action.

2   While Plaintiffs argue that Dr. Walker's testimony cannot be believed because he performed his

3   analysis based on the raw punch data rather than the PVRs, his testimony was that this data was

4   used because that was the data that Plaintiffs were relying on.   This is consistent with his

5   testimony that he was not hired to perform a damage analysis but to rebut the damages analysis

6   that would be provided by Plaintiffs' expert.

7       Further, the Court is not persuaded by Plaintiffs' argument that Dr. Walker backtracked

8   from his damage report only when it would be helpful to Defendants nor does the Court find that

9   Dr. Walker's testimony was contrived.   Defendants have consistently argued that Plaintiffs

10  cannot prove damages based upon the raw punch data because the raw punch data is not a

11  payroll record.   Dr. Walker's testimony has consistently been used to challenge the veracity of

12  Plaintiffs' expert because Plaintiffs' expert used an improper methodology which is consistent

13  with Dr. Walker's testimony during the evidentiary hearing.

14      Plaintiffs argue that they should have been able to introduce the opinion of Dr. Walker,

15  however, as discussed in the order sustaining the objection to Dr. Walker's testimony,

> Dr. Walker testified that raw punch data is not a reliable basis to calculate
> damages for failure to provide rest breaks or meal periods and something he
> would not do nor use to form his expert opinion.   Dr. Walker testified that the
> calculation that he did was not a damage estimate, and throughout his report he
> asserted that the analysis was not accurate.   Dr. Walker testified that he would not
> offer an opinion based on the premise that the raw punch data established
> violations because the raw punch data is clearly not accurate.
>
> While damage calculations were provided in his report, they are the opposite of
> his expert opinion.   None of the damage figures included in his report reflect an
> accurate opinion by him of damages in this action.   Dr. Walker testified that it is
> very clear from his expert report that one cannot ascertain damages reliably based
> on the raw punch data.   Dr. Walker opined that one could get a more accurate
> damages figure by relying on payroll verification reports, but even if the payroll
> verification reports were used, he would not put his name on any damages
> estimate because he could not determine whether there were missing rest or meal
> periods from looking at any of the records in this action.

25  (ECF No. 669 at 4:7-20.)

26      Plaintiffs argue that since the Court allowed the experts to proffer testimony regarding

27  the raw punch data to establish violations, the Court found the raw punch data sufficient to

28  provide an expert opinion under Rule 702.   However, the Court found that while Plaintiffs'

counsel sought to offer Dr. Walker's opinion regarding damages, "it is clear from the testimony of Dr. Walker and his Fed. R. Civ. P. Rule 26(a)(2)(B) report that his opinion is that the raw punch data is not an accurate and reliable basis to determine if the violations alleged in this action occurred." (Id. at 6:1-4.)  Testimony during the evidentiary hearing established the damage calculations are not Dr. Walker's opinion because they do not meet the standards for expert testimony. (Id. at 6:17-18.)  The estimates "were based upon the flawed procedure developed by Plaintiffs' expert, and an economist would not rely on the data provided to determine damages in this type of action." (Id. at 6:18-20.)  Dr. Walker set forth the reasons that the estimate was not based on reliable data: raw punch data could not be used to determine damages, many of the records in the raw punch data did not contain hourly rates, and some fields contained numbers too large to be an hourly rate. (Id. at 6:21-25.)  The Court found that "the information sought to be elicited from the expert during this trial is not his opinion based on sufficient facts or data, nor does Dr. Walker believe that it is the product of reliable principles and methods.  For these reasons, the opinion on damages does not meet the threshold requirements of admissibility under Rule 702." (Id. at 7:4-8.)  The Court also found that the evidence should be excluded under Rules 401, 402 and 403 of the Federal Rules of Evidence. (Id. at 8:14-15.)

> To the extent that the damage estimates have some relevance in this action, Dr. Walker will testify that they are not based on reliable data, do not reflect his opinion as to the damages in this action, and were not developed in a manner consistent with his training as an economist.  Allowing this evidence to be presented to the jury through Dr. Walker and then having Dr. Walker testify to the unreliability of the evidence provides a substantial risk of confusing the issues and misleading the jury.  For this reason, the Court finds that the probative value of the evidence is substantially outweighed by the danger of confusing the issues and misleading the jury.  Therefore the evidence is also excluded pursuant to Rule 403.

(Id. at 8:23-9:4.)

Plaintiffs' motion for a new trial based on the exclusion of the testimony of Dr. Walker is denied.

### 5.   Damages Jury Instruction

Plaintiffs contend that the Court gave an erroneous jury instruction.  Plaintiffs argue that the Court erred by failing to inform the jury that Plaintiffs could prove damages by just and

reasonable inferences and that they could determine damages by using the minimum wage.

First, in their moving papers, Plaintiffs argue that the Court erred by stating that the PVRs contain the employees' rate of pay.  Having reviewed the PVRs, the Court was incorrect as the PVRS do not contain rates of pay; however, Plaintiffs have not shown that Defendants failed to keep accurate pay records.  Testimony was presented during the trial regarding Defendants' payroll system: Veronica Luna (ECF No. 720 at 300-334), Mary Scoggan (ECF No. 723 at 1005-1034), and the deposition testimony of David Kruer (ECF No. 723 at 1045-1058).

Taco Bell restaurants' cash registers contain software for employees to punch in and out.  (Id. at 301:22-302:14.)  Taco Bell required employees to punch in and out at the start of the shift, during breaks and meal periods, and at the end of the shift.  (Id. at 307:7-308:3; 1009:25-1010:15.)  The data stored in the cash registers was called "raw punch data."  (Id. at 308:2-14; 1028:12-22.)  This data gets transferred from the cash register to the back office system.  (Id. at 331:20-25.)

At the end of the night, the store manager would poll the registers to the back office to review before they closed.  (Id. at 308:16-309:18; 1030:16-22.)  The raw punch data shows the employee punches without any modifications.  (Id. at 308:19-22.)  The back office reporting system, which was called TACO, was a computer in the manager's office which kept track of time and attendance.  (Id. at 310:16-311:4; 331:8-14.)  The system kept track of the punch data and would generate reports which the managers reviewed on a nightly basis.  (Id. at 311:6-22.) The manager was to confirm that everything was entered correctly into the back office system and had the ability to make adjustments to correct mistakes; for example, if an employee forgot to clock in or out for a break, the manager could make the adjustment before the information was transmitted to the corporate computer.  (Id. at 313:12-23.)  The manager was able to correct the time that punches were made and to add punches that had not been input by the employee.  (Id. at 314:9-23.)  At the end of the night, the data from the TACO system was automatically polled to the corporate server.  (Id. at 319:4-14.)  So there were two different sets of data; the raw punch data that tells when keys were pushed, and the data from the TACO system that contains any corrections made to the raw punch data.  (Id. at 314:24-315:10; 319:16-25; ECF No. 723 at

1   1031:19-1033:2.)  Changes could only be made to the punch data within the pay period and only

2   by managers.  (ECF No. 720 at 321:23-322:5.)  After the pay period, hours could only be added

3   to the employee's time.  (Id. at 323:5-21.)

4        The data transmitted from the TACO system was used to create PVRs.  (Id. at 332:7-20;

5   337:10-19.)  PVRs had codes such as "A" for automatic which meant that data was polled into

6   the back office with no interaction or interjection from anyone.  (ECF No. 720 at 329:6-22.)  An

7   "M" designated a manual adjustment to the data.  (Id. at 330:2-3.)  At the end of the pay period,

8   the back of house system ran to collect the applicable time keeping data, calculated the hours

9   worked and different types of hours worked, and sent the summary data in a file that was loaded

10  into the PeopleSoft for payroll purposes.  (ECF No. 723 at 1031:3-7; 1052:24-1053:5; 1055:23-

11  1056:20.)   The data used to pay employees was received, stored, and maintained within

12  Defendants' corporate systems.  (Id. at 1049:2-11; 1054:10-13.)

13       Plaintiffs do not claim that the time punch data and PVRS were not maintained; but that

14  the records were not accurate because the PVRs do not include the hourly rates of all employees.

15  In Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946), the court addressed a situation in

16  which the employer failed to keep accurate records and held that where "the employer's records

17  are inaccurate or inadequate and the employee cannot offer convincing substitutes. . .an

18  employee has carried out his burden if he proves that he has in fact performed work for which he

19  was improperly compensated and if he produces sufficient evidence to show the amount and

20  extent of that work as a matter of just and reasonable inference."  328 U.S. at 687-88.  Based

21  upon the evidence presented at trial, Defendants maintain employee time and payroll records.

22  The situation addressed in Mt. Clemens Pottery Co. is not presented here where Defendants

23  maintain adequate records, but Plaintiffs chose not to use them at trial.  Plaintiffs' decision to

24  rely solely on the raw punch data and not analyze the PVRs or payroll information in this action

25  does not demonstrate that Defendants did not keep accurate records.

26       During the June 15, 2016 hearing, Plaintiffs argued that the situation presented here is

27  "eerily similar" to that confronted by the court in Villalpando v. Excel Direct, Inc., No. 12-cv-

28  04137-JCS and 13—3091-JCS, 2016 WL 1598663 (N.D. Cal. April 21, 2016).  In Villalpando,

1  the plaintiffs were a group of delivery drivers who were classified as independent contractors.

2  Id. at *1.  A class was certified and prior to trial the parties brought motions in limine.  Id.  The

3  plaintiffs' supplemental expert report stated that the defendants had produced a large volume of

4  banker boxes which contained a variety of business records and the plaintiffs had been able to

5  identify the vast majority of documents.  Id. at *4.  However, the timesheets were produced in a

6  manner that made them difficult to collect.  Id.  There were large caches of daily timesheets that

7  had been copied in their entirety.  Id.  But, other daily timesheets were attached to driver's

8  manifests and other related documents and were not copied because it would be cost prohibitive

9  to separate and isolate the daily timesheets, therefore, the expert's analysis might not reflect all

10  the available daily timesheets in the defendant's possession.  Id.

11        The Villalpando court considered the Supreme Court's holding in Tyson Foods, Inc. v.

12  Bouaphakeo, 136 S. Ct. 1036, 1047 (2016), which reiterated the principle of Mt. Clemens.  Id. at

13  *6.  The Tyson court recognized that in many cases a representative sample could be the only

14  practicable means to collect and present relevant data to establish a defendant's liability.  Id.  Use

15  of such sampling is permissible in a donning and doffing class action because it could have been

16  used in each employee's individual action.  Id.  While individual minds may differ as to whether

17  the average time calculated by the expert is probative as to the actual time actually worked by the

18  individual employees, that question "is the near-exclusive province of the jury."  Id.

19        In considering the defendants' motion to preclude the "just and reasonable inference"

20  instruction, the Villalpando court found that the plaintiffs had identified numerous inadequacies

21  in the records produced by the defendant: "paper manifests and [timesheets] were not organized

22  in any particular manner, were mixed up with other, irrelevant documents, and are sometimes

23  illegible; the paper manifests also do not provide accurate timekeeping records to the extent they

24  consist only of lists of delivery windows and appear to omit time spent loading and unloading

25  merchandise at the warehouse; and most troubling, there is no way to know whether these paper

26  records are complete and [defendant] does not even attempt to establish that they are."  Id. at *9.

27  The court found that defendant had not demonstrated that it maintained adequate records; and

28  therefore, the plaintiffs were entitled to prove their claims by reasonable inference.  Id.

1    The Court disagrees with Plaintiffs' assertion that <u>Villalpando</u> and this case are "eerily

2    similar."  While there are a large number of documents that were not produced in any order due

3    to the number of stores involved and the time period at issue in this action, [4] the other factors

4    considered by the <u>Villalpandol</u> court are not present here.  The PVRs here are documents created

5    by the payroll system and reflect a two week pay period; they are not daily timesheets kept by

6    the employees as in <u>Villalpandol</u>.  There is no dispute that the documents were kept by

7    individual stores and provided in the manner in which they are normally maintained.  The PVRs

8    were not mixed in with other documents, but were produced in groups.  There is no allegation

9    that the paper records are not complete so that the plaintiffs did not have access to complete

10   records.  Further, the evidence at trial demonstrated that the Class Members signed each PVR

11   attesting that it is an accurate reflection of the time worked.  Also, Defendants maintained the

12   raw punch data, which as Plaintiffs argued during the June 15 hearing, Dr. Walker testified

13   showed a very small percentage of records that did not include the rate of pay.  Plaintiffs

14   presented no evidence that rates of pay were not kept by Defendants.  Plaintiffs did not show that

15   Defendants failed to keep accurate time records, and therefore, they were not entitled to a "just

16   and reasonable inference" instruction.

17   For the claims asserted in this action the damages are prescribed by statute.  Premium pay

18   is "one additional hour of pay at the employee's regular rate of compensation."  Cal. Lab. Code §

19   226.7(c).  The instructions given to the jury tracked the statutory language.  For the reasons

20   stated in the order denying Plaintiffs' motion to amend the damages instruction and those

21   discussed herein, the Court finds no error in failing to provide Plaintiffs' proposed instructions

22   on the minimum wage.  (ECF No. 690.)

23   Moreover, the Court finds that any error in providing an instruction regarding the

24   minimum wage in this instance would be harmless.  "[A]n error in instructing the jury in a civil

25   case does not require reversal if it is more probably than not harmless."  <u>Larez v. Holcomb</u>, 16

26   F.3d 1513, 1516-17 (9th Cir. 1994) (quoting <u>Benigni v. Hemet</u>, 879 F.2d 473, 479 (9th

27   _____

28   [4] Defense counsel represented at the hearing that the PVRs in this action are from more than 220 corporate stores over a period of 9 years.

Cir.1988)).  Here, the jury was provided with the minimum wage rates for the relevant time periods and was able to determine damages for the only class for which the jury found that Plaintiffs had proved their claim.[5]

6.    Brinker Jury Instruction

Plaintiffs contend that the Court erred by failing to instruct the jury that "where the employer adopts a standardized or uniform policy authorizing and permitting fewer rest periods than required by law, [the] employer has violated California law."  For the reasons set forth in III.B, the Court finds no error.  The instructions provided were an accurate statement of the Defendants' requirement to provide meal and rest periods.  Plaintiffs are not entitled to an award of damages unless they also prove that they were employees during the relevant time period who were injured by the unlawful policy.

7.    Erroneous Verdict Form

Finally, Plaintiffs argue that a new trial is warranted because the verdict form was erroneous.  As discussed in III.C.3, the Court finds that the verdict form was not inconsistent. For the first time, Plaintiffs raise the issue that Questions No. 2 and 10 ask four questions in one. However, Plaintiffs did not object to the manner in which these questions were presented during trial and the Court finds that the issue was waived.  Grosvenor Properties Ltd. v. Southmark Corp., 896 F.2d 1149, 1151 (9th Cir. 1990) (objection to jury instruction is waived where it is not raised prior to the withdrawal of the jury).

**D.    Motion to Amend the Judgment**

Plaintiffs argue that pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court is required to make findings regarding the Late Meal Period and Rest Period classes' claim that Defendants violated California's Unfair Competition Law ("UCL").  Defendants argue that Plaintiffs are seeking to have the Court reject the jury's verdict to find them liable on claims for which the jury found Plaintiffs did not meet their burden of proof.

Rule 52 provides that for 'an action tried on the facts without a jury or with an advisory

---

[5] Further, any such error would be harmless as applied to the Rest Period and Late Meal Period Classes as the plaintiffs did not prove the class claims by a preponderance of the evidence and damages did become an issue to be decided by the jury.

jury, the court must find the facts specially and state its conclusions of law separately.  The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court." Fed. R. Civ. P. 52(a)(1).

An action brought under the UCL is equitable in nature.  Bradstreet v. Wong, 161 Cal.App.4th 1440, 1458 (2008) abrogated on other grounds by Martinez v. Combs, 49 Cal.4th 35 (2010).  Where the equitable claims before the court are based upon the same underlying facts as the legal claims, the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations in deciding the legal claim.  Miller v. Fairchild Indus., Inc., 885 F.2d 498, 507 (9th Cir. 1989), as amended on denial of reh'g and reh'g en banc (Sept. 19, 1989).  Here, the UCL claims before the Court are based on the same underlying facts that were decided by the jury.  Therefore, under the doctrine of collateral estoppel, the Court adopts the findings embedded in the jury's verdict.[6]  (ECF No. 696.)

Plaintiffs argue that pursuant to Safeway, Inc. v. Superior Court of Los Angeles County, 238 Cal.App.4th 1138, 1159 (2015), review denied (Oct. 21, 2015), their UCL theory of liability is different than the question considered by the jury.  In Safeway, the appellate court considered whether the trial court properly certified a meal break class for the purposes of a UCL claim. 238 Cal.App.4th at 1144.  On appeal, the defendants argued that the trial court erred in certifying the meal period class, including the viability of the theory of recovery under the UCL.  Id. at 1145, 1146.

> Generally, the UCL defines "unfair competition" broadly to include "any unlawful, unfair or fraudulent business act or practice."  "By proscribing 'any unlawful' business practice, '[the UCL] "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable. [¶] However, the law does more than just borrow.  The statutory language referring to "any unlawful, unfair or fraudulent" practice (italics added) makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law.  Under the UCL, damages cannot be recovered, and plaintiffs are generally limited to restitution and injunctive relief.

Id. at 1147 (internal citations omitted).

The plaintiffs in Safeway sought to certify a class contending that defendants' policy of

---

[6] Additionally, the Court would not find differently than the jury based upon the evidence presented during the trial of this matter.

not paying meal break premiums to employees was an unlawful and unfair business practice under the UCL. Id. at 1150. Defendants contended that the underlying policy of not automatically paying meal break premiums was not an unlawful policy and where the underlying statutory claim failed, the UCL claim also failed. Id. at 1151. Plaintiffs replied that the underlying claim was that defendants had an unlawful practice of not paying premium wages and this was an unlawful and unfair business practice. Id. at 1152.

> The propriety of a UCL class action hinges on whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment. Ordinarily, class treatment of a claim is appropriate if the facts necessary to establish liability are capable of common proof, including the so-called fact of damage, that is, the existence of harm establishing an entitlement to damages. If the defendant's liability can be determined by facts common to all members of the class, a class may be certified even though class members must individually establish the amount of their restitution. Nonetheless, class treatment is not appropriate if every member of the alleged class would be required to litigate numerous and substantial questions determining his individual right to recover following the class judgment on common issues.

Id. at 1154 (internal punctuation and citations omitted).

In Safeway, the trial court found that "the propriety of class treatment required more than the presentation of evidence that during the pertinent period, petitioners never paid meal break premium wages: that conduct subjected petitioners to liability suitable for class treatment only if they had a "system-wide" practice of failing to pay meal break premium wages "when required." Id. at 1154. The appellate court found that a UCL claim could be predicated on the employer's failure to pay premium wages when required. Id. at 1156. The court also stated that to demonstrate the propriety of class treatment, the class members were obligated to show that the practice caused harm that was capable of common proof. Id. at 1159. The appellate court found that the class members had shown "the existence of the practice and the fact of damage were matters suitable for class treatment. [Class members'] evidence supports the reasonable inference that in the context of a class action, they could establish that petitioners engaged in the alleged practice, that is, they never paid meal break premium wages, even though a significant number of employees accrued them." Id. at 1159. The court found that the trial court did not err in certifying the UCL claims for class treatment. Id. at 1163.

28

Plaintiffs in this action did not move to separately certify claims under the UCL.  The only claims certified in this action are those which were presented to the jury.  To the extent that Plaintiffs argue other claims were raised by the complaint, as relevant to the claims remaining in this action, the tenth cause of action in the third amended complaint alleges that Defendants violated the UCL by the "policy and practice of requiring non-exempt or hourly-paid employees, including Plaintiffs and the other class members, to work through their meal and rest periods without paying them proper compensation" which "violates California Labor Code sections 226.7 and 512(a)."  (ECF No. 522 at ¶ 123.)  To prevail under the UCL, Plaintiffs have to prove that Defendants violated California Labor Law for the Class claims.

As to the rest period claim, this is the specific claim that the jury was asked to decide and the jury found Plaintiffs' had not proved by a preponderance of the evidence.  As to the meal period claim, the Late Meal Period Class was not based on working through meal periods without getting paid.  The Late Meal Period claim was based solely on the timing of the break.  For this class it was irrelevant if the employee received a meal period.  All that was required to prove a violation for the class was that the class members had not received a timely meal period.  The only claim at trial alleging that Plaintiffs were not provided with a meal period was the Underpaid Meal Premium Class and the jury found for Plaintiffs and awarded damages.  Further, as <u>Safeway</u> discussed, the class members were obligated to show that the practice caused harm.  <u>Safeway</u>, 238 Cal.App.4th at 1159.  The jury found that the Late Meal Period and Rest Period Classes had not met their burden of proof to show they were injured by the policy.

Plaintiffs attempt to restate the claims in this action as a failure to pay premium payments, but as <u>Safeway</u> held, failure to pay premium payments subjects an employer to liability suitable for class treatment only if they had a "system-wide" practice of failing to pay meal break premium wages "when required."  <u>Id.</u> at 1154.  To the extent that Plaintiffs allege the evidence at trial showed that there were employees who did not receive a timely meal period or a second rest period, this action is not proceeding on the claims of individual employees, but on the claims of the class.  Here, Plaintiffs failed to prove that the Late Meal Period or Rest Period classes were injured by the policies at issue.  Since Plaintiffs did not prove that there was a

1  system-wide policy that injured the class they are not entitled judgment on the UCL claims.

2      "In essence, an action based on Business and Professions Code section 17200 to redress

3  an unlawful business practice 'borrows' violations of other laws and treats these violations, when

4  committed pursuant to business activity, as unlawful practices independently actionable under

5  section 17200 et seq. and subject to the distinct remedies provided thereunder."  Farmers Ins.

6  Exch. v. Superior Court, 2 Cal. 4th 377, 383 (1992).  The Late Meal Period and Rest Period

7  Classes have failed to prove by a preponderance of the evidence that they were subjected to a

8  standardized or uniform policy that caused them injury.  Since the Late Meal Period and Rest

9  Period Classes have not prevailed on their claims, the Late Meal Period and Rest Period Classes

10  are not entitled to judgment for violation of the UCL.

11      The jury found that the Underpaid Meal Premium Class had proved that Defendants

12  violated Labor Code section 226.7 by paying one-half hour premium payment for a missed or

13  short meal period when they were required to pay a full hour premium payment.  Therefore, the

14  Underpaid Meal Premium Class is entitled to judgment for violation of the UCL.  The Court

15  finds that the damages awarded to the Underpaid Meal Premium Class are all the restitution

16  owed under the UCL to the class.  No additional damages shall be awarded to the Underpaid

17  Meal Premium class for the UCL claim.

18      Judgment is entered in favor of the Underpaid Meal Premium Class and against

19  Defendants for the UCL claim.  Judgment is entered in favor of Defendants and against the Late

20  Meal Period and Rest Period Class for the UCL claims./ / /

21      / / /

22      / / /

23      / / /

24      / / /

25      / / /

26      / / /

27      / / /

28

**IV.**

**CONCLUSION AND ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that:

1.   Defendants' renewed motion for judgment as a matter of law, filed May 6, 2016, is DENIED;

2.   Plaintiff's motion for judgment as a matter of law or alternately motion for a new trial, filed May 9, 2016, is DENIED;

3.   Plaintiffs' motion to amend the judgment, filed May 9, 2016, is GRANTED; and

4.   Judgment is entered in favor of the Underpaid Meal Premium Class and against Defendants on the UCL claim; and

5.   Judgment is entered in favor of Defendants and against the Late Meal Period and Rest Period Class on the UCL claims.

IT IS SO ORDERED.

Dated:   __July 15, 2016__                                      _____

                                                        UNITED STATES MAGISTRATE JUDGE

31